Dariush Keyhani (N.J. Bar No. 044062002)
Keyhani LLC
1050 30th Street NW
Washington, DC 20007
(202) 748-8950
dkeyhani@keyhanillc.com

*Attorneys for Defendant/Counter-Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAYER TECHNOLOGIES S.L., | Case No: |
| Plaintiff, | 3:23-cv-02257-MAS-TJB |
| v. | |
| VISCOFAN COLLAGEN USA INC., f/k/a NITTA CASTINGS INC, | **ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS** |
| Defendant. | |

## ANSWER OF DEFENDANT VISCOFAN COLLAGEN USA INC. TO PLAINTIFF'S COMPLAINT WITH AFFIRMATIVE DEFENSES AND FIRST AMENDED COUNTERCLAIMS

Defendant, Viscofan Collagen USA Inc. ("Viscofan"), in response to the Complaint filed by Sayer Technologies, S.L. ("Sayer"), by and through undersigned counsel, answers and counterclaims as follows:

## ANSWER

## NATURE OF THE ACTION

1.      Answering paragraph 1 of the Complaint, Viscofan only admits that that Sayer is the Plaintiff in the above captioned matter. The remaining allegations contained in paragraph 1 state conclusions of law to which no answer is required. All allegations of breach of contract,

unjust enrichment, and theft of services are specifically denied and strict proof of same is demanded at the time of Trial.

## PARTIES, VENUE AND JURISDICTION

2.      Answering paragraph 2 of the Complaint, Viscofan admits the allegations contained therein upon information and belief.

3.      Answering paragraph 3 of the Complaint, Viscofan admits the allegations contained therein.

4.      Answering paragraph 4 of the Complaint, Viscofan admits the allegations contained therein.

5.      Answering paragraph 5 of the Complaint, Viscofan admits that it is located in New Jersey and that venue is proper pursuant to 28 U.S.C. §1391. The remaining averments contained in  paragraph 5 state conclusions of law to which no answer is required. All allegations that Plaintiff was harmed by Defendant are specifically denied and strict proof of same is demanded at the time of Trial.

## RELEVANT FACTS

6.      Answering paragraph 6  of the Complaint, Viscofan admits the allegations contained therein upon information and belief.

7.      Answering paragraph 7 of the Complaint, Viscofan admits the allegations contained therein.

8.      Answering paragraph 8 of the Complaint, Viscofan only admits that in December of 2019 Viscofan, S.A. entered into an agreement to purchase Nitta Casings Inc.

9.      Answering paragraph 9 of the Complaint, Viscofan only admits to the existence

of the referenced document. Viscofan further answers that the referenced document should speak for itself and to the extent the averments in paragraph 9 are inconsistent with the referenced document, they are denied.

10.     Answering paragraph 10 of the Complaint, Viscofan only admits to the existence of the referenced document. Viscofan further answers that the referenced document should speak for itself and to the extent the averments in paragraph 9 are inconsistent with the referenced document, they are denied.

11.     Answering paragraph 11 of the Complaint, Viscofan only admits that Nitta Casings paid for a machine delivered by Sayer. Viscofan denies the remaining allegations in this paragraph.

12.     Answering paragraph 12 of the Complaint, Viscofan only admits that Nitta Casings raised issues with respect to the operation of the machine. Viscofan denies the remaining allegations in this paragraph.

13.     Answering paragraph 13 of the Complaint, Viscofan only admits that Nitta Casings  purchased conveyor belts from Sayer.  Viscofan denies the remaining allegations in this paragraph.

14.     Answering paragraph 14  of the Complaint, Viscofan admits the allegations contained therein.

15.     Answering paragraph 15 of the Complaint, Viscofan only admits to the existence of the referenced documents. Viscofan further answers that the referenced documents should speak for themselves and to the extent the averments in paragraph 15 are inconsistent with the referenced documents, they are denied. Viscofan denies the remaining allegations in this paragraph.

16.     Answering paragraph 16 of the Complaint, Viscofan admits the allegations contained therein upon information and belief.

17.     Answering paragraph 17 of the Complaint, Viscofan lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth and thus denies the allegations contained therein.

18.     Answering paragraph 18 of the Complaint, Viscofan lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth and thus denies the allegations contained therein.

19.     Answering paragraph 19 of the Complaint, Viscofan lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth and thus denies the allegations contained therein.

20.     Answering paragraph 20 of the Complaint, Viscofan only admits that it has not paid the subject invoices and admits, among other things, that the Sayer-Collagen Line Machine was not working properly and was underperforming.

21.     Answering paragraph 21 of the Complaint, Viscofan only admits that it was party to a legal proceeding in Spain involving Sayer. Viscofan denies the remaining allegations in this paragraph.

22.     Answering paragraph 22 of the Complaint, Viscofan only admits that it was party to a legal proceeding in Spain involving Sayer. Viscofan denies the remaining allegations in this paragraph.

23.     Answering paragraph 23 of the Complaint, Viscofan only admits that it has not paid the subject invoices. Viscofan denies the remaining allegations in this paragraph.

## COUNT I

24.     Answering paragraph 24 of the Complaint, Viscofan incorporates by reference each and every response contained in the preceding paragraphs as if fully set forth herein.

25.     Answering paragraph 25 of the Complaint, Viscofan only admits that Sayer delivered the subject conveyor belts at the request of Nitta Casings. Viscofan denies the remaining allegations in this paragraph.

26.     Answering paragraph 26 of the Complaint, Viscofan only admits that it has not paid the subject invoices. Viscofan denies the remaining allegations in this paragraph.

27.     Answering paragraph 27 of the Complaint, Viscofan denies the allegations contained therein.  All allegations of breach of contract are specifically denied and strict proof of same is demanded at the time of Trial.

## COUNT II

28.     Answering paragraph 28 of the Complaint, Viscofan incorporates by reference each and every response contained in the preceding paragraphs as if fully set forth herein.

29.     Answering paragraph 29 of the Complaint, Viscofan denies the allegations contained therein.

30.     Answering paragraph 30 of the Complaint, Viscofan only admits to the existence of the referenced documents. Viscofan further answers that the referenced documents should speak for themselves and to the extent the averments in paragraph 30 are inconsistent with the referenced documents, they are denied. Viscofan denies the remaining allegations in this paragraph.

31.     Answering paragraph 31 of the Complaint, Viscofan denies the allegations

contained therein.  All allegations of theft of services are specifically denied and strict proof of same is demanded at the time of Trial.

**COUNT III**

32.     Answering paragraph 32 of the Complaint, Viscofan incorporates by reference each and every response contained in the preceding paragraphs as if fully set forth herein.

33.     Answering paragraph 33 of the Complaint, Viscofan only admits that it has not paid the subject invoices. Viscofan denies the remaining allegations in this paragraph.

34.     Answering paragraph 34 of the Complaint, Viscofan denies the allegations contained therein.  All allegations of unjust enrichment are specifically denied and strict proof of same is demanded at the time of Trial.

**RESPONSE TO "WHEREFORE" CLAUSES**

35.     Viscofan denies that Sayer is entitled to any relief in this action, as requested or otherwise.

**AFFIRMATIVE DEFENSES**

**FIRST AFFIRMATIVE DEFENSE**

The Complaint, and the purported causes of action contained therein, fails to state facts sufficient to state a claim upon which relief may be granted.

**SECOND AFFIRMATIVE DEFENSE**

The Complaint, and the purported causes of action contained therein, are barred by Sayer's prior material breaches of contact.

**THIRD AFFIRMATIVE DEFENSE**

Plaintiff is barred from obtaining the relief sought in the Complaint by the doctrine of unclean hands.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff is barred from obtaining the relief sought in the Complaint by the doctrines of laches, wavier, and estoppel.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims based upon contracts are barred by the terms and conditions of the relevant contracts at issue.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims based upon contract are barred by the failure to satisfy conditions precedent, concurrent, or subsequent, as set forth in the relevant contracts.

## SEVENTH AFFIRMATIVE DEFENSE

If Plaintiff sustained any alleged damage, which damages are specifically denied herein, then said damages were caused by the actions or omissions of persons or entities other than answering Defendant, or over whom answering defendant had no control, or duty to control. Therefore, answering defendant was not and is not responsible.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims may be barred and/or reduced by its failure to mitigate its damages.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by applicable law.

## TENTH AFFIRMATIVE DEFENSE

Defendant did not receive an enrichment due to the Plaintiff's activity or at the Plaintiff's expense.

## ELEVENTH AFFIRMATIVE DEFENSE

Defendant acted under an honest claim of right to the property or service involved.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because of its breach of express and/or implied warranty.

## ADDITIONAL AFFIRMATIVE DEFENSES

This Answer is based upon information currently ascertained by Viscofan, which reserves its right to amend this Answer to assert any matter constituting an avoidance or affirmative defense under Rule 8(c) of the Federal Rules of Civil Procedure, or any such other procedural rule regarding the assertion of affirmative defenses, made applicable to this proceeding, as hereinafter may be revealed in discovery or otherwise ascertained by Viscofan.

## FIRST AMENDED COUNTERCLAIMS

## JURISDICTION AND VENUE

1.      Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332. Viscofan is a citizen of New Jersey and Sayer is a citizen of Spain.  After investigation, upon information and belief, Sayer is a corporation organized and existing under the laws of Spain.

2.      The amount of harm imposed upon Viscofan by Sayer, exclusive of interest and costs, exceeds the sum or value of $75,000.  Therefore, complete diversity of citizenship exists.

3.      In addition, Sayer has consented to the jurisdiction of this Court and to this District as being an appropriate forum for resolution of this dispute by the filing of its Complaint.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 in that a substantial

part of the events or omissions giving rise to this claim occurred in this judicial district.

## THE PARTIES

5.     Viscofan is a Delaware corporation with its principal place of business located at 141 Southside Avenue, Bridgewater, New Jersey.  Viscofan USA is a leading producer and distributor of artificial casings for the meat industry.

6.     Viscofan is a successor in interest to Nitta Casings Inc. ("Nitta"), following a transaction that was consummated in December of 2019 in which Viscofan's parent company, Viscofan, S.A., purchased Nitta, including the production facility located at 141 Southside Avenue, Bridgewater, New Jersey.

7.     Sayer Technologies, S.L. ("Sayer") is company is a corporation duly organized and existing under the laws of Spain with a principal place of business at Poligono Ipertegui II, Nave 33-35, 31160 Orcoyen (Navarra) - Spain.

8.     Sayer manufactures specialized industrial machinery with its principal place of business located in Navarra, Spain.

9.     Sayer was formed by former employees of Bildu – Lan S. Coop. ("Bildu – LAN").

## GENERAL ALLEGATIONS
### Sayer's defective conveyor belts

10.     On August 23, 2015, Sayer and Nitta entered into a framework agreement for the implementation and application of industrial technological solutions ("Technology & Trade Cooperation Agreement").

11.     On August 28, 2015, Sayer and Nitta entered into a Contract Agreement for the production of a "Sayer Collagen Line Machine/Line S" ("Line S Machine") for use in Nitta's production of collagen casings.

12.     Between April and November of 2019, Nitta ordered a number of conveyor belts from Sayer to be used with the Line S Machine.

13.     Immediately upon being put to use, the conveyor belts failed to operate as expected or intended by Nitta.

14.     Upon information and belief, Nitta operated and utilized the conveyor belts in strict conformity with the instructions provided by Sayer.

15.     Following the acquisition of Nitta, Viscofan operated and utilized the conveyor belts in strict conformity with the instructions provided by Sayer.

16.     The failure of the conveyor belts has resulted in significant disruptions to Viscofan's business operations, lost revenue, increased operating costs, and missed business opportunities.

**Viscofan's NDAs with Sayer's predecessor company, Bildu – LAN**

17.     Since Viscofan's creation, it has invested significant resources into the development of innovative products and systems in order to strengthen its position in the artificial casing industry by optimizing its productivity and quality consistency.  As a result, Viscofan has enjoyed a reputation as an industry leader, particularly in the area of productive capacity.

18.     Viscofan is the holder of numerous patents and other valuable intellectual property including trade secrets and other proprietary information.

19.      Viscofan's trade secrets relate to drawings, data, machines, and parts of production lines in connection with belts, pulleys, and knotting machines which improve the quality, speed, product behavior, cost savings, and more efficient use of raw materials in the production process for the manufacture of meat product casings from cellulose, fibrose, plastic,

and collagen.

20.    Although Viscofan develops its own technology, it relies on the active collaboration of its suppliers to help implement Viscofan's processes.  Because of these relationships, Viscofan enters into strict confidentiality and collaboration agreements with its supplies to maintain the confidentiality of its trade secrets and proprietary information.

21.    Bildu - LAN, a mechanical engineering and electrical engineering company engaged in the manufacture of customized machinery for industrial processes, and Viscofan entered into a series of NDAs governing the disclosure of confidential information and trade secrets between the parties ("the NDAs").  These NDAs include but are not limited to the January 21, 1992 agreement and the June 26, 1995 agreement.

22.    Under the NDAs, Bildu-LAN agreed receive trade secrets and other proprietary information ("Viscofan Trade Secrets") from Viscofan for the purpose of building and manufacturing machinery used in connection with Viscofan's artificial casing technologies.

23.    Bildu-LAN's commitment to keep the Viscofan Trade Secrets secret is unlimited in time, covering not only the period in which Bildu-LAN or its employees maintained commercial relations with Viscofan, but also, subsequently, once their relationship ended for whatever reason.  The NDAs acknowledged that disclosure or knowledge of this information would be valuable to Viscofan's competitors and their disclosure or use by a third party would clearly prejudice Viscofan.

24.    The Viscofan Trade Secrets included all proprietary information submitted to Bildu-Lan orally, in writing, or by any other media and all Bildu-LAN employees were made aware of and were bound by the NDAs.

25.    The Viscofan Trade Secrets are not generally known or readily ascertainable nor

could they be properly acquired or duplicated by others.

26.     Viscofan has taken all reasonable measures to keep the Viscofan Trade Secrets secret.  Viscofan only discloses the Viscofan Trade Secrets when necessary, and only to those who agreed to keep the information secret by signing confidentiality agreements.

27.     The Viscofan Trade Secrets are valuable and crucial to the implementation of Viscofan's business and competitive market position and Viscofan has invested substantial time, effort, and money in developing the Viscofan Trade Secrets.

28.     Pursuant to the NDAs, Bildu-LAN agreed to not use the Viscofan Trade Secrets for itself or third parties in any way without the express written agreement of Viscofan.

29.     Bildu-LAN also agreed not to disclose or duplicate the Viscofan Trade Secrets and to take all steps reasonably necessary to protect the secrecy the Viscofan Trade Secrets.

30.     Bildu-LAN further agreed that the Viscofan Trade Secrets shall remain the property of Viscofan and that the NDAs shall not be construed as granting or implying any transfer rights to Bildu-LAN or its employees.

31.     Bildu-LAN agreed that its obligations set out in the NDAs continued until the Viscofan Trade Secrets are no longer confidential.

32.     Bildu-LAN agreed that all employees, partners and collaborators external or internal to Bildu-LAN who have or may have access to confidential information owned by or originating from Viscofan will sign a confidentiality agreement under the same terms as the NDAs in order to protect the confidentiality of the information received from Viscofan.

33.     Over the years after executing the NDAs, Viscofan disclosed the Viscofan Trade Secrets to Bildu-LAN in connection with the purposes set out in the NDAs and pursuant to the confidentiality protections set out in the NDAs.

### Bildu-LAN employees leave the company to form Sayer

34.     Following years of employment with Bildu-LAN, key Bildu-LAN personnel left Bildu-LAN to form Sayer on or about October 2012.

35.     These individuals included Mr. Ernesto Garrido Zuniga (manager director of Bildu-LAN), Mr. Santos Legaz Ascona (assistant manager of Bildu – LAN) and Mr. Carlos Mugica Perez-Albeniz (sales manager of Bildu-LAN).

36.     These individuals had access to the Viscofan Trade Secrets, which were disclosed to Bildu-LAN pursuant to the NDAs.

37.     Aware that the employees of the newly formed company (Sayer) had access to the Viscofan Trade Secrets, Viscofan took additional steps to remind Bildu-LAN and the Sayer employees of their continuing obligations to not use or disclose the Viscofan Trade Secrets.

38.     Viscofan commissioned a Notary Public to send Bildu-LAN a letter demanding that the Viscofan Trade Secrets be returned or destroyed and further reminded Bildu-LAN of its confidentiality commitments.  Viscofan also requested that Bildu-LAN send a letter to its past and present employees reminding them of these continuing confidentiality obligations.  Bildu-LAN complied with Viscofan's requests.

### Sayer's use of the Viscofan Trade Secrets in breach of the NDAs

39.     In the years following Sayer's creation, Viscofan learned that Sayer has used and continues to use the Viscofan Trade Secrets for its own benefit.

40.     Upon learning that Viscofan had incorporated the Viscofan Trade Secrets and other confidential and proprietary information belonging to Viscofan into their knotting machines, Viscofan sent Sayer a cease and desist demanding that Sayer immediately cease commercialization of the knotting machines and to deliver any Viscofan Trade Secrets in their

possession to Viscofan.

41.     Recently, upon acquiring Nitta and inspection of various Nitta machines made for Nitta by Sayer, Viscofan learned that Sayer had not complied with Viscofan's cease and desist and continues to use the Viscofan Trade Secrets.

42.     In addition to Nitta, on information and belief, Sayer has used and continues to use the Viscofan Trade Secrets in parts and machinery sold by Sayer to Calderia Plastica Lumiplas, S.L., Master Navarra Automatismos, S.L., Miren d.o.o., Ezma, S.A., and others.

43.     Viscofan has suffered and continues to suffer irreparable harm as a result of Sayer's actions.

## FIRST COUNTERCLAIM
### Counterclaim for Breach of Implied Warranty of Fitness for a Particular Purpose

44.     Plaintiff adopts and incorporates by reference Paragraphs 1 through 43 of its Counterclaim Complaint as fully set forth herein.

45.     Sayer knew the particular purpose for which Nitta intended to use the conveyor belts and provided the conveyor belts for that particular purpose.

46.     Sayer knew that Nitta was relying on its knowledge, skills and experience in providing the conveyor belts.

47.     Nitta reasonably relied upon Sayer's knowledge, skill, experience, and judgment with respect to the provision of the conveyor belts.

48.     At the time of their sale, the conveyor belts were not fit for this particular purpose for the following reasons:

    a.    did not meet standard specifications;
    b.    failed to operate in a reliable and continuous manner;
    c.    did not meet performance criteria;
    d.    failed to operate for their purpose; and
    e.    were otherwise defective.

49.     Upon information and belief, Nitta immediately notified Sayer that the conveyor belts failed to operate as intended.

50.     Viscofan has also notified Sayer that the conveyor belts failed to operate as intended.

51.     Sayer refused both Nitta's and Viscofan's requests to fulfill its obligation to remedy the conveyor belts' failure to operate as intended.

52.     As a direct and proximate result of Sayer's breach of the implied warranty of fitness for a particular purpose, Viscofan, as succors in interest to Nitta, suffered damages.

## SECOND COUNTERCLAIM
## Counterclaim for Breach of Implied Warranty of Merchantability

53.     Plaintiff adopts and incorporates by reference Paragraphs 1 through 52 of its Counterclaim Complaint as fully set forth herein.

54.     Sayer, in the course of its business, deals in transactions involving goods such as the conveyor belts and holds itself out as having knowledge and skill with respect thereto.

55.     Sayer knew that Nitta intended to use the conveyor belts on the Line S Machine provided by Sayer and it recommended and produced the conveyor belts for that purpose.

56.     At the time of this sale, the conveyor belts were not merchantable for the following reasons:

    a.  did not meet standard specifications;
    b.  failed to operate in a reliable and continuous manner;
    c.  did not meet performance criteria;
    d.  failed to operate for their purpose; and
    e.  were otherwise defective.

57.     Nitta's use of the conveyor belts was not abnormal and the conveyor belts failed to perform the functions for which they were purchased.

58.     Upon information and belief, Nitta immediately notified Sayer that the conveyor belts failed to operate as intended.

59.     Viscofan has also notified Sayer that the conveyor belts failed to operate as intended.

60.     Sayer refused both Nitta's and Viscofan's requests to fulfill its obligation to remedy the conveyor belts' failure to operate as intended.

61.     As a direct and proximate result of Sayer's breach of the implied warranty of merchantability, Viscofan, as succors in interest to Nitta, suffered damages.

**THIRD COUNTERCLAIM**
**<u>Violation of the Defend Trade Secrets Act</u>**

62.     Plaintiff adopts and incorporates by reference Paragraphs 1 through 61 of its Counterclaim Complaint as fully set forth herein.

63.     The actions of Sayer as described above constitute violations of one or more provisions of the Defend Trade Secrets Act of 2016 ("DTSA"), PL 114-153, May 11, 2016, 130 Stat 376, which amends the Economic Espionage Act, 18 U.S.C. § 1831 *et seq*.

64.     Viscofan is the owner of trade secrets relating to the design and manufacture of industrial machines in the meat casing industry including the Viscofan Trade Secrets which are used in interstate and foreign commerce.

65.     Viscofan's trade secrets are not generally known or readily ascertainable nor could they be properly acquired or duplicated by others.

66.     At all times, Viscofan has taken reasonable and extensive efforts to keep its trade secrets through the use of Confidentiality Agreements, employment agreements, and employee training.  All of Viscofan's trade secrets have been securely stored and Viscofan has reminded persons in possession of its trade secrets of their continuing obligations.  Further, Viscofan has

ordered the return and/or destruction of the Viscofan Trade Secrets to avoid inadvertent disclosure.

67.     At no time did Viscofan consent to Sayer's use or disclosure of its trade secrets or confidential information for any purpose.

68.     Viscofan's trade secrets constitute independent economic value.  Viscofan has invested substantial resources into research and development and Viscofan continues to invest significant economic resources into refining its trade secrets and other proprietary information and systems.

69.     Viscofan's trade secrets are crucial to the success of its business and provides the company with a critical market advantage.

70.     Sayer acquired the Viscofan Trade Secrets through a relationship of trust by way of agreement to the NDAs, which imposed a duty upon Bildu-LAN (and the former Bildu-LAN employees who formed Sayer) to maintain the confidentiality of the Viscofan Trade Secrets and to not use and/or disclose confidential information and trade secrets belonging to Viscofan.  At all relevant times Sayer knew about the confidential nature of Viscofan Trade Secrets.

71.     Sayer misappropriated Viscofan's trade secrets by improper means in violation of the NDAs by using the secrets and continuing to use them for their own economic benefit.

72.     Viscofan learned that Bildu-LAN employees, now with Sayer, had used and/or disclosed the Viscofan Trade Secrets in connection with their work for Nitta because the Viscofan Trade Secrets had been incorporated into machinery sold to Nitta by Sayer.

73.     Sayer misappropriated Viscofan's trade secrets through at least its use of Viscofan's trade secrets in machinery sold by Sayer to Nitta and others.

74.     Sayer has intentionally, willfully, and maliciously misused trade secrets and/or

confidential or proprietary information or knowledge of Viscofan, and continues to do so, in breach of the NDAs and in violation of a confidential relationship and duty.   Sayer's misappropriation of the Viscofan Trade Secrets has been ongoing.  Viscofan's knowledge and information has evolved since the parties began their relationship and Sayer has continuously misused and/or disclosed Viscofan's information throughout all stages of its evolution and development.

75.     As a consequence of the foregoing, Viscofan has suffered and will continue to suffer irreparable harm and loss.

**FOURTH COUNTERCLAIM**
**Misappropriation of trade secrets under New Jersey Trade Secret Act**

76.     Viscofan adopts and incorporates by reference Paragraphs 1 through 75 of its Counterclaim Complaint as fully set forth herein.

77.     The actions of Sayer as described above constitute violations of the New Jersey Trade Secrets Act, N.J.S.A. § 56:15-1 *et seq*.

78.     Viscofan is the owner of trade secrets relating to the design and manufacture of machines in the meat casing industry including but not limited to the Viscofan Trade Secrets.

79.     Sayer possesses trade secret information belonging to Viscofan including but not limited to the Viscofan Trade Secrets by virtue of Viscofan's relationship with Bildu – LAN and the NDAs.

80.     The Viscofan Trade Secrets are not generally known and Viscofan takes reasonable steps to maintain confidentiality with respect to its trade secret material.

81.     Sayer has used and disclosed and on information and belief is continuing to use and disclose Viscofan's confidential information and trade secrets without authorization and in breach of its contractual obligations to Viscofan.

82.     The nature of Sayer's business as a competitor of Viscofan makes the risk of Sayer disclosing and using Viscofan's trade secrets and other confidential information high and likely inevitable and represents an immediate and irreparable harm to Viscofan.

83.     Viscofan has sustained damages and injury exceeding $75,000 as a direct and proximate result of Sayer's misappropriation of Viscofan's trade secrets.

84.     Sayer misappropriated Viscofan's trade secrets willfully and maliciously, entitling Viscofan to recover attorneys' fees from Sayer pursuant to NJ Rev Stat § 56:15-6 and punitive or exemplary damages from Sayer pursuant to NJ Rev Stat § 56:15-4(b)

**FIFTH COUNTERCLAIM**
**Unfair Competition under New Jersey Law**

85.     Viscofan adopts and incorporates by reference Paragraphs 1 through 84 of its Counterclaim Complaint as fully set forth herein.

86.     Viscofan is the owner of trade secrets relating to the design and manufacture of machines in the meat casing industry including but not limited to the Viscofan Trade Secrets.

87.     Sayer possesses trade secret information belonging to Viscofan including but not limited to the Viscofan Trade Secrets by virtue of Viscofan's relationship with Bildu – LAN and the NDAs.

88.     The Viscofan Trade Secrets are not generally known and Viscofan takes reasonable steps to maintain confidentiality with respect to its trade secret and proprietary material.

89.     Sayer has used and disclosed and on information and belief is continuing to use and disclose Viscofan's confidential information and trade secrets without authorization and in breach of its contractual obligations to Viscofan.

90.     The nature of Sayer's business as a competitor of Viscofan makes the risk of

Sayer disclosing and using Viscofan's trade secrets and other confidential and proprietary information high and likely inevitable and represents an immediate and irreparable harm to Viscofan.

91.     Viscofan has sustained damages and injury exceeding $75,000 as a direct and proximate result of Sayer's unfair competition including but not limited to Sayer's misappropriation of Viscofan's trade secrets.

92.     Furthermore, because Defendants' actions are wanton, willful, malicious, and have been undertaken in conscious disregard of Plaintiff's rights, Defendants also are liable for punitive damages.

**FIFTH COUNTERCLAIM**
**<u>Breach of NDA under New Jersey Law</u>**

93.     Viscofan adopts and incorporates by reference Paragraphs 1 through 92 of its Counterclaim Complaint as fully set forth herein.

94.     Beginning in 1992, Viscofan entered into a series of NDAs with Bildu-LAN for the purpose of Bildu-LAN carrying out work for and supplying goods to Viscofan.

95.     These NDAs include the January 21, 1992 agreement and the June 26, 1995 agreement.

96.     Bildu-LAN employees with access to the Viscofan Trade Secrets and other confidential and propriety information belonging to Viscofan were required to sign the NDAs.

97.     Bildu-LAN agreed not to disclose or duplicate the Viscofan Trade Secrets and to take all steps reasonably necessary to protect the secrecy of Viscofan's confidential information.

98.     Pursuant to the NDAs, Bildu-LAN agreed to not use Viscofan Trade Secrets for itself or third parties in any way without the express written agreement of Viscofan.

99.     Under the protection of the NDAs, Viscofan disclosed its trade secrets and other

confidential information to Bildu – LAN.

100.    Bildu-LAN employees bound by the NDAs left Bildu-LAN and started operating Sayer.

101.    Sayer breached the NDAs by using and/or disclosing the Viscofan's Trade Secrets and other confidential and proprietary information belonging to Viscofan to outside parties, including but not limited to in its production of equipment for Nitta, without Viscofan's consent, and solely for Sayer's own benefit.

102.    As a result of Sayer's breach, Plaintiff has suffered damages in an amount to be determined at trial.

## <u>JURY DEMAND</u>

Viscofan hereby demands a trial by jury on all issues.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Viscofan, having fully answered Sayer's Complaint, prays for judgment as follows:

A.    That Plaintiff takes nothing by this action and that its Complaint be dismissed in its entirety with prejudice;

B.    An award of damages adequate to compensate Viscofan for Sayer's breaches of warranties;

C.    An award of damages adequate to compensate Viscofan for Sayer's misappropriation of Viscofan's trade secrets and other proprietary information, together with prejudgment and post-judgment interest, attorneys' fees and costs;

D.    An award of damages adequate to compensate Viscofan for Sayer's unfair competition, together with prejudgment and post-judgment interest, attorneys' fees and costs;

E.      An award of damages adequate to compensate Viscofan for Sayer's breach of NDAs, together with prejudgment and post-judgment interest, attorneys' fees and costs;

F.      That this is an exceptional case and awarding to Plaintiff its costs, expenses and reasonable attorney fees pursuant to 35 U.S.C. § 285;

G.      That the Court award punitive damages to Viscofan owing to the willful, wanton, and malicious nature of Sayer's acts;

H.      Entering a permanent injunction against Sayer, its officers, employees, all parent and subsidiary corporations and affiliates, their assigns and successors in interest, and those persons in active concert or participation with any of them who receive notice of the injunction, enjoining them from continuing acts of misappropriation and use of the Viscofan Trade Secrets; and

I.      For such other and further relief as the Court may deem just and proper.


Respectfully submitted,

Attorneys for Defendant/Counter-Plaintiff

s/ Dariush Keyhani
Dariush Keyhani (N.J. Bar No. 044062002)
Keyhani LLC
1050 30th Street NW
Washington, DC 20007
(202) 748-8950
dkeyhani@keyhanillc.com


Dated: July 11, 2023