# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

SAYER TECHNOLOGIES, S.L.,  :
                                  :      Civil Action No. 23-2257 (MAS-TJB)
         Plaintiff,  :      Hon. Tonianne J. Bongiovanni, U.S.M.J.
                                  :
   - v -                           :      Motion Date: To be Determined by Court
                                  :      Oral Argument Requested
VISCOFAN COLLAGEN USA INC.,  :
f/k/a NITTA CASTINGS INC.,  :
                                  :
         Defendant.  :
                                  :

---

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT DISMISSING
## DEFENDANT'S AMENDED COUNTERCLAIMS WITH PREJUDICE

---

THE WEIR LAW FIRM, LLC
1170 U.S. Highway 22
Suite 205
Bridgewater, New Jersey 08807
Attorneys for Plaintiff,
Sayer Technologies, S.L.

Of Counsel and On the Brief:
     Bonnie M. Weir, Esq.

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................... ii

PRELIMINARY STATEMENT ......................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY........................1

LEGAL ARGUMENT ...................................................................................1

**POINT I-** PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT
DISMISSING THE AMENDED COUNTERCLAIMS WITH PREJUDICE ...................2

**POINT II-** DEFENDANT'S FIRST COUNTERCLAIM FOR ALLEGED
BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR
PURPOSE MUST BE DISMISSED WITH PREJUDICED ...............................................3

**POINT III -** DEFENDANT'S SECOND COUNTERCLAIM FOR
ALLEGED BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
MUST BE DISMISSED WITH PREJUDICE........................................................10

**POINT IV -** DEFENDANT'S THIRD COUNTERCLAIM FOR ALLEGED
VIOLATION OF THE DEFEND TRADE SECRETS ACT MUST BE
DISMISSED WITH PREJUDICE........................................................................11

**POINT V -** DEFENDANT'S FOURTH COUNTERCLAIM ALLEGING
MISAPPROPRIATE OF TRADE SECRETS UNDER NEW JERSEY
TRADE SECRET ACT MUST BE DISMISSED WITH PREJUDICE ..........................14

**POINT VI -** DEFENDANT'S FIFTH COUNTERCLAIM ALLEGING
UNFAIR COMPETITION UNDER NEW JERSEY LAW MUST BE
DISMISSED WITH PREJUDICE........................................................................15

**POINT VII -** DEFENDANT'S SIXTH COUNTERCLAIM (IMPROPERLY
IDENTIFIED AS A SECOND FIFTH COUNTERCLAIM) ALLEGING
BREACH OF NDA UNDER NEW JERSEY LAW MUST BE DISMISSED
WITH PREJUDICE .........................................................................................16

CONCLUSION................................................................................................17

UNREPORTED DECISIONS
Marimar Textiles, Inc. v. Jude Clothing & Accessories Corp., 2017 WL 4391748 (D.N.J. Oct. 2, 2017)

National Auto Division, LLC v. Collector's Alliance, Inc., 2017 WL 410241 (N.J. App. Div. Jan. 31, 2017)

## **TABLE OF AUTHORITIES**

**Cases:**                                                                                                                      **Page:**

Ackerman v. Levine, 788 F.2d 830 (2d Cir. 1986)..............................................................6

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).....................................................2

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ...............................................................2

Hilton v. Guyot, 159 U.S. 113 (1895)........................................................................... 5-6

In re: Cortuk, 633 B.R. 236 (Bankr. D.N.J. Aug. 30, 2021)............................................5, 6

Instrumentation Associates, Inc. v. Madsen Electronics (Canada) Ltd.,
859 F.2d 4 (3d Cir. 1988)...........................................................................................8

Marimar Textiles, Inc. v. Jude Clothing & Accessories Corp.,
2017 WL 4391748 (D.N.J. Oct. 2, 2017)............................................................ 13-14, 15

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986)..............2

M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972) ................................................8

National Auto Division, LLC v. Collector's Alliance, Inc.,
2017 WL 410241 (N.J. App. Div. Jan. 31, 2017) ................................................... 15-16

New Jersey Optometric Association v. Hillman-Kohan Eyeglasses, Inc.,
144 N.J.Super. 411 (Ch. Div. 1976), aff'd, 160 N.J.Super. 81 (App. Div. 1978) ........16

Pony Express Records, Inc. v. Springsteen, 163 F.Supp.2d 465 (D.N.J. 2001) .......... 6-7

Spring Motors Distributors, Inc. v. Ford Motor Company, 98 N.J. 555 (1985)...............3


**Rules:**

FRCP 56(c) .....................................................................................................................2

FRCP 56(e) .....................................................................................................................2


**Statutes:**

18 U.S.C. §1836(d) ............................................................................................. 11, 14-15

N.J.S.A. 2A:14-1................................................................................................................16

N.J.S.A. 2A:14-1(a) ..........................................................................................................17

N.J.S.A. 2A:49A-16.1........................................................................................................9

N.J.S.A. 2A:49-16.3(a) ...........................................................................................9

N.J.S.A. 2A:49-16.4 ...............................................................................................9

N.J.S.A. 2A:49A-16.7 .............................................................................................9

N.J.S.A. 12A:2-314 ...............................................................................................10

N.J.S.A. 12A:2-315 ...........................................................................................3, 10

N.J.S.A. 12A:2-725 ...........................................................................................3, 10

N.J.S.A. 12A:2-725(2) ............................................................................................3

N.J.S.A. §56:15-1.................................................................................................14

N.J.S.A. §56:15-8.............................................................................................14-15

## PRELIMINARY STATEMENT

On April 4, 2023, Plaintiff, Sayer Technologies, S.L., filed a Complaint seeking payment for outstanding invoices associated with equipment and services provided to Nitta Castings Inc. The Defendant, Viscofan Collagen USA Inc. filed an Answer with Counterclaims on May 30, 2023 and then amended the Counterclaims on July 11, 2023. In doing so, Viscofan is rasing issues that have already been determined in Spain in response to legal actions commenced by Viscofan. The Courts in Spain determined that any breakage of the belts provided to Nitta by Sayer did not result from any error by Sayer and Viscofan failed to produce any evidence of same. Additionally, the Courts in Spain determined that there was also no evidence of unfair competition and further that Viscofan's claims were barred by the statute of limitations.

Having lost all of their attempts to obtain a recovery from Sayer through use of the Courts in Spain, as required by each and every Agreement entered into between the parties, Viscofan now seeks to ignore the decisions rendered in Spain and have a second bite at the apple in response to Sayer's action for payment of outstanding invoices. As discussed infra, all of Viscofan's claims are subject to dismissal with prejudice as they are either barred by the applicable statute of limitations and/or the matter has already been determined. The doctrines of comity and collateral estoppel prohibit the claims in this action.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff, Sayer Technologies, S.L., incorporates herein by reference the accompanying Declaration of Sayer's Managing Director with exhibits as and for a Statement of Facts and Procedural History prior to the commencement of this action.

-1-

**LEGAL ARGUMENT**

**POINT I**

**PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT
DISMISSING THE AMENDED COUNTERCLAIMS WITH PREJUDICE**

FRCP 56(c)states, in relevant part, that summary "judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact that the moving party is entitled to a judgment as a matter of law." See also, Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); and Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). A genuine issue of material fact is "one where a reasonable jury, based on evidence presented, could hold in the movant's favor with regard to that issue." Anderson at 247-248. When evaluating the existence of genuine issues of material fact, "all evidence must be reviewed and all inferences drawn therefrom must be in the light most favorable to the nonmoving party." Matsushita at 587. Once the movant has met its' burden on a motion for summary judgment, the burden shifts to the nonmoving party to show the existence of a genuine dispute of a material fact. Anderson at 256; FRCP 56(e).

Once this analysis is performed in the instant motion, the Court should grant Plaintiff's motion for summary judgment. As set forth, infra, many of the causes of action by Viscofan are barred by the appropriate statute if limitations. Additionally, the causes of action have already been resolved by legal action commenced by Viscofan in Spain barring any further attempt to circumvent those determinations and relitigate resolved disputes.

## POINT II

### DEFENDANT'S FIRST COUNTERCLAIM FOR ALLEGED BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE MUST BE DISMISSED WITH PREJUDICE

Defendant's First Counterclaim alleges that the conveyor belts sold by Sayer to Nitta breached the implied warranty of fitness for a particular purpose. These are the same belts for which Sayer seeks payment. While N.J.S.A. 12A:2-315 implies a warranty that the goods shall be fit for a particular purpose when the seller knows of the particular purpose, this provision is governed by a four (4) year statute of limitations. N.J.S.A. 12A:2-725. See also, Spring Motors Distributors, Inc. v. Ford Motor Company, 98 N.J. 555, 561, 582 (1985). Pursuant to the statute, an alleged breach occurs upon tender of delivery. N.J.S.A. 12A:2-725(2). Defendant alleges that between April and November 2019, Nitta ordered a number of conveyor belts from Sayer to be used with the Line S Machine. The Answer and Counterclaim which initially alleged this claim was filed on May 30, 2023. As such the four (4) year statute of limitations precludes any claims with respect to the belts provided prior to May 30, 2019, namely Invoice #190032 dated April 25, 2019.

N.J.S.A. 12A:2-315, the implied warranty of fitness for a particular purpose provides as follows: "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose." In addition to the statute of limitations barring invoices prior to May 30, 2019, the issue with respect to fitness of the belts was decided by the Courts in Spain wherein Viscofan was the plaintiff. By Judgment No. 000427/2022 entered on

December 23, 2022, the Court in Spain considered the expert testimony offered with respect to the

belts provided by Sayer to Nitta. See, Exhibit "I". After considering both Viscofan's expert as well

as the Court appointed expert, the Judge determined  there was no "design failure, since it has not

been proven that they cannot withstand the temperature and humidity conditions in that zone.  On

the contrary, belt modifications and replacements were carried out by the defendant up to the change

of ownership.  Finally, the S-line production data do not prove a causal link to the green belts

breaking."  Exhibit "I" at pg. 58.  With respect to the Court appointed expert's report, the Court

noted "the technical specifications of the HABASIT belt model T2– S – molded in TPU 10 and

chosen by SAYER TECHNOLOGIES S.L. for the Neutralization, Drying and Wetting Zones – fulfill

the requirements of the working environment referred by VISCOFAN COLLAGEN USA INC.,

which are, on the other hand, approximate (~) and incomplete (?), as the Table demonstrates." Id.

at pg. 60.  The Court continued:

> Having established this, there is no objective proof that links the
> break of the green belts to the material chosen by Sayer.  There is no
> proof of the defendant's claim that the material does not withstand the
> high temperature and humidity of the plant working conditions.  The
> video and the three photographs of the supposed rusting are clearly
> insufficient proof to establish this claim.

Id. at pg. 61.  In conclusion on this issue, the Court stated "[b]oth the invoices and the break history

prove the existence of a damage but not the defendant's responsibility for the damage or, in short,

that the cause for the defect or the break of the green belts is their manufacturing from an inadequate

material (HABASIT Model T20-S).  **The defect has not been proven**." Id. at pg. 61-62.

When dealing with a foreign judgment, the doctrine of comity must be considered.  The

Court in In re: Cortuk, 633 B.R. 236, 266-267 (Bankr. D.N.J. Aug. 30, 2021), aptly summarized the

doctrine as follows:

> Courts consider the following factors to determine whether to afford
> comity to a foreign country judgment: (1) whether the judgment was
> entered by a competent court, having both personal and subject-
> matter jurisdiction; (2) whether the judgment was brought upon due
> allegations and proofs, giving the parties the opportunity to defend
> against the claims; (3) whether the judgment was entered in a clear
> and formal record; and (4) whether there is any special ground to
> impeach the judgment.  Pony Express Records, Inc. v. Springsteen,
> 163 F.Supp.2d 465, 472 (D.N.J. 2001), citing Hilton v. Guyot, 159
> U.S. 113, . . . (1895).  The "polestar" consideration is "whether a
> reasonable method of notification is employed and reasonable
> opportunity to be heard is afforded to the person affected."
> Somportex Ltd. v. Philadelphia Chewing Gum Corp., 453 F.2d 435,
> 443 (3d Cir. 1971); see Hurst v. Socialist People's Libyan Arab
> Jamahiriya, 474 F.Supp.2d 19, 34 (D.D.C. 2008) (federal courts may
> grant comity to foreign judgments entered following full and fair trial
> in foreign court of competent jurisdiction after proper service or
> voluntary appearance by defendant under judicial system that does not
> violate U.S. public policy), citation omitted.  In effect, basic notions
> of due process must be respected.  Mullane v. Cent. Hanover Bank &
> Tr. Co., 339 U.S. 306, 314, . . . (1950) (basic requirement of due
> process is proper notice that affords interested parties the opportunity
> to appear and defend).
>
> Despite these consideration, "comity must yield to domestic policy"
> so that "no nation will suffer the laws of another to interfere with her
> own to the injury of her citizens."  Republic of Phillipines v.
> Westinghouse Elec. Corp., 43 F.3d 65,75 (3d Cir. 1994), quoting
> Hilton v. Guyot, 159 U.S. 113, 164, . . . (1895).  Therefore, "the
> obligation of comity expires when the strong public policies of the
> forum are vitiated by the foreign act."  Id., quoting Laker Airways
> Ltd. v. Sabena, Belgian World Airlines, 731 F.2d 909, 937 (D.C. Cir.
> 1984).
>
> In Hilton v. Guyot, the United States Supreme Court defined comity
> as:

> . . . neither a matter of absolute obligation, on the one
> hand, nor mere courtesy and good will, upon th other.
> But it is the recognition which one nation allows
> within its territory to the legislative, executive or
> judicial acts of another nation, having due regard both
> to international duty and convenience, and to the
> rights of its own citizens, or of other persons who are
> under the protection of its laws.

159 U.S. 113, 141, . . . (1895).  (Citations omitted).

The Court in In re: Cortuk, supra at 267 went on to note that it is the proponent of comity who bears

the initial burden to prove that the judgment is entitled to comity and thereafter "the burden shifts

to the party opposing comity to show that the order 'violates American policy notions of what is

decent and just.'" Finally, the Court noted "[t]his burden is 'high and unfrequently met' and is

applicable only in 'clear-cut cases.'", citing to Ackerman v. Levine, 788 F.2d 830, 841 (2d Cir.

1986).

Once the doctrine of comity is found to be applicable, the doctrine of collateral estoppel

prevents re-litigation of the action.  In Pony Express Records, Inc. v. Springsteen, 163 F.Supp.2d

465, 473 (D.N.J. 2001), explained:

> Under the doctrine of collateral estoppel, "once an issue is actually
> and necessarily determined by a court of competent jurisdiction, that
> determination is conclusive in subsequent suits based on a different
> cause of action involving a party to the prior litigation." *See Montana
> v. United State, 440 U.S. 147, 153, . . . (1979)*. So long as a party has
> been given a "full and fair opportunity to litigate" a matter, he or she
> is precluded from further litigation of the same matter.  *Id*. This
> doctrine is invoked by the courts to promote conclusive resolution of
> disputes, thereby protecting parties from the expense of multiple
> lawsuits, conserving judicial resources, and increasing the reliability
> and consistency of judicial decisions.  *Id*. at 973-974. . . .

> Of course, in order to apply the doctrine of collateral estoppel, the court must determine that the issue in the pending litigation is identical to the issue in the previous litigation.

In <u>Pony Express, supra</u>, the Court upheld the decision of the United Kingdom under the doctrines of comity and collateral estoppel.

In 2015, Sayer entered into a Technology and Trade Cooperation Agreement with Nitta which included a provision for Sayer to be "free to exploit the results, patentable or not, which arose in certain projects referred to in this contract and owns full proprietary rights on those projects, particularly the Collagen Casing Lines." See, Exhibit "B". The parties further agreed that for any dispute regarding the contract "the courts shall have exclusive jurisdiction Pamplana, both parties expressly waive any other privileges that might correspond." <u>Id</u>. Thereafter, on August 28, 2015, Sayer and Nitta entered into a Contract Agreement for the sale to Nitta of the Sayer Collagen Line Machine. See, Exhibit "C". Once again, the Contact provided that any dispute was to be resolved in the courts in Pamplona, Spain, which had exclusive jurisdiction. <u>Id</u>. Between April 2019 and November 2019, Nitta ordered belts for use with the Sayer Collagen Line Machine which were delivered. See, Exhibit "D". In December 2019, Nitta advised Sayer that it had been acquired by Viscofan. As noted <u>supra</u>, Viscofan voluntarily presented the issue of the belts breaking to the Court in Spain as Viscofan was the Plaintiff.

Having voluntarily submitted the matter to the Court in Spain, Viscofan recognized that Spain had exclusive jurisdiction to resolve the dispute in accordance with Spanish law. Proofs were submitted by both parties as well as the submission of a Court appointed expert. The judgment issued by Spain was entered in a clear and formal record. Finally, there are no special grounds to impeach the judgment. As such, the requirements under the doctrine of comity have been satisfied.

Similarly, the doctrine of collateral estoppel has been met whereby a court of competent jurisdiction rendered a judgment on the issue presented, namely the breakage of the belts was not due to anything which was done by Sayer.

When considering the enforcement of a forum selection clause, a federal court must first determine whether a federal statute or rule is involved, and if not then the court "must next determine whether to apply federal judge-made law or state law. . . . In doing so, the district court must evaluate whether application of federal judge-made law would discourage forum shopping and avoid inequitable administration of the law." Instrumentation Associates, Inc. v. Madsen Electronics (Canada) Ltd., 859 F.2d 4, 6-7 (3d Cir. 1988). Courts generally honor the choice of law and forum provisions in a contract in the absence of a compelling reason. Id. at 7. The Court in M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12 (1972), stated that when a choice of forum is "made in an arm's length negotiation by experienced and sophisticated businessmen, and absent some compelling and countervailing reason it should be honored by the parties and enforced by the courts."

In this case, sophisticated businessmen negotiated agreements which included provisions for the law of Spain to apply and for Spain to have exclusive jurisdiction. As a result, Viscofan commenced legal action against Sayer in Spain wherein Viscofan alleged that the cause of the belt breaks was due to Sayer's failure to manufacture them properly for use in the S-Line machine. Expert reports from Viscofan, Sayer and a Court-appointed expert were considered by the Court and a determination was made that there was no proof provided by Viscofan that the breakage of the belts was due to anything done by Sayer. As such the claims were dismissed.

Now in a clear attempt at forum shopping, and solely in response to Sayer's lawsuit for payment for the belts, Viscofan filed Counterclaims including one for an alleged breach of the

implied warranty of fitness for a particular purpose.  While the allegation which Viscofan made in Spain was not based on the New Jersey statute, the issue of whether Sayer caused the belts to break was determined by the Court in Spain.  Viscofan cannot be entitled to another bite at the apple as the doctrines of comity and collateral estoppel should serve to enforce the decision in Spain resulting in a dismissal of the First Counterclaim with prejudice.

Additionally, New Jersey statutes provide for recognition of foreign country money judgments. N.J.S.A. 2A:49A-16.1 et. seq. The statute applies to a foreign country's judgment which grants or denies a sum of money and when the judgment is final, conclusive and enforceable. N.J.S.A. 2A:49-16.3(a).  New Jersey is required to recognize a foreign country's judgment when determined by an impartial tribunal, there was personal and subject matter jurisdiction, the defendant had notice, there was no fraud, the judgment is not repugnant to the public policy of the State or United States, the judgment was not contrary to an agreement between the parties, and due process was met.  N.J.S.A. 2A:49-16.4.  Once a court finds that the foreign country's judgment is entitled to recognition, same shall be conclusive and enforceable.  N.J.S.A. 2A:49A-16.7.

Viscofan commenced the action in Spain and judgment was entered against its' interests. All of the requirements of comity, collateral estoppel and the Foreign Country Money Judgment Recognition Act have been satisfied.  As such, Viscofan's Counterclaim must be dismissed with prejudice.

## POINT III

## DEFENDANT'S SECOND COUNTERCLAIM FOR
## ALLEGED BREACH OF IMPLIED WARRANTY
## OF MERCHANTABILITY MUST BE DISMISSED WITH PREJUDICE

Viscofan's Second Counterclaim alleges that the conveyor belts sold by Sayer to Nitta breached the implied warranty of merchantability. Once again, these are the same belts for which Sayer seeks payment. Similar to the implied warranty of fitness for a particular purpose, the implied warranty of merchantability set forth at N.J.S.A. 12A:2-314 is governed by a four (4) year statute of limitations. N.J.S.A. 12A:2-725. As such any claims with respect to the April 25, 2019 Invoice are barred by the statute of limitations.

The implied warranty of fitness for a particular purpose provides "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose." N.J.S.A. 12A:2-315. The factual and legal arguments advanced in Point II, supra, apply here as well. The statute of limitations precludes any claim prior to May 30, 2019. Additionally, the issue has already been resolved by the Courts in Spain as the designated court of exclusive jurisdiction. Under the doctrines of comity and collateral estoppel, as well as New Jersey's Foreign Country Money Judgment Recognition Act, Viscofan's Counterclaim must be dismissed with prejudice.

## POINT IV

## DEFENDANT'S THIRD COUNTERCLAIM FOR
## ALLEGED VIOLATION OF THE DEFEND TRADE SECRETS ACT
## MUST BE DISMISSED WITH PREJUDICE

Viscofan's Third Counterclaim alleges that Sayer violated the Defend Trade Secrets Act of

2016 by using Viscofan's trade secrets for their own benefit.[1]  Pursuant to the statute, there is a three

(3) year statute of limitations.  Indeed, 18 U.S.C. §1836(d) states:

> A civil action under subsection (b) may not be commenced later than
> 3 years after the date on which the misappropriate with respect to
> which the action would relate is discovered or by the exercise of
> reasonable diligence should have been discovered.  For purposes of
> this subsection, a continuing misappropriate constitutes a single claim
> of misappropriation.

Conspicuously missing from Viscofan's allegations in the Counterclaim is any mention of when they

became aware of the alleged misappropriation of trade secrets.  To that end, the litigation which

occurred in Spain is illuminating.

Initially it bears noting that Viscofan, the Defendant in this action, filed an action in Spain

as the Plaintiff.  In Judgment No. 000040/2019 filed on March 7, 2019, Exhibit "F", wherein

Viscofan alleged unfair competition involving disclosure of trade secrets and related claims.  In

reviewing the facts to support a finding that the claim was time barred, the Court in Spain found the

following:

> In the case of this procedure, the only conclusion that may be reached
> is that the action being exercised is statute barred since more than one
> year has elapsed since the action could be exercised without it being
> observed that continuing unfair conduct exists.  To this end, it is
> necessary to accurately determine what conduct the defendant is being

---

[1] Sayer specifically refutes any suggestion that it improperly used Viscofan's trade secrets.

-11-

attributed with, which is simply the use of knowledge acquired during its commercial relationship with VISCOFAN, S.A. relating to said company's plans, machinery, and production process to market machines copied from the plaintiff. In this respect, the fact that an order for pulleys was placed in February 2016 with the company DINAMICA (exhibit no. 24 of the claim) and in November 2015 an order for belts was placed with the company AMMERAAL BELTECH, S.A. (Exhibit no. 28 of the claim) is of no relevance in order for it to be deemed that we are faced with a continuing act given that these are instrumental acts to enable SAYER TECHNOLOGIES, S.L. to manufacture a machine (a knotting machine) which it is stated the defendants copied and sought to sell. Nevertheless, the fact that SAYER TECHNOLOGIES, S.L. sought to sell one or several machines of similar specifications to that developed by VISCOFAN, S.A. is a fact that has been known by the plaintiff since February 23, 2015, as said party states and attests. Indeed, enclosed as exhibit no. 17 to the claim is the email sent by the international sales representative Mr. Horwath in which he reports to Mr. Kamis (of VISCOFAN, S.A.) that both himself and his colleague Mr. Kollross have been contacted by SAYER TECHNOLOGIES, S.L. to place on the market a machine which, in his opinion, bears highly similar features to the knotting machine developed by VISCOFAN, S.A. From this point, the plaintiff is already accepting this circumstance and is fully aware of the alleged activity carried out by SAYER TECHNOLOGIES, S.L., as certified by exhibit no. 18 of the claim, which is a notary record by means of which VISCOFAN, S.A. serves notice on SAYER TECHNOLOGIES, S.L. – through its representative Mr. Legaz – with a letter calling on the company to refrain from marketing the knotting machines and to hand over all documentation and information relating to the designs, the technology, and the know-how pertaining to the plaintiff. Following that, there is only reference to a shipment of containers by SAYER TECHNOLOGIES, S.L. to Nitta group, but under no circumstances has it been certified that what those containers held was technology built by SAYER TECHNOLOGIES, S.L. copied from technology pertaining to VISCOFAN, S.A.

See Exhibit "F" at pages 8-9. Viscofan appealed that decision. By Judgment No. 000561/2021 decided on May 13, 2021, the Court in Spain reiterated the issue being an allegation of unfair competition involving trade secrets and related relief. See, Exhibit "G" at page 3 (under Legal

-12-

Grounds, One-Context).  The Court continued at page 6 that Viscofan was aware of the alleged

issues in February 2016.  Id.  At page 8, the Court stated:

> In other words, there is implied factual reasoning, with a generalized,
> robust response: continuing or ceaseless acts of unfair competition,
> which could render irrelevant the silence on the part of Viscofan
> extending over more than a year since February 2015, have not been
> proven, inasmuch as none of the acts of unfair competition in the
> action have been proven.  Accordingly, it shows a point of violation
> of the right to original and appellate jurisdiction, which the Court
> should to a restricted degree rectify as it must be insisted that we
> adhere to what the appeal proposes concerning the facts and the
> specific evidence thereof.

The Court continued at page 9:

> Also, the judicial version of events has not proven that Sayer had
> manufactured and/or marketed knotting machines using Viscofan's
> secret technology, not even in relation to the one identified in August
> 2014, which must have been sold to Poland, and which constituted
> grounds for the requisition dated February 23, 2015.  This requisition
> proves that the events reported by Viscofan were already known by
> the time the demand was made for confidential data to be handed
> over, but it does not prove that the famed replicated knotting machine
> existed, nor does it attest to the precise specifications of it.

Viscofan appealed the May 13, 2021 Judgment with a decision issued on June 23, 2023.  See,

Exhibit "H".  In dismissing Viscofan's appeal, the Court stated at page 6:

> Accordingly, following an overall examination of the evidence
> reviewed, the judgment under appeal established that, beyond the
> pleadings of the appealing party, none of the instances of the conduct
> stated had been certified and the lack of evidence thereof was even
> underlined.  It went further and pointed out that if an unlawful act had
> taken place, it would have been committed in August 2014, meaning
> that by February 23, 2016 – one month before the action was
> exercised – the action would have been statute barred.

As noted by the Court in Marimar Textiles, Inc. v. Jude Clothing & Accessories Corp., 2017

WL 4391748 (D.N.J. Oct. 2, 2017), the Defend Trade Secrets Act is forward looking.  In that case,

the Court noted that the plaintiff asserted claims that were ongoing with some of them taking place after the enactment of the statute. "Courts have held the allegations of pre-enactment acquisition of a trade secret coupled with post-enactment continued use are sufficient to sustain a claim under the Defend Trade Secrets Act at the motion to dismiss phase." Id. at pg. 6. Therefore the statute of limitations set forth in the Act are applicable to Viscofan's claims.

The statute under which Viscofan alleges its Third Counterclaim, namely the Defend Trade Secrets Act, has a 3 year statute of limitations commencing when the alleged misappropriation was known. By all actions presented to the Court in Spain, Viscofan was aware of the alleged misappropriation between 2014 and 2016. Such knowledge is significantly more than 3 years permitted by the statute. As such, this allegation is barred by the statute of limitations. Additionally, Viscofan's attempt to circumvent the jurisdiction of Spain to have a second bite at the apple cannot be permitted for the reasons set forth in Point II, supra. The doctrines of comity and collateral estoppel to enforce he Judgments entered in Spain as against Viscofan are conclusive of the issue.

### POINT V

**DEFENDANT'S FOURTH COUNTERCLAIM ALLEGING
MISAPPROPRIATE OF TRADE SECRETS UNDER
NEW JERSEY TRADE SECRET ACT MUST BE
DISMISSED WITH PREJUDICE**

Viscofan's Fourth Counterclaim alleges Sayer's alleged misappropriation of trade secrets violates the New Jersey Trade Secrets Act. Relying on the same facts as set forth in the Third Counterclaim which alleged a violation of the Defend Trade Secrets Act, Viscofan alleges that Sayer violated the New Jersey law, specifically, N.J.S.A. §56:15-1 *et.seq.* However, this claim is also barred by the statute of limitations. Indeed, N.J.S.A. §56:15-8 states:

-14-

> An action for misappropriation shall be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. For the purposes of this section, a continuing misappropriation constitutes a single claim.

See also, <u>Marimar Textiles, supra</u> at 5. The analysis set forth in Point IV, <u>supra</u>, confirms that Viscofan was aware of the alleged misappropriation between 2014 and 2016, significantly more than three (3) years. As such, any claim for relief pursuant to the New Jersey Trade Secret Act is time barred.

Additionally, as discussed in Point IV, the decisions rendered by the Courts in Spain determined there was no evidence to support the claim of violation of trade secrets. As such, in addition to this Counterclaim being barred by the statute of limitations, it is also barred by the doctrines of comity and collateral estoppel. As such, Viscofan cannot proceed wit the Counterclaim as same was determined in Spain.

## POINT VI

### DEFENDANT'S FIFTH COUNTERCLAIM ALLEGING UNFAIR COMPETITION UNDER NEW JERSEY LAW MUST BE DISMISSED WITH PREJUDICE

Viscofan's Fifth Counterclaim alleges that Sayer engaged in unfair competition under New Jersey Law. As noted by the Court in <u>National Auto Division, LLC v. Collector's Alliance, Inc.</u>, 2017 WL 410241 (N.J. App. Div. Jan. 31, 2017) at pg. 4:

> Unfair competition consists, in essence, of the misappropriation of a business's property by another business. . . . Unfair competition, however, has also been described in broader terms: "There is no distinct cause of action for unfair competition. It is a general rubric which subsumes various other causes of action." . . . The common law tort of unfair competition has historically been viewed as an umbrella for tortious interference claims . . . Outside of the

intellectual property context, unfair competition is not an independent cause of action. . . (citations omitted).

See also, New Jersey Optometric Association v. Hillman-Kohan Eyeglasses, Inc., 144 N.J.Super. 411, 428 (Ch. Div. 1976), aff'd, 160 N.J.Super. 81 (App. Div. 1978), wherein the Court stated that "[i]n essence, unfair competition is a business tort."

Pursuant to N.J.S.A. 2A:14-1, this type of tortious conduct is governed by a 6 year statute of limitations.  As set forth in Point IV, supra, Defendant was aware of the alleged misappropriation between 2014 and 2016, which would have required that an action be commenced no later than 2022.  Defendant's initial Answer was filed May 30, 2023, more than 6 years after being aware of the allegations.  As such, any claim for relief pursuant to unfair competition under New Jersey law is time barred.

Additionally, as noted in the discussion of the decisions rendered in Spain in Point IV, there was no evidence presented by Viscofan of unfair competition.   Since a court of competent jurisdiction rendered its decision in the matter commenced by Viscofan, the doctrines of comity and collateral estoppel prevent Viscofan from proceeding with a claim for unfair competition which was previously ruled against them.

### POINT VII

### DEFENDANT'S SIXTH COUNTERCLAIM (IMPROPERLY IDENTIFIED AS A SECOND FIFTH COUNTERCLAIM) ALLEGING BREACH OF NDA UNDER NEW JERSEY LAW MUST BE DISMISSED WITH PREJUDICE

Viscofan's Sixth Counterclaim (improperly designated as a second Fifth Counterclaim) alleges that Sayer breached the NDA under New Jersey law.  It is axiomatic that an NDA is a contract and therefore governed by contract law.  In New Jersey, an alleged breach of contract is

governed by a 6 year statute of limitations.  N.J.S.A. 2A:14-1(a).  Defendant alleges that the NDAs include a January 21, 1992 and June 26, 1995 agreements.  Additionally, as noted in Point IV, <u>supra</u>, Defendant was aware of the alleged breach between 2014 and 2016 which would have required the action to be commenced no later than 2022. However, Defendant's initial Answer was filed May 30, 2023, more than 6 years after being aware of the alleged breach of the NDA.  As such, any claim for relief pursuant to an alleged breach of the NDA is time barred.

## **CONCLUSION**

Based upon the foregoing, Plaintiff, Sayer Technologies, S.L., respectfully requests that its motion for summary judgment dismissing the Counterclaims alleged by Defendant, Viscofan Collagen USA, Inc., be granted in its entirety, together with such other and further relief as the Court deems just and proper.

Respectfully submitted,

THE WEIR LAW FIRM, LLC
Attorneys for Plaintiff

Dated: December 8, 2023

By: _____
Bonnie M. Weir

2017 WL 4391748
Only the Westlaw citation is currently available.
**NOT FOR PUBLICATION**
United States District Court, D. New Jersey.

**MARIMAR TEXTILES**, INC., Plaintiff,

v.

**JUDE CLOTHING** & **ACCESSORIES CORP**., et al., Defendant.

Civil Action No.: 17-2900 (JLL)
Signed 10/02/2017

### Attorneys and Law Firms

Gregory John Skiff, Cermele & Wood LLP, White Plains, NY, for Plaintiff.

Marc D. Haefner, Peter Joseph Pizzi, Katherine Marie Romano, Walsh Pizzi O'Reilly Falanga LLP, Newark, NJ, for Defendant.

#### OPINION

JOSE L. LINARES, Chief Judge

**\*1** This matter comes before the Court by way of Defendants **Jude Clothing** & **Accessories Corporation**, **Jude** Connally E-Commerce **Corp**., **Jude** Connally Sarasota Limited Liability Company, **Jude** Connally Westfield Limited Liability Company, and **Jude** Connally Zimmerman's ("Defendants") Motion to Partially Dismiss Plaintiff's First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 13). Plaintiff **Marimar Textiles**, Inc. has submitted Opposition (ECF No. 16), to which Defendants have replied. (ECF No. 17). The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants in part and denies in part Defendants Motion to Dismiss portions of Plaintiff's Complaint.

### I. BACKGROUND [1]

Plaintiff **Marimar**, a New Jersey **corporation** with its principal place of business located in Wall, NJ, brings this action seeking to recover damages from Defendants for, *inter alia*, copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.* (ECF No. 10 ("FAC") ¶ 1-2). Defendants are New Jersey **corporations** and limited liability companies with their principal places of business all being in Kenilworth, NJ. (FAC ¶ 3). Individual Defendant **Jude** Connally, is a New Jersey resident and a "principal, owner, or member[, and exercises complete control,] of each of" the **corporate** Defendants. (FAC ¶ 4, 6).

"Since 1997, [Plaintiff] has supplied the US and European apparel industry with original printed and novelty **textile** patters, printing over 2 million yards per year. To date, [Plaintiff] has developed a library of over 11,000 **textile** patterns." (FAC ¶ 13). Plaintiff owns the copyrights for the following patterns, and has registered same with the U.S. Copyright Office:









(FAC ¶ 14). [2] Plaintiff asserts that Defendants "purchased thousands of yards of the [Subject Patterns]" from March 2010 through September 2010. (FAC ¶ 15). According to Plaintiff Defendant used the purchased materials to manufacture dresses. (Id.). Plaintiff asserts that certain "highly confidential information" relating to the Subject Patterns was not shared with any of its customers, and "considered [this information for each pattern] ... to be [Plaintiff's] trade secrets." (FAC ¶ 16). While maintaining the secrecy of the aforementioned information was important to Plaintiff, some of its employees received access to same on a "need-to-know basis," while others, including non-party Ruth Bachmann, "had direct knowledge of all of" Plaintiff's trade secrets. (FAC ¶ 18).

*2 From the period of 1997 through 2012, Ms. Bachmann was employed by Plaintiff as a senior print stylist and also owned shares in Simply Swim, LLC, which is a privately held company partially owned by Plaintiff. (FAC ¶ 18-19). Ms. Bachmann resigned from Plaintiff on August 10, 2012, and took her MacBook laptop computer upon resignation. (FAC ¶ 19). Plaintiff did not know that Ms. Bachmann had Plaintiff's confidential or trade secret information on said laptop computer when she left Plaintiff's employ. (Id.).

Ms. Bachmann was then employed by Defendants. (FAC ¶ 20). Plaintiff claims that, in January 2014, it discovered that Ms. Bachmann had misappropriated Plaintiff's trade secrets "by taking: (i) a MacBook laptop, onto which she had downloaded from [Plaintiff's] server digital files containing [Plaintiff's] Trade Secrets and images of [Plaintiff's 11,000 patterns]; and (ii) other written materials containing [Plaintiff's]

Trade Secrets." (Id.). According to Plaintiff, Ms. Bachmann provided Defendants with Plaintiff's trade secrets, but Plaintiff did not have reason to believe this misappropriation occurred until January 2014. (Id.).

Thereafter, Plaintiff asserts Defendants began using the information obtained from Ms. Bachmann to directly contact Plaintiff's factories, place orders for fabrics bearing the Subject Patterns, and using said fabrics in many of Defendants' dresses. (FAC ¶ 21). Defendants purportedly "knew that they were not authorized by [Plaintiff] to place orders for the [Subject Patterns], whether in the same colorways and repeats as used by [Plaintiff] or in different colorways or in larger or smaller repeats," and that Defendants falsely represented to Plaintiff's, and its factories, that they were in fact authorized to use said patterns. (FAC ¶¶ 24-26).

Plaintiff discovered the alleged infringements in January of 2014. (FAC ¶ 27). Prior to this discovery, Plaintiff knew that Ms. Bachmann was working for Defendants, but did not have reason to believe that any misappropriation or confidential information or trade secrets had taken place. (Id.). Apparently, in a conversation between Plaintiff and Defendants, Individual Defendant "Connally admitted that [Plaintiff] owned the rights, including copyright rights, in and to [the Subject Patterns] ... and agreed not to infringe on same and to compensate [Plaintiff] for the use of the [Subject Patterns]." (FAC ¶ 28). It is alleged that Defendants failed to keep their promises. (FAC ¶ 29).

Accordingly, on two separate occasions, by way of counsel, Plaintiff served Defendants written notice of the alleged infringement and a demand that Defendants "immediately cease and desist from any further use, promotion, offer for sale, and sale of" the Subject Patters. (FAC ¶ 30). Defendants' counsel asserted that the dresses were made from fabrics shipped to them between 2010 and 2012, but Plaintiff asserts that this statement is false. (Id.). "The falsity of Defendants' statement, and their willful and knowing infringement, is further demonstrated by the fact that *after* [Plaintiff] provided written notice to [Defendants] of [Defendants'] Infringements and copy of [Plaintiff's other patterns], Defendants made one of the [Subject Patterns], 10105 Status Geo, the *centerpiece* of Defendants' Spring 2017 **clothing** line, using that pattern on a variety of dresses and other goods." (FAC ¶ 31) (emphasis in original). Accordingly, Plaintiff brought this action asserting the following claims: Count I— Copyright Infringement in violation of 17 U.S.C. §§ 106 and 601; Count II—Breach of Implied and/or *Quasi*-Contract; Count III—Unfair Competition; Count IV— Misappropriation of Confidential Information; Count V—Misappropriation of Trade Secrets in violation of N.J.S.A. 56:15-1, *et seq.*; Count VI—Tortious Interference with Contractual Relations; Count VII—Tortious Interference with Prospective Economic Relationships; Count VIII—Legal Fraud; Count IX—Equitable Fraud; and Count X— Misappropriation of Trade Secrets in Violation of Defend Trade Secrets Act, 18 U.S.C. § 1836.

## II. LEGAL STANDARD

**\*3** To withstand a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the court must take three steps: first, the court must take note of the elements a plaintiff must plead to state a claim; second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for

relief. *See Connelly v. Lane Constr. **Corp.**, 809 F.3d 780, 787 (3d Cir. 2016) (citations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

### III. ANALYSIS

Defendants move to partially dismiss Plaintiff's FAC. (ECF No. 13). Specifically, Defendants ask this Court to dismiss Count I as to the "Status GEO" patterns and the request for attorneys' fees as to all patterns, as well as Counts II, III, V, VIII, IX, and X. (*See generally* ECF No. 13-1 ("Def. Mov. Br.")). Each cause of action shall be analyzed separately below.

#### A. Count I—Copyright Infringement

Defendants' Motion regarding Plaintiff copyright infringement claim is two-fold. First, Defendants argue that Plaintiff does not own the copyright registration for "Status Geo" pattern, and is therefore barred from asserting a claim with respect to this pattern. (Def. Mov. Br. at 8-9). Next, Defendants assert that Plaintiff registered the remaining copyrights with the U.S. Copyright Office after the date of infringement and are therefore time barred from seeking attorneys' fees or statutory damages for any alleged infringement relating to these patterns.

In order to establish copyright infringement, a plaintiff must prove two elements: "(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *see also Brownstein v. Lindsay*, 742 F.3d 55, 77 n.16 (3d Cir. 2014) (quoting *Masquerade Novelty, Inc. v. Unique Indus, Inc.*, 912 F.2d 663, 667 (3d Cir. 1990)). A copyright registration certificate is *prima facie* evidence sufficient to meet the first prong of the analysis. *See* 17 U.S.C. § 410(c); *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 290 (3d Cir. 1991). As such, the analysis is usually focused on the second "copying" prong. As it is rarely possible to prove copying through direct evidence, copying may be proved inferentially by showing that defendant had access to the allegedly infringing copyrighted work and that the allegedly infringing work is substantially similar to the copyrighted work. *See Roth Greeting v. United Card Co.*, 429 F.2d 1106, 1110 (9th Cir. 1970).

***4** Preliminarily, the Court is satisfied that Plaintiff has pled a *prima facie* cause of action under the Copyright Act. This is because, as to all patterns, Plaintiff has pled it is the rightful owner and that said patterns have been registered with the U.S. Copyright Office. (FAC ¶¶ 14-15). Accordingly, there is a presumption of ownership. *See* 17 U.S.C. § 410(c); *Ford Motor Co.*, 930 F.2d at 290. Additionally, Plaintiff has properly pled that Defendants infringed on its copyrights by using the Subject Patterns, as well as Plaintiff's other patterns, without Plaintiff's authorization. (FAC ¶¶ 20-45). Accordingly, the Court is satisfied that Plaintiff has sufficiently pled a claim under the Copyright Act.

As to the "Status Geo" pattern, Defendants argue that the copyright registration is owned by Simply Swim, LLC and, therefore, Plaintiff has failed to assert proper ownership of the copyright and cannot bring a claim for infringement of same. (Def. Move. Br. at 9). However, Plaintiff avers that, while it is true that Simply Swim, LLC initially registered the "Status Geo" copyright on August 16, 2016, Simply Swim, LLC also transferred said rights in the "Status Geo" copyright to Plaintiff on October 16, 2016. (ECF No. 16 ("Pl. Opp. Br." at 6-7)). Accordingly, Plaintiff is correct that it held the rights to the "Status Geo" copyright well before this action was instituted and therefore may maintain this action. The Court finds that, at this stage in the litigation, Plaintiff has pled sufficient facts concerning the ownership and infringement of the "Status Geo" copyright and, therefore, will not dismiss this claim.

Finally, Plaintiff's are correct that Defendants' statutory damages and attorneys' fees arguments are premature. (Pl. Opp. Br. at 8). Indeed, whether statutory damages or

attorneys' fees are warranted in a copyright infringement case is a question best decided after the matter has progressed through discovery and not at the motion to dismiss phase. *See City of New York v. GeoData Plus, LLC*, 537 F. Supp. 2d 443, 457 (E.D.N.Y. 2007). Accordingly, the Court denies Defendants' Motion as it pertains to statutory damages and attorneys' fees, without prejudice, with the right to re-raise same at the summary judgment phase, consistent with *Greenfield v. Twin Vision Graphics, Inc.*, 268 F. Supp. 2d 358 (D.N.J. 2003).

### B. Count II—Breach of Implied Contract/*Quasi*-Contract

To recover on the theory of *quasi*-contract, a plaintiff must prove "that the defendant … received a benefit, and that retention of the benefit without payment therefor would be unjust." *Callano v. Oakwood Park Homes Corp.*, 91 N.J. Super. 105, 108 (N.J. Super. App. Div. 1966). *Quantum meruit*, or breach of implied contract, is a form of *quasi*-contract. *Kopin v. Orange Products, Inc.*, 297 N.J. Super. 353, 367 (N.J. Super. App. Div. 1997). "Quasi-contracts are imposed by law to bring about justice, without reference to the parties' intent." *Kopin*, N.J. Super, at 366-67. Thus, *quantum meruit* enables a party to recover the reasonable value of services rendered in the absence of a contract governing wages or remuneration. *Id.* at 367. Regardless of what this Count is entitled (breach of implied contract or *quasi*-contract), the analysis remains the same, *i.e.* whether Defendants herein retained a benefit without payment that would render same as an unjust result for Plaintiff.

Plaintiff's allegations in support of this Count essentially boil down to the fact that Defendants "cut out the middleman" and ordered their dresses directly from Plaintiff's overseas factories. Indeed, Plaintiff alleges that Defendant "commissioned [Plaintiff's] factories to manufacture those fabrics and then sold those fabrics to [Defendants] at a price comprising the manufacturing cost plus [Plaintiff's] profit on the sale." (FAC ¶ 48). Plaintiff was not aware that Defendants were contacting its factories overseas. (FAC ¶ 49). According to Plaintiff, "Defendants have been unjustly enriched by their receipt of fabrics bearing the [Subject] Patterns, which they retained without paying" Plaintiff. (FAC ¶ 50).

**\*5** These facts alone are insufficient to support a claim of breach of implied contract or *quasi*-contract. Plaintiff points to no benefit it conferred upon Defendants other than the simple fact that Defendants were put in contact with Plaintiff's factories. Serving as an intermediary, and subsequently being cut out of the proverbial loop, does not in and of itself constitute a benefit Plaintiff conferred upon Defendants. As a matter of fact, Plaintiff itself admits that putting Defendants in contact with Plaintiff's factories was a necessary aspect of the parties' business relationship. (FAC ¶ 16). In sum, simply learning the identity of Plaintiff's factories, alone, cannot be said to be a benefit conferred upon Defendants for which Plaintiff expected compensation. Accordingly, the Court dismisses Count II.

### C. Count III—Unfair Competition

This Court address Plaintiff's claim for unfair competition under federal law, New Jersey state law, and the common law simultaneously. The standards for liability under these types of causes of action are nearly identical, and a finding of liability under federal law leads to a finding of liability as to the others. *See CSC Holdings, LLC v. Optimum Networks, Inc.*, 731 F. Supp. 2d 400, 410-11 (D.N.J. 2010); *see also* 15 U.S.C. § 1125(a); N.J.S.A. 56:4-1.

A claim for unfair competition is established by showing that: (1) the mark at issue is valid and legally protectable; (2) the mark at issue is indeed owned by the party seeking to use it; and (3) the use of the mark by another party to identify goods or services is likely to create confusion concerning the origin of the goods or services. *See CSC Holdings, LLC*, 731 F. Supp. 2d at 405-06; *see also* 15 U.S.C. § 1125(a). This Court has already found that the Subject Patterns are in fact owned by, and registered to, Plaintiff. Accordingly, the first two elements of the above test is satisfied. Plaintiff further alleges that Defendants' use of the Subject Patterns is likely to confuse consumers regarding the source of the goods because the patterns utilized by Defendants are either identical

to Plaintiff's Subject Patterns, or exactly the same patterns with a different color scheme. (FAC ¶¶ 30-33, 56-59). Hence, the Court finds that Plaintiff has pled a *prima facie* claim for unfair competition.

### D. Count V—Misappropriation of Trade Secrets Under New Jersey Law

Defendants assert that Plaintiff's claims under New Jersey's Trade Secrets Act is time barred pursuant to the statute of limitations set forth by the Act. (Def. Mov. Br. at 14-15) (citing N.J.S.A. 50:15-8). That provision states that a claim under the New Jersey's Trade Secrets Act must "be brought within three years after the misappropriation is discovery or by the exercise of reasonable diligence should have been discovery." N.J.S.A. 50:15-8. Plaintiff, in response, points to the tolling agreement, where the parties agreed to toll the statute of limitations pending a potential amicable resolution prior to the institution of this action. (Pl. Opp. Br. at 19 (citing ECF No. 16-5)). Defendants do not reply to this argument (*see generally* ECF No. 17), and, accordingly, the Court treats their argument in favor of dismissal as abandoned, without prejudice, and with the right to re-raise same at the summary judgment phase, if necessary.

### E. Counts VIII/IX—Legal Fraud/Equitable Fraud

Defendants move to dismiss both Counts VIII and IX, which are for legal fraud and equitable fraud, respectively, asserting that the allegations supporting these Counts do not meet the heightened pleading standard for fraud-based claims. (Def. Mov. Br. at 15-19). Claims sounding in fraud must be pled under the heightened standards of Federal Rule of Civil Procedure 9(b). *See Byrnes v. DeBolt Transfer, Inc.*, 741 F.2d 620, 626 (3d Cir. 1984). The Third Circuit has set forth the following requirements for pleading fraud:

> ***6** In order to satisfy Rule 9(b), plaintiff's must plead with particularity "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). Plaintiffs may satisfy this requirement by pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Id.*

*Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004). With this in mind, the Court turns to New Jersey law. In order to plead a fraud-based claim in New Jersey, a plaintiff must allege: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) a reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (N.J. Sup. Ct. 1997).

The Court concludes that Plaintiff has not pled *prima facie* claims for legal or equitable fraud. This is because nowhere within the First Amended Complaint does Plaintiff assert the specific misrepresentations it relied upon. Moreover, Plaintiff does not state which of the Defendants was the utterer of the misrepresentations, or when or where such misrepresentations were made. Plaintiff also fails to explain how it relied on the alleged misrepresentations to its detriment. Rather, the First Amended Complaint contains generalized statements of purported misrepresentations and reliance thereon. Even when Plaintiff attempts to particularize the alleged misrepresentations, the recipient of said alleged misrepresentations was not Plaintiff, but rather Plaintiff's factories. (*e.g.* FAC ¶ 91) ("Defendants made material misrepresentations to [Plaintiff's] *factories*, namely that Defendants were authorized by [Plaintiff] to place the order for the [Subject Patterns].") (emphasis added). These allegations, alone, are insufficient to meet the heightened pleading standard of Rule 9(b). Accordingly, the Court dismisses Counts VIII and IX for lack of particularity, without prejudice.

### F. Count X—Misappropriation of Trade Secrets in Violation of Defend Trade Secrets Act

Defendants advance three arguments in support of dismissal of Count X. First, Defendants argue that Plaintiff's claim under the Defend Trade Secrets Act accrued prior to enactment and the statute is not retroactive, thereby prohibiting such a claim. (Def. Mov. Br. at 19-21). Defendants further argue that claim is barred by the Defendant Trade Secrets Act's statute of limitations of three years. (Def. Mov. Br. at 21-22). Finally, Defendants claim Plaintiff has failed to assert a nexus between Plaintiff's trade secrets and interstate or foreign commerce. The Court disagrees with all three arguments.

Indeed, this Court recognizes that the Defend Trade Secrets Act is not retroactive and is forward looking. *See* Pub. L. No. 114-153, § 2(e), 130 Stat. 376 (2016) (codified as amended at 18 U.S.C. § 1831 *et seq.*). However, Plaintiff asserts that the violations relating to this claim are ongoing and, at least a portion of the violations, took place after the enactment of the Act. (FAC ¶¶ 21-32). Courts have held that allegations of pre-enactment acquisition of a trade secret coupled with post-enactment continued use are sufficient to sustain a claim under the Defend Trade Secrets Act at the motion to dismiss phase. *See Brand Energy & Infrastructure Servs. v. Irex Contracting Grp.*, 2017 U.S. Dist. LEXIS 43497, at *11, 2017 WL 1105648 (E.D. Pa. Mar. 23, 2017); *High 5 Games, LLC v. Marks*, 2017 U.S. Dist. LEXIS 9302, at *15, 2017 WL 349375 (D.N.J. Jan. 24, 2017). Accordingly, the Court finds Defendants' non-retroactivity argument unpersuasive and will not dismiss Count X. Similarly, Plaintiff's claim is not time barred by the three-year statute of limitations, because Plaintiff has alleged violations as recent as Spring of 2017. (FAC ¶ 2017). If Plaintiff can show that such violations did in fact take place in Spring of 2017, then this action is timely. Moreover, as discussed above, III.D *supra*, Plaintiff has alleged that the parties have entered into a statute of limitations tolling agreement, which further negates Defendants' statute of limitations argument. Hence, at this juncture, the Court will not dismiss Count X as untimely.

*7 Finally, the Court is satisfied that Plaintiff has made sufficient allegations to assert a nexus between the violation and interstate commerce. Plaintiff clearly alleges that Defendants improperly used Plaintiff's trade secrets to create infringing goods, which were meant to be sold, at the very least, throughout the United States. (FAC ¶¶ 30-33, 47-48, 79, 87). These allegations are sufficient to survive a motion to dismiss. Defendants are free to re-raise this argument after the completion of discovery at the summary judgment phase of the case, but the Court will not dismiss Count X at this juncture of the litigation.

**CONCLUSION**

For the aforementioned reasons, Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint is hereby granted in part and denied in part. An appropriate Order accompanies this Opinion.

## All Citations

Not Reported in Fed. Supp., 2017 WL 4391748

| Footnotes | |
|---|---|
| 1 | This background is derived from Plaintiff's First Amended Complaint, which the Court must accept as true at this stage of the proceedings. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009). |
| 2 | The images contained in Paragraph 14 of FAC shall collectively be referred to as the "Subject Patterns." |

**End of Document**                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 410241

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of New Jersey, Appellate Division.

NATIONAL AUTO DIVISION, LLC, Plaintiff–Appellant/Cross–
Respondent,

v.

COLLECTOR'S ALLIANCE, INC., Defendant–Respondent/Cross–
Appellant.

DOCKET NO. A–3178–14T3

Argued November 15, 2016

Decided January 31, 2017

On appeal from the Superior Court of New Jersey, Chancery Division, Monmouth County, Docket No. C–59–14.

## Attorneys and Law Firms

Galit Kierkut argued the cause for appellant/cross-respondent (Sills Cummis & Gross, P.C., attorneys; Ms. Kierkut, of counsel and on the brief; Grace A. Byrd, on the brief).

Eric G. Fikry argued the cause for respondent/cross-appellant (Blank Rome, L.L.P., attorneys; Stephen D. Schrier and Mr. Fikry, of counsel; Mr. Fikry and Michael A. Iannucci, on the brief).

Before Judges Yannotti, Fasciale, and Gilson.

## Opinion

PER CURIAM

**\*1** Plaintiff National Auto Division, LLC (NAD) appeals from an October 3, 2014 order dismissing with prejudice its amended complaint against defendant Collector's Alliance, Inc. (CAI) for failure to state claims on which relief can be granted under *Rule* 4:6–2(e). CAI cross-appeals from a February 3, 2015 order denying its motion for sanctions against NAD.

In its amended complaint, NAD alleged that CAI, a competitor, had improperly raided employees from NAD. Thus, NAD asserted claims for (1) tortious interference with prospective economic advantage; (2) tortious interference with contractual relations; (3) unfair competition; and (4) civil conspiracy. Applying the standard for dismissal under *Rule* 4:6–2(e), we reverse the dismissal of NAD's first three claims, but affirm the dismissal of the civil conspiracy claim. We also reverse the order denying CAI's motion for sanctions. Thus, the matter is remanded for further proceedings.

I.

We accept the facts as pled by NAD. *See Nostrame v. Santiago,* 213 *N.J.* 109, 127 (2013) (reiterating the well-established standard that on a motion to dismiss the facts alleged in the complaint must be accepted and accorded a liberal reading to ascertain if a cause of action is " 'suggested by the facts' " (quoting *Printing Mart–Morristown v. Sharp Elecs. Corp.,* 116 *N.J.* 739, 746 (1989))).

NAD sells extended automobile warranties via telemarketers. CAI sells collectible coins through several methods, including telemarketing. NAD claims that it competes with CAI because they both use telemarketers to sell products and services to customers. NAD further alleges that the methods of telemarketing are transferable.

NAD has approximately 100 employees and ten to fifteen of those employees are highly trained sales "closers." According to NAD, it meticulously trains its closers to fine tune

"proprietary closing techniques" through the use of "proprietary scripts and confidential marketing and development data."

NAD asserts that CAI intentionally set about to raid a large number of employees from NAD and improperly lured those employees away. In that regard, NAD asserts that CAI developed an intentional "plan to harm NAD" and it paid a financial award to employees who successfully recruited NAD closers. Specifically, NAD contends that CAI targeted and raided over thirteen employees from NAD during a two-year period. NAD goes on to assert that CAI used "confidential information" to identify and contact its employees. Moreover, NAD contends that by hiring a large number of its closers, CAI obtained NAD's confidential methodologies for closing sales.

Further, NAD contends that at least six of its former employees who were hired by CAI had restrictive covenants and non-disclosure agreements. Thus, NAD alleges that CAI tortiously interfered with those contractual relationships by hiring those employees. The agreements were between the employees and Metro Marketing, LLC (Metro). NAD, however, claims that it is an affiliate of Metro and, therefore, covered under and protected by the restrictive covenant and non-disclosure agreements.

**\*2** In addition, NAD alleges that at least one CAI employee denigrated NAD in a Facebook posting. That posting stated:

> To [a]ll my [M]etro friends...good morning... As you are waking up dreading the shit hole they call [M]etro in which [you] must endure today...there is another way. The [d]ay I [l]eft Metro Marketing is the day I stopped feeling like a [l]oser.... Contact me for further instructions[.]

NAD contends that this employee, and potentially others, posted additional public social media messages on behalf of CAI to disparage NAD and improperly solicit NAD employees.

Finally, NAD contends that CAI engaged in a conspiracy with its employees, who were formerly employed by NAD, to intentionally raid more employees away from NAD and to intentionally damage NAD's business.

In April 2014, NAD filed a complaint against CAI seeking relief based on CAI's alleged poaching, and asserting claims for tortious interference with contractual relations and unfair competition. CAI responded by writing to NAD and contending that the complaint's allegations were frivolous and violated *N.J.S.A.* 2A:15–59.1 and *Rule* 1:4–8. CAI also moved to dismiss the complaint.

NAD filed opposition to the motion to dismiss and filed an amended complaint. In its amended complaint, NAD asserted four causes of action: (1) tortious interference with prospective economic advantage; (2) tortious interference with contractual relations; (3) unfair competition; and (4) civil conspiracy. CAI then moved to dismiss the amended complaint and put NAD on notice that it would contend that the amended complaint was also frivolous.

The trial court heard oral arguments on the motion to dismiss and, on October 3, 2014, it entered an order granting CAI's motion and dismissed with prejudice all of NAD's claims. Thereafter, CAI filed a motion for sanctions, the motion was fully briefed, and the trial court heard oral arguments on January 23, 2015. On February 3, 2015, the trial court entered an order denying CAI's motion requesting sanctions.

NAD now appeals the order dismissing with prejudice all of its claims. CAI cross-appeals the order denying its motion for sanctions.

II.

We start with NAD's appeal. On its appeal, NAD argues that the trial court improperly made fact findings on a motion to dismiss, considered information outside the

amended complaint, and failed to recognize that NAD had adequately plead facts supporting all four of its claims against CAI.

We use a de novo standard to review the dismissal of a complaint for failure to state a claim. *Donato v. Moldow*, 374 *N.J. Super.* 475, 483 (App. Div. 2005). In reviewing a dismissal under *Rule* 4:6–2(e), our inquiry is focused on examining the legal sufficiency of the facts alleged on the face of the complaint. *Printing Mart, supra*, 116 *N.J.* at 746. Thus, we must "search[ ] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, [giving] opportunity ... to amend if necessary." *Ibid.* (quoting *Di Cristofaro v. Laurel Grove Mem'l Park*, 43 *N.J. Super.* 244, 252 (App. Div. 1957)).

"At [the] preliminary stage of the litigation, the [c]ourt is not concerned with the ability of plaintiffs to prove the allegation[s] contained in the complaint. For purposes of analysis plaintiffs are entitled to every reasonable inference of fact. The examination of a complaint's allegations of fact required by the aforestated principles should be one that is at once painstaking and undertaken with a generous and hospitable approach."

**\*3** [*Ibid.* (citations omitted).]

Using this standard, we review each of NAD's claims.

A. Tortious Interference

NAD asserts two claims of tortious interference: (1) tortious interference with contracts; and (2) tortious interference with prospective economic advantage. The contracts NAD identifies are restrictive covenants and non-disclosure agreements that six of the employees signed with Metro. The prospective economic advantage NAD identifies was its interest in the continued employment of the employees who left and went to work for CAI.

The elements of tortious interference with an existing contract are:

One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

[*Nostrame, supra*, 213 *N.J.* at 122 (quoting *Restatement (Second) of Torts* § 766 (1979)).]

The elements of tortious interference with prospective economic advantage are:

One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of

(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or

(b) preventing the other from acquiring or continuing the prospective relation.

[*Ibid.* (quoting *Restatement (Second) of Torts* § 766B (1979)).]

*See also Printing Mart, supra*, 116 *N.J.* at 751–60 (explaining that to prevail on a claim for tortious interference with a prospective economic advantage, a plaintiff must show (1) the existence of a reasonable expectation of economic advantage; (2) an intentional and malicious interference with that expectation; (3) a causal connection between the interference and the loss of the prospective gain; and (4) damage).

Although these torts are separate causes of action, both have as their focus the means of interference. *Nostrame, supra,* 213 *N.J.* at 121–22. To state a claim for either tort, the plaintiff must show that the interfering acts were intentional and improper. *Ibid.* (citing *Restatement (Second) of Torts* §§ 766 and 766B (1979)).

The mere inducement of an employee to move to a competitor is not, in and of itself, actionable when the employee is terminable at will. *Avtec Indus., Inc. v. Sony Corp. of Am.,* 205 *N.J. Super.* 189, 194 (App. Div. 1985). Because NAD's employees were at-will employees, the alleged interference is governed by the tortious interference with a prospective economic relationship. *Nostrame, supra,* 213 *N.J.* at 121. Nevertheless, the inducement is actionable if the party offering the inducement either has an unlawful or improper purpose or uses unlawful or improper means. *Avtec, supra,* 205 *N.J. Super.* at 194. In *Nostrame,* our Supreme Court identified various types of conduct that has been deemed improper or wrongful. *Nostrame, supra,* 213 *N.J.* at 124. Improper and wrongful means includes conduct that amounts to fraud, defamation, deceit, misrepresentation, violence, intimidation, criminal or civil threats, or other violations of the law. *Ibid.*

### 1. Standing.

***4** The trial court found that NAD lacked standing to bring a tortious interference with contracts claim related to the restrictive covenants and non-disclosure agreements. The court reasoned that the employees signed those contracts with Metro and NAD did not have standing to assert that claim on behalf of Metro. In opposition to the motion to dismiss, however, NAD submitted a certification contending that it was a subsidiary of Metro and an affiliated company. NAD also argues that it is a beneficiary to the contracts since the restrictive covenant and non-disclosure agreements expressly stated that the employees would be working for Metro or any of its affiliates.

Applying the standard on a motion for dismissal, NAD has pled sufficient facts to survive a motion to dismiss. Although it may turn out that the employees have contracts only with Metro, on the current record such a ruling cannot be made definitively. CAI argues that interpreting the restrictive covenants and non-disclosure agreements is purely a question of contractual interpretation. However, given NAD's contention that it is a subsidiary and affiliate of Metro, there is a need for at least some discovery on that issue.

### 2. NAD's Allegations of Wrongful Means.

NAD argues that it has identified facts which, if believed, would support a finding that CAI acted intentionally and maliciously in luring away its employees. In support of that contention, NAD alleges that CAI paid its employees bonuses when they attracted NAD "closers." NAD goes on to contend that CAI raided twelve of its closers in a two-year period. NAD also contends that CAI improperly used confidential information to solicit its closers. Finally, NAD alleges that CAI induced one of the former NAD employees to make a Facebook posting to disparage NAD and induce other NAD employees to join CAI.

CAI responds that none of those actions are sufficiently malicious or wrongful so as to constitute tortious interference. On a motion to dismiss, however, NAD's allegations must be accepted. Giving NAD the benefit of all favorable inferences, its allegations are sufficient to survive a motion to dismiss. Whether the claims can survive summary judgment following discovery is a separate matter that can be addressed at the appropriate time.

In short, applying the standard for evaluating a motion to dismiss under <u>Rule</u> 4:6–2(e), NAD has alleged sufficient facts to support both its claim of tortious interference with contracts and tortious interference with prospective economic advantage.

### B. Unfair Competition

Unfair competition consists, in essence, of the misappropriation of a business's property by another business. *N.J. Optometric Ass'n v. Hillman–Kohan Eyeglasses, Inc.,* 144 *N.J. Super.* 411, 427 (Ch. Div. 1976), *aff'd,* 160 *N.J. Super.* 81 (App. Div. 1978).

Unfair competition, however, has also been described in broader terms: "There is no distinct cause of action for unfair competition. It is a general rubric which subsumes various other causes of action." *C.R. Bard, Inc. v. Woodtronics Corp.*, 235 *N.J. Super.* 168, 172 (Law Div. 1989). The common law tort of unfair competition has historically been viewed as an umbrella for tortious interference claims. *See Restatement (Third) of Unfair Competition* § 1 comment g (1995) (explaining that generally, when a competitor tortiously interferes with the business of another, this constitutes an unfair method of competition). Outside of the intellectual property context, unfair competition is not an independent cause of action. *See, e.g. Columbia Broad. Sys. v. Melody Recordings, Inc.*, 134 *N.J. Super.* 368 (App. Div. 1975) (explaining the boundaries of imitating a competitor in the context of unfair competition).

*\*5* Here, NAD has alleged that CAI, by improperly luring NAD's closers, "wrongfully obtained NAD's confidential and proprietary information" in the form of marketing techniques and methodologies. Although this underlies NAD's claims of tortious interference, it also can constitute an independent form of unfair competition. *See Lamorte Burns & Co. v. Walters*, 167 *N.J.* 285, 308–09 (2001) (explaining that the taking of confidential and proprietary property is "contrary to the notion of free competition that is fair"). Further, "information need not constitute a trade secret [to be legally protected], and indeed, may otherwise be publicly available. The key to determining the misuse of information is the relationship of the parties at the time of disclosure and the intended use of the information." *Id.* at 299 (citing *Platinum Mgmt., Inc. v. Dahms*, 285 *N.J. Super.* 274, 295 (Law Div. 1995)). In *Lamorte* two employees, one of whom had a restrictive covenant, left the plaintiff company to establish a new business and compete directly with their former employer. *Id.* at 291–93. In doing so, the former employees developed a targeted solicitation list based on information from their former employer's client files. *Ibid.* The Court found this to be contrary to the notion of fair competition. *Id.* at 309.

To succeed in its unfair competition claim, NAD must establish that its marketing methodologies constituted confidential and proprietary information based on the relationship of the parties involved and the intended use of the information. NAD is entitled to develop its claim through discovery because it has alleged facts sufficient to survive a motion to dismiss. Whether the claim can survive summary judgment thereafter is, again, a matter that can be addressed at the appropriate time.

C. Civil Conspiracy
A civil conspiracy is defined as

> a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage.

> [*Banco Popular N. Am. v. Gandi*, 184 *N.J.* 161, 177 (2005) (quoting *Morgan v. Union Cty. Bd. of Chosen Freeholders*, 268 *N.J. Super.* 337, 364 (App. Div. 1993), *certif. denied*, 135 *N.J.* 468 (1994)).]

A civil conspiracy requires two or more persons acting in concert. *Ibid.* NAD alleges that CAI acted in concert with its own employees to tortiously interfere with NAD's employment relationships. However, "a corporation which acts through authorized agents and employees ... cannot conspire with itself." *Tynan v. Gen. Motors Corp.*, 248 *N.J. Super.* 654, 668 (App. Div.), *certif. denied*, 127 *N.J.* 548 (1991), *rev'd in part*, 127 *N.J.* 269 (1992). A corporation and its employees are not separate persons for the purpose of civil conspiracy, and a conspiracy cannot exist in the absence of two or more persons acting in concert. Thus, the trial court properly dismissed this count of NAD's complaint.

III.

On its cross-appeal, CAI contends that the trial court erred in not sanctioning NAD under *N.J.S.A.* 2A:15–59.1 and *Rule* 1:4–8. We review a trial court's decision on an

application for fees or sanctions under an abuse of discretion standard. *United Hearts v. Zahabian*, 407 *N.J. Super.* 379, 390 (App. Div.) (citing *Masone v. Levine*, 382 *N.J. Super.* 181, 193 (App. Div. 2005)), *certif. denied*, 200 *N.J.* 367 (2009).

*N.J.S.A.* 2A:15–59.1 provides that a prevailing party in a civil action may be awarded reasonable costs and attorney's fees if the court finds that the complaint or defense of the non-prevailing party was frivolous. To be considered frivolous, the filing must be found to have been made in "bad faith, solely for the purpose of harassment, delay or malicious injury[,]" or made "without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law." *N.J.S.A.* 2A:15–59.1(b).

*Rule* 1:4–8(b) provides that a party may make a motion for sanctions against an attorney or pro se party that has filed a paper with a court for a frivolous purpose. The rule goes on to provide certain procedures that must be followed to qualify. The rule also imposes limitations on the amount that can be imposed as a sanction. *R.* 1:4–8(b) and (d). The conduct warranting sanctions under *Rule* 1:4–8 or fees under *N.J.S.A.* 2A:15–59.1 has been strictly construed and narrowly applied. *McKeown–Brand v. Trump Castle Hotel & Casino*, 132 *N.J.* 546, 561 (1993); *Wyche v. Unsatisfied Claims & Judgment Fund of N.J.*, 383 *N.J. Super.* 554, 560 (App. Div. 2006).

**\*6** Here, we discern no abuse of discretion by the trial court given the procedural context in which the court addressed the motion seeking fees and sanctions. Nevertheless, because we are reversing the dismissal of three of NAD's claims and remanding the matter, the prior procedural context no longer exists. Thus, we also reverse, without prejudice to reconsideration, the trial court's order denying CAI's motion for sanctions and fees. If CAI believes it has the grounds to refile its motion for fees and sanctions at a later stage of this litigation, that motion can be re-evaluated at that time.

Affirmed in part, reversed in part, and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

## All Citations

Not Reported in Atl. Rptr., 2017 WL 410241, 2017 IER Cases 27,997

---

**End of Document**   © 2023 Thomson Reuters. No claim to original U.S. Government Works.