THE WEIR LAW FIRM, LLC
Bonnie M. Weir, Esq.
1170 U.S. Highway 22 East
Suite 205
Bridgewater, New Jersey 08807
908-575-0185
908-575-0187 - fax
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| SAYER TECHNOLOGIES, S.L., | : | |
| | : | Civil Action No. 23-2257 (MAS-TJB) |
| Plaintiff, | : | Hon. Tonianne J. Bongiovanni, U.S.M.J. |
| | : | |
| - v - | : | |
| | : | **DECLARATION OF VIDAL** |
| VISCOFAN COLLAGEN USA INC., | : | **ERNESTO GARRIDO ZUNIGA** |
| f/k/a NITTA CASTINGS INC., | : | **IN SUPPORT OF PLAINTIFF'S** |
| | : | **MOTION FOR SUMMARY JUDGMENT** |
| Defendant. | : | |
| | : | |

Vidal Ernesto Garrido Zuniga, of full age, does hereby declare that:

1.      I am the Managing Director/CEO of Plaintiff, Sayer Technologies, S.L. ("Sayer") in the above referenced matter and as such I am knowledgeable about the facts and circumstances of this action.  In such capacity, I serve general company management tasks including, but not limited to, general strategy and main goals definition, as well as commercial effort development.  I am responsible for leading the company and ensuring the coordination between the different area departments and their roles, planning and supervising all activities carried out as well as their results. I submit this Declaration in support of Sayer's motion for summary judgment to dismiss Defendant's, Viscofan Collagen USA Inc. ("Viscofan Collagen"), Counterclaims.

2.      Sayer is a company duly organized and existing under the laws of Spain.  It was formally founded in 2012.  However, Sayer was the result of the redenomination of a previously

existing company called NAVAGLOBAL, which had a completely different purpose - not in the least related to machinery design and/or manufacturing. NAVAGLOBAL was incorporated in 2011. From the very beginning of Sayer's operation, the company has been working for several industrial fields in parallel, and not just in the food industry. As an example, Sayer has been working, and continues to work, for the automobile industry (mechanical parts and developments design and manufacturing).

3.      On December 10, 2012, Sayer entered into a Confidentiality Agreement with Viscofan, S.A., a copy of which is attached hereto as Exhibit "A". As noted in the Agreement, Viscofan S.A. is a Spanish company and parent company to a group of companies engaged in the manufacture and marketing of artificial casings for meat products. During the period of time when Sayer and Viscofan S.A. were collaborating in Spain, in the United States Viscofan S.A. and its U.S. affiliates were exclusively focused on the different methodologies of cellulous and fibrous casing manufacturing. Sayer was not at any time involved with activities in the United States related to Viscofan S.A. or its affiliates in the United States, neither as collaborator nor as supplier. Viscofan S.A.'s first venture into the collagen manufacturing field in the United States was through its acquisition of Nitta in 2019. Since Sayer's design and manufacturing work was in the collagen field and Viscofan S.A. was exclusively dedicated to cellulous and fibrous production in the U.S., there was not, and could not be, disclosure of any secrets or know-how in the cellulous design and manufacturing process.

4.      Pursuant to par. "10" of the Confidentiality Agreement, Sayer and Viscofan S.A. agreed that Spanish law was to be used to interpret the agreement and that the parties expressly submitted to the jurisdiction of the courts corresponding to the domicile of Viscofan S.A. i.e., Spain.

5.      The mere fact that Sayer agreed to treat all information disclosed by Viscofan S.A. as confidential does not then serve to prohibit Sayer from developing its own technology in the industry.

6.      On June 23, 2015, Sayer entered into a Technology and Trade Cooperation Agreement with Nitta Casings Inc. ("Nitta") for a collaboration with Nitta to contribute to the modernization of its product system. Nitta was a company located in Bridgewater, New Jersey and was engaged in the production of collagen for the food industry. A copy of the Agreement is attached hereto as Exhibit "B".

7.      Pursuant to paragraph Four of the Agreement, "SAYER is free to exploit the results, patentable or not, which arose in certain projects referred to in this contract and owns full proprietary rights on those projects, particularly the Collagen Casing Lines." This relationship had nothing to do with Viscofan S.A. Paragraph Eight established that the courts in Pamplona, Spain have exclusive jurisdiction for the resolution of any dispute regarding the Agreement.

8.      Thereafter, on August 28, 2015, Sayer and Nitta entered into a Contract Agreement whereby Nitta purchased from Sayer a Collagen Line Machine "Line S", a copy of which is attached hereto as Exhibit "C". Once again, this Agreement provided for the governing law to be that of Spain and that exclusive jurisdiction was with the courts at Pamplona, Spain. See, Par. "8" of Exhibit "C".

9.      Between April and November 2019, Nitta ordered various supplies for use with the Line S, including but not limited to belts. Those invoices also include costs for transportation as Sayer employees were to travel to Nitta's location, which trip was later cancelled by Nitta. Copies of the invoices for this period are attached hereto as Exhibit "D".

-3-

10.    On December 19, 2019, Nitta's President and CEO advised Sayer that payment was being sent out for outstanding invoices and further that it was purchased by Viscofan. See, Exhibit "E" (P25). No specification as to which Viscofan entity was provided.

11.    Thereafter, Nitta advised Sayer that Viscofan instructed the finance department to hold off on making payment until they reviewed everything. See, Exhibit "F" (P28).

12.    On November 2, 2016, Viscofan S.A. filed a lawsuit against Sayer in Spain to address their claims of alleged unfair competition. A copy of the Judgment entered on March 7, 2019, which dismissed the claims on the basis of the statute of limitations, is attached hereto as Exhibit "G". However, as noted in the Judgment, a full evidentiary hearing was conducted on June 28, 2018.

13.    Viscofan S.A. appealed that decision with the Judgment entered against Viscofan S.A. on May 13, 2021, a copy of which is attached hereto as Exhibit "H". As part of the appeal, the Court reviewed the technical issues and further addressed there being no evidence to support a claim of unfair competition.

14.    Once again Viscofan S.A. appealed that decision which was upheld by Judgment entered on June 23, 2023, a copy of which is attached hereto as Exhibit "I".

15.    With respect to the issue of the belts, Viscofan Collagen USA Inc. commenced an action in Spain alleging, among other things, that the belts were defective and, as a result of same and other claims unrelated to this action, they lost money. A Judgment was entered on December 23, 2022 which denied any recovery as there was no evidence of a design flaw. A copy of the Judgment is attached hereto as Exhibit "J". Given the length of the Judgment and the inclusion of other issues, the entirety of the Judgment in Spanish is included with a translation of the relevant

pages 55-62 of the Judgment. While Sayer filed an appeal with respect to an issue unrelated to the belts, it bears noting that Viscofan Collagen USA did not appeal any part of the Judgment, including the determination that there was no evidence of a design flaw with the belts, and therefore they accepted the Judgment on that issue.

16.    The Court considered several expert reports, including a Court appointed expert's report, a copy of which is attached hereto as Exhibit "K". Given the length of the Court appointed expert's report and inclusion of other issues reviewed, the entirety of the Report in Spanish is included with a translation of the relevant page 65-69 of the report.

17.    All of the issues set forth in Viscofan Collagen's Counterclaims have been decided by the Courts in Spain as against Viscofan Collagen and Viscofan S.A. who initiated the actions in Spain.

18.    According to the corporate searches performed by our attorney in this matter, the Defendant/Counterclaim Plaintiff in this case, Viscofan Collagen, was incorporated in Delaware in 2019 and registered to do business in New Jersey at the same time. See Exhibit "L" which includes the following records from Delaware and New Jersey recording offices:

(A) Nitta Casings, Inc. Certificate of Authorization filed July 15, 1996 showing it was incorporated in Delaware;

(B) Nitta Casings, Inc. Application for Amended Certificate of Authority to change its name to Viscofan Collagen USA Inc. filed on December 20, 2019;

( C) Delaware's certification that Viscofan Collagen USA Inc. was incorporated in Delaware with the date of incorporation relating back to Nitta's incorporation of July 9, 1996;

(D) Certificate of Change of Registered Office and/or Registered Agent for Viscofan

Collagen USA Inc. filed January 23, 2020 noting Delaware incorporation;

(E) Viscofan Collagen USA Inc.'s Certificate of Pending Withdrawal filed July 5, 2022 regarding termination of the entity;

(F) Certificate of Withdrawal dated June 27, 2022 confirming the corporation is not transacting business activities in New Jersey.

There does not appear to be an entity which officially assumed the prior Nitta entity.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 15, 2024

_____
Vidal Ernesto Garrido Zuniga

-6-

**EXHIBIT A**

## CONFIDENTIALITY AGREEMENT

The first party: **"SAYER TECHNOLOGIES, S.L."** domiciled in Polígono Landaben Calle C, s/n 31012 Pamplona, with C.I.F. B71070676. It is represented in this act by Mr. Ernesto Garrido Zúñiga, with D.N.I. 15.826.282M, as Managing Director. Hereinafter, *THE RECIPIENT*.

The second party: **"VISCOFAN, S.A."** domiciled at Calle Berroa no 15, 4th floor - 31192 Tajonar (Navarra), with C.I.F. A31065501. It is represented in this act by Mr. José Antonio Canales García, with D.N.I. 16.041.336-D, in his capacity as General Manager. Hereinafter *VISCOFAN*,

Both parties mutually recognize their full legal capacity to enter into this agreement and

## EXPRESS

A) THE RECIPIENT is a Spanish company whose main activity consists of the design and manufacture of special machinery and process automation.

B) Viscofan is a Spanish company, parent company of a group of companies (hereinafter referred to as Investee Companies), whose main activity consists of manufacturing and marketing artificial casings for meat products.

C) Viscofan is interested in contracting THE RECIPIENT for the purpose of developing and applying technological solutions for its production plants and those of its investee companies according to Viscofan's requirements. Hereinafter referred to as "*the Purpose*".

D) As a consequence of the foregoing, THE RECIPIENT may have access to information pertaining to and related to the scope of activity of Viscofan and its Affiliated Companies, related to technical, industrial, labor, commercial or any other aspects.

E) The communication or use of such information may be of interest to competing companies of Viscofan or other third parties and may cause damage to the interests of Viscofan

F) THE RECIPIENT acknowledges the value of such information and agrees to keep

it confidential by signing this confidentiality agreement in accordance with the following

**CLAUSES**

1.- THE RECIPIENT agrees to keep strictly confidential and not to disclose any information relating to or pertaining to Viscofan and its Affiliated Companies, regardless of its nature, to which it may have access or has previously had access as a result of activities carried out for or in Viscofan or its Affiliated Companies (hereinafter referred to as *the Confidential Information*).

THE RECIPIENT agrees not to use the Confidential Information outside the scope of the Purpose, directly or through third parties, directly or indirectly.

The Confidential Information may be collected orally, visually, in writing: recorded in magnetic media or in any other medium or support, tangible or intangible, marked or not as "confidential", and include know how, trade secrets, inventions, ideas, data, material, specifications, formulas, designs, drawings, concepts, processes, programs, customer lists, sales data, sales prices, product samples, supplier data, financial information and any other related to the business or to the experience or knowledge, regardless of whether or not they are susceptible to protection by industrial property rights or others.

Confidential Information may belong to Viscofan or any of its Affiliates, as described in the following paragraph.

For purposes of this Agreement, "*Affiliated Companies*" shall mean any corporation, firm, partnership or other entity that directly or indirectly controls Viscofan, is controlled by Viscofan, or is under the same control as Viscofan. For the purposes of this definition, control means owning directly or indirectly more than fifty (50) percent of the voting rights of an entity, or any other relationship that implies actual control.

2.- THE RECIPIENT agrees to provide the Confidential Information only to those employees, directors, partners, advisors and collaborators, internal or external, who have a need to know it for the Purpose.

THE RECIPIENT agrees to inform and bind all of them to the same confidentiality commitment that it now subscribes by means of this agreement, to the maximum extent that the applicable regulations contemplate.

The RECIPIENT shall provide Viscofan with the confidentiality agreements signed by those persons who by any means may have access to the Confidential Information.

3.- Information that THE RECIPIENT can demonstrate that is outside the scope of this agreement:

It was public at the time when THE RECIPIENT had access to it.

It was known by THE RECIPIENT at the time he/she had access to it, provided that the access to such information had occurred through legal means or sources and without prior breach of any duty of confidentiality.

Accrue in the public domain, without the intervention of THE RECIPIENT, after having access to the same.

Accrual, after the RECIPIENT has access to the same, available to THE RECIPIENT through third parties, who in turn would have had access to it in a lawful manner and without prior breach of any duty of confidentiality.

Any other Confidential Information not included in these hypotheses shall be included in this agreement.

4.- If the RECIPIENT has access to the Confidential Information in the form of documents, plans, drawings, diagrams, files, e-mails, parts, samples, etc., he is obliged to return them to Viscofan or destroy them whenever Viscofan so requests. In any case, the RECIPIENT shall destroy them within fifteen days after the termination of the relationship with Viscofan.

5.- This Agreement does not imply the assignment or transfer of any rights or the express or implied grant of any license, patent, trademark, copyright, design rights, know how, trade secrets or any other industrial or intellectual property right of Viscofan, whether registered or not.

6.- THE RECIPIENT shall indemnify Viscofan and hold Viscofan harmless from any loss or damage it may suffer or from any liability it may be required to incur as a consequence of the consequence of the non-compliance by the RECIPIENT of the obligations of this agreement.

7.- In the event that a Spanish or foreign administrative authority legally requires to know the Information and requests it from THE RECIPIENT, THE RECIPIENT

shall disclose it, always maintaining the maximum confidentiality permitted by law.

In any case, THE RECIPIENT shall inform Viscofan in writing immediately and sufficiently in advance so that it may take any legal action it deems appropriate to prevent, limit or protect such disclosure.

8.- THE RECIPIENT shall be bound by this confidentiality agreement for the duration of the relationship with Viscofan for the Purpose or otherwise and, once terminated, indefinitely to the maximum extent permitted by law or until the Confidential Information has become publicly available through legal means or channels.

9.- This agreement supersedes any prior oral or written agreement or contract relating to the same subject matter that existed between the parties. No modification, correction or waiver of any clause of this agreement shall be valid unless it is made by written agreement signed by both parties. 10.- This Agreement shall be interpreted in accordance with Spanish law and the parties, expressly waiving any other jurisdiction that may correspond to them, expressly submit to the jurisdiction of the courts corresponding to the domicile of Viscofan.

In Tajonar, on December 10, 2012.

For THE RECIPIENT                          For VISCOFAN, S.A.

Mr. **Ernesto Garrido Zúñiga**          Mr. **José Antonio Canales García**

**EXHIBIT B**

# TECHNOLOGY AND TRADE COOPERATION AGREEMENT

Between:

Mr ERNESTO GARRIDO ZUÑIGA, ID number 15 826 282 with the address for the notification purposes at Polígono Ipertegui II, Nave 33-35, 31160 Orcoyen (Navarra) - Spain, representing **SAYER TECHNOLOGIES, S.L.**, with VAT Reg. n° B71070676, address: Polígono Ipertegui II, Nave 33-35, 31160 Orcoyen (Navarra) - Spain, as a General Manager

And, Mr Francisco Sousa, Chief Operating Officer, with the address for the notification purposes at 141 Southside Avenue – Bridgewater- 08807 NJ, U.S.A., representing **NITTA CASINGS INC.** with VAT n° 223455324.

Both parties being empowered with the required faculties to execute this agreement,

## RECOGNIZE

**I.-** That **SAYER TECHNOLOGIES, S.L.** is a company dedicated to the manufacture of special and bespoke machinery, as well as the automation of industrial processes. SAYER engages in technological development for various sectors (automotive, food, electronics and appliances) and would like to collaborate with **NITTA CASINGS INC.** to contribute to the modernization of its productive system.

**II.-** That **NITTA CASINGS INC.** is a company engaged in production of collagen for the food industry and is interested in a technical/trade cooperation Project with **SAYER TECHNOLOGIES, S.L.**

Julia González Garrido
Traductor-Intérprete Jurado de Inglés
N.° 3898    23/11/20

P00001

III.-Both companies have agreed to establish a trading partnership for the implementation and application of industrial technological solutions by Sayer for the manufacture of **NITTA CASINGS INC.** by providing engineering.

To this end, the Parties agree the execution of this Framework Agreement, under the following

## DISCLAIMERS

**ONE.- SAYER** will act as coordinator and responsible for carrying out the projects entrusted by **NITTA**, pledging that they are developed in accordance with the technical specifications of the product. **SAYER** will develop the projects entrusted by **NITTA** applying their knowledge and technology to ensure the technical solution according to the productive needs of **NITTA.**

By way of example, and without prejudice to any that would be entrusted in the future, projects that **SAYER** will intervene as this Agreement is mainly based, are as follows:

- Automatic stick machine.
- Extruder machine.
- Collagen machine.
- Shirring machine.
- Others.

**TWO.-** As consideration for the implementation of projects, **NITTA** undertakes to pay the agreed price to **SAYER** in the conditions negotiated between the Parties.

Julio González Garrido
Traductor-intérprete jurado de inglés
N. 9319        23/1/20

P00002

**THREE.-** *SAYER* agrees not to disclose, in any respect, the technical information received from **NITTA** to which it may have had access during the project.

All data and information obtained during the project will remain confidential.

**FOUR.-** SAYER is free to exploit the results, patentable or not, which arose in certain projects referred to in this contract and owns full proprietary rights on those projects, particularly the Collagen Casing Lines.

**FIVE.-** SAYER will assume the responsibilities involved by the given guarantees for the purpose of manufactured product supplied to NITTA for a period of 24 months from delivery and commissioning.

**SIX.-** Failure by either party of its obligations under this Agreement entitle the non-defaulting party to seek a resolution of the same. It is automatically canceled all the rights to the object of the contract.

**SEVEN.-** The term of this Agreement is one year from the date of signature and may be extended by mutual agreement if the parties consider it necessary for the completion of work, or shall agree its expansion.

Either party may in turn terminate this Agreement by giving notice to the other party at least two months before the date on which will terminate. The complaint must be convincingly communicated to the counterparty.

23/1/20

The parties may modify the terms of this Agreement at any time by mutual agreement and shall include any change or modification to a new document signed by both that will be appended to this document.

EIGHT.- In any dispute concerning the interpretation and application of this contract, the courts shall have exclusive jurisdiction Pamplona, both parties expressly waive any other privileges that might correspond.

SAYER TECHNOLOGIES, S.L.

Orcoyen (Spain)

23 June, 2015

NITTA CASINGS INC.

Bridgewater (USA)

P00004

**EXHIBIT C**

## Contract Agreement

This contract for "Sayer Collagen Casing Machine" is made this 28th day of August, 2015 between Mr.Ernesto Garrido Zúñiga, ID Number 15 826 282 with the address for notification purposes at Poligono Ipertegui II, Nave 33-35, 31160, Orcoyen (Navarra) Spain, representing SAYER TECHNOLOGIES S.L., with VAT Reg nºB71070676, address: Poligono Ipertegui II Nave 33-35, 31160 Orcoyen ( Navarra)- Spain, as General Manager, hereafter Seller,

And, Mr Francisco Sousa, Chief Operating Officer,. with the address for the notification purposes at 141 Southside Avenue —Bridgewater– 08807 NJ, U.S.A., representing NITTA CASINGS INC. With VAT nº223455324, hereafter Buyer,.

For the purchase of the Sayer Collagen Line Machine "Line S", described below:

### 1. TERMS:

1.1 - Seller shall deliver to the Buyer on April 18th of 2016 the following goods:

Item : Sayer Collagen Line Machine, hereafter "Line S"
Qty. : 1
Price € 3,235,249.00 ( Euros)

1.2 - The purpose of this contract is the sale of "Sayer Collagen Line Machine / Line S", according 059-2015 supply, Attachment A, which NITTA CASINGS INC (Buyer) acquires, pursuant to the provisions of its statutes in relation to its purpose.

1.3 - Sayer act as coordinator and responsible for the implementation of projects commissioned by NITTA, promising that are developed in accordance with the technical specifications of NITTA's product.

1.4 - Delivery will be EX-Works Orcoyen ( Navarra) Spain, according by both parties.

1.5 - The start-up will be performed altogether with Nitta engineers contributing their knowledge regarding the product

1.6 - Nitta will provide the frames, platforms and corridors between the lines

1.7 - Safety: The machine is designed and constructed under the EC Instructions-Machinery Directive.

### 2. NOTICE. Buyer shall give Seller 60 days advance notice regarding any change to the Item requested for delivery. Seller shall refund any extra payment accordingly.

3. **RISK OF LOSS.** The risk of loss from any casualty to the Line S, regardless of the cause, shall be incurred by Seller until Line S has been delivered by the Buyer.

4. **ACCEPTANCE.** Buyer shall have the right to inspect the Line S upon receipt, and within 30 business days after delivery Buyer shall give notice to Seller of any claim for damages on account of condition, quality, or grade of the materials. Buyer shall specify the basis of the claim in detail. Failure of Buyer to comply with these conditions will constitute irrevocable acceptance of the materials by Buyer. All notices between the parties must be in writing and delivered by e-mail or by certified mail, return receipt requested.

5. **CHARGES.** Agreed payment terms:

    1. 35% at the order confirmation
    2. 15% at the design acceptance
    3. 15% manufacturing
    4. 10% assembly at Sayer
    5. 15% acceptance at Sayer
    6. 10% acceptance at Nitta facilities (USA)

6. **WARRANTY.** Seller warrants the Line S for 24 months from the test performed and start-up in NITTA facilities (USA), and free from substantial defects in workmanship and materials. Seller's liability under the foregoing warranty is limited to replacement of materials or repair of defects or refund of the purchase price at Seller's option.

7. **TAXES.** All sales taxes, tariffs, and other governmental charges shall be paid by Buyer and are Buyer's Responsibility Except As Limited By Law.

8. **GOVERNING LAW.** In any dispute concerning the interpretation and application of this contract, the courts at Pamplona, Spain, shall have exclusive jurisdiction, both parties expressly waive any other privileges that might correspond.

9. **FORCE MAJEURE.** Seller may, without liability, delay performance or cancel this Contract on account of force majeure events or other circumstances beyond its control, including, but not limited to, strikes, acts of God, political unrest, embargo, failure of source of supply, or casualty.

10. **MISCELLANEOUS.** This Contract contains the entire agreement between the parties and supersedes and replaces all such prior agreements with respect to matters expressly set forth herein. No modification shall be made to this Contract except in writing and signed by both parties.

23/1/20

**11. ENTIRE AGREEMENT.** The parties intend this writing to be the final expression of the terms of their agreement and further intend that this writing be the complete and exclusive statement of all the terms of their agreement.

And as proof of compliance with all, this document is signed in duplicate and in effect at the places and dates shown in the document header.

**12. ATTORNEY FEE PROVISION.** In any litigation, arbitration, or other proceeding by which one party either seeks to enforce its rights under this Sales Contract or seeks a declaration of any rights or obligations under this Sales Contract, the prevailing party shall be awarded reasonable attorney fees, together with any costs and expenses, to resolve the dispute and to enforce the final judgment.

<u>ACKNOWLEDGMENT BY SELLER</u>

SAYER TECHNOLOGIES, S.L.
(Seller)

August 28 2015

<u>ACKNOWLEDGMENT BY BUYER</u>

NITTA Casings.Inc
(Buyer)

August 28 2015

**EXHIBIT D**



**SAYER**
technologies S.L

Polígono Ipertegui II, Nave 33-35
31160 Orcoyen (Navarra - Spain)
Tel. +34 948 186 610
http://www.sayer.es
CIF: B71070676

NITTA CASING INC.

141 SOUTHSIDE AVENUE
08807 BRIDGEWATER
NEW JERSEY (USA)

| FECHA | FACTURA | CLIENTE | N.I.F. | TELEFONO | PÁG. |
|-------|---------|---------|--------|----------|------|
| 25/04/19 | 190032 | 43000026 | 22-3455324 | | 1 |

| CÓDIGO | DESCRIPCIÓN | UNIDADES | PRECIO | IMPORTE |
|--------|-------------|----------|--------|---------|
| VAR-MATERIALES | BELTS T20-72 | 2.00 | 7,886.0000 | 15,772.00 |
| VAR-MATERIALES | BELTS T20-57 | 1.00 | 6,390.0000 | 6,390.00 |
| VAR-MATERIALES | WHITE ROLLERS | 12.00 | 145.0000 | 1,740.00 |
| VAR-MATERIALES | SUPPORTS | 6,000.00 | 1.2200 | 7,320.00 |
| | Proyect 191014 | | | |

| TOTAL IMP. | % | IMPORTE | BASE | % | IVA | % | REC | TOTAL TRA. (€) |
|-----------|---|---------|------|---|-----|---|-----|----------------|
| 31,222.00 | | | 31,222.00 | | | | | 31,222,00 |
| | | | | | | | | |
| | | | | | | | | |

Forma de Pago: Transferencia
Banco: CAJA RURAL DE NAVARRA
3008 0232 56 2589********

Vencimientos:
25/04/19
31,222,00

Los datos facilitados por usted, se incorporarán y serán tratados en un fichero, con la finalidad de atender la presente relación.
Los datos son confidenciales y de uso exclusivo de SAYER TECHNOLOGIES S.L., Responsable del fichero.
SAYER TECHNOLOGIES S.L. tiene domicilio en Polígono Ipertegui II, nave 33/35 - 31160 Orcoyen (Navarra). Si lo desea pueda acceder,
cancelar y oponerse al tratamiento de dichos datos mediante escrito dirigido a la dirección anteriormente citada.

P00008



**SAYER** technologies S.L

Polígono Ipertegui II, Nave 33-35
31160 Orcoyen (Navarra - Spain)
Tel. +34 948 186 610
http://www.sayer.es
CIF: B71070676

NITTA CASING INC.

141 SOUTHSIDE AVENUE
08807 BRIDGEWATER
NEW JERSEY (USA)

| FECHA | FACTURA | CLIENTE | N.I.F. | TELEFONO | PAG. |
|---|---|---|---|---|---|
| 22/05/19 | 190041 | 43000026 | 22-3455324 | | 1 |

| CODIGO | DESCRIPCION | UNIDADES | PRECIO | IMPORTE |
|---|---|---|---|---|
| VAR-MATERIALES | TRANSPORT (material sent with invoice 190032 on May 10, 2019) Project 191014 | 1.00 | 1,923.0000 | 1,923.00 |

| TOTAL IMP. | % | IMPORTE | BASE | % | IVA | % | R.U.C. | TOTAL FRA. € |
|---|---|---|---|---|---|---|---|---|
| 1,923.00 | | | 1,923.00 | | | | | **1,923.00** |
| | | | | | | | | |

Forma de Pago: Transferencia
Banco: CAJA RURAL DE NAVARRA
3008 0232 56 2589******

Vencimientos:
22/05/19
1,923.00

Los datos facilitados por usted, se incorporarán y serán tratados en un fichero, con la finalidad de atender la presente relación,
Los datos son confidenciales y de uso exclusivo de SAYER TECHNOLOGIES S.L., Responsable del fichero.
SAYER TECHNOLOGIES S.L. tiene domicilio en Polígono Ipertegui II, nave 33/35 - 31160 Orcoyen (Navarra). Si lo desea puede acceder,
cancelar y oponerse al tratamiento de dichos datos mediante escrito dirigido a la dirección anteriormente citada.



**SAYER**
technologies S.L

Polígono Ipertegui II, Nave 33-35
31160 Orcoyen (Navarra - Spain)
Tel. +34 948 186 610
http://www.sayer.es
CIF: B71070676

NITTA CASING INC.

141 SOUTHSIDE AVENUE
08807 BRIDGEWATER
NEW JERSEY (USA)

| FECHA | FACTURA | CLIENTE | N.I.F. | TELÉFONO | PÁG. |
|-------|---------|---------|--------|----------|------|
| 11/06/19 | 190049 | 43000026 | 22-3455324 | | 1 |

| CÓDIGO | DESCRIPCIÓN | UNIDADES | PRECIO | IMPORTE |
|--------|-------------|----------|--------|---------|
| VAR-MATERIALES | BELTS T20-50 58M | 2.00 | 6,390.0000 | 12,780.00 |
| VAR-MATERIALES | TRANSPORT | 1.00 | 1,154.8700 | 1,154.87 |
| | Project 191019 | | | |

| TOTAL IMP. | % | IMPORTE | BASE | % | IVA | % | REC. | TOTAL FRA. € |
|-----------|---|---------|------|---|-----|---|------|------------|
| 13,934.87 | | | 13,934.87 | | | | | 13,934.87 |
| | | | | | | | | |
| | | | | | | | | |

Forma de Pago: Transferencia
Banco: CAJA RURAL DE NAVARRA
3008 0232 56 2589******

Vencimientos:
11/06/19
13,934.87

Los datos facilitados por usted, se incorporarán y serán tratados en un fichero, con la finalidad de atender la presente relación.
Los datos son confidenciales y de uso exclusivo de SAYER TECHNOLOGIES S.L., Responsable del fichero.
SAYER TECHNOLOGIES S.L. tiene domicilio en Polígono Ipertegui II, nave 33/35 - 31160 Orcoyen (Navarra). Si lo desea puede acceder,
cancelar y oponerse al tratamiento de dichos datos mediante escrito dirigido a la dirección anteriormente citada.

P00010



### SAYER
technologies S.L.

Polígono Ipertegui II, Nave 33-35
31160 Orcoyen (Navarra - Spain)
Tel. +34 948 186 610
http://www.sayer.es
CIF: B71070676

NITTA CASING INC.

141 SOUTHSIDE AVENUE
08807 BRIDGEWATER.
NEW JERSEY (USA)

| FECHA | FACTURA | CLIENTE | N.I.F. | TELÉFONO | PÁG. |
|--------|---------|----------|----------|-----------|------|
| 18/06/19 | 190053 | 43000026 | 22-3455324 | | 1 |

| CÓDIGO | DESCRIPCIÓN | UNIDADES | PRECIO | IMPORTE |
|---------|-------------|----------|---------|---------|
| VAR-MAQUINA | BELTS T20-50 58M | 3.00 | 6,390.0000 | 19,170.00 |
| VAR-MAQUINA | TRANSPORT | 1.00 | 1,283.4900 | 1,283.49 |
| | Project 191020 | | | |

| TOTAL IMP. | % | IMPORTE | BASE | % | IVA | % | REC. | TOTAL FRA. € |
|------------|---|---------|------|---|-----|---|------|--------------|
| 20,453.49 | | | 20,453.49 | | | | | 20,453.49 |

Forma de Pago: Transferencia
Banco: CAJA RURAL DE NAVARRA
3008 0232 56 2589******

Vencimientos:
18/06/19
20,453.49

Los datos facilitados por usted, se incorporarán y serán tratados en un fichero, con la finalidad de atender la presente relación.
Los datos son confidenciales y de uso exclusivo de SAYER TECHNOLOGIES S.L., Responsable del fichero.
SAYER TECHNOLOGIES S.L. tiene domicilio en Polígono Ipertegui II, nave 33/35 - 31160 Orcoyen (Navarra), Si lo desea puede acceder,
cancelar y oponerse al tratamiento de dichos datos mediante escrito dirigido a la dirección anteriormente citada.

P00011



## SAYER
### technologies S.L

Polígono Ipertegui II, Nave 33-35
31160 Orcoyen (Navarra - Spain)
Tel. +34 948 186 610
http://www.sayer.es
CIF: B71070676

NITTA CASING INC.

141 SOUTHSIDE AVENUE
08807 BRIDGEWATER
NEW JERSEY (USA)

| FECHA | FACTURA | CLIENTE | N.I.F. | TELEFONO | PAG. |
|---|---|---|---|---|---|
| 27/09/19 | 190091 | 43000026 | 22-3455324 | | 1 |

| CÓDIGO | DESCRIPCIÓN | UNIDADES | PRECIO | IMPORTE |
|---|---|---|---|---|
| VAR-MATERIALES | BELT T-20-50 58M | 1.00 | 6,390.0000 | 6,390.00 |
| VAR-MATERIALES | SUPPORTS | 2,000.00 | 1.2200 | 2,440.00 |
| VAR-MATERIALES | TRANSPORT | 1.00 | 1,767.6500 | 1,767.65 |
| | Project 191024 | | | |

| TOTAL IMP. | % | IMPORTE | BASE | % | IVA | % | REC | TOTAL FRA. (€) |
|---|---|---|---|---|---|---|---|---|
| 10,597.65 | | | 10,597.65 | | | | | 10,597.65 |
| | | | | | | | | |
| | | | | | | | | |

Forma de Pago: Transferencia
Banco: CAJA RURAL DE NAVARRA
        3008 0232 56 2589********

Vencimientos:
27/09/19
10,597.65

Los datos facilitados por Usted, se incorporarán y serán tratados en un fichero, con la finalidad de atender la presente relación. Los datos son confidenciales y de uso exclusivo de SAYER TECHNOLOGIES S.L., Responsable del fichero. SAYER TECHNOLOGIES S.L. tiene domicilio en Polígono Ipertegui II, nave 33/35 - 31160 Orcoyen (Navarra). El lo desea puede acceder, cancelar y oponerse al tratamiento de dichos datos mediante escrito dirigido a la dirección anteriormente citada.

P00012



**SAYER**
technologies S.L

Polígono Ipertegui II, Nave 33-35
31160 Orcoyen (Navarra - Spain)
Tel. +34 948 186 610
http://www.sayer.es
CIF: B71070676

NITTA CASING INC.

141 SOUTHSIDE AVENUE
08807 BRIDGEWATER
NEW JERSEY (USA)

| FECHA | FACTURA | CLIENTE | N.I.F. | TELEFONO | PAG. |
|---|---|---|---|---|---|
| 27/09/19 | 190092 | 43000026 | 22-3455324 | | 1 |

| CODIGO | DESCRIPCION | UNIDADES | PRECIO | IMPORTE |
|---|---|---|---|---|
| VAR-MAQUINA | TRAVEL CANCELLATION COST (September 16-27) Project 191003 | 1.00 | 909.8900 | 909.89 |

| TOTAL IMP. | % | IMPORTE | BASE | % | IVA | % | REC | TOTAL FRA. (€) |
|---|---|---|---|---|---|---|---|---|
| 909.89 | | | 909.89 | | | | | 909.89 |
| | | | | | | | | |
| | | | | | | | | |

Forma de Pago: Transferencia
Banco: CAJA RURAL DE NAVARRA
3008 0232 56 2589******

Vencimientos:
27/09/19
909.89

Los datos facilitados por usted, se incorporan y serán tratados en un fichero, con la finalidad de atender la presente relación.
Los datos son confidenciales y de uso exclusivo de SAYER TECHNOLOGIES S.L., Responsable del fichero.
SAYER TECHNOLOGIES S.L. tiene domicilio en Polígono Ipertegui II, nave 35/35 - 31160 Orcoyen (Navarra). Si lo desea puede acceder,
cancelar y oponerse al tratamiento de dichos datos mediante escrito dirigido a la dirección anteriormente citada.

P00013



**SAYER** technologies S.L

Polígono Ipertegui II, Nave 33-35
31160 Orcoyen (Navarra - Spain)
Tel. +34 948 186 610
http://www.sayer.es
CIF: B71070676

NITTA CASING INC.

141 SOUTHSIDE AVENUE
08807 BRIDGEWATER
NEW JERSEY (USA)

| FECHA | FACTURA | CLIENTE | N.I.F. | TELEFONO | PÁG. |
|-------|---------|---------|--------|----------|------|
| 09/10/19 | 190097 | 43000026 | 22-3455324 | | 1 |

| CÓDIGO | DESCRIPCIÓN | UNIDADES | PRECIO | IMPORTE |
|--------|-------------|----------|--------|---------|
| VAR-MATERIALES | BELTS T20-50 58M | 4.00 | 6,390.0000 | 25,560.00 |
| VAR-MATERIALES | TRANSPORT | 1.00 | 841.7900 | 841.79 |
| | Proyect 191032 | | | |

| TOTAL IMP. | % | IMPORTE | BASE | % | IVA | % | REC. | TOTAL FRA. (€) |
|-----------|---|---------|------|---|-----|---|------|----------------|
| 26,401.79 | | | 26,401.79 | | | | | 26,401.79 |

Forma de Pago: Transferencia
Banco: CAJA RURAL DE NAVARRA
3008 0232 56 2589******

Vencimientos:
09/10/19
26,401.79

Los datos facilitados por usted, se incorporarán y serán tratados en un fichero, con la finalidad de atender la presente relación.
Los datos son confidenciales y de uso exclusivo de SAYER TECHNOLOGIES S.L., Responsable del fichero.
SAYER TECHNOLOGIES S.L. tiene domicilio en Polígono Ipertegui II, nave 33/35 - 31160 Orcoyen (Navarra). Si lo desea puede acceder,
cancelar y oponerse al tratamiento de dichos datos mediante escrito dirigido a la dirección anteriormente citada.



**SAYER**
technologies S.L.

Polígono Ipertegui II, Nave 33-35
31160 Orcoyen (Navarra - Spain)
Tel. +34 948 186 610
http://www.sayer.es
CIF: B71070676

NITTA CASING INC.

141 SOUTHSIDE AVENUE
08807 BRIDGEWATER
NEW JERSEY (USA)

| FECHA | FACTURA | CLIENTE | N.I.F. | TELEFONO | PÁG. |
|---|---|---|---|---|---|
| 15/10/19 | 190099 | 43000026 | 22-3455324 | | 1 |

| CÓDIGO | DESCRIPCIÓN | UNIDADES | PRECIO | IMPORTE |
|---|---|---|---|---|
| VAR-MATERIALES | SUPPORTS | 1,000.00 | 1.2200 | 1,220.00 |
| VAR-MATERIALES | BELTS T20-50 58M | 2.00 | 6,390.0000 | 12,780.00 |
| VAR-MATERIALES | BELTS T20-50 73M | 1.00 | 7,886.0000 | 7,886.00 |
| VAR-MATERIALES | TRANSPORT | 1.00 | 1,615.6800 | 1,615.68 |
| | Project 191024 / 191027 | | | |

| TOTAL IMP. | % | IMPORTE | BASE | % | IVA | % | REC. | TOTAL FRA. € |
|---|---|---|---|---|---|---|---|---|
| 23,501.68 | | | 23,501.68 | | | | | 23,501.68 |
| | | | | | | | | |
| | | | | | | | | |

Forma de Pago: Transferencia.
    Banco: CAJA RURAL DE NAVARRA
        3008 0232 56 2589******

Vencimientos:
15/10/19
23,501.68

Los datos facilitados por usted, se incorporarán y serán tratados en un fichero, con la finalidad de atender la presente relación.
Los datos son confidenciales y de uso exclusivo de SAYER TECHNOLOGIES S.L., Responsable del fichero.
SAYER TECHNOLOGIES S.L., tiene domicilio en Polígono Ipertegui II, nave 33/35 - 31160 Orcoyen (Navarra). Si lo desea puede acceder,
cancelar y oponerse al tratamiento de dichos datos mediante escrito dirigido a la dirección anteriormente citada.

P00015



**SAYER**
technologies S.L.

Polígono Ipertegui II, Nave 33-35
31160 Orcoyen (Navarra - Spain)
Tel. +34 948 186 610
http://www.sayer.es
CIF: B71070676

NITTA CASING INC.

141 SOUTHSIDE AVENUE
08807 BRIDGEWATER
NEW JERSEY (USA)

| FECHA | FACTURA | CLIENTE | N.I.F. | TELEFONO | PÁG. |
|---|---|---|---|---|---|
| 26/11/19 | 190118 | 43000026 | 22-3455324 | | 1 |

| CÓDIGO | DESCRIPCIÓN | UNIDADES | PRECIO | IMPORTE |
|---|---|---|---|---|
| VAR-MATERIALES | UPPER GUIDE BLOCK | 5,000.00 | 0.2000 | 1,000.00 |
| VAR-MATERIALES | LOWER GUIDE BLOCK | 5,000.00 | 0.2000 | 1,000.00 |
| VAR-MATERIALES | SCREW GUIDE | 5,000.00 | 0.1500 | 750.00 |
| VAR-MATERIALES | SUPPORTS | 3,000.00 | 1.2200 | 3,660.00 |
| VAR-MATERIALES | SCREW (SUPPORTS) | 3,000.00 | 0.3400 | 1,020.00 |
| VAR-MONTAJES | TRANSPORT | 1.00 | 934.7400 | 934.74 |
| | Proyect 191035 | | | |

| TOTAL IMP. | % | IMPORTE | BASE | % | IVA | % | REC | TOTAL FRA. (€) |
|---|---|---|---|---|---|---|---|---|
| 8,364.74 | | | 8,364.74 | | | | | 8,364.74 |
| | | | | | | | | |
| | | | | | | | | |

Forma de Pago: Transferencia
    Banco: CAJA RURAL DE NAVARRA
        3008 0232 56 2589******

Vencimientos:
26/11/19
8,364.74

Los datos facilitados por usted, se incorporarán y serán tratados en un fichero, con la finalidad de atender la presente relación.
Los datos son confidenciales y de uso exclusivo de SAYER TECHNOLOGIES S.L., Responsable del fichero.
SAYER TECHNOLOGIES S.L. tiene domicilio en Polígono Ipertegui II, nave 33/35 + 31160 Orcoyen (Navarra). Si lo desea puede acceder,
cancelar y oponerse al tratamiento de dichos datos mediante escrito dirigido a la dirección anteriormente citada.

P00016

**EXHIBIT E**



**Ernesto Garrido - Sayer Technologies**

De:                    Rod Moore <moore@nittacasings.com>
Enviado el:            Jueves, 19 de diciembre de 2019 13:07
Para:                  Ernesto Garrido - Sayer Technologies; Thomas Golizio
Asunto:                RE: PENDING PAYMENT

I just spoke to our finance department and they will be sending payment.

Also, I wanted to let you know that we have been purchased by Viscofan.

*Rod Moore*
CEO, President

# ✿ Nitta Casings Inc.

141 Southside Avenue
Bridgewater, NJ  08807
(856) 296-4292 Cell
www.nittacasings.com
moore@nittacasings.com

From: Ernesto Garrido - Sayer Technologies <egarrido@sayer.es>
Sent: Thursday, December 19, 2019 6:50 AM
To: Rod Moore <moore@nittacasings.com>
Subject: [EXTERNAL] Fwd: PENDING PAYMENT

Dear Rod,

We have not yet received the payment agreed with you.

Please confirm that it has been done.

Best Regards



Ernesto Garrido Zúñiga
Director Gerente
egarrido@sayer.es
Mobile: +34 607 039 904

SAYER Technologies, S.L.
Polígono Ipertegui II, Nave 33-35

1

**EXHIBIT F**



**Ernesto Garrido - Sayer Technologies**

| | |
|---|---|
| **De:** | Rod Moore <moore@nittacasings.com> |
| **Enviado el:** | viernes, 27 de diciembre de 2019 13:24 |
| **Para:** | Ernesto Garrido - Sayer Technologies |
| **CC:** | Thomas Golizio; Soroa, Jaime |
| **Asunto:** | RE: PENDING PAYMENT |

Good Morning

We normally cut checks Friday's but was informed by my finance department that there was request by Viscofan to hold off until they review everything.

As you might recall I had informed you we had been purchased by Viscofan and Jaime Soroa has been named the president of the company. Going forward you need to direct all emails to him and I have put him on this email.

Best Regards

*Rod Moore*

**✿✿Nitta Casings Inc.**
141 Southside Avenue
Bridgewater, NJ  08807
(856) 296-4292 Cell
www.nittacasings.com
moore@nittacasings.com

**From:** Ernesto Garrido - Sayer Technologies <egarrido@sayer.es>
**Sent:** Thursday, December 26, 2019 1:43 AM
**To:** Rod Moore <moore@nittacasings.com>
**Cc:** Thomas Golizio <tgolizio@nittacasings.com>
**Subject:** [EXTERNAL] RE: PENDING PAYMENT

Good morning Mr.Rod, as of today we have not received the payment, could you please confirm me when you made the deposit.

Best regards



Ernesto Garrido Zúñiga
  Director Gerente/ General Manager
egarrido@sayer.es
Mobile: +34 607 039 904

SAYER Technologies, S.L.
Polígono Ipertegui II, Nave 33-35

1

P00028

**EXHIBIT G**





000247356



NICHOLAS G. CHARLES COLOMINA

Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
#5902

CLASE 8.ª

**CARLOS HERMIDA SANTOS**
Court representative
C/ SANGÜESA 4 4º C 31003 PAMPLONA
------------------------
Tel. +34 948 23 81 12    Fax +34 948 23 76 82
Email: chermidasantos@gmail.com

**Mr. José Mari Azuar Auzmendi
Attorney**

| | |
|---|---|
| Your ref. | : - |
| My ref. | : A-13324 |
| Client | : SAYER TECHNOLOGIES, S.L. |
| Opposing party | : VISCOFAN, S.A. |
| Procedure | : ORDINARY PROCEDURE 444/2016 |
| Court | : COMMERCIAL COURT NO. I OF PAMPLONA |
| Date notified | : MARCH 12, 2019 |

Pamplona, March 11, 2019

Dear colleague,

Please find enclosed a literal copy of the judgment issued, dismissing the claim lodged by the opposing party.

Yours faithfully,

[signed]

Carlos Hermida Santos
Court representative





**CLASE 8.³**

000247357

NICHOLAS G. CHARLES COLOMINA
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902

[Translator's note: the following pages of the original document show the Spanish coat of arms along with the text "ADMINISTRATION OF JUSTICE" in the top left corner; a table in the left margin with the text "Electronic document guaranteed with e-signature. Verification address: https://sedejudicial.navarra.es/ – Secure Verification Code: 3120147001-f6c4a1c9cbb95e43b587b619f9c5e801hug3AA== – Signed by: IKERNE AZNAR MALO – Date and time: 03/07/2019 22:32"; and each page is numbered from 1 to 9 in the bottom right corner.]

Section: B2

**Commercial Court no. 1**
Plaza del Juez Elío/Elío Epailearen Plaza
Planta 4 Solairua
Pamplona/Iruña  31011   ;
Tel.: +34 848 42 42 62 - FAX +34 848 42 42 83
Email: juzmerca@navarra.es
TX004

**Procedure: ordinary procedure**
**Procedure no.: 0000444/2016**
**(specify all DATA when replying)**
General ID no.: 3120147120160000394
Subject: unfair competition
**Resolution: judgment 000040/2019**

### JUDGMENT NO. 000040/2019

In PAMPLONA/IRUÑA, on March 7, 2019.

The honorable Ms. Ikerne Aznar Malo, Judge of Commercial Court no. 1 of Pamplona has heard the proceedings of ordinary trial 444/16, wherein the plaintiff is VISCOFAN, S.A., represented by the court representative Mr. Araiz and defended by the attorney Mr. Gonzalez Navarro and the defendant is SAYER TECHNOLOGIES, S.L., MR. VIDAL ERNESTO GARRIDO ZUÑIGA, MR. SANTOS LEGAZ AZCONA, and MR. CARLOS MUGICA PEREZ DE ALBENIZ, represented by the court representative Mr. Hermida and defended by the attorney Mr. Aznar Auzmendi, and has issued this resolution pursuant to the provisions of article 117 of the Spanish Constitution and on the basis of the following:

### BACKGROUND TO THE FACTS

**ONE** – On November 2, 2016, the plaintiff filed a claim for an ordinary procedure in which, after citing the facts and legal grounds deemed applicable, said party concluded calling for a judgment to be passed, according to which:





000247358

NICHOLAS G. CHARLES COLOMINA
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902



**CLASE 8.ª**

1. It should be declared that the defendants had engaged in acts of unfair competition involving disclosure of trade secrets, improper exploitation of third-party efforts and bad faith, and causing this party specific and current detriment, the quantification of which shall be defined throughout the procedure.

2. The defendants should be sentenced to be held by and be bound by such a declaration.

3. The defendants should be sentenced:

- To immediately cease to engage in the manufacture, usage, offering to third parties, placing on the market, marketing, export, and simple possession of the plans, parts, and machinery of any kind that has been built and manufactured by the defendants using the proprietary technology of VISCOFAN, S.A., at least and as a minimum the plans, parts, and machinery detailed in the expert report enclosed by the plaintiff.

- To refrain from carrying out any of the acts mentioned above.

- To withdraw from the market all plans, parts, and machinery manufactured using the technology pertaining to VISCOFAN, S.A. – at least and as a minimum the plans, parts, and machinery detailed in the expert report enclosed by the plaintiff – which have been placed on the market by SAYER and have not been acquired by third parties in a bona fide manner. They should be handed over to the plaintiff with a precise identification of their origin, along with all the promotional material and information of any kind intended to promote the acts mentioned above.

- To jointly and severally compensate VISCOFAN, S.A. for the damages suffered, whereby the defendants should be jointly and severally required to pay the plaintiff the amount at which the earnings obtained by the company SAYER – in its unlawful exploitation of the technology of VISCOFAN, S.A. – have been quantified, as certified during the evidence stage and based on the grounds set out, along with the consequential damages ultimately caused, which shall be certified throughout these proceedings.

**TWO** – By means of the Court Order dated January 27, 2017, the claim was admitted to due process with notice being served on the defendants to respond within twenty days.

 

000247359

NICHOLAS G. CHARLES COLOMINA

Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902



CLASE 8.ª

**THREE** – Acting on behalf and in representation of the defendants, the court representative Mr. Hermida responded on March 9, 2017, seeking the full dismissal of the claim.

**FOUR** – On December 13, 2017 a preliminary hearing was held in which the parties put forward their proposals for the means of evidence which they deemed suitable – after having verified the validity of the suit – and the honorable judge admitted the means of evidence that are set out in audiovisual format.

**FIVE** – The hearing held on June 28, 2018 was attended by the parties who were in attendance – duly represented and defended – and, after examining the evidence and hearing the closing statements, the proceedings were ready to issue a judgment.

### LEGAL GROUNDS

**ONE** – The plaintiff, a company dedicated to the manufacture of all types of meat wrappings (cellulose, collagen, fibrous, and plastic) for charcuterie and other applications, is bringing an action for unfair competition against the defendants based on the consideration that they – as suppliers of the machinery designed by the plaintiff – benefitted from knowledge of the technology that the plaintiff had been developing over the course of decades and which affords it competitive advantages in the sector, and that they have used this knowledge to place on the market machinery using the very technology developed by VISCOFAN, S.A., disclosing trade secrets and breaching confidentiality.

To be precise, in the claim it is pointed out that in order to develop the aforesaid technology, consisting of a host of machines optimizing the production process and which has not been patented by the plaintiff, VISCOFAN, S.A. has been working alongside a range of suppliers, including the company BILDU LAN, dedicated to the manufacture of special machinery tailored specifically for industrial processes, with which it signed several confidentiality agreements to protect its innovations in the sector. As a result, said company was required to uphold secrecy in relation to all information concerning VISCOFAN, S.A. (with particular emphasis on plans and





000247360

NICHOLAS G. CHARLES COLOMINA

Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
§ 5902

CLASE 8.ª

parts), prohibiting the company mentioned from being able to use said information for its own benefit or that of third parties, whereby said company was required to return or destroy the information used once the professional assignments had been completed.

In 2011, the defendant company – SAYER TECHNOLOGIES, S.L. – was set up with a similar corporate purpose to that of BILDU LAN, and forming part of said defendant company are: the former managing director of BILDU LAN, the defendant Mr. Garrido; the deputy manager of BILDU LAN until October 2012, the defendant Mr. Legaz; and the individual who was formerly a sales representative for BILDU LAN until the same date, Mr. Múgica.

VISCOFAN, S.A. cooperated with SAYER on certain work, for which on December 10, 2012 a confidentiality agreement was signed with said company. This cooperation ended in 2015.

The plaintiff maintains that those individuals, and the company they are part of, used information about the production processes and novel technology developed by VISCOFAN, S.A. – which they were aware of due to belonging to BILDU LAN – in order to copy its technology and offer it to third parties.

**TWO** – The first issue that should be emphasized relates to the alleged expiry of the statute of limitations on the action exercised.

Article 35 of the Spanish Act on Unfair Competition – Act 3/1991, of January 10 – stipulates that the statute of limitations on actions brought owing to unfair competition expires upon one year elapsing from the point when they could be exercised and the party with legal standing being made aware of the person who committed the act of unfair competition; also, in any event, it expires once three years have elapsed after the conduct ceases.

In the judgment issued in the plenary session on January 21, 2009, establishing the doctrine applicable to the matter, the Supreme Court stipulates that "*with regard to the construal and application of article 21 of the Spanish Act on Unfair Competition, in which under the title "Statute Expiry" it is stipulated that "the statute of limitations on actions brought owing to unfair competition expires upon one year elapsing from the point when they could be exercised and the party with legal standing being made aware of the person who committed the act of unfair competition; also, in any event, it expires once three years have elapsed after the*




000247361

NICHOLAS G. CHARLES COLOMINA
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902



CLASE 8.ª

conduct ceases", and more specifically with regard to the application of these two timeframes --
statute expiry and exclusionary -- to an alleged act of unfair competition of continuing duration.

The description of continuing duration of the conduct under dispute is accepted by the
parties, and there appears to be no doubt arising over the fact that the complaint relates to the
manufacture and marketing of a backpack spray pump or sprayer which, in the opinion of the
plaintiff, is identical to another over which it has an operating license pursuant to an agreement
signed with the owning company.

The application of article 21 of the SAUC does not give rise to particular complexities
concerning the calculation of the statutes of limitations and exclusionary timeframes it
establishes, when it comes to isolated (clearly individualized) acts, nor does it practically do so
when, despite there being several acts, these are repeated over time in an intermittent or non-
continual manner, meaning that a segmentation may be observed between the instances of
unlawful conduct. The problem arises in relation to acts in a continuous chain of succession,
which either refer to a continuing activity -- involving a single action -- or to a permanent
activity, which persists at the time the action is lodged. For the former criterion, the calculation
-- dies a quo -- should begin at the time the rule refers to, regardless of the instantaneous or
long-lasting nature of the act of unfair competition; in other words, from the point at which
actions could be lodged, provided the person who committed the act of unfair competition was
known -- a period of one year; or, in the other instance, from the point when the initial act was
carried out -- a period of three years. For another perspective, the time does not begin to elapse
when it refers to long-lasting acts, as long as the unlawful conduct still applies. It is necessary
to refer to the delivery of the outcome or the ceasing of the unlawful action, meaning that until
the legal situation reverts back to normality, the period does not elapse.

There are varying reasons to back both opinions. In support of the former, one may assert
the word-for-word text of the legal rule of legal certainty, which is not distinguished, while with
the other criterion it is the case that there is no expiry of the statute of limitations on the action
calling for cessation, enabling abusive situations inasmuch as the party with standing to pursue
the action can wait at said party's convenience for an "advantageous" circumstance upon which
to end the activity, or can take advantage of investments made by a competitor to secure
revenue; and this is even more unfair in instances that are lacking in sufficient clarity as to



CLASE 8.ª





000247362

NICHOLAS G. CHARLES COLOMINA

Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902



whether an unlawful act applies. Contrariwise, in support of the latter criteria, reference is made to the terminology of the rule with regard to the theory of "execution" – the case law passed in relation to "continuing damage" in application of articles 1968.2 and 1969 of the Spanish Civil Code (LEG 1889, 27) – according to which it is not possible to firmly establish a right to disruption (a subject which is also of particular interest concerning the action negating immissions); and the stringent criterion would lead to unfair conduct becoming normal or would lead to market distortion being tolerated, and an (inconceivable) sort of right to unfairly compete simply on the basis of time elapsing would be established. Moreover, it is highlighted that the legally protected right is competition as a legal construct and that the interests safeguarded are those of all parties taking part in the market, including the interests of consumers and common interest. Other reflections are added to this, such as those relating to the fact that the extinctive expiry must be subject to restricted, or at least strict, interpretation; and that the potential abusive situations referred to by the supporters of the other criterion find in the doctrine mitigating factors that render ineffective the abuse of the right and the requirement for good faith in the exercise of rights, with the specific perspective of loss of the right owing to unfair delay ("verwirkung").

The criterion of this Chamber was not undisputed because, although recently much more homogeneity has been observed towards the latter criterion (judgments of June 16, 2000 (case law collections [CC] 2000, 5288); May 30, 2005 (CC 2005, 4245); December 29, 2006, June 29, and November 23, 2007 (CC 2007, 8516)) there were judgments, such as that issued on July 25, 2002 (CC 2002, 7688), which followed the former criterion. As a result of this situation, the Provincial Courts issued resolutions that upheld contradicting case law, giving rise to the patent need to adopt a joined-up criterion. Hence, several matters were submitted to the plenary session of the Chamber, which in its meeting on December 17, 2009, passed the decision to apply the latter interpretive approach, which is deemed as most suited with regard to the doctrine on execution and the nature of the continuing and permanent acts. What is more, this approach benefits from the greatest backing in case law. In the period since drafting this resolution, Act 29/2009, of December 30 (Chronological Legislative Digest [CLD] 2009, 2633) (Official State Gazette of December 31) has been enacted, amending Act 3/1991, of January 10 (CLD 1991, 71) on Unfair Competition, stipulating that "the statute of limitations on actions





000247363



NICHOLAS G. CHARLES COLOMINA

Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902



CLASE 8.ª

*brought owing to unfair competition established in article 32 expires upon one year elapsing from the point when they could be exercised and the party with legal standing being made aware of the person who committed the act of unfair competition; also, in any event, it expires once three years have elapsed after the conduct ceases", and this latter subparagraph is what lends backing to the stance largely adopted by the Chamber.*

*As a result of the foregoing, it is proper to uphold the sole reason for the appeal to the Supreme Court and to render null and void the judgment under appeal, setting out as case law doctrine that relating to the fact that "when it relates to acts of unfair competition of continuing duration, the statute of limitations concerning the actions envisaged in article 21 of Act 3/1991 on Unfair Competition does not begin to elapse until the unlawful conduct has ceased."*

In the case of this procedure, the only conclusion that may be reached is that the action being exercised is statute barred since more than one year has elapsed since the action could be exercised without it being observed that continuing unfair conduct exists. To this end, it is necessary to accurately determine what conduct the defendant is being attributed with, which is simply the use of knowledge acquired during its commercial relationship with VISCOFAN, S.A. relating to said company's plans, machinery, and production processes to market machines copied from the plaintiff. In this respect, the fact that an order for pulleys was placed in February 2016 with the company DINAMICA (exhibit no. 24 of the claim) and in November 2015 an order for belts was placed with the company AMMERAAL BELTECH, S.A. (exhibit no. 28 of the claim) is of no relevance in order for it to be deemed that we are faced with a continuing act given that these are instrumental acts to enable SAYER TECHNOLOGIES, S.L. to manufacture a machine (a knotting machine) which it is stated the defendants copied and sought to sell. Nevertheless, the fact that SAYER TECHNOLOGIES, S.L. sought to sell one or several machines of similar specifications to that developed by VISCOFAN, S.A. is a fact that has been known by the plaintiff since February 23, 2015, as said party states and attests. Indeed, enclosed as exhibit no. 17 to the claim is the email sent by the international sales representative Mr. Horwath in which he reports to Mr. Kamis (of VISCOFAN, S.A.) that both himself and his colleague Mr. Kollross have been contacted by SAYER TECHNOLOGIES, S.L. to place on the market a machine which, in his opinion, bears highly similar features to the knotting machine developed by VISCOFAN, S.A. From this point, the plaintiff is already






**000247364**

NICHOLAS G. CHARLES COLOMINA

Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902

**CLASE 8.ª**

accepting this circumstance and is fully aware of the alleged activity carried out by SAYER TECHNOLOGIES, S.L., as certified by exhibit no. 18 of the claim, which is a notary record by means of which VISCOFAN, S.A. serves notice on SAYER TECHNOLOGIES, S.L. – through its representative Mr. Legaz – with a letter calling on the company to refrain from marketing the knotting machines and to hand over all documentation and information relating to the designs, the technology, and the know-how pertaining to the plaintiff. Following that, there is only reference to a shipment of containers by SAYER TECHNOLOGIES, S.L. to Nitta group, but under no circumstances has it been certified that what those containers held was technology built by SAYER TECHNOLOGIES, S.L. copied from technology pertaining to VISCOFAN, S.A.

In short, the period of one year from the point at which the action could be exercised had elapsed because the plaintiff was aware of the activity of SAYER TECHNOLOGIES, S.L. when it lodged a complaint to the Pre-trial Investigation Court on March 20, 2016, which could have suspended the elapsing of the statute of limitations.

**THREE** – The procedural costs in this case must be imposed on the plaintiff, pursuant to the provisions of article 394 of the Spanish Act on Civil Procedure.

## RULING

I SHOULD AND I DO DISMISS the action lodged by VISCOFAN, S.A., represented by the court representative Mr. Araiz, against SAYER TECHNOLOGIES, S.L., MR. VIDAL ERNESTO GARRIDO ZUÑIGA, MR. SANTOS LEGAZ AZCONA, and MR. CARLOS MUGICA PEREZ DE ALBENIZ, declaring that the action is statute barred.

All the foregoing shall be in addition to imposing the procedural costs on the plaintiff.

Against this resolution an APPEAL may be lodged before this court in writing within a period of TWENTY DAYS counting from the day after the date on which notification is served, pursuant to the provisions of articles 458 *et seq.* of the Spanish Act on Civil Procedure. When lodging the appeal it is necessary to set out the pleadings on which the challenge is founded, as well as quoting the resolution under appeal and the decisions it is challenging.



CLASE 8.ª



000247365

NICHOLAS G. CHARLES COLOMINA
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902



In order for the appeal to be admitted, upon lodging the appeal it will be necessary to assign by way of deposit 50 euros into the Deposit and Apportionment Account of this Court held at BANCO SANTANDER under number 3188000000044416, specifying "recurso de apelación" (appeal), by itemized allocation, which must be certified upon lodging the appeal pursuant to the fifteenth additional provision of the Spanish Organic Act on the Judiciary. Any appeal for which the deposit has not been consigned shall not be admitted to due process.

Therefore, this is my decision — a certified copy of which shall be issued to be enclosed with the proceedings — which I adjudge and order, and I hereto sign.

The Judge



CLASE 8.ª



000247366

---

### CERTIFICATION OF THE SWORN TRANSLATOR-INTERPRETER

*Mr Nicholas George Charles Colomina, Sworn Translator-Interpreter of English appointed by the Spanish Ministry of Foreign Affairs, European Union and Cooperation, certifies that the foregoing is a true and complete translation into English of the original document drawn up in Spanish.*

*In Barcelona on August 30, 2023.*

********************

### CERTIFICACIÓN DEL TRADUCTOR-INTÉRPRETE JURADO

*Don Nicholas George Charles Colomina, Traductor-Intérprete Jurado de Inglés nombrado por el Ministerio de Asuntos Exteriores, Unión Europea y Cooperación, certifica que la que antecede es traducción fiel y completa al inglés de un documento redactado en español.*

*En Barcelona, a 30 de agosto de 2023.*

---

| Signature/Firma: | Stamp/Sello: |
|---|---|
|  | NICHOLAS G. CHARLES COLOMINA |
|  | Traductor-Intérprete Jurado de Inglés |
|  | Sworn Translator-Interpreter of English and Spanish |
|  | # 5902 |

**CARLOS HERMIDA SANTOS**
Procurador de los Tribunales
C/ SANGÜESA 4 4º C 31003 PAMPLONA
------------
Tels. 948.23.81.12  Fax. 948.23.76.82
E-mail chermidasantos@gmail.com

D. José Mari Aznar Auzmendi
Abogado

Su Ref.      : -
Mi Ref.      : A-13324
Cliente      : SAYER TECHNOLOGIES, S.L.
Contrario    : VISCOFAN, S.A.
Procedim.    : ORDINARIO 444/2016
Juzgado      : MERCANTIL Nº 1 DE PAMPLONA
Fecha notif  : 12/03/2019

Pamplona, 11 de marzo de 2019

Estimado Compañero:

Adjunto te remito copia literal de la Sentencia dictada, desestimando la demanda interpuesta de contrario.

Un cordial saludo,

Carlos Hermida Santos
Procurador

NICHOLAS G. CHARLES COLOMINA
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5992

3 0 AUG 2023



Juzgado de lo Mercantil Nº 1                    Sección: B2
Plaza del Juez Elío/Elío Epailearen Plaza,      Procedimiento: Procedimiento Ordinario
Planta 4 Solalrua                               Nº Procedimiento:    0000444/2016
Pamplona/Iruña  31011                           (Indicar TODOS los datos al contestar)
Teléfono: 848 42 42 62 - FAX 848 42 42 63       NIG:      3120147120160000394
Email:    juzmerca@navarra.es                   Materia:     Competencia desleal
TX004                                           Resolución:   Sentencia 000040/2019

Firmado por:
IKERNE AZNAR MALO

Fecha y hora: 07/03/2019 22:32

Doc. Electrónico garantizado con firma electrónica. Dirección verificación:https://sede.judicial.navarra.es/

Código Seguro de Verificación 3120147001-f6a4a1c5cbdb5a42b58b7b519a9c6d2f1lug3AA==

SENTENCIA nº 000040/2019

En PAMPLONA/IRUÑA, a siete de marzo de dos mil diecinueve.

Vistos por la Ilma. Dña. Ikerne Aznar Malo, Juez del Juzgado de lo Mercantil nº1 de Pamplona, los autos de Juicio Ordinario 444/16, siendo demandante VISCOFAN S.A. representada por el procurador Sr. Araiz y defendida por el Letrado Sr.Gonzalez Navarro y como demandada SAYER TECHNOLOGIES S.L., DON VIDAL ERNESTO GARRIDO ZUÑIGA, DON SANTOS LEGAZ AZCONA y DON CARLOS MUGICA PEREZ DE ALBENIZ, representados por el Procurador Sr.Hermida y defendido por el Letrado Sr. Aznar Auzmendi, ha dictado la presente resolución, conforme a lo dispuesto en el artículo 117 de la C.E., y sobre la base de los siguientes:

ANTECEDENTES DE HECHO

PRIMERO.- Por la parte actora se interpuso en fecha 2 de noviembre de 2016, demanda de juicio ordinario en la que, tras aducir los hechos y fundamentos de derecho que estimaba de aplicación, terminaba suplicando se dictase sentencia por la que:

1. Se declare la realización por parte de los demandados de actos de competencia desleal de violación de secretos industriales, aprovechamiento indebido del esfuerzo ajeno y mala fe y la causación a esta parte de perjuicios actuales y ciertos, cuya cuantificación se efectuará a lo largo del procedimiento.

NICHOLAS G. CHARLES COLOMINA                    1
· Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish    3 0 AUG 2023
# 5902

2. condene a los demandados a estar y pasar por dicha declaración.

3. condene a los demandados:

, a cesar de forma inmediata la fabricación, utilización, ofrecimiento a terceros, introducción en el comercio, comercialización, exportación y mera posesión de los planos, piezas y maquinas de cualquier tipo que hayan sido construidos y fabricados por los demandados con la tecnología reservada de VISCOFAN S.A., al menos y como mínimo los planos, piezas y maquinarias reflejadas en el informe pericial acompañado por la actora.

. Se abstenga de llevar a cabo ninguno de los actos expresados anteriormente.

. Retire del mercado cuantos planos, piezas y maquinas fabricadas con la tecnología de VISCOFAN S.A. – al menos y como mínimo los planos, piezas y maquinarias reflejadas en el informe pericial acompañado por la actora– que hayan sido puestas en el mercado por SAYER y no hayan sido adquiridas por terceros de buena fe, que habrán de ser entregados a la demandante con identificación exacta de su procedencia, así como todo tipo de material promocional e informaciones de cualquier tipo destinado a promover los actos expresados anteriormente.

. Indemnizar solidariamente a VISCOFAN S.A. por los daños y perjuicios sufridos, debiendo pagar solidariamente los demandaos a la demandante la suma que, según se acredite en fase de prueba y con las bases que se han expuesto, importen los beneficios obtenidos por la compañía SAYER en su explotación ilícita de la tecnología VISCOFAN S.A., así como el daño emergente finalmente causado, que se acreditará a lo largo del procedimiento.

SEGUNDO.- Por Auto de fecha 27 de enero de 2017, se admitió a trámite la demanda, emplazando a los demandados para su contestación en veinte días.

NICHOLAS G. CHARLES COLOMINA

Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902

2

3 0 AUG 2023

**TERCERO.-** Por el Procurador Sr.Hermida, en nombre y representación de los demandados se contesta en fecha 9 de marzo de 2017, en el sentido de solicitar la íntegra desestimación de la demanda.

**CUARTO.-** Con fecha 13 de diciembre de 2017 se celebró la Audiencia Previa, en la que, tras comprobar la subsistencia del litigio, las partes propusieron los medios de prueba que estimaron pertinentes, admitiéndose por S.Sª, las que constan en soporte audiovisual.

**QUINTO.-** Al acto de la vista, celebrada el día 28 de junio de 2018, acudieron las partes personadas, debidamente representadas y defendidas, y, tras la práctica de la prueba y la formulación de conclusiones finales, quedaron los autos vistos para sentencia.

FUNDAMENTOS DE DERECHO

**PRIMERO.-** Ejercita la parte actora —mercantil dedicada a la fabricación de todo tipo de envolturas cárnicas (celulósica, colágeno, fibrosa y plástico) para embutidos u otras aplicaciones— acción de competencia desleal frente a los demandados en la consideración de que los mismos, que en su condición de proveedores de la maquinaria diseñada por la actora, tuvieron conocimiento de la tecnología que esta ha venido desarrollando a lo largo de décadas y que le dota de ventajas competitivas en el sector, han ofrecido en el mercado maquinaria con la misma tecnología desarrollada por VISCOFAN S.A., violando los secretos industriales y el deber de confidencialidad.

En concreto se señala en el escrito de demanda que para el desarrollo de la mencionada tecnología, consistente en un conjunto de máquinas que optimizan el proceso productivo — y que no ha sido patentada por la misma— VISCOFAN S.A. ha venido colaborando con diferentes proveedores entre los que se encontraba la mercantil BILDU LAN, dedicada a la fabricación de maquinaria especial a medida para procesos industriales, con quien suscribió varios acuerdos de confidencialidad con la finalidad de proteger sus innovaciones en el sector, quedando la citada mercantil obligada a mantener en secreto toda la información referente a VISCOFAN S.A. (con especial hincapié en planos y

Firmado por:
IKERNE AZNAR MALO

Fecha y hora: 07/03/2019 22:32

Doc. Electrónico garantizado con firma electrónica. Dirección verificación:https://sede.judicial.navarra.es/

Código Seguro de Verificación 3120147001-f0e4a1c9cbdb99e430d287e81980c5e801hug3AA==

ADMINISTRACIÓN DE JUSTICIA

NICHOLAS G. CHARLES COLOMINA       3

Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902

3 0 AUG 2023

piezas), vedándole la posibilidad de utilizar dicha información en beneficio propio o de tercero y estando obligada a devolver o destruir la información utilizada una vez acabados los encargos profesionales.

En el año 2011 se constituyó la empresa demandada –SAYER TECHNOLOGIES S.L.– con un objeto social semejante al de BILDU LAN y del que forman parte el antiguo Director Gerente de BILDU LAN –el demandado Sr.Garrido –, el Adjunto Gerente de BILDU LAN hasta octubre de 2012 –el demandado Sr.Legaz – y el demandado Sr.Múgica que fue comercial de BILDU LAN hasta la misma fecha.

VISCOFAN S.A. colaboró con SAYER en algunos trabajos por lo que también se firmó con dicha empresa, el 10 de diciembre de 2012, un acuerdo de confidencialidad, cesando dicha colaboración en el año 2015.

Sostiene la actora que dichas personas, y la mercantil en la que se integran, utilizaron la información sobre los procesos de producción y tecnología novedosa desarrollada por VISCOFAN S.A. que conocieron por su pertenencia a BILDU LAN, para copiar su tecnología y ofertarla a terceros.

SEGUNDO.- La primera cuestión sobre la que debe incidirse es la relativa a la alegada prescripción de la acción que se ejercita.

Señala el artículo 35 de la Ley de Competencia Desleal, Ley 3/1991, de 10 enero, que las acciones de competencia desleal prescriben por el transcurso de un año desde el momento en que pudieron ejercitarse y el legitimado tuvo conocimiento de la persona que realizó el acto de competencia desleal; y, en cualquier caso, por el transcurso de tres años desde el momento de la finalización de la conducta.

El Tribunal Supremo, en sentencia del Pleno de 21 de enero de 2009 que fija la doctrina aplicable en la materia, señala que *"sobre la interpretación y aplicación del art. 21 de la Ley de Competencia Desleal en el que bajo el título "Prescripción" se establece que "las acciones de competencia desleal prescriben por el transcurso de un año desde el momento en que pudieron ejercitarse y el legitimado tuvo conocimiento de la persona que realizó el acto de competencia desleal; y, en cualquier caso, por el transcurso de tres años desde el momento de la realización del acto", y más en concreto sobre la aplicación de estos dos plazos, de*

Firmado por:
KEERNE AZNAR MALO

Fecha y hora: 07/03/2019 22:32

Doc. Electrónica garantizado con firma electrónica. Dirección verificación:https://sedejudicial.navarra.es/

Código Seguro de Verificación 51221470011f5e4e1c5b2b5be43b5627a51d9c5a601hug3AA==

NICHOLAS G. CHARLES COLOMINA                4
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902                                    3 0 AUG 2023



ADMINISTRACIÓN DE JUSTICIA

Firmado por:
KENNE AZNAR MALO

Fecha y hora: 07/03/2019 22:32

Doc. Electrónico garantizado con firma electrónica. Dirección verificación:https://sede.juridica.navarra.es/

Código Seguro de Verificación 312014770014fe4a1c5cbb5e43a5071b519bc5e601hqg3A4==

*prescripción y excluyentes, a un supuesto de acto de competencia desleal de duración continuada .*

*La calificación de duración continuada de la conducta controvertida es asumida por las partes, y no parece ofrecer duda en cuanto que la denuncia se refiere a la fabricación y comercialización de un pulverizador, o bomba rociadora, de mochila, que, a juicio de la parte actora, es idéntica a otra respecto de la que tiene licencia para explotar en virtud de un contrato con la empresa titular.*

*La aplicación del art. 21 LCD no suscita especiales dificultades, respecto del cómputo de los plazos prescriptivos y excluyentes que establece, cuando se trata de actos aislados -plenamente individualizados-, ni prácticamente tampoco cuando, aún habiendo pluralidad de actos, éstos se repiten en el tiempo con carácter discontinuo o intermitente, de modo que es apreciable fraccionamiento entre las conductas ilícitas. El problema se plantea en relación con actos de fractu sucesivo continuo, consistentes, bien en una actuación continuada, con unidad de acción, o en una actuación permanente, y que persiste al tiempo de la demanda. Para un primer criterio, el cómputo -"dies a quo"- debe comenzar en los momentos a que se refiere el precepto, con independencia del carácter instantáneo o duradero del acto de competencia desleal, es decir, desde que pudieron ejercitarse las acciones, siempre que se tuviere conocimiento de la persona que realizó el acto de competencia desleal -plazo de un año-, o en otro caso desde que se realizó el acto inicial -plazo de tres años-. Para otro modo de pensar, el tiempo no empieza a correr, cuando se trata de actos duraderos, mientras permanezca la conducta ilícita. Se exige estar a la producción del resultado o cese del acto ilícito, de manera que el plazo no corre mientras la situación jurídica no se restablezca.*

*Ambas opiniones tienen diversas razones de apoyo. En favor de la primera se invoca el texto literal del precepto legal -donde no se distingue-, la seguridad jurídica, y que con el otro criterio se produce una imprescriptibilidad de la acción de cesación y se facilitan situaciones abusivas en cuanto que el legitimado para perseguir el acto puede esperar a su conveniencia a una situación "propicia" para poner fin a la actuación, o a aprovechar las inversiones realizadas por el competidor para obtener un rédito; y ello resulta tanto más injusto en los supuestos no suficientemente*

NICHOLAS G. CHARLES COLOMINA
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902

3 0 AUG 2023

5

claros en relación con la existencia de la ilicitud. En sentido contrario - favorable al segundo criterio- se alude a la terminología del precepto en relación con la teoría de la "realización"; la doctrina jurisprudencial dictada sobre "el daño continuado" en aplicación de los arts. 1.968.2º y 1.969 CC ( LEG 1889, 27)   ; que no se puede consolidar un derecho a perturbar (tema también de especial interés en relación con la ación negatoria de las inmisiones); y que con el criterio estricto acabaría por sanarse conductas desleales o tolerarse la distorsión del mercado y se consolidaría una especie (inconcebible) de derecho a competir deslealmente simplemente a partir del transcurso del tiempo. Asimismo se pone de relieve que el bien jurídico protegido es la competencia como institución y que los intereses tutelados son los de todos los partícipes en el mercado, incluidos, entre otros, los de los consumidores, así como el interés general; y a ello se añaden otras reflexiones como las relativas a que la prescripción extintiva debe ser objeto de una interpretación restringida, o al menos estricto, y que las posibles situaciones abusivas a que se refieren los defensores del otro criterio tienen paliativos enervatorios en las doctrinas sobre el abuso del derecho y la exigencia de la buena fe en el ejercicio de los derechos, con la perspectiva específica de la pérdida del derecho por retraso desleal ("verwirkung").

El criterio de esta Sala no era pacífico pues aunque recientemente se ha observado un mayor grado de homogeneidad a favor del segundo criterio ( SS. 16 de junio de 2.000 ( RJ 2000, 5288) , 30 de mayo de 2.005 ( RJ 2005, 4245) , 29 de diciembre de 2.006, 29 de junio y 23 de noviembre de 2.007 ( RJ 2007, 8516) ), existían Sentencias, como la de 25 de julio de 2.002 ( RJ 2002, 7688)   , que seguían el primer criterio. Esta situación dio lugar a que las resoluciones de las Audiencias Provinciales mantengan una jurisprudencia contradictoria, y a la evidente necesidad, por consiguiente, de adoptar un criterio unificador. De ahí que se sometieran diversos asuntos al Pleno de la Sala que en su reunión de 17 de diciembre de 2.009 adoptó la decisión de aplicar la segunda orientación interpretativa, que se estima la más adecuada a la doctrina de la realización y a la naturaleza de los actos continuados y permanentes, y es, además, la que cuenta con un mayor apoyo doctrinal. En período de redacción de esta resolución se ha dictado la  Ley 29/2009, de 30 de

Doc. Electrónico garantizado con firma electrónica. Dirección verificación: https://sede.judicial.navarra.es/

Firmado por:
KIERNE AZNAR MALO

Fecha y hora: 07/03/2019 22:52

Código Seguro de Verificación 3122147001-f6e4a1 c5abb36e43b557b6498bd5e801fba9AA=

NICHOLAS G. CHARLES COLOMINA        6
Traductor-Intérprete Jurado de Inglés    3 0 AUG 2023
Sworn Translator-Interpreter of English and Spanish
# 5902



ADMINISTRACIÓN
DE JUSTICIA

Firmado por:
KEENE AZNAR MALO

Fecha y hora: 07/03/2019 22:52

Código Seguro de Verificación: 31201470014f64a1c5cbdd656e63b587b8f1d6e5a801fmg9AA==

Doc. Electrónico garantizado con firma electrónica. Dirección verificación/consulta desde jdesde/judicial.navarra.es/

diciembre ( RCL 2009, 2633) , (BOE 31 de diciembre ), que modifica la Ley 3/1991, de 10 de enero ( RCL 1991, 71) , de Competencia Desleal , estableciendo que "las acciones de competencia desleal previstas en el art. 32 prescriben por el transcurso de un año desde el momento en que pudieron ejercitarse y el legitimado tuvo conocimiento de la persona que realizó el acto de competencia desleal; y, en cualquier caso, por el transcurso de tres años desde el momento de la finalización de la conducta", inciso este último que otorga un respaldo a la postura adoptada mayoritariamente por la Sala.

Como consecuencia de lo expuesto procede estimar el único motivo del recurso de casación y anular la Sentencia recurrida, recogiendo como doctrina jurisprudencial la de que "cuando se trata de actos de competencia desleal de duración continuada la prescripción extintiva de las acciones prevista en el art. 21 LCD 3/1991 no comienza a correr hasta la finalización de la conducta ilícita".

En el caso de autos no puede sino concluirse que la acción que se ejercita se encuentra prescrita por transcurso de más de un año desde que la acción pudo ser ejercitada sin que quepa advertir la existencia de una conducta desleal continuada. Para ello es necesario fijar con precisión cuál es la conducta que se imputa a la parte demandada que no es sino la utilización de los conocimientos adquiridos durante su relación comercial con VISCOFAN S.A. acerca de los planos, maquinaria y procesos productivos de esta para comercializar máquinas copiadas a la actora. En este sentido el hecho de que en febrero de 2016 se encargara un pedido de poleas a la mercantil DINAMICA (doc nº24 demanda) y en noviembre de 2015, un pedido de bandas a la empresa AMMERAAL BELTECH S.A. (Doc nº 28 de la demanda) resulta irrelevante a los efectos de poder considerar que nos encontramos ante un acto continuado dado que se trata de actos instrumentales para la fabricación por parte de SAYER TECHNOLOGIES S.L. de una máquina (la de nudos) que se afirma se copió y se trató de vender por parte de los demandaos. Sin embargo, que SAYER TECHNOLOGIES S.L. pretenda vender una o varias máquinas de características similares a la desarrollada por VISCOFAN S.A. es conocido por la actora desde el 23 de febrero de 2015, según la misma afirma y acredita. Y así obra como documento nº 17 de la demanda el mail remitido

NICHOLAS G. CHARLES COLOMINA

Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902

3 0 AUG 2023

7

por el comercial internacional, Sr.Horwath en el que se da cuenta al Sr.Kamis (de VISCOFAN S.A.) de que tanto el como su compañero Sr.Kollross han sido contactados por SAYER TECHNOLOGIES S.L. para colocar en el mercado una máquina que, a su juicio, presenta caracteres muy similares a la máquina de nudos desarrollada por VISCOFAN S.A. Que ya desde ese momento la actora asume tal extremo y tiene pleno conocimiento de la presunta actividad llevada a cabo por SAYER TECHNOLOGIES S.L. lo acredita el documento nº18 de la demanda que es un Acta notarial por medio del cuál VISCOFAN S.A. notifica a SAYER TECHNOLOGIES S.L., por medio de su representante Sr.Legaz, una carta en la que se le requiere para que se abstenga de comercializar las maquinas de nudos y entreguen toda la documentación e información que esté relacionada con los diseños, la tecnológica y el Know-how de la actora. Tras ello únicamente se apunta a un envío de contenedores por parte de SAYER TECHNOLOGIES S.L. al grupo Nitta, pero en modo alguno queda acreditado que lo que había en dichos contenedores fuera tecnología construida por SAYER TECHNOLOGIES S.L. copiada de la de VISCOFAN S.A.

En definitiva había transcurrido el plazo de un año desde que la acción pudo ser ejercitada por haber tenido conocimiento la parte actora de la actividad de SAYER TECHNOLOGIES S.L. cuando en fecha 20 de marzo de 2016 se presentó denuncia ante el Juzgado de Instrucción, lo que hubiera podido interrumpir la prescripción.

**TERCERO.-** Las costas del presente procedimiento deben imponerse a la parte actora conforme a lo dispuesto en el artículo 394 de la LEC.

**FALLO**

QUE DEBO DESESTIMAR Y DESESTIMO la demanda interpuesta por VISCOFAN S.A. representada por el procurador Sr. Araiz contra SAYER TECHNOLOGIES S.L., DON VIDAL ERNESTO GARRIDO ZUÑIGA, DON SANTOS LEGAZ AZCONA y DON CARLOS MUGICA PEREZ DE ALBENIZ, declarando prescrita la acción ejercitada.

Doc. Electrónico generalizado con firma electrónica. Dirección verificación:https://sedejudicial.navarra.es/

Código Seguro de Verificación 51320:47001:f6e4e1c5cbb99a43e587c9199c5c801hag3AA=

Fecha y hora: 07/03/2019 22:32

Firmado por:
IKERNE AZNAR MALO

NICHOLAS G. CHARLES COLOMINA    8
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
#5902

3 0 AUG 2023



Firmado por:
IKERNE AZNAR MALO

Fecha y hora: 07/03/2018 22:32

Doc. Electrónico garantizado con firma electrónica. Dirección verificación https://sedejudicial.navarra.es/

Código Seguro de Verificación 3120147001-f6e4a1cbca806e43b367b619f5c5e9011hg3AA==

Todo ello con imposición de costas a la parte actora.

Contra esta resolución cabe interponer RECURSO DE APELACIÓN ante este Tribunal, por escrito, en plazo de VEINTE DIAS contados desde el siguiente a la notificación, conforme a lo dispuesto en el artículo 458 y ss. de la Ley de Enjuiciamiento Civil. En la interposición del recurso se deberá exponer las alegaciones en que base la impugnación además de citar la resolución apelada y los pronunciamientos que impugna.

La admisión de dicho recurso precisará que, al interponer el mismo, se haya consignado como depósito 50 euros en la Cuenta de Depósitos y Consignaciones de este Juzgado en el BANCO SANTANDER nº 3188000000044416 con indicación de "recurso de apelación", mediante imposición individualizada, y que deberá ser acreditada a la interposición del recurso, de acuerdo a la D. A. decimoquinta de la LOPJ. No se admitirá a trámite ningún recurso cuyo depósito no esté constituido.

Así por esta mi sentencia, de la que se expedirá testimonio para su unión a los autos, lo pronuncio, mando y firmo.

El/La Juez

NICHOLAS G. CHARLES COLOMINA     9
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902                                    3 0 AUG 2023

**EXHIBIT H**





000247367

NICHOLAS G. CHARLES COLOMINA

Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902

CLASE 8.ª

[Translator's note: the pages of the original document show the Spanish coat of arms along with the text "ADMINISTRATION OF JUSTICE" in the top left corner; a table in the left margin with the text "Electronic document guaranteed with e-signature. Verification address: https://administracionelectronica.navarra.es/SCDD_Web/index.html – Secure Verification Code: 3120137003-83a0efe01cabb1897e11b7514d225899ar+h7AA== – Signed by: EDORTA JOSU ECHARANDIO HERRERA, ILDEFONSO PRIETO GARCÍA-NIETO, JESÚS SANTIAGO DELGADO CRUCES – Date and time: 05/18/2021 13:51"; and each page is numbered from 1 to 20 in the bottom right corner.]

| | Section: A |
|---|---|
| **SECTION THREE OF THE PROVINCIAL COURT OF NAVARRE** | Procedure: **APPEAL OF RESOLUTIONS COMMERCIAL/OTHERS** |
| Plaza del Juez Elío/Elío Epailearen Plaza, Planta 2 Solairua | Procedure no.: **0000602/2019** |
| Pamplona/Iruña 31011 | |
| Tel.: +34 848 42 41 10 - FAX: +34 848 42 43 43 | General ID no.: 3120147120160000394 |
| Email: audinav3@navarra.es | Resolution: judgment 000561/2021 |
| RES04 | |
| Ordinary procedure: 0000444/2016 - 00 | |
| Commercial Court no. 1 of Pamplona/Iruña | |

You can contact this Administration electronically through the Judicial online site of Navarre at https://sedejudicial.navarra.es/

## JUDGMENT NO. 000561/2021

The honorable presiding magistrate
Mr. JESÚS SANTIAGO DELGADO CRUCES

The honorable magistrates
Mr. ILDEFONSO PRIETO GARCÍA-NIETO
Mr. EDORTA JOSU ECHARANDIO HERRERA

In PAMPLONA/IRUÑA,

on May 13, 2021.

Section Three of the Provincial Court of Navarre, formed by the honorable magistrates referred to in the margin, has seen on appeal **Civil Courtroom Chamber Docket 602/2019**, stemming from *Ordinary Procedure no. 444/2016 - 00* from Commercial Court no. 1 of Pamplona/Iruña. Therein, the appealing party is **VISCOFAN SA**, represented by the court representative Mr. Javier Araiz Rodríguez and assisted by the attorney Mr. Blas Alberto González Navarro; and the party against whom the appeal is lodged is **Mr. ERNESTO GARRIDO ZUÑIGA, SAYER TECHNOLOGIES SL, MR. SANTOS LEGAZ AZCONA,** and **MR. CARLOS**





000247368

NICHOLAS G. CHARLES COLOMINA

Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
§ 5902

CLASE 8.ª

**MUGICA PÉREZ-ALBÉNIZ,** represented by the court representative Mr. Carlos Hermida Santos and assisted by the attorney Mr. José María Aznar Auzmendi.

The magistrate writing for the court is the honorable **MR. EDORTA JOSU ECHARANDIO HERRERA.**

## <u>BACKGROUND TO THE FACTS</u>

**ONE** – The background to the facts from the judgment under appeal is admitted.

**TWO** – On March 7, 2019, the aforesaid Commercial Court no. 1 of Pamplona/Iruña issued a judgment in Ordinary Procedure no. 444/2016 - 00, the ruling of which literally reads as follows:

*"I SHOULD AND I DO DISMISS the action lodged by VISCOFAN, S.A., represented by the court representative Mr. Araiz, against SAYER TECHNOLOGIES, S.L., MR. VIDAL ERNESTO GARRIDO ZUÑIGA, MR. SANTOS LEGAZ AZCONA, and MR. CARLOS MUGICA PEREZ DE ALBENIZ, declaring that the action exercised is statute barred.*
*All the foregoing shall be in addition to imposing the procedural costs on the plaintiff."*

**THREE** – With notice having been served of said resolution, it was appealed in due time and proper form by the representatives in the procedure for VISCOFAN, SA.

**FOUR** – The party against whom the appeal is lodged, namely Mr. ERNESTO GARRIDO ZUÑIGA, SAYER TECHNOLOGIES SL, MR. SANTOS LEGAZ AZCONA, and MR. CARLOS MUGICA PÉREZ-ALBÉNIZ, responded to the notification for pleadings, objecting to the appeal and petitioning for it to be dismissed, calling for the judgment at first instance to be upheld.




000247369

NICHOLAS G. CHARLES COLOMINA

Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902



CLASE 8.ª

**FIVE** – With the appeal having been admitted to due process for both effects and with the proceedings having been sent to the Provincial Court, following the distribution, they were allocated to Section Three of the Provincial Court of Navarre where Civil Appeal Docket no. 602/2019 was formed, having designated April 15, 2021 for its deliberation and a ruling, adhering to the applicable legal timeframes.

## LEGAL GROUNDS

### ONE – Context

On November 2, 2016, before Commercial Court no. 1 of Pamplona/Iruña VISCOFAN, S.A. lodged an action against Sayer Technologies, S.L., Vidal Ernesto Garrido Zúñiga, Santos Legaz Azcona, and Carlos Múgica Pérez de Albéniz, exercising actions owing to unfair competition in order for it to be declared that the defendants had engaged in acts of unfair competition involving disclosure of trade secrets, improper exploitation of third party efforts, and bad faith, sentencing them to immediately cease to engage in the manufacture, usage, offering to third parties, placing on the market, marketing, export, and simple possession of the plans, parts, and machinery of any kind that had been built and manufactured by the defendants using the proprietary technology of Viscofan, *"at least and as a minimum the plans, parts, and machinery detailed in the expert report enclosed by the plaintiff"*, with the obligation to refrain from doing so, and to withdraw from the market those which have not been acquired by third parties in a bona fide manner, which should be handed over to the plaintiff; and to jointly and severally compensate Viscofan for the damages suffered – the amount at which the earnings obtained by the company Sayer in its unlawful exploitation of the technology of Viscofan have been quantified – as well as for the consequential damages ultimately caused, certified in the process.

The defendants appeared in due time and proper form, represented and defended by the same individuals, replying to the action and asserting their full defense, alleging that the actions

  000247370



NICHOLAS G. CHARLES COLOMINA

Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902

CLASE 8.ª



were statute barred, and in relation to the merits they denied that the company and the joint defendant persons had used any information regarding the production processes and novel technology developed by Viscofan, which they would have had knowledge of on account of their forming part of Bildu Lan, and that it was protected by the duty to confidentiality, also denying that they copied any technology, or indeed offered it to third parties.

Following the trial held on June 28, 2018, a judgment was issued on March 7, 2019, which fully dismissed the action, acquitting the defendants from the motions brought against them, and sentencing the plaintiff to settle the procedural costs.

Viscofan S.A. lodged an appeal, objecting to the absence of a factual basis for the breach pursued with the action, deeming it to be an isolated event with regard to the elapsing of the statute of limitations, and stating it is necessary to address the merits of the action, setting out its stance as adduced in the first instance.

The joint defendants filed their brief of objection, supporting the judgment issued in the court of first instance.

**TWO – Facts**

The judgment under appeal does not include a full account of the facts as found, and the legal grounds only make it possible to deduce the factual basis for considering the extinctive statute of limitations on the actions for unfair competition.

Explicitly, the following is stated, with the Court incorporating a number of clarifications:

1. The plaintiff, Viscofan, S.A. (hereinafter Viscofan) is primarily dedicated to the manufacture of all types of meat wrappings (cellulose, collagen, fibrous, and plastic) for charcuterie and other applications, having developed technology and know-how over the over the course of decades, especially a host of machines that optimize the production process and afford it competitive advantages in the sector, which it keeps under secrecy, without industrial property protection.





000247371

NICHOLAS G. CHARLES COLOMINA
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
§ 5902



**CLASE 8.ª**

2. Viscofan has been cooperating with various suppliers, including the company Bildu Lan Maquinaria Especial y Automatización, S.L.L. (hereinafter Bildu Lan), dedicated to the manufacture of special machinery tailored specifically for industrial processes, with which it signed several confidentiality agreements to protect its innovations in the sector. As a result, said company was required to uphold secrecy in relation to all information concerning Viscofan (with particular emphasis on plans and parts), prohibiting the company mentioned from being able to use said information for its own benefit or that of third parties, whereby said company was also required to return or destroy the information used once the professional assignments had been completed.

4. In 2011, the defendant company, Sayer Technologies, S.L., was established (hereinafter Sayer). However, until November 2012 it had a different name and a different corporate purpose. Indeed, at that time, it came to take on a corporate purpose similar to that of Bildu Lan. Since October 2012, the company Sayer has been formed by the former managing director of Bildu Lan, the joint defendant Mr. Garrido; the deputy manager of Bildu Lan, the joint defendant Mr. Legaz; and the former sales representative, the joint defendant Mr. Múgica.

5. Sayer also cooperated with Sayer [sic][1] on certain works from December 2012 until early 2015, for which it signed a confidentiality agreement with said company on December 10, 2012.

It should be implicitly deemed as proven in the first instance owing to reference to the facts of the response that the ultimate breach reported in the claim would consist of the sale of machinery – the knotting machine – using technology belonging to Viscofan S.A. (hereinafter Viscofan), known by the defendants since Bildu Lan was a supplier of the former company, although it has been demonstrated that the relationship also exists directly with Sayer, since said company had been set up by Mr. Garrido, Mr. Legaz, and Mr. Múgica; that it took place in August 2014; and that the plaintiff was aware of this as of February 23, 2015, as it asserts in its claim (exhibit no. 17).

Nonetheless, other subsequent acts by Sayer, a company in competition with the defendant, as the latter maintains *a quo*, do not certify this copying of technology.

---

[1] Translator's note: this seems to be a mistake in the original document.

000247372

NICHOLAS G. CHARLES COLOMINA

Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
§ 5902



CLASE 8.ª

It is pointed out that the acts subsequent to the awareness in February 2015 fit into two categories and we also wish to set out these acts for the purpose of being complete in identifying them, also providing some specific detail:

(i) In February 2016, an order for pulleys was placed with the company Dinamica Distribuciones, S.A., and in November 2015 another order for belts had been submitted to the companies Indarbelt, S.A. and Ammeraal Beltech, S.A. (exhibit nos. 24 and 28 of the claim), with plans that were highly similar to those received from Master Navarra Automatismos, S.L., to deliver pulleys or belts to Viscofan, as is determined from previously established testimony from Álvaro Blanco of Master Navarra and from Joseba Elola Castillo of Ammeraal (notary records in exhibit nos. 26 and 28 of the claim).

In relation to these, it is stated that they are instrumental acts for Sayer to manufacture a machine (the knotting machine) which is asserted to be similar (copied, in the action) and which the defendants sought to sell.

(ii) In 2016, a shipment of containers was dispatched by Sayer to Nitta Casing Inc, which was holding a product using technology built by Sayer, which was an imitation of that pertaining to Viscofan.

In relation to this, it is stated that the shipment of said machines is not certified.

In addition to the foregoing, it should be understood additionally from the legal account that, through a notary record in exhibit no. 18 of the claim, on February 25, 2015 Viscofan served notice on Sayer via its representative Mr. Legaz by means of a letter, calling on said party to refrain from marketing the knotting machines and to hand over all the documentation and information relating to the designs, the technology, and the know-how belonging to the plaintiff.

And subsequently, it is necessary to mention that on March 20, 2016, Viscofan lodged a complaint that was assigned to Pre-trial Investigation Court no. 3 of Iruña/Pamplona owing to a crime of disclosure of trade secrets. In those prior proceedings, it was resolved for the premises of Sayer to be searched. Then, the stay of the investigation procedure was resolved by means







000247373

NICHOLAS G. CHARLES COLOMINA

Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902

CLASE 8.ª

of the court order dated April 4, 2016. This was confirmed by means of the court order for appeal in section 2 of this Provincial Court on May 20, 2016.

The appeal does not specifically review the weighting of the evidence, i.e., it does not point out the judicial error in said weighting, which consists of identifying what is lacking, what is surplus to necessity, or what diverts from the specified account of events; and which also consists of isolating the means of evidence that would establish the historical nature of the lacking, surplus, or substantially divergent data which would indeed be pertinent in order to alter the ruling.

The criticism of the appealing party relates to the factual grounds for the judgment, based on a mere few disputed facts. This is set out in the third pleading of the appeal, which details a complaint owing to the judge of first instance neglecting the ineludible duty to effect a weighting of the evidence and the grounds.

In fact, following inadequate practice, in seeking to uphold the defense based on the statute of limitations having expired, the judgment does not focus on explicitly setting out an evidence-based outcome in relation to the facts of the action, and indeed in relation to the objections in the reply with regard to their historical aspects or certainty, dispensing with the possibility of considering an event that would rule out the action.

However, in pleading the lack of defense in which it states it is immersed, the party does not call for the judgment to be rendered null and void, and in any event, as established by Supreme Court judgment 22/2010, of January 29 (Legal Record [LR] 2013, 164), setting out what was indicated in the Constitutional Court judgment 187/2000, of July 10, in relation to article 24.1 of the Spanish Constitution "*(...) this rule does not assure the right to a thorough response to every single one of the matters raised, whereby "if the modification is substantial and the demands are addressed, albeit in a general manner, there is no inconsistency, even if no decision is made regarding the non-substantial pleadings (because) there is no scope for claiming that judicial protection has been denied if the court responds to the main demand and addresses the issue raised" (Constitutional Court judgment 29/1987, of March 6); indeed, this is because "only the omission or complete lack of a response, rather than a general, overall*



 

000247374



NICHOLAS G. CHARLES COLOMINA
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5992

CLASE 8.ª

*response to the issue raised, may constitute a breach of effective judicial protection"
(Constitutional Court judgment 8/1989, of January 23). Moreover, this Constitutional Court has
gone further, stating that failure to respond may constitute an sufficient tacit dismissal,
although in these cases it must be possible for this to be inferred from other reasoning in the
judgment or for it to be deemed that the express response was not necessary or essential
(Constitutional Court judgments 68/1988, of March 30; 95/1990, of May 23; 91/1995, of June
19; and 85/1996, of May 21)."*

In other words, there is implied factual reasoning, with a generalized, robust response:
continuing or ceaseless acts of unfair competition, which could render irrelevant the silence on
the part of Viscofan extending over more than a year since February 2015, have not been
proven, inasmuch as none of the acts of unfair competition in the action have been proven.
Accordingly, it shows a point of violation of the right to original and appellate jurisdiction, which
the Court should to a restricted degree rectify as it must be insisted that we adhere to what the
appeal proposes concerning the facts and the specific evidence thereof.

In actual fact, as is determined from the reasoning in the judgment under appeal, the only
conduct from Sayer subsequent to the requisition of February 23, 2015, which has been taken
into consideration in the judicial version, is the shipment of containers from Valencia to Nitta
Group at an unspecified point in 2016. It is not deemed as proven that they contained machines
using technology from Viscofan which had been improperly utilized given that what they
contained has not been physically evidenced. Indeed, it is the case that the claim itself (103,
page 37) states that the containers sent by Sayer from Valencia to Nitta Group in 2016 –
measuring 40 feet and weighing 13,382 to 20,645 kg – were suspected to contain several
machines incorporating copies from Viscofan. All Viscofan benefits from is written testimony
from Herbert Jaeger, in addition to the determination that the machines came from Spain, and,
what is more, this is based on a reference from third parties.

The appealing party, in light of the report from the judicially appointed expert and the
invoices for the sale to Nitta, rhetorically asks how it is meant to be able to demonstrate that
the shipments carried different contents, as if the judgment were calling for *probatio diabolica*



**CLASE 8.ª**



000247375

NICHOLAS G. CHARLES COLOMINA

Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902



of the negative fact. But evidence of a negative fact is not being requested; rather, evidence is called for of the positive fact that the machines invoiced and loaded for Nitta were those that incorporated Viscofan's secret technology, which the appealing party takes as a given fact, but only since said party has stated as much in the claim, and this is what it pointed out to the expert recruited by it.

Also, the judicial version of events has not proven that Sayer had manufactured and/or marketed knotting machines using Viscofan's secret technology, not even in relation to the one identified in August 2014, which must have been sold to Poland, and which constituted grounds for the requisition dated February 23, 2015. This requisition proves that the events reported by Viscofan were already known by the time the demand was made for confidential data to be handed over, but it does not prove that the famed replicated knotting machine existed, nor does it attest to the precise specifications of it.

Of course, it make no sense for the "instrumental" acts of November 2015 and February 2016, consisting of the stockpiling of pulleys and belts similar to those used by Viscofan's suppliers, to constitute means for the manufacture which took place in August 2014; rather, they would have to constitute means for production subsequent to that supply. However, it has already been pointed out that the reasoning in the judgment has not demonstrated the existence of any replicating production. As a result, the statement exhibits shortcomings, but it must be pointed out that no production of knotting machines has been proven; but instead, purchases of means or parts that may be used in knotting machines have.

In the second pleading of the appeal, aimed at proving that Viscofan had not waived its rights after receiving a public response from Sayer on March 3, 2015 (in actual fact on February 25), the party points out why it deems that it has been certified that these acts, which the judgment deems instrumental, consisted of ongoing reproduction in certain parts using the technology that endows Viscofan with a competitive advantage: the testimonies in the trial from Mr. Blanco of Master Navarra Automatismos, from Mr. Elola of Ammeraal, and from Mr. Calavia, industrial director of Viscofan.


CLASE 8.ª




000247376

NICHOLAS G. CHARLES COLOMINA
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902

Added to the credibility of Mr. Calavia, due to basic reasons, and in addition to the credibility arising for Mr. Blanco and Mr. Elola – given that they had previously set out their statements in notary records, as has been stated, and since they are from companies that partner with Viscofan – there is a clear objective lack of credibility in relation to the material component of the belts and pulleys. There is no technical assessment; instead, there is an opinion which is similar to the subjective component, given that there is no certification of the fact that historical orders were ultimately completed by Sayer.

Consequently, although the judgment is concise in its assessment of facts – and there is implied reasoning – the appeal is also lacking in how it opposes it, it is highly explicit, albeit without being able to point to the evidence of facts which it claims has not been assessed.

Therefore, the referral to the report from the judicially appointed expert, issued by Ms. Gómez de Cía, a chartered account auditor, carries no independent evidentiary value because the expert confined herself to calculating the net profit obtained from manufacturing and/or using the parts and machines that incorporated Viscofan's technology. These physical items, with their formal accounting and financial attestation, are those which are described in the expert report provided by Viscofan in exhibit no. 37 of the documents enclosed with its claim, as indeed is set out in the petition for evidence and its admission in the preliminary hearing.

The report from the account auditor and economist appointed by the Court indeed conducts a quantification showing there was a sale of a knotting machine to Poland in summer 2014, and that the belts and pulleys mentioned were purchased from November 2015 onwards, and further purchases of them were made after the action was lodged. Moreover, the report mentions that sales were made and loaded onto containers destined for Nitta Casing Inc., which is stated to be a direct competitor of the plaintiff. It is the case that there are no date matches with anything with regard to the aspects alleged and unproven. However, the claim that these transactions are for parts or machines replicating Viscofan's technology only arises from the argumentation given in the claim, backed up by the opinion of the expert they recruited after criminal proceedings were brought.




000247377

NICHOLAS G. CHARLES COLOMINA
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902


CLASE 8.ª

However, technical expert evidence that may be used in a process such as this one does not relate to conduct but rather a match of features associated with what has been incorporated into certain parts or machines. The external appearance does not suffice in order to ascertain whether Viscofan's secret technology – exclusive to said company and protected by means of confidentiality agreements, in addition to not being disclosed or held by other parties – has been appropriated. No pleading is made in this respect in the appeal so it may be reviewed "*within the parameters of constructive criticism*" as laid down in article 348 of the Spanish Civil Procedure Act, if it would align with a rationality criteria manifested through reasoning. It may be that Viscofan's defense thought that the method of explanation, based on the expert evidence proposed, and the means and instruments used, would be assessed in the same way as it had been following the stay of the criminal investigation procedure.

The difficulty entailed by proving certain events, or the necessity for the consideration of evidence to swing to one side to overcome said difficulty, do not constitute reasons to oppose the outcome issued in the first instance beyond the parameters of the principles of evidentiary sensitivity and ease triggered by article 217.6 of the Spanish Civil Procedure Act.

It may be the case – and statistically the over-arching circumstance – that the difficulty entailed by proving a specific event lies in it not having in actual fact taken place.

**THREE – Expiry of the statute of limitations on actions owing to unfair competition**

The appeal from the plaintiff criticizes the application made by the judgment in the first instance of the statute of limitations on the action exercised by Viscofan owing to the disclosure of trade secrets, the exploitation of third party efforts, and the general stipulation on breach of objective good faith, deeming that it began on February 23, 2015, since more than a year had passed when the defendants were reported in criminal proceedings on March 20, 2016. As a result, with the criminal investigation owing to the disclosure of trade secrets having proved




000247378

NICHOLAS G. CHARLES COLOMINA

Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902



CLASE 8.ª

ineffective, the action governing this civil procedure, lodged on November 2, 2016, would have involved the exercise of an expired claim.

The representative of the appealing party expresses such disappointment with the decision put forward in the first instance, from the lack of reasoning and the failure to adhere to the logic of expiry of the statute of limitations in modern regulation on the use of trade secrets set forth in Act 1/2019, that it is unlikely that the handling given to the solution — as the Court explains — will allay said party of this disappointment. It is worth sustaining that *a quo* the trial judge does not strictly consider that Viscofan has abandoned self-protection of its innovations under secrecy; rather, indirectly, it views there being excessive ambition to do the same, as it opted for criminal proceedings, which are more demanding, owing to crimes under articles 278 and 279 of the Spanish Criminal Code, without success or with only preliminary success.

Also, in any event, the civil claim is also a matter of proof and factual reasoning, given that ongoing and persistent use of Viscofan's secret technology cannot be founded before the courts. Indeed, the merits of the act of unfair competition as laid down in article 13 of the Spanish Act on Unfair Competition (SAUC) must be heard; but the effectiveness of the action in the face of the expiry of the statute of limitations cannot be upheld simply due to the mere assertion by the interested party, which is placed at a point in time close to the action, or is alleged to still be occurring.

When the judgment under appeal asserts that it is necessary to exactly define what conduct is being attributed to the defendant, describing it as "*use of knowledge acquired during its commercial relationship with VISCOFAN, S.A. relating to said company's plans, machinery, and production processes to market machines copied from the plaintiff*", it is simply declaring that if a claim is exercised that the law provides for and which entails short time to respond, and the party against whom the action is exercised objects to the elapsing of that time, it is necessary to determine what acts are being attributed to establish the *dies a quo*. Also, if it relates to the marketing of a number of machines, it does not do so because competitive activity on the market is a structural requirement for the relevant breach of trade secrets, but rather because





000247379

NICHOLAS G. CHARLES COLOMINA

Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902

CLASE 8.ª

this is what Sayer and its members are accused of — as it was the case in the criminal proceeding — and this determines the scope of the procedural dispute.

Viscofan cannot, on appeal, shift the focus of the procedure towards undefined possession of reserved intangible assets in order to claim incessant behavior has taken place up to the present. In any event, this would have scant merit as it would have to be used to form conduct restricted under article 13 of the SAUC. It would have even less merit if, based on lawful legal relations with a company, a subject holds portions of know-how under a confidentiality agreement, meaning that mere possession — without any production incorporating it or any competitive presence — constitutes no ongoing infringement of any kind. There is no provision in article 13.3 of the SAUC — in relation to this protection of trade secrets due to created danger — for a non-expiring protection that would overshadow industrial property rights due to the perpetual nature of the confidentiality over the intangible asset. Mere competition on the market from the company Sayer, which would hypothetically remain in possession of Viscofan's data that it did not return on February 25, 2015 and which it had not destroyed, is also not unfair competition. Indeed, this is not the claim sought in the action.

The rule applied, from article 35 paragraph 1 of the SAUC, stipulates a short, yearly, statute of limitations on actions owing to unfair competition applying the modern regulatory subjective method, i.e., from the point when the actions could have been exercised (an objective regulatory criterion from the tradition of general civil law, based on the theory of *actio nata*, as per article 1969 of the Civil Code, the subjective remedy of which in our system stems from the extreme ease with which the interruption set out in article 1973 of the Civil Code has always been viewed); and the party with standing being aware of the person who engaged in the act of unfair competition (subjective criterion, along the lines laid down by case law in the face of short timeframes, in keeping with comparative law, which was reflected in article 1968.2 of the Civil Code). Paragraph 2 of article 35 envisages the continuing nature of the activity of unfair competition against which a claim is lodged: "*in any event, it expires once three years have elapsed after the conduct ceases.*"


**CLASE 8.ª**





000247380

NICHOLAS G. CHARLES COLOMINA
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902

Viscofan maintains that the statute of limitations had not begun to elapse, not even when it lodged a complaint via criminal proceedings in March 2016 nor when it lodged an action in this civil suit the following November, given that the unfair conduct had not ceased.

The system of the statute of limitations laid down in article 35 of the SAUC results from the reform enacted by Act 29/2009, of December 30, amending the legal system governing unfair competition and advertising to improve user and consumer protection, which the doctrine, mentioned by both parties, specifically picks up on – like the judgment under appeal – from Supreme Court judgment –plenary session– 879/2009, of January 21, 2010 (LR 2010, 1275, although its number states 2009, the date is from 2010): "*when it relates to acts of unfair competition of continuing duration, the statute of limitations concerning the actions envisaged in article 21 of the SAUC does not begin to elapse until the unlawful conduct has ceased*", re-asserted subsequently in Supreme Court judgments 338/2010, of May 20, 2010 (LR 2010, 3708); 462/2012, of July 16 (LR 2012, 10100); and 47/2013, of February 19 (LR 2013, 4592).

Nevertheless, the concept of continuing duration is made clear in the judgment (from the majority, since there was a specific vote by four judges): "*The application of article 21 of the SAUC does not give rise to particular complexities concerning the calculation of the statutes of limitations and exclusionary timeframes it establishes, when it comes to isolated (clearly individualized) acts, nor does it practically do so when, despite there being several acts, these are repeated over time in an intermittent or non-continual manner, meaning that a segmentation may be observed between the instances of unlawful conduct. The problem arises in relation to acts in a continuous chain of succession, which either refer to a continuing activity – involving a single action – or to a permanent activity, which persists at the time the action is lodged. For the former criterion, the calculation – dies a quo – should begin at the time the rule refers to, regardless of the instantaneous or long-lasting nature of the act of unfair competition; in other words, from the point at which actions could be lodged, provided the person who committed the act of unfair competition was known – a period of one year; or, in the other instance, from the point when the initial act was carried out – a period of three years. For another perspective, the time does not begin to elapse when it refers to long-lasting acts, as long as the unlawful conduct still applies. It is necessary to refer to the delivery of the outcome*





000247381

NICHOLAS G. CHARLES COLOMINA

Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902

CLASE 8.ª

*or the ceasing of the unlawful action, meaning that until the legal situation reverts back to normality, the period does not elapse."*

Continuous conduct excludes cases of several acts that are repeated over time in an intermittent or non-continual manner, when it is possible to segment the unlawful conduct. Also, this is unless the mere potential of a breach of trade secrets on the basis of it being a competing company with confidential data under the secrecy of another as an ongoing activity to this end is accepted, which has been rejected – indeed, this is not what was stated in the claim -- and for which a financial remedy is sought, and ultimately, it has similarly not been proven either. It was indeed stated and attempted to be proven by Viscofan, to no avail. Instead, the claim mentions intermittent acts involving the alleged appearance of parts or machines at different times, some entirely undetermined, which would incorporate proprietary technology.

Accordingly, hypothetically there would not be an ongoing activity, nor is there evidence of these intermittent acts, with breaching legal effect, that are referred to by the "alerts" mentioned in the brief setting out the action. Consequently, the annual expiry of the statute of limitations counting from an act of intolerance by Viscofan in relation to its former partner Sayer – on February 23, 2015 – is rightly decreed by the judgment under appeal.

Pursuant to the authority set out by Supreme Court judgment 344/2019, of June 14, article 35 paragraph 1 of the SAUC would be applicable to this case. The one- and three-year periods are mutually exclusive and not successive: once the potential plaintiff becomes aware of the act of unfair competition and of the perpetrator thereof it is no longer possible to consider that the action owing to unfair competition is statute barred on account of the moment the act of unfair competition occurred. Consequently, once a year has elapsed following the point when action could have been lodged and after the person who carried out the act was known, the action shall be statute barred even if three years have not yet elapsed since the point when the act of unfair competition was carried out. Conversely, once this three-year period has elapsed, the action owing to unfair competition shall be statute barred even if a year has not yet elapsed following the point when action could have been lodged and after the person who carried out



**CLASE 8.ª**



000247382

NICHOLAS G. CHARLES COLOMINA
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902



the act of unfair competition was known. A system of short-term and regulatory/subjective *dies a quo* calls for the establishment of a long-stop timeframe (or preclusion period).

The statute of limitations begins to elapse: (i) if it is an instantaneous act, from the point when it occurs and the perpetrator is known; (ii) if it is a long-lasting act, when the act has ended; and (iii) in the case of a claim for compensation owing to damages, from the point when the detriment occurs. Accordingly, each act of unfair competition gives rise to a new action owing to unfair competition, subject to its own statute of limitations, different to the statute that actions lodged already are subject to.

In this case, the action exercises various claims for unfair competition, both owing to specific anti-competitive offenses laid down in the SAUC, acts of disclosure of trade secrets, improper exploitation of third-party efforts; and indeed owing to the general stipulation. There is no continuing conduct. Moreover, there is no evidence of the acts, as described, according to what has been explained.

Consequently, as of February 23, 2016, in relation to the as yet unproven isolated act from August 2014, the actions owing to unfair competition are statute barred, and for other subsequent isolated acts there is no evidence to assert their historical relevance.

Lastly, it is necessary to point out in this case that the lack of evidence not only supports the consideration that the statute of limitations has expired, but it would also inevitably establish the dismissal in relation to the merits of the case, since it has not been certified that acts took place which could fall under articles 6, 12 and 13 of the SAUC.

Competition is both a presupposition and a market limit. As stated by Supreme Court judgment 586/2014, of October 28 (LR 2014, 6749), the purpose of legislation on unfair competition "*is to protect the proper operation of the market, whereby it seeks to act as a legal instrument to oversee the conduct operating on said market.*" However, this procedure falls within the most traditional scope of protection between businesspeople – and indeed between those competing on the same market – because there is no consumer protection function involved. Indeed, the activity of the parties to the suit involves offering goods to professionals and businesspeople, and it does not form part of the supplementary purpose of unfair





000247383

NICHOLAS G. CHARLES COLOMINA

Traductor-Intérprete Jurado de inglés
Sworn Translator-Interpreter of English and Spanish
# 5902

CLASE 8.ª

competition when it comes to any absolute industrial property right. This is the stale scenario in which, due to the specific circumstances relating to a certain competitive activity between businesspeople, it is maintained that on account of the very concrete features of said competitive activity it constitutes an improper act, an act of unfair competition (this is even though the former workers of Bildu Lan are among the defendants, who as natural persons are not recorded as individual businesspeople, since they set up and managed Sayer, and they could be bound by the rules of proper conduct on the market on a personal level as well [Supreme Court judgment 963/2000, of October 18, 2000, LR 2000, 8809]).

Consequently, there is no way of knowing whether there have been technical coincidences in parts and machines; whether the coincidences were technically preventable; or whether the defendants possess anything physical or virtual in relation to Viscofan's secrets. In view of the above, the general stipulation of article 4 of the SUAC, which is founded on the undetermined legal concept of objective good faith, is inappropriately invoked in the claim for specific acts of said classification. In relation to these acts, a certain requirement is absent in order for the relevant rule to be able to apply to a specific case.

In short, the absence of evidence of the acts in relation to the statute of limitations is tantamount to declaring the claim by Viscofan as being unfeasible with regard to the merits of the case.

It is not proper to grant the appeal with regard to the claim for which the statute of limitations has expired and which cannot be assessed in relation to the merits thereof.

### FOUR — Procedural costs

Pursuant to the provisions of article 398.1 of the Spanish Civil Procedure Act, as a result of the dismissal of the appeal lodged it is necessary to impose the procedural costs arising in this instance on the appealing party.



CLASE 8.ª



000247384

NICHOLAS G. CHARLES COLOMINA

Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
§ 5902



IN CONSIDERATION of the foregoing rules and case law, and other generally applicable regulations, and in the exercise of the jurisdictional authority arising from popular sovereignty, the following is issued:

## RULING

**The appeal,** lodged by VISCOFAN S.A. — represented by the court representative JAVIER ARAIZ RODRIGUEZ, against the judgment issued by Commercial Court no. 1 of Iruña/Pamplona on March 7, 2019, wherein the parties against whom the appeal is lodged are SAYER TECHNOLOGIES S. L., VIDAL ERNESTO GARRIDO ZUÑIGA, SANTOS LEGAZ AZCONA, and CARLOS MÚGICA PEREZ DE ALBÉNIZ, represented by the court representative CARLOS HERMIDA SANTOS -- **IS HEREBY DISMISSED,** whereby all the findings of the ruling are upheld.

The settlement of the procedural costs arising from the appeal are imposed on the appealing party.

Let the deposit that was set up for the appeal be allocated to the relevant legal purpose.

Therefore, this is our decision that we adjudge and order, and we hereto sign.

Provided the requirements laid down in articles 477 and 469, in relation to final provision 16 of the applicable Spanish Civil Procedure Act apply, against this decision **a Supreme Court appeal and an extraordinary appeal owing to infringement of procedure may be lodged to the First Chamber of the Supreme Court** or, if applicable, a **Supreme Court appeal may be lodged to the Civil and Criminal Chamber of the High Court of Justice of Navarre,** whereby it is necessary to



**CLASE 8.ª**





000247385

NICHOLAS G. CHARLES COLOMINA

Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902

submit to this section the brief certifying that the appeal has been lodged within a period of **TWENTY DAYS** following the date after the day on which notification hereof has been served.

Upon lodging the appeal, it will be necessary to provide certification of the fact that the relevant deposit has been assigned to the Deposit and Apportionment Account of this Court held at Banco Santander, with the warning that failure to provide verification of having done this will result in the appeal sought not being admitted to due process.

*The disclosure of the text of this resolution to parties not involved in the procedure in which it has been issued may only be carried out after personal data contained therein has been removed, provided the right to privacy is fully adhered to along with the rights of persons who require a special duty of protection or guarantee of anonymity for victims or injured parties, as the case may be. The personal data included in this resolution may not be assigned or disclosed for purposes that are contrary to legislation.*



**CLASE 8.ª**



000247386

---

### CERTIFICATION OF THE SWORN TRANSLATOR-INTERPRETER

*Mr Nicholas George Charles Colomina, Sworn Translator-Interpreter of English appointed by the Spanish Ministry of Foreign Affairs, European Union and Cooperation, certifies that the foregoing is a true and complete translation into English of the original document drawn up in Spanish.*

*In Barcelona on August 30, 2023.*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

---

### CERTIFICACIÓN DEL TRADUCTOR-INTÉRPRETE JURADO

*Don Nicholas George Charles Colomina, Traductor-Intérprete Jurado de Inglés nombrado por el Ministerio de Asuntos Exteriores, Unión Europea y Cooperación, certifica que la que antecede es traducción fiel y completa al inglés de un documento redactado en español.*

*En Barcelona, a 30 de agosto de 2023.*

---

| Signature/Firma: | Stamp/Sello: |
|---|---|
|  | NICHOLAS G. CHARLES COLOMINA |
|  | Traductor-Intérprete Jurado de Inglés |
|  | Sworn Translator-Interpreter of English and Spanish |
|  | § 5902 |



ADMINISTRACIÓN DE JUSTICIA

SECCIÓN TERCERA DE LA AUDIENCIA
PROVINCIAL DE NAVARRA
Plaza del Juez Elío/Elío Epailearen Plaza, Planta 2 Solairua
Pamplona/Iruña  31011
Teléfono:    848.42.41.10 - FAX 848.42.43.43
Email:       audinav3@navarra.es
RES04
Procedimiento Ordinario  0000444/2016 - 00
Juzgado de lo Mercantil Nº 1 de Pamplona/Iruña

Puede relacionarse de forma telemática con esta Administración a través de la
Sede Judicial Electrónica de Navarra https://sedejudicial.navarra.es/

Sección: A
Proc.: APELACIÓN RESOLUCIONES
OTROS MERCANTIL
Nº:      0000602/2019

NIG: 3120147120160000394
Resolución:      Sentencia 000561/2021

# S E N T E N C I A    Nº 000561/2021

Ilmo. Sr. Presidente
D. JESÚS SANTIAGO DELGADO CRUCES

Ilmos. Sres. Magistrados
D. ILDEFONSO PRIETO GARCÍA-NIETO
D. EDORTA JOSU ECHARANDIO HERRERA

En
Pamplona/Iruña,
a 13 de mayo del
2021.

        La Sección Tercera de la Audiencia Provincial de
Navarra, compuesta por los/las Ilmos. Sres. Magistrados que al
margen se expresan, ha visto en grado de apelación el Rollo
Civil de Sala nº 602/2019, derivado de los autos de
*Procedimiento Ordinario nº 444/2016 - 00* del Juzgado de lo
Mercantil Nº 1 de Pamplona/Iruña; siendo parte apelante,
VISCOFAN SA, representada por el Procurador D. Javier Araiz
Rodríguez y asistida por el Letrado D. Blas Alberto González
Navarro; parte apelada, D. ERNESTO GARRIDO ZUÑIGA,
SAYER TECHNOLOGIES SL, D. SANTOS LEGAZ AZCONA y
D. CARLOS MUGICA PÉREZ-ALBÉNIZ, representados por el
Procurador D. Carlos Hermida Santos y asistidos por el Letrado
D. José María Aznar Auzmendi.

        Siendo Magistrado Ponente el Ilmo. Sr. D. EDORTA
JOSU ECHARANDIO HERRERA.

Firmado por:
EDORTA JOSU ECHARANDIO HERRERA,
ILDEFONSO PRIETO GARCÍA-NIETO,
JESÚS SANTIAGO DELGADO CRUCES
Fecha: 18/05/2021 13:51
Doc. garantizado con firma electrónica. URL verificación:https://administraciondeelectronica.navarra.es/SCDD_Web/index.html
Código Seguro de Verificación 3120137003-83ab6fe01 cebb1697e11b75144f28899an-h7AA==

NICHOLAS G. CHARLES COLOMINA
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902

3 0 AUG 2023

1

## ANTECEDENTES DE HECHO

PRIMERO.- Se aceptan los de la sentencia apelada.

SEGUNDO.- Con fecha 07 de marzo del 2019, el referido Juzgado de lo Mercantil Nº 1 de Pamplona/Iruña dictó Sentencia en los autos de Procedimiento Ordinario nº 444/2016 - 00, cuyo fallo es del siguiente tenor literal:

*"QUE DEBO DESESTIMAR Y DESESTIMO la demanda interpuesta por VISCOFAN S.A. representada por el procurador Sr. Araiz contra SAYER TECHNOLOGIES S.L., DON VIDAL ERNESTO GARRIDO ZUÑIGA, DON SANTOS LEGAZ AZCONA y DON CARLOS MUGICA PEREZ DE ALBENIZ, declarando prescrita la acción ejercitada.*
*Todo ello con imposición de costas a la parte actora."*

TERCERO.- Notificada dicha resolución, fue apelada en tiempo y forma por la representación procesal de VISCOFAN SA.

CUARTO.- La parte apelada, D. ERNESTO GARRIDO ZUÑIGA, SAYER TECHNOLOGIES SL, D. SANTOS LEGAZ AZCONA y D. CARLOS MUGICA PÉREZ-ALBÉNIZ, evacuó el traslado para alegaciones, oponiéndose al recurso de apelación y solicitando su desestimación, interesando la confirmación de la sentencia de instancia.

QUINTO.- Admitida dicha apelación en ambos efectos y remitidos los autos a la Audiencia Provincial, previo reparto, correspondieron a la Sección Tercera de la Audiencia Provincial de Navarra en donde se formó el Rollo de Apelación Civil nº 602/2019, habiéndose señalado el día 15 de abril del 2021 para su deliberación y fallo, con observancia de las prescripciones legales.

Firmado por: JOSU ECHARANDIO HERRERA, EDORTA ARIZTEGUI ALZATE, ILDEFONSO PRIETO GARCÍA-NIETO, JESÚS SANTIAGO DELGADO CRUCES.

Fecha: 18/05/2021 13:51

Código Seguro de Verificación: 3120137003-83a0afa01cabb1897e11b75f44d2686a=h7AA==

Doc. garantizado con firma electrónica. URL verificación: https://administraciónelectronica.navarra.es/SCDD_Web/index.html

NICHOLAS G. CHARLES COLOMINA

30 AUG 2023

Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish

2



ADMINISTRACIÓN
DE JUSTICIA

# FUNDAMENTOS DE DERECHO

**PRIMERO.** - Planteamiento

Viscofan S.A. formuló el 2 de noviembre de 2016 demanda ante el Juzgado de lo Mercantil núm. 1 de Iruña/Pamplona, contra Sayer Technologies S.L., Vidal Ernesto Garrido Zúñiga, Santos Legaz Azcona y Carlos Múgica Pérez de Albéniz, en ejercicio de acciones por competencia desleal, para la declaración de que se han realización por parte de los demandados de actos de competencia desleal de violación de secretos industriales, aprovechamiento indebido del esfuerzo ajeno, y de mala fe, con condena a cesar de forma inmediata la fabricación, utilización, ofrecimiento a terceros, introducción en el comercio, comercialización, exportación y mera posesión de los planos, piezas y máquinas de cualquier tipo que hayan sido construidos y fabricados por los demandados con la tecnología reservada de Viscofan, *"al menos y como mínimo los planos, piezas y maquinarias reflejadas en el informe pericial acompañado por la actora"*, con obligaciones de abstención, y retirada del mercado, que no hayan sido adquiridas por terceros de buena fe, que habrán de ser entregados a la demandante, y de indemnizar solidariamente a Viscofan por los daños y perjuicios sufridos, cuantificándose en los beneficios obtenidos por la compañía Sayer en su explotación ilícita de la tecnología Viscofan, así como el daño emergente finalmente causado, acreditado en el proceso.

Los demandados comparecieron en tiempo y forma, contestando a la demanda, en una misma representación y defensa, en el sentido de completa resistencia, alegando la prescripción de las acciones, y negando en cuanto al fondo, que la mercantil y las personas codemandadas hayan utilizado ninguna información sobre los procesos de producción y

Firmado por:
EDORTA JOSU ECHEVARRIA,
ILDEFONSO PRIETO GARCIA-NIETO,
JESUS SANTIAGO DELGADO CRUCES

Fecha: 18/05/2021 13:51

Doc. garantizado con firma electrónica. URL verificación: https://administracionelectronica.navarra.es/SCDD_Web/index.html

Código Seguro de Verificación: 3120137003-83a0dfe601cabb1887e110755144d25898an-ki7AA===

NICHOLAS G. CHARLES COLOMINA    3 0 AUG 2023
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish

3

tecnología novedosa desarrollada por Viscofan, que hubieran conocido por su pertenencia a Bildu Lan, y que estuviera protegida por deber de confidencialidad, ni hayan para copiado tecnología alguna, ni ofrecido a terceros.

Tras la celebración del acto del juicio el 28 de junio de 2018, se dictó la sentencia de 7 de marzo de 2019, la cual desestimó íntegramente la demanda, absolviendo a los demandados de los pedimentos deducidos en su contra, condenando en costas a la demandante.

Viscofan S.A. interpuso recurso de apelación, en que censura la falta de motivación fáctica de la infracción perseguida con la demanda, para considerarla acontecimiento aislado, respecto del transcurso del plazo de prescripción, y debiéndose entrar al fondo de la pretensión, reproduce su postura de la primera instancia.

Los codemandados formularon su escrito de oposición, que defiende la sentencia de la instancia.

SEGUNDO. - Fáctico

La sentencia apelada no cuenta con una completa relación de hechos probados, y solamente puede obtenerse de la fundamentación jurídica la base fáctica para la apreciación de la prescripción extintiva de las acciones de competencia desleal.

Explícitamente, se enuncia, introduciendo el Tribunal alguna precisión:

1.- La actora, Viscofan S.A., en adelante Viscofan, se dedica principalmente a la fabricación de todo tipo de envolturas cárnicas (celulósica, colágeno, fibrosa y plástico) para embutidos u otras aplicaciones, habiendo desarrollado durante décadas tecnología y *know how*, en particular un conjunto de máquinas, que optimiza el proceso productivo, y que le dota de ventajas en su mercado, lo que mantiene bajo sigilo, sin protección de propiedad industrial.

Firmado por:
EDORTA JOSU ECHARANDIO HERRERA,
ILDEFONSO PRIETO GARCÍA-NIETO,
JESÚS SANTIAGO DELGADO CRUCES

Fecha: 18/05/2021 13:51

Doc. garantizado con firma electrónica. URL. verificación:https://administraciondejusticia.navarra.es/SCOD_Web/index.html

Código Seguro de Verificación:3!2013!2003-83a0e!e01cab!1997a11b7514d25699a+h7AA==

NICHOLAS G. CHARLES COLOMINA                3 0 AUG 2023
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish

4



ADMINISTRACIÓN DE JUSTICIA

Firmado por: EBORTA JOSU ECHARANDIO HERRERA, ILDEFONSO PRIETO GARCIA-NIETO, JESUS SANTIAGO DELGADO CRUCES

Fecha:18/05/2021 13:51

Código Seguro de Verificación:31Z013l7003-43a0afa01caob1897e1fb7514626898arH7AÁ=r

Doc. garantizado con firma electrónica. URL verificación:https://administraciondejusticia.navarra.es/SCDD_Web/index.html

2.- Viscofan ha venido colaborando con diferentes proveedores entre los que se encontraba la mercantil Bildu Lan Maquinaria Especial y Automatización, S.L.L., en adelante Bildu Lan, dedicada a la fabricación de maquinaria especial a medida para procesos industriales, con quien suscribió varios acuerdos de confidencialidad con la finalidad de proteger sus innovaciones en el sector, quedando la citada mercantil obligada a mantener en secreto toda la información referente a Viscofan (con especial hincapié en planos y piezas), vedándole la posibilidad de utilizar dicha información en beneficio propio o de tercero y estando obligada a devolver o destruir la información utilizada una vez acabados los encargos profesionales.

4.- En el año 2011 se constituyó la demandada, Sayer Technologies S.L., para lo que sigue Sayer, aunque hasta noviembre de 2012 tuvo otra denominación y otro objeto social, pasando en este momento a recoger uno semejante al de Bildu Lan, y de la misma forman parte, desde octubre de 2012, el antiguo director gerente de Bildu Lan, el codemandado Sr. Garrido, el adjunto gerente de Bildu Lan, el codemandado Sr. Legaz, y el que fuera comercia, el codemandado Sr. Múgica.

5.- Sayer colaboró también con Sayer en algunos trabajos desde diciembre de 2012 hasta principios de 2015, por lo que firmó con dicha empresa, el 10 de diciembre de 2012, un acuerdo de confidencialidad.

Implícitamente, debe tenerse por probado, en la primera instancia, y por referencia a los hechos de la contestación, que la eventual infracción denunciada por la demanda estaría compuesta de una venta de maquinaria -máquina de nudos- con tecnología de Viscofan S.A., para lo que sigue Viscofan, conocida por los demandados por ser proveedor de ésta Bildu Lan, aunque la relación se demuestra también directamente con Sayer; una vez fundada ésta por los Sres. Garrido, Legaz y Múgica, y que tuvo lugar en agosto de 2014, y que la actora

NICHOLAS G. CHARLES COLOMINA   30 AUG 2023
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902

5

supo desde el 23 de febrero de 2015, según afirma la propia demanda (documento núm. 17).

Con ello, otros actos posteriores de Sayer, mercantil competidora de la demandante sostiene la juzgadora a quo, no acreditan esa parasitación de tecnología.

Se mantiene que son de dos órdenes los actos posteriores al conocimiento de febrero de 2015, que también completamos en su identificación y algún pormenor de precisión:

(i) En febrero de 2016 se encargó un pedido de poleas a la mercantil Dinamica Distribuciones S.A.), y en noviembre de 2015 había encargado otro pedido de bandas, respectivamente a las empresas Indarbelt S.A. y Ammeraal Beltech S.A. (documentos nos. 24 y 28 de la demanda), con planos muy parecidos a los recibidos de Master Navarra Automatismos S.L., para servir poleas o bandas a Viscofan, lo que deriva de testimonios preconstituidos de Álvaro Blanco de Master Navarra, y de Joseba Elola Castillo, de Ammeraal (actas notariales, a los documentos nos. 26 y 28 de la demanda).

De éstos, se dice que son actos instrumentales para la fabricación por parte de Sayer de una máquina (la de nudos) que se afirma es similar (en la demanda, copiada) y se trató de vender por parte de los demandados.

(ii) Que se efectuó en 2016 un envío de contenedores por parte de Sayer a Nitta Casing Inc, que en su interior llevaba producto con tecnología construida por Sayer e imitada de la de Viscofan.

De esto, se dice que no está acreditado el envío de tales máquinas.

Además de lo citado, cabe entender agregado del relato judicial, que Viscofan, mediante el acta notarial, al documento núm. 18 de la demanda, notificó el 25 de febrero de 2015 a Sayer, a través de su representante Sr. Legaz, mediante una carta, con el requerimiento para que se abstuviera de comercializar las máquinas de nudos y entregara toda la

NICHOLAS G. CHARLES COLOMINA    30 AUG 2023
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish

6



ADMINISTRACIÓN DE JUSTICIA

Firmado por: EDORTA JOSU ECHARANDIO HERRERA, ILDEFONSO PRIETO GARCÍA-NIETO, JESÚS SANTIAGO DELGADO CRUCES

Fecha: 18/05/2021 13:51

Doc. garantizado con firma electrónica. URL verificación:https://ww1.mjusticia.es/administracionelectronica.navarra.es/SCDD_WebIndex.html    Código Seguro de Verificación:31201370033a3a0efdd1cabb1697e11b7514d2869Bar#h7AA==

documentación e información que estuviera relacionada con los diseños, la tecnológica y el *know-how* de la actora.

Y posteriormente, que Viscofan presentó el 20 de marzo de 2016 denuncia, que correspondió al Juzgado de Instrucción núm. 3 de Iruña/Pamplona, por delito de revelación de secretos industriales, con entrada y registro acordada en las Diligencias Previas en las instalaciones de Sayer, para ser el procedimiento de investigación sobreseído mediante auto de 4 de abril de 2016, confirmado por el de apelación en la Sección 2ª de esta Audiencia de 20 de mayo de 2016.

El recurso de apelación no censura propiamente la valoración probatoria, esto es, no señala el error judicial en dicha valoración, lo que consiste en identificar lo que falta, sobra o es divergente de la indicada relación de hechos, así como en aislar el medio probatorio que determinaría lo histórico del dato faltante, sobrante o sustancialmente diferente, por supuesto, que tenga relevancia de cara a la modificación del fallo.

La crítica del apelante es de la motivación fáctica de la sentencia, desde unos pocos hechos controvertidos. Así se expone en la alegación tercera del recurso, que se queja de la dejación por la juez de instancia, del inexcusable deber de valoración probatoria y de motivación.

Y es verdad que la sentencia, según es una praxis inadecuada, enderezándose a estimar la excepción de prescripción, no presta atención a dejar expreso un resultado probatorio respecto de los hechos de la demanda, y de las resistencias de la contestación acerca de su certeza y rasgos históricos, prescindiendo de que vaya a apreciarse un hecho excluyente de la acción.

Aunque la parte, alegando la indefensión en que se dice sumida, no pide la anulación de la sentencia, y de todas formas, como sentó la STS 22/2010, de 29 de enero (RJ 2013, 164), recogiendo lo que apunta la STC 187/2000, de 10 julio, con relación al art. 24.1 CE "(...) *dicho precepto no garantiza el*

NICHOLAS G. CHARLES COLOMINA    3 0 AUG 2023
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish

7

*derecho a una respuesta pormenorizada a todas y cada una de las cuestiones planteadas, de manera que "si el ajuste es sustancial y se resuelven, aunque sea genéricamente, la pretensiones, no existe incongruencia, pese a que no haya pronunciamiento respecto de a las alegaciones no sustanciales (ya que) no cabe hablar de denegación de tutela judicial si el órgano judicial responde a la pretensión principal y resuelve el tema planteado" (STC 29/1987, de 6 de marzo), pues "sólo la omisión o falta total de respuesta, y no la respuesta genérica y global a la cuestión planteada, entraña vulneración de la tutela judicial efectiva" (STC 8/1989, de 23 de enero). E incluso, este Tribunal Constitucional ha ido más allá, al afirmar que el silencio puede constituir una desestimación tácita suficiente, si bien en tales casos es necesario que así pueda deducirse de otros razonamientos de la Sentencia o pueda apreciarse que la respuesta expresa no era necesaria o imprescindible (SSTC 68/1988, de 30 de marzo, 95/1990, de 23 de mayo, 91/1995, de 19 de junio, y 85/1996, de 21 de mayo)".*

Esto es, hay una motivación fáctica implícita, con una respuesta genérica y contundente: los actos de competencia desleal continuados o incesantes, que podían dejar irrelevante el silencio de más de un año de Viscofan desde febrero de 2015, no se prueban, en la medida que no se prueba ninguno de los actos de competencia desleal de la demanda. Se evidencia, con ello, una cierta lesión del derecho de doble instancia, que el Tribunal ha de corregir, limitadamente, puesto que se insiste en que debemos ceñirnos a lo que propone el recurso en relación a los hechos y su prueba en concreto.

En realidad, según se desprende del argumentario de la sentencia apelada, la única conducta de Sayer posterior al requerimiento de 23 de febrero de 2015, que valora la versión judicial, es la del envío de contenedores desde Valencia a Nitta Group, en un momento indeterminado de 2016. No se juzga probado que llevaran máquinas con tecnología aprovechada indebidamente de Viscofan, dado que no se prueba físicamente

Doc. garantizado con firma electrónica. URL verificación:https://administracionelectronica.navarra.es/SCDD_Web/index.html

Firmado por: ELORTA JOSU ECHARANDIO HERRERA, ILDEFONSO PRIETO GARCIA-NIETO, JESÚS SANTIAGO DELGADO CRUCES

Fecha: 18/05/2021 13:51

Código Seguro de Verificación: 3120137003-83a9afa01cabb1697e11b7514422869an=h7AA===

NICHOLAS G. CHARLES COLOMINA    3 0 AUG 2023
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
#5902

8



ADMINISTRACIÓN
DE JUSTICIA

lo que llevaban. Y lo cierto es que la propia demanda (103, pág. 37), afirma que los contenedores que envió Sayer desde Valencia a Nitta Group en 2016, con una medida de 40 pies y peso de 13.382 hasta 20.645 kg, sospechaba que contenían varias máquinas, de esas que incorporaban imitaciones de Viscofan. Todo lo que tiene Viscofan es el testimonio por escrito de Herbert Jaeger, además de que las máquinas procedían de España, y además, con base en una referencia de terceros.

Se pregunta retóricamente el recurrente cómo ha de demostrar, teniendo a la vista la pericial de designación judicial las facturas de venta a Nitta, que los cargamentos tenían un contenido distinto, cual si la sentencia reclamara una *diabolica probatio* de hecho negativo. Pero no se pide prueba de un hecho negativo, sino del positivo de que las máquinas facturadas y cargadas para Nitta eran de las que incorporaban tecnología secreta de Viscofan, lo que da por supuesto la recurrente, aunque solamente porque así lo manifiesta desde la demanda, y así se lo indicara al perito reclutado por su parte.

Y la versión judicial de hechos no tiene probado que hubiera fabricado y/o comercializado Sayer máquinas de nudos con tecnología secreta de Viscofan, ni siquiera respecto de la detectada en agosto de 2014, que se debió vender a Polonia, y que justificó el requerimiento de 23 de febrero de 2015. Este requerimiento prueba que lo denunciado por Viscofan ya se sabía para cuando se practicó la exigencia de entrega de datos reservados, pero no que existiera la famosa máquina de nudos imitada, ni las características precisas de la misma.

Los actos "instrumentales" de noviembre de 2015 y febrero de 2016, como consisten en el acopio de poleas y bandas semejantes a las que emplean los suministradores de Viscofan, lógicamente no tiene sentido que sean medios para la fabricación de agosto de 2014, sino que habrían de serlo para realizaciones contemporáneas al suministro. Pero, ya se ha indicado, que el razonar de la sentencia no tiene por probada

Firmado por:
EDORTA JOSU ECHARANDIO HERRERA,
ILDEFONSO PRIETO GARCIA-NIETO,
JESÚS SANTIAGO DELGADO CRUCES

Fecha: 18/05/2021 13:51

Código Seguro de Verificación 3120157003-68a0a0e01cabb1687e11b7514d25899a+h7AA==

Doc. garantizado con firma electrónica. URL verificación: https://administracionelectronica.navarra.es/SCDD_Web/index.html

NICHOLAS G. CHARLES COLOMINA    30 AUG 2023
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902

9

ninguna realización imitativa. Con lo que la expresión es deficiente, pero se quiere apuntar que no se acredita producción de máquinas de nudos, sino adquisiciones de medios o piezas que pueden utilizarse en máquinas de nudos.

En alegación segunda del recurso, dedicada a demostrar que Viscofan no hizo dejación de sus derechos, tras de que recibiera la respuesta pública de Sayer el 3 de marzo de 2015 (en realidad, el 25 de febrero), se apunta por qué entiende acreditado que esos actos, que la sentencia considera instrumentales, fueron continuidad de la reproducción, en ciertas piezas, de la tecnología que concede ventaja competitiva a Viscofan: los testimonios del acto del juicio del Sr. Blanco, de Master Navarra Automatismos, del Sr. Elola, de Ammeraal, y del Sr. Calavia, director industrial de Viscofan.

A la credibilidad del Sr. Calavia, por elementales razones, y a la que deriva para los Sres. Blanco y Elola, dado que habían preconstituido en actas notariales sus declaraciones, como queda dicho, y son de empresas colaboradoras de Viscofan, se une una evidente incredibilidad objetiva, en cuanto al elemento material de las bandas y poleas, respecto de la que no hay un evaluación técnica sino una opinión de parecido, como al elemento subjetivo, puesto que no hay acreditación de que unos pedidos históricos se llegaran a hacer por Sayer.

Por consiguiente, si la sentencia es escueta en su valoración de hechos, y de motivación implícita, el recurso también es magro en cuanto a contradecirla, muy explícito, pero sin poder señalar la prueba de hechos cuya valoración acusa faltar.

La llamada, entonces, al dictamen pericial de designación judicial, emitido por la Sra. Gómez de Cía, censora jurada de cuentas, no tiene ningún vigor probatorio independiente, puesto que la perito se limita a calcular el beneficio neto obtenido con la fabricación y/o explotación de las piezas y máquinas que incorporan la tecnología de

NICHOLAS G. CHARLES COLOMINA
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902

30 AUG 2023

10

Doc. garantizado con firma electrónica. URL verificación:https://administracionelectronica.navarra.es/SCID_Web/Index.html

Código Seguro de Verificación: 312313T0U03-83a0efe01cabb1697e11b7514d26g99a=h7AA==

Fecha: 19/05/2021 13:51

Firmado por:
EBORA JOSU ECHARANDIO HERRERA,
ILDEFONSO PRIETO GARCÍA-NIETO,
JESÚS SANTIAGO DELGADO CRUCES

Viscofan, dado que estos artículos físicos, con su constancia formal económico contable son, según se expresa en la solicitud de prueba y su admisión en la audiencia previa, los que se describen en el dictamen pericial aportado por Viscofan, al documento núm. 37 de los acompañados con su demanda.

El informe de la economista censora de cuentas designada por el Juzgado ciertamente cuantifica que hubo venta de máquina de nudos a Polonia en el verano de 2014, y que se adquirieron las bandas y poleas ya citadas, desde noviembre de 2015, y seguían adquiriéndose después de presentada la demanda, y que hubo ventas, que se embarcaron en contenedores a Nitta Casing Inc., que se dice es competidor directo de la demandante. Lo cierto es que no hay coincidencias de fechas con nada, en cuanto a lo alegado, y no probado. Sin embargo, que dichas operaciones tengan por objeto piezas o máquinas con imitación de tecnología de Viscofan, únicamente resulta de lo que sostiene la demanda, con apoyo en el dictamen pericial por su parte reclutado, desde las diligencias penales.

Pero la pericial técnica aprovechable en un proceso como el del caso, no es de comportamientos, sino de una coincidencia de rasgos de lo incorporado a determinadas piezas o máquinas, sin que baste una apariencia externa, por ver si hay usurpación de tecnología secreta de Viscofan, que sea de la privativa de ésta, y protegida mediante contratos de confidencialidad, y no divulgada o de titularidad ajena. Y nada se alega en el recuso al respecto, a fin de que se valore *"según las reglas de sana crítica"* de art. 348 LEC, si sería conforme a un criterio de racionalidad exteriorizado mediante la motivación. Tal vez persuadida la defensa de Viscofan de que el método de la explicación, en razón a las operaciones periciales que han llevado a cabo, medios o instrumentos empleados, recibirían la misma valoración que se arrastra desde el sobreseimiento del procedimiento de investigación penal.

Firmado por:
EDORTA JOSU ECHARANDIO HERRERA,
ILDEFONSO PRIETO GARCÍA-NIETO,
JESÚS SANTIAGO DELGADO CRUCES

Fecha: 18/06/2021 13:51

Doc. garantizado con firma electrónica. URL verificación: https://administraciondeelectronica.navarra.es/SCOD_Web/index.html

Código Seguro de Verificación: 31201370036-83a9e6d1cabc1897e11b75f4d25889a^h7AA===

NICHOLAS G. CHARLES COLOMINA    3 0 AUG 2023
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902

11

La dificultad de probar determinados extremos, o la necesidad de que se incline la valoración probatoria del lado de una parte para salvar dicha dificultad, no son argumentos para contrariar el resultado de la primera instancia, fuera de los límites de los principios de facilidad y sensibilidad probatoria evocados por art. 217.6 LEC.

También puede ser, y estadísticamente mayoritario, que lo difícil de probar determinado evento resida en que no ocurrió realmente.

**TERCERO.** - Prescripción de las acciones de competencia desleal

El recurso de apelación del demandante censura la aplicación efectuada por la sentencia de la instancia del plazo de prescripción de la acción ejercida por Viscofan, por empleo de secreto empresarial, aprovechamiento del esfuerzo ajeno, y cláusula general de infracción de la buena fe objetiva, teniéndola por nacida el 23 de febrero de 2015, al haber transcurrido más de un año cuando denunció en vía penal a los demandados el 20 de marzo de 2016. De tal manera, estéril esa investigación penal por revelación de secretos industriales, la demanda rectora de este proceso civil, formulada el 2 de noviembre de 2016, hubiera ejercitado una acción extinta.

La representación de la recurrente se manifiesta tan decepcionada con la solución propinada por la primera instancia, desde el déficit de motivación, y la ausencia de acogimiento de la lógica prescriptiva de la moderna regulación del uso de secretos empresariales de Ley 1/2019, que resulta difícil que el tratamiento que corresponde, y explicará el Tribunal, venga a sacarla de tal decepción. Valga defender que la juzgadora a quo no considera de modo estricto un abandono por Viscofan de la autotutela de sus innovaciones bajo sigilo, sino más bien, indirectamente, un exceso de ambición en la misma, puesto que se optó por la acción penal, la de mayor

Firmado por:
EDORTA JOSU ECHARANDIO HERRERA,
ILDEFONSO PRIETO GARCIA-NIETO,
JESUS SANTIAGO DELGADO CRUCES

Fecha: 18/05/2021 13:51

Código Seguro de Verificación 3120137003-83a0efa01cabb1f897e11b75f4d22589a#1r7AA== Doc. garantizado con firma electrónica. URL verificación https://administraciondejusticia.navarra.es/SCDD_Web/index.html

NICHOLAS G. CHARLES COLOMINA    3 0 AUG 2023
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902



ADMINISTRACIÓN
DE JUSTICIA

Firmado por:
EDORTA JOSU ECHARANDIO HERRERA,
ILDEFONSO PRIETO GARCÍA-NIETO,
JESÚS SANTIAGO DELGADO CRUCES

Fecha: 18/05/2021 13:51

Doc. garantizado con firma electrónica. URL verificación: https://administraciondejusticia.navarra.es/SCDD_Web/index.html

Código Seguro de Verificación: 3120187003-83adefe01ceab316b7e11b7614d25899a=h7AA==

intensidad, por delitos de arts. 278 y 279 CP, sin éxito o con puro éxito preliminar.

Y en todo caso, la acción civil también es un asunto de prueba y de motivación fáctica, toda vez que una utilización continuada perseverante de la tecnología secreta de Viscofan no puede fundarse ante los tribunales, por supuesto que para conocer en fondo del acto de competencia desleal de art. 13 LCD, pero tampoco para mantener vigente la acción frente a la excepción prescriptiva, por la mera afirmación del interesado, que se sitúe en un punto temporal cercano a la demanda, o se alegue que sigue ocurriendo.

Cuando la sentencia recurrida mantiene que es necesario fijar con precisión cuál es la conducta que se imputa a la parte demandada, describiéndola como *"la utilización de los conocimientos adquiridos durante su relación comercial con VISCOFAN S.A. acerca de los planos, maquinaria y procesos productivos de ésta para comercializar máquinas copiadas a la actora"*, no hace sino proclamar que si se ejerce una acción que la norma previene con un tiempo corto para reaccionar, y se excepciona por el sujeto pasivo de la acción el transcurso de dicho tiempo, ha de fijarse cuáles son los actos imputados para dar con el *dies a quo*. Y si se refiere a la comercialización de unas máquinas, no lo hace por cuanto la actividad concurrencial en el mercado sea requisito estructural de la violación relevante de secretos empresariales, sino porque es de lo que se acusa a Sayer y sus integrantes -como se hizo en la vía penal-, y ello determina el perímetro del debate procesal.

No puede Viscofan en segunda instancia deslizar el objeto del proceso hacia una indefinida posesión de activos intangibles reservados, a fin de asentar un comportamiento incesante hasta la actualidad. Lo que, de todas las maneras, tendría escaso recorrido, puesto que han de servir para construir una conducta restringida por el art. 13 LCD. Y mucho menos que, si por relaciones jurídicas lícitas con una empresa, un sujeto detenta porciones de *know how* bajo pacto de

NICHOLAS G. CHARLES COLOMINA        3 0 AUG 2023
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902

13

Firmado por:
EDORTA JOSU ECHARANDIO HERRERA,
ILDEFONSO PRIETO GARCÍA-NIETO,
JESÚS SANTIAGO DELGADO CRUCES

Fecha: 18/05/2021 13:51

Doc. garantizado con firma electrónica. URL verificación:https://administracionelectronica.navarra.es/SCDD_Web/idx.taxi.html

Código Seguro de Verificación: 31201537003-63a0afa01ccabb1897e11b7514d26589an-h7AA=e

confidencialidad, la mera posesión, sin realizaciones que lo incorporen, ni presencia concurrencial, supongan una continuidad infractora de ningún tipo. No existe en art. 13.3 LCD, en esa tutela del secreto empresarial por peligro creado, una protección imprescriptible, que haría palidecer a los derechos de propiedad industrial por el carácter perpetuo de la reserva del bien inmaterial. La mera competencia en el mercado de la empresa Sayer, quien por hipótesis permaneciera en posesión de datos de Viscofan, que no devolvió el 25 de febrero de 2015, ni ha destruido, tampoco es competencia desleal. Y desde luego, no es por lo que reclamaba la demanda.

La norma aplicada, de art. 35 pfo.1º LCD, establece un plazo de prescripción breve, anual, para las acciones de competencia desleal, mediante el método moderno normativo-subjetivo, ésto es, desde que las acciones pudieron ejercitarse (criterio normativo objetivo de la tradición del Derecho civil general, tesis de la *actio nata*, de art. 1.969 CCiv, cuya corrección subjetivista procede en nuestro sistema de la extrema facilidad con la que se ha concebido siempre la interrupción en art. 1.973 CCiv); y el legitimado tuvo conocimiento de la persona que realizó el acto de competencia desleal (criterio subjetivo, en la línea extendida en la jurisprudencia ante los plazos breves, en consonancia con el Derecho comparado, y que se positivizó en art. 1968.2º CCiv). El pfo. 2º de art. 35 contempla la continuidad de la actividad de competencia desleal frente a la que se acciona: *"en cualquier caso, por el transcurso de tres años desde el momento de la finalización de la conducta"*.

Viscofan sostiene que el plazo de prescripción no había comenzado a correr, ni cuando denunció en vía penal en marzo de 2016, ni cuando demandó en esta vía civil en noviembre siguiente, habida cuenta que la conducta desleal no había finalizado.

NICHOLAS G. CHARLES COLOMINA    3 0 AUG 2023
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902

14



ADMINISTRACIÓN
DE JUSTICIA

Firmado por:
EDORTA JOSU ECHARANDIO HERRERA,
ILDEFONSO PRIETO GARCIA-NIETO,
JESÚS SANTIAGO DELGADO CRUCES

Fecha: 18/05/2021 13:51

Doc. garantizado con firma electrónica. URL verificación: https://administraciondejusticia.navarra.es/SCDD_Web/index.html

Código Seguro de Verificación: 3120187003-83a0efa7d1cpbb1697a11b7514d2569an+h7AA==

El régimen de la prescripción de art. 35 LCD, procede de la reforma operada por la Ley 29/2009, de 30 de diciembre, por la que se modifica el régimen legal de la competencia desleal y de la publicidad para la mejora de la protección de los consumidores y usuarios, precisamente recogiendo la doctrina, que mencionan ambas partes, como la sentencia apelada, de la STS -Pleno- 879/2009, de 21 de enero de 2010 (RJ 2010, 1275, aunque su numeración es de 2009, la fecha es de 2010): *"cuando se trata de actos de competencia desleal de duración continuada, la prescripción extintiva de las acciones prevista en el art. 21 LCD no comienza a correr hasta la finalización de la conducta ilícita"*, reafirmada con posterioridad en SSTS 338/2010, de 20 de mayo de 2010 (RJ 2010, 3708), 462/2012, de 16 de julio (RJ 2012, 10100) y 47/2013, de 19 de febrero (RJ 2013, 4592).

Ahora bien, el concepto de duración continuada queda patente en la sentencia (de la mayoría, porque había voto particular de cuatro magistrados): *"La aplicación del art. 21 LCD no suscita especiales dificultades, respecto del cómputo de los plazos prescriptivos y excluyentes que establece, cuando se trata de actos aislados -plenamente individualizados-, ni prácticamente tampoco cuando, aun habiendo pluralidad de actos, éstos se repiten en el tiempo con carácter discontinuo o intermitente, de modo que es apreciable fraccionamiento entre las conductas ilícitas. El problema se plantea en relación con actos de tracto sucesivo continuo, consistentes, bien en una actuación continuada, con unidad de acción, o en una actuación permanente, y que persiste al tiempo de la demanda. Para un primer criterio, el cómputo - "dies a quo"- debe comenzar en los momentos a que se refiere el precepto, con independencia del carácter instantáneo o duradero del acto de competencia desleal, es decir, desde que pudieron ejercitarse las acciones, siempre que se tuviere conocimiento de la persona que realizó el acto de competencia desleal -plazo de un año-, o en otro caso desde que se realizó*

NICHOLAS G. CHARLES COLOMINA    30 AUG 2023
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902

15

*el acto inicial -plazo de tres años-. Para otro modo de pensar, el tiempo no empieza a correr, cuando se trata de actos duraderos, mientras permanezca la conducta ilícita. Se exige estar a la producción del resultado o cese del acto ilícito, de manera que el plazo no corre mientras la situación jurídica no se restablezca".*

La conducta continuada excluye los supuestos de la pluralidad de actos que se repiten en el tiempo con carácter discontinuo o intermitente, cuando cabe fraccionar las conductas ilícitas. Y salvo que se admita la pura potencialidad de violar el secreto empresarial, por ser empresa competidora con datos reservados bajo sigilo de otra, como una actuación permanente, a estos efectos, lo cual se ha rechazado, no es lo relatado en la demanda, y por lo que se pide una reparación económica, y en fin, tampoco se ha probado -lo que sí se relató e intentó probar por Viscofan, sin conseguirlo-, sino actos intermitentes de supuesta aparición de piezas o máquinas en distintos momentos, alguno del todo indeterminado, que integrarían tecnología reservada.

Por consiguiente, no habría, por hipótesis una actividad continuada, y tampoco hay prueba de esos actos intermitentes, con virtualidad infractora, a los que aluden las "alarmas" de que habla el escrito de demanda. Por ello, la prescripción anual desde un acto de intolerancia de Viscofan con su antigua colaboradora Sayer, el 23 de febrero de 2015, está correctamente decretada por la sentencia recurrida.

Con arreglo a la autoridad de la STS 344/2019, de 14 de junio, al caso sería aplicable el art. 35 pfo.1.º LCD, los plazos de uno y tres años son recíprocamente excluyentes, y no sucesivos: una vez que el posible actor ha tenido conocimiento de la realización del acto de competencia desleal y de su autor, ya no es posible apreciar la prescripción de la acción de competencia desleal en atención al momento de realización del acto de competencia desleal, de forma que transcurrido un año desde el momento en que se pudo ejercitar la acción y se tuvo

Doc. garantizado con firma electrónica. URL verificación: https://administracionelectronica.navarra.es/SCDD_Web/index.html

Código Seguro de Verificación: 3120137003-83a0afa01cab018976d11b751442589ar-h7A4==

Fecha: 18/05/2021 13:51

Firmado por:
EDORTA JOSU ECHARANDIO HERRERA,
ILDEFONSO PRIETO GARCIA-NIETO,
JESÚS SANTIAGO DELGADO CRUCES



ADMINISTRACIÓN
DE JUSTICIA

conocimiento de la persona que realizó el acto de competencia desleal, prescribe la acción aunque no hayan transcurrido todavía tres años desde el momento de realización del acto de competencia desleal, y viceversa: una vez agotado este plazo de tres años prescribe la acción de competencia desleal aun cuando no haya pasado todavía un año desde el momento en que se pudo ejercitar y se conoció la persona que realizó el acto de competencia desleal. Un sistema de plazo corto y *dies a quo* normativo-subjetivo exige el establecimiento de un plazo de preclusión (*long-stop*).

El plazo de prescripción empieza a contarse: (i) si se trata de un acto instantáneo, desde que se produce y se conoce al autor; (ii) si se trata de un acto duradero, cuando ha acabado el acto; y (iii) en el caso de la acción de indemnización de daños y perjuicios, desde que se produce el perjuicio. Así, cada acto de competencia desleal funda una nueva acción de competencia desleal, sometida a un plazo de prescripción propio, diferente de aquél al que están sometidas las acciones que pudieren haber nacido.

En este caso, en la demanda se ejercitan distintas acciones de competencia desleal, tanto por concretos ilícitos concurrenciales tipificados en la LCD, actos de violación de secretos empresariales, de aprovechamiento indebido del esfuerzo ajeno, como por la cláusula general. No hay conducta continuada. Y no hay prueba de los actos, como se describen, según se ha motivado.

Por lo tanto, para el 23 de febrero de 2016, respecto del acto aislado, aun no probado, de agosto de 2014, prescribieron las acciones de competencia desleal, y para otros actos aislados ulteriores, no hay prueba de su entidad histórica.

Tiene, por último, que destacarse, en el presente caso, que la ausencia de prueba no solo corrobora la prescripción apreciada, sino indefectiblemente determinaría la misma desestimación en cuanto al fondo, por no acreditarse actos que pudieran encajarse en arts. 6, 12 y 13 LCD.

NICHOLAS G. CHARLES COLOMINA
3 0 AUG 2023
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
#5902

17

Firmado por:
EDORTA IOSU ECHARANDIO HERRERA,
ILDEFONSO PRIETO GARCÍA-NIETO,
JESÚS SANTIAGO DELGADO CRUCES

Fecha: 18/06/2021 13:51

Doc. garantizado con firma electrónica. URL verificación: https://administraciondejusticia.navarra.es/SCDD_Web/index.html

Código Seguro de Verificación 3120137003-63a0a9e01cabb01697e11b7514425898a=h7AA==

Firmado por:
EDORTA JOSU ECHARANDIO HERRERA,
ILDEFONSO PRIETO GARCIA-NIETO,
JESUS SANTIAGO DELGADO CRUCES

Fecha: 18/05/2021 13:51

Código Seguro de Verificación: 31201370C3-83a0efa01caab01887e1fb75f44f25889a=h7AA==

Doc. garantizado con firma electrónica. URL verificación: https://iratmin.istraciaonelectronica.navarra.es/SCDD_Web/index.html

La competencia es, al tiempo, presupuesto y límite del mercado. Como declara la STS 586/2014, de 28 de octubre (RJ 2014, 6749), la legislación sobre competencia desleal *tiene como fin proteger el correcto funcionamiento del mercado, pues pretende ser un instrumento jurídico de ordenación de las conductas que en él se practican"*. Aunque el caso de autos pertenece a lo más tradicional de la tutela entre empresarios, además exactamente concurrentes en el mercado, dado que no hay función de protección de consumidores, pues la actividad de quienes contienden pone bienes en el mercado para profesionales y empresarios, y no pertenece a la finalidad complementaria de la competencia desleal respecto ningún derecho absoluto de propiedad industrial. Es el supuesto rancio de que, debido a las circunstancias concretas que rodean una actuación competitiva determinada entre empresarios, esa actuación competitiva, por sus circunstancias específicas, se sostiene que es un acto incorrecto, un acto de competencia desleal (ello, aunque entre los codemandados se hallan los ex trabajadores de Bildu Lan, que como personas físicas no constan como empresarios individuales, puesto que han constituido y gestionado Sayer, y podrían vincularles el seguimiento de las reglas de comportamiento correcto en el mercado, también a título personal -STS 963/2000, de 18 de octubre de 2000, RJ 2000, 8809-).

Por lo tanto, no hay manera de saber si ha habido coincidencias técnicas en piezas y máquinas, si las coincidencias eran técnicamente evitables, si los demandados tienen algo físico o virtual de los secretos de Viscofan, ni por ello, sin que la cláusula general de art. 4 LCD que descansa en el concepto jurídico indeterminado de la buena fe objetiva, inapropiadamente se lanza en la demanda, para actos típicos específicos, a los que faltaba algún requisito para que pueda aplicarse la norma correspondiente a un supuesto concreto.

NICHOLAS G. CHARLES COLOMINA

Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902

3 0 AUG 2023

18



ADMINISTRACIÓN
DE JUSTICIA

En definitiva, la falta de prueba de los actos, de cara a la prescripción, equivale a la inviabilidad de la acción de Viscofan en cuanto al fondo.

No cabe acoger el recurso de apelación, respecto de una pretensión prescrita e insusceptible de examen en cuanto al fondo.

### CUARTO. - Costas

Conforme a lo prevenido en el art. 398.1 LEC la desestimación del recurso de apelación interpuesto conlleva que se haga imposición de las costas causadas a la parte recurrente.

VISTAS las normas y jurisprudencia citadas, y demás de general y pertinente aplicación, en ejercicio de la potestad jurisdiccional, que emana de la soberanía popular,

## FALLO

SE DESESTIMA el recurso de apelación interpuesto por VISCOFAN S.A., representada por el Procuradora de los Tribunales JAVIER ARAIZ RODRÍGUEZ, contra la sentencia del Juzgado de lo Mercantil de Iruña/Pamplona de 7 de marzo de 2019, siendo partes recurridas SAYER TECHNOLOGIES S.L., VIDAL ERNESTO GARRIDO ZÚÑIGA, SANTOS LEGAZ AZCONA y CARLOS MÚGICA PEREZ DE ALBÉNIZ, representados por el Procurador de los Tribunales CARLOS HERMIDA SANTOS, confirmando todos los extremos de su fallo.

El reembolso de las costas del recurso de apelación se impone a la parte recurrente.

NICHOLAS G. CHARLES COLOMINA    3 0 AUG 2023
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902

19

Dese el destino legal al depósito que se haya podido constituir para el recurso.

Así por esta nuestra Sentencia, lo pronunciamos, mandamos y firmamos.

La presente resolución, de concurrir los requisitos establecidos en los artículos 477 y 469, en relación con la disposición final 16ª de la vigente Ley de Enjuiciamiento Civil, es susceptible de recurso de casación y de recurso extraordinario por infracción procesal ante la Sala Primera del Tribunal Supremo o, en su caso, de recurso de casación ante la Sala de lo Civil y Penal del Tribunal Superior de Justicia de Navarra, debiendo presentar ante esta Sección el escrito de interposición en el plazo de los VEINTE DÍAS siguientes al de su notificación.

Debiendo acreditarse en el momento de la interposición del recurso haber consignado el depósito exigido para recurrir en la cuenta de depósitos y consignaciones de este órgano abierta en Banco Santander, con apercibimiento de que de no verificarlo no se admitirá a trámite el recurso pretendido.

*La difusión del texto de esta resolución a partes no interesadas en el proceso en el que ha sido dictada sólo podrá llevarse a cabo previa disociación de los datos de carácter personal que los mismos contuvieran y con pleno respeto al derecho a la intimidad, a los derechos de las personas que requieran un especial deber de tutela o la garantía del anonimato de las víctimas o perjudicados, cuando proceda. Los datos personales incluidos en esta resolución no podrán ser cedidos, ni comunicados con fines contrarios a las leyes.*

Firmado por: EDORTA JOSU ECHARANDIO HERRERA, ILDEFONSO PRIETO GARCIA-NIETO, JESUS SANTIAGO DELGADO CRUCES

Fecha: 16/05/2021 13:51

Dos. garantizado con firma electrónica. URL verificación:https://administraciondeelectronica.navarra.es/SGD_Web/index.html

Código Seguro de Verificación: 312013f7003-83ade/a9f1cabb1697e11b7514d25898ar=h7AA===

NICHOLAS G. CHARLES COLOMINA        3 0 AUG 2023
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
#5902

20

**EXHIBIT I**







**000247387**

NICHOLAS G. CHARLES COLOMINA

Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902

**CLASE 8.ª**

| NOTIFICATION LEXNET by kmaleon: | : 202310586277741 | | 06-23-2023 |
|---|---|---|---|
| ANA LÁZARO GOGORZA | | >> José María Aznar Auzmendi | |
| Tel. +34 91 446 00 48 – Fax +34 91 447 27 82 | | Tel. +34 617314136 | |
| analazaro@lazarogogorza.es | | | Sayer Technologies SL    1/9 |

**Case file A21-427**

Client            : Sayer Technologies SL, Santos Legaz Azcona, Vidal Ernesto Garrido Zuñiga, and
                    Carlos Mugica Perez de Albeniz
Opposing party : Viscofan SA
Subject          : SUPREME COURT APPEAL AND INFRINGEMENT OF PROCEDURE 5360/2021
Court            : SUPREME COURT, CHAMBER ONE, MADRID

---

**Summary**

**Resolution**
06.23.2023    **22**
              **COURT ORDER DISMISSING THE SUPREME COURT APPEAL AND AN
              EXTRAORDINARY APPEAL OWING TO INFRINGEMENT OF PROCEDURE, WITH THE
              PROCEDURAL COSTS IMPOSED ON THE APPEALING PARTY.**

---

Best regards

ANA





000247388

NICHOLAS G. CHARLES COLOMINA
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902

CLASE 8.ª

[Translator's note: the following eight pages of the original document show a text box in the header with the text "NOTIFICATION LEXNET by kmaleon: 20231058627741 – 06-23-2023 – ANA LÁZARO GOGORZA – 2/9 [to 9/9]".]

[Translator's note: the following seven pages of the original document show the Spanish coat of arms along with the text "ADMINISTRATION OF JUSTICE" in the top left corner; the text "SUPREME COURT APPEAL AND INFRINGEMENT OF PROCEDURE/5360/2021" in the header; the text "Secure Verification Code: E04799402-MI:pMJh-cxoT-AbSe-qrwc-T – You can verify this document at https://www.administraciondejusticia.gob.es" at the foot; and each page is numbered from 1 to 7 in the bottom right corner.]

[Translator's note: this sheet of the original document bears the following on the left-hand margin: "NOTE. It is pointed out that, pursuant to the provisions of Organic Act 3/2018, of December 5, on personal data protection and the guarantee of digital rights, in relation to the stipulations of article 236 bis et seq. of the Organic Act on the Judiciary, the data set out in this resolution or record of notification is confidential and the transfer or public disclosure thereof by any means or procedure is prohibited, notwithstanding the authority incumbent on the General Council of the Judiciary acknowledged in article 560.1 - 10 of the Organic Act on the Judiciary".]

[Translator's note: this sheet of the original document bears the following at the foot: "Signed by FRANCISCO MARÍN CASTÁN, 06/22/2023 12:45" – "Signed by IGNACIO SANCHO GARGALLO, 06/22/2023 17:03" – "Signed by MARÍA ÁNGELES PARRA LUCÁN, 06/23/2023 07:54".]

SUPREME COURT APPEAL AND INFRINGEMENT OF PROCEDURE no.: 5360/2021

Writing for the court: Hon. Mr. Ignacio Sancho Gargallo

Attorney for the Administration of Justice: Hon. Mr. José María Llorente García

**SUPREME COURT**
**Civil Chamber**

**Court order no./**

Hon. Mr. Francisco Marín Castán, presiding magistrate

Hon. Mr. Ignacio Sancho Gargallo

Hon. Ms. M.ª Ángeles Parra Lucán

In Madrid, on June 21, 2023.

The magistrate writing for the court is the honorable Mr. Ignacio Sancho Gargallo.









000247389

NICHOLAS G. CHARLES COLOMINA

Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902

CLASE 8.ª

## BACKGROUND TO THE FACTS

**ONE** – The representative in the procedure for Viscofan S.A. filed a brief lodging an extraordinary appeal owing to infringement of procedure and a Supreme Court appeal against judgment no. 561/2021, dated May 13, 2021, issued in appeal docket no. 602/2019, stemming from the case file on ordinary procedure no. 444/2016, being followed in Commercial Court no. 1 of Pamplona.

**TWO** – By means of a court order to move proceedings forward, the afore-stated Provincial Court deemed that the appeal had been lodged and resolved to refer the case to this Supreme Court, with notice of said resolution having been served on the parties to the suit via their respective court representatives.

**THREE** – By means of a court order to move proceedings forward dated September 9, 2021, it was thereby acknowledged that the following persons had entered an appearance as a party to the case: as the appealing party, the representative Ms. María Jesús Gutiérrez Aceves acting on behalf and in representation of Viscofan S.A.; and as the party against whom the appeal is lodged, the representative Ms. Ana Lázaro Gogorza acting on behalf and in representation of Sayer Technologies S.L., Mr. Ernesto Garrido Zuñiga, Mr. Santos Légaz Azcona, and Mr. Carlos Mugica Pérez-Albeniz.

**FOUR** – The appealing party submitted the relevant deposits in order to be eligible to lodge an appeal as stipulated under additional provision 15 of Organic Act 6/1985, of July 1, on the Judiciary.





000247390

NICHOLAS G. CHARLES COLOMINA
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902

CLASE 8.ª

**FIVE** – By means of the resolution dated April 12, 2023, it was resolved to bring to the attention of the parties in appearance – for a period of ten days – the potential grounds that may lead to the non-admissibility of appeals.

**SIX** – By means of a court order to move proceedings forward dated May 16, 2023, it was stated for the record that all the parties in appearance had submitted their pleadings regarding the potential grounds that may lead to the non-admissibility of appeals lodged.

## LEGAL GROUNDS

**ONE** – The representative Mr. Javier Ariaz Rodríguez lodged an extraordinary appeal owing to infringement of procedure and a Supreme Court appeal against a judgment issued in an ordinary procedure in view of the subject matter – unfair competition – (article 249.1.4 of the Spanish Civil Procedure Act), whereby its eligibility for a Supreme Court appeal falls under ordinal 3 of article 477.2 of the Spanish Civil Procedure Act, which calls for it to be certified that there is annulment interest.

Pursuant to final provision 16.1 rule 5 of the Spanish Civil Procedure Act, it is only when a Supreme Court appeal is admitted owing to annulment interest that a review may be carried out on the admissibility of the extraordinary appeal owing to infringement of procedure.

**TWO** – The Supreme Court appeal is lodged via the correct channel. It centers around three reasons:

The first reason is founded on the infringement "[...] of articles 13 and 35 of Act 3/1991, of January 10, on Unfair Competition, and article 1969 of the Civil Code, totally objecting to the case law doctrine of the Supreme Court concerning a continuing breach stemming from acts of unfair competition – laid down in Supreme Court judgments of





000247391

NICHOLAS G. CHARLES COLOMINA

Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902



**CLASE 8.ª**

Chamber 1 no. 871/2009, of January 21, 2010 (in the plenary session), no. 47/2013, of February 19, and no. 344/2019m, of June 14 – which expressly stated that "when it relates to acts of unfair competition of continuing duration, the statute of limitations concerning the actions envisaged in article 21 (currently 35) of Act 3/1991 on Unfair Competition does not begin to elapse until the unlawful conduct has ceased." Incorrect application of the statute of limitations on the action in the case of breach of industrial secrets that does not even require an appearance on the market or a competitive purpose. [...]".

The second reason is founded on the infringement "[...] of the resolution on this appeal of annulment interest; The judgment under appeal infringes articles 11.2, 4, and 35 of Act 3/1991, of January 10, on Unfair Competition, and article 1969 of the Civil Code, totally objecting to the case law doctrine of the Supreme Court concerning a continuing breach stemming from acts of unfair competition – laid down in Supreme Court judgments of Chamber 1 no. 871/2009, of January 21, 2010 (in the plenary session), no. 47/2013, of February 19, and no. 344/2019, of June 14 – which expressly stated that "when it relates to acts of unfair competition of continuing duration, the statute of limitations concerning the actions envisaged in article 21 (currently 35) does not begin to elapse until the unlawful conduct has ceased."[...]".

The third reason upon submitting the resolution "[...] on this appeal of annulment interest; the judgment under appeal infringes article 35 of Act 3/1991, of January 10, on Unfair Competition, and article 1969 of the Civil Code, totally objecting to the case law doctrine of the Supreme Court concerning the statute of limitations, which imposes a restrictive construal thereof (Supreme Court judgments of Chamber 1 no. 350/2020, of June 24, 2020, no. 94/2019, of February 14, no. 708/2016, of November 25, no. 623/2016, of October 20, no. 25/2015, of February 2, and 725/2014, of December 18). Expansive construal of the statute of limitations; inaccurate calculation of the annual statute of limitations. The court of appeal does not enter into the merits of the issue and anticipates a technical criterion in order to deem acts of unfair competition carried out within the legal period to be irrelevant, assuming the waiver of the right by its holder. [...]".


CLASE 8.ª




000247392

NICHOLAS G. CHARLES COLOMINA
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902

**THREE** – When considered in the terms stated, the appeal should be dismissed, since all the grounds for it bear a clear lack of foundation (article 483.2.4 of the Spanish Civil Procedure Act) by transforming the matter into an assumption. The appealing party forms its various pleadings around the existence of certain acts, which would not have ceased and would breach its exclusive rights over "*its technology*".

It is necessary to point out that the appealing party forms its appeal by casting an assumption on the matter. Indeed, as the case law of this chamber states, with Supreme Court judgments 484/2018, of September 11, and 77/2020, of February 4 being a small sample by way of example, the grounds for the Supreme Court appeal must respect the assessment of the evidence set out in the judgment under appeal, meaning that: (i) it is not possible to seek to review the facts as found or to carry out an assessment of evidence anew; (ii) the appeal cannot be implicitly or explicitly founded on facts that differ from those declared as proven in the judgment under appeal, nor can it be based on the full or partial omission of facts which the Provincial Court deems to be certified (*petitio principii* or taking the question for granted).

Accordingly, following an overall examination of the evidence reviewed, the judgment under appeal established that, beyond the pleadings of the appealing party, none of the instances of the conduct stated had been certified and the lack of evidence thereof was even underlined. It went further and pointed out that if an unlawful act had taken place, it would have been committed in August 2014, meaning that by February 23, 2016 – one month before the action was exercised – the action would have been statute barred.

Along these lines, the judgment under appeal states:

"[...], it is necessary to determine what acts are being attributed to establish the *dies a quo*. Also, if it relates to the marketing of a number of machines, it does not do so because competitive activity on the market is a structural requirement for the relevant breach of trade secrets, but rather because this is what Sayer and its members are accused of – as it was the case in the criminal proceeding – and this determines the scope of the procedural dispute [...]"; "[...] In this case, the action exercises various claims for unfair competition, both owing to specific anti-competitive offenses laid down in the SAUC, acts of disclosure of trade secrets, improper exploitation of third-party efforts; and indeed owing to the general stipulation. There is no continuing conduct. Moreover, there is no evidence of the acts, as described [...]";" [...] the lack of evidence not only supports the





NICHOLAS G. CHARLES COLOMINA
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902

**CLASE 8.ª**

consideration that the statute of limitations has expired, but it would also inevitably establish the dismissal in relation to the merits of the case, since it has not been certified that acts took place which could fall under articles 6, 12, and 13 of the SAUC. [...]", "[...] the general stipulation of article 4 of the SAUC [...]"; "[...] for specific acts of said classification. In relation to these acts, a certain requirement is absent in order for the relevant rule to be able to apply to a specific case [...]"; "[...] In short, the absence of evidence of the acts in relation to the statute of limitations is tantamount to declaring the claim by Viscofan as being unfeasible with regard to the merits of the case [...]."

The reasons set out provide justification for the dismissal of the appeal lodged, without the pleadings made following the declaration of the potential grounds for non-admissibility constituting a change to said reasoning.

**FOUR** – As a consequence of the non-admissibility of the Supreme Court appeal, the extraordinary appeal owing to infringement of procedure must be dismissed because, as long as the provisional system remains in effect, the feasibility of this latter appeal is subject to the judgment issued in the second instance being eligible to be subject to a Supreme Court appeal, pursuant to the strict stipulations of final provision 16, section 1, paragraph 1 and rule 5, paragraph 2, of the Spanish Civil Procedure Act.

Consequently, it is proper to declare that the Supreme Court appeal and the extraordinary appeal owing to infringement of procedure cannot be admitted, and that the judgment is definitive, pursuant to the provisions of articles 483.4 and 473.2 of the Spanish Civil Procedure Act. Also, pursuant to articles 473.3 and 483.5 of the Spanish Civil Procedure Act, against this court order, no appeal whatsoever may be lodged.

**FIVE** – With the formality laid down in articles 483.3 and 473.2 of the Spanish Civil Procedure Act having been opened, and with the party against whom the appeal is lodged having submitted its pleadings, the procedural costs are imposed on the appealing party.

**SIX** – Since the Supreme Court appeal and the extraordinary appeal owing to infringement of procedure cannot be admitted, it is proper to declare the forfeiture of the deposits

 

000247394



NICHOLAS G. CHARLES COLOMINA

Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902

**CLASE 8.ª**

submitted, pursuant to the provisions of additional provision 15, section 9, of the Organic Act on the Judiciary.

## ORDER OF THE COURT

### THE CHAMBER HEREBY RESOLVES:

**1.** To dismiss the extraordinary appeal owing to infringement of procedure and the Supreme Court appeal lodged by Viscofan S.A. against judgment no. 561/2021, dated May 13, 2021, issued in appeal docket no. 602/2019, stemming from the case file on ordinary procedure no. 444/2016, being followed in Commercial Court no. 1 of Pamplona;

**2.** To declare that the aforesaid judgment is definitive;

**3.** To impose the procedural costs relating to the appeal on the appealing parties, who shall forfeit the deposits submitted; and

**4.** To submit the proceedings, along with a certified copy of this resolution, to the court where it originated, following notification of this resolution being served by this Court on the appealing party and the party against whom the appeal is lodged.

Against this resolution, no appeal is admissible whatsoever.

Therefore, this is our decision that we, the honorable judges named in the margin, adjudge and order, and we hereto sign.



CLASE 8.ª



000247395

NICHOLAS G. CHARLES COLOMINA

Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
§ 5902

| (Spanish coat of arms) | GOVERNMENT OF SPAIN | MINISTRY OF JUSTICE | | LexNET |
|---|---|---|---|---|

| **Message LexNET – Notification** | | **Date generated: 06/23/2023 14:33** |
|---|---|---|

Message

| IdLexNet | 202310586277741 | |
|---|---|---|
| Subject | Notification of event 42 | |
| Sender | Court | SUPREME COURT, CIVIL CHAMBER 1A, SECTION 4A of Madrid, Madrid [2807911004] |
| | Court type | SUPREME COURT, CIVIL CHAMBER |
| | Registry office | SUPREME COURT, CIVIL DISTRIBUTION AND REG. OFFICE [2807911000] |
| Recipients | LAZARO GOGORZA, ANA [747] | |
| | Association of representatives | Official Association of Court Representatives of Madrid |
| | GUTIERREZ ACEVES, MARIA JESUS [1776] | |
| | Association of representatives | Official Association of Court Representatives of Madrid |
| Date-time sent | 06/23/2023 14:21:08 | |
| Documents | 280791110D400000096992023 280791110412.PDF (main) | Description: Notification of event 42 Document hash: ef2499aa7b645fe5623f9abb6db5c9476d977d9e83c00a7463538dcd9d140c9f |
| Message details | Destination procedure | SUPREME COURT APPEAL AND INFRINGEMENT OF PROCEDURE NO. 0005360/2021 |
| | Details of event | NOTIFICATION |
| | General ID number | 3120147120160000394 |

Message history

| Date-time | Action sender | Action | Action recipient |
|---|---|---|---|
| 06/23/2023 14:33:28 | LAZARO GOGORZA, ANA [747]-Official Association of Court Representatives of Madrid | COLLECTED | |
| 06/23/2023 14:26:35 | Official Association of Representatives of Madrid (Madrid) | HANDED OVER TO | LAZARO GOGORZA, ANA [747]-Official Association of Court Representatives of Madrid |

(*) All times referred to by LexNET are according to the Iberian Peninsula times.



CLASE 8.ª



000247396

---

### CERTIFICATION OF THE SWORN TRANSLATOR-INTERPRETER

Mr Nicholas George Charles Colomina, Sworn Translator-Interpreter of English appointed by the Spanish Ministry of Foreign Affairs, European Union and Cooperation, certifies that the foregoing is a true and complete translation into English of the original document drawn up in Spanish.

In Barcelona on August 30, 2023.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### CERTIFICACIÓN DEL TRADUCTOR-INTÉRPRETE JURADO

Don Nicholas George Charles Colomina, Traductor-Intérprete Jurado de Inglés nombrado por el Ministerio de Asuntos Exteriores, Unión Europea y Cooperación, certifica que la que antecede es traducción fiel y completa al inglés de un documento redactado en español.

En Barcelona, a 30 de agosto de 2023.

---

| Signature/Firma: | Stamp/Sello: |
|---|---|
| | NICHOLAS G. CHARLES COLOMINA |
| | Traductor-Intérprete Jurado de Inglés |
| | Sworn Translator-Interpreter of English and Spanish |
| | # 5902 |

NOTIFICACIÓN LEXNET by kmaleon : 202310586277741

ANA LÁZARO GOGORZA

Tlf. Tfnos.: 91 446 00 48 - Fax. Fax: 91 447 27 82
analazaro@lazarogogorza.es

>> José María Aznar Auzmendi
Tlf. 617314136

23-06-2023

Sayer Technologies SL      1/9

**Expediente A21-427**

Cliente... : Sayer Technologies SL, Santos Legaz Azcona, Vidal Ernesto Garrido Zuñiga y Carlos Mugica Perez de Albeniz

Contrario : Viscofan SA

Asunto... : CASACIÓN E INFRACCIÓN PROCESAL 5360/2021

Juzgado.. : TRIBUNAL SUPREMO SALA PRIMERA MADRID

## Resumen

**Resolución**

23.06.2023        22
AUTO INADMISION RECURSOS DE CASACIÓN Y EXTRAORDINARIO POR INFRACCIÓN PROCESAL, CON COSTAS A RECURRENTE

Saludos Cordiales

NICHOLAS G. CHARLES COLOMINA

Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
#5902

30 AUG 2023

ANA

NOTIFICACIÓN LEXNET by lexdata : 202310586277741    23-06-2023
ANA LÁZARO GOGORZA    2/9

CASACIÓN E INFRACCIÓN PROCESAL/5360/2021



ADMINISTRACION
DE JUSTICIA

CASACIÓN E INFRACCIÓN PROCESAL núm.: 5360/2021

Ponente: Excmo. Sr. D. Ignacio Sancho Gargallo

Letrado de la Administración de Justicia: Ilmo. Sr. D. José María Llorente García

## TRIBUNAL SUPREMO
### Sala de lo Civil

## Auto núm. /

Excmos. Sres. y Excma. Sra.

D. Francisco Marín Castán, presidente

D. Ignacio Sancho Gargallo

D.ª M.ª Ángeles Parra Lucán

En Madrid, a 21 de junio de 2023.

Ha sido ponente el Excmo. Sr. D. Ignacio Sancho Gargallo.

### ANTECEDENTES DE HECHO

PRIMERO.- La representación procesal de Viscofan S.A., presentó escrito de interposición de recursos extraordinario por infracción procesal y de casación contra la sentencia nº. 561/2021, de fecha 13 de mayo del 2021, dictada en el



ADMINISTRACIÓN
DE JUSTICIA

NOTIFICACIÓN LEXNET by Imalaza : 202310586277741    23-06-2023
ANA LÁZARO GOGORZA                                    3/9

CASACIÓN E INFRACCIÓN PROCESAL/5360/2021

rollo de apelación nº. 602/2019, dimanante de los autos de procedimiento ordinario nº. 444/2016, seguido ante el Juzgado Mercantil nº. 1 de Pamplona.

**SEGUNDO. -** Mediante diligencia de ordenación la referida Audiencia Provincial tuvo por interpuesto el recurso y acordó elevar las actuaciones a este Tribunal Supremo, habiéndose notificado dicha resolución a las partes litigantes, por medio de sus respectivos Procuradores.

**TERCERO. -** Mediante diligencia de ordenación de fecha 9 de septiembre del 2021, se tuvo personado en calidad de recurrente a la procuradora Dña. María Jesús Gutiérrez Aceves en nombre y representación de Viscofan S.A. y como parte recurrida a la procuradora Dña. Ana Lázaro Gogorza en nombre y representación de Sayer Technologies S.L., D. Ernesto Garrido Zuñiga, D. Santos Légaz Azcona y D. Carlos Mugica Pérez-Albeniz.

**CUARTO.-** Por la parte recurrente se han efectuado los depósitos para recurrir exigido por la disposición adicional 15.ª de la Ley Orgánica 6/1985, de 1 de julio, del Poder Judicial.

**QUINTO. -** Mediante providencia de fecha 12 de abril del 2023 , se acordó poner de manifiesto a las partes personadas, por el plazo de diez días, las posibles causas de inadmisión de los recursos.

**SEXTO. —** Por diligencia de ordenación de 16 de mayo del 2023, se hizo constar que todas las partes personadas habían presentado alegaciones sobre las posibles causas de inadmisión de los recursos interpuestos.

## FUNDAMENTOS DE DERECHO

**PRIMERO. -** Por parte del procurador D. Javier Ariaz Rodríguez, se formularon recursos extraordinario por infracción procesal y de casación contra una

NICHOLAS G. CHARLES COLOMINA    3 0 AUG 2023
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902                                                2

NOTIFICACIÓN LEXNET by kmaleon : 202310586277741    **23-06-2023**
ANA LÁZARO GOGORZA    4/9

CASACIÓN E INFRACCIÓN PROCESAL/5360/2021

ADMINISTRACIÓN
DE JUSTICIA

sentencia dictada en juicio ordinario tramitado en atención a su materia —competencia desleal- (art. 249.1. 4º LEC) por lo que su acceso a la casación es la del ordinal 3º del art. 477.2 LEC, que exige acreditar el interés casacional.

Conforme a la disposición final 16.ª.1 regla 5 LEC, sólo si se admite el recurso de casación por interés casacional, podrá examinarse la admisibilidad del recurso extraordinario por infracción procesal.

**SEGUNDO.** – El recurso de casación se interpone por el cauce correcto. El mismo se articula en tres motivos;

El primer motivo se funda en la infracción «[...] de los arts. 13 y 35 de la Ley 3/1991 de 10 de enero, de Competencia Desleal, y el art. 1969 del Código Civil, oponiéndose frontalmente a la doctrina jurisprudencial del Tribunal Supremo en materia de infracción continuada derivada de actos de competencia desleal- contenida en las SSTS Sala 1ª Núm. 871/2009, de 21 de enero del 2010( de pleno), Núm. 47/2013 de 19 de febrero y Núm. 344/2019m de 14 de junio- que, expresamente declaró que " Cuando se trata de actos de competencia desleal de duración continuada la prescripción extintiva de las acciones prevista en el art. 21 ( hoy 35) LCD 3/1991 no comienza a correr hasta la finalización de la conducta ilícita." Incorrecta aplicación de la prescripción de la acción en caso de violación de secretos industriales que no precisa siquiera reflejo en el mercado ni fin concurrencial. [...]».

El segundo motivo, se basa en la infracción «[...] de la resolución de este recurso interés casacional; La sentencia recurrida infringe los arts. 11.2, 4 y 35 la Ley 3/1991 de 10 de enero, de Competencia Desleal, y el art. 1969 del Código Civil, oponiéndose frontalmente a la doctrina jurisprudencial del Tribunal Supremo en materia de infracción continuada derivada de actos de competencia desleal, -contenida en las SSTS Sala 1ª Núm. 871/2009 de 21 de enero de 2010 (del pleno), Núm. 47/2013 de 19 de febrero y núm. 344/2019 de 14 de junio, que expresamente declaró que "cuando se trata de actos de competencia desleal de duración continuada la prescripción extintiva de las acciones previstas en el art. 21 (hoy 35) no comienza a correr hasta la finalización de la conducta ilícita."[...]».

NICHOLAS G. CHARLES COLOMINA    **3 0 AUG 2023**

Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902

3

NOTIFICACIÓN LEXNET por kmalaw : 202310586277741    **23-06-2023**
ANA LÁZARO GOGORZA                                       5/9

CASACIÓN E INFRACCIÓN PROCESAL/5360/2021



ADMINISTRACIÓN
DE JUSTICIA

El tercer motivo al presentar la resolución «[...] de este recurso interés casacional; la sentencia recurrida infringe el art. 35 de la ley 3/1991 de 10 de enero, de competencia desleal, y el art. 1969 del Código Civil, oponiéndose frontalmente a la doctrina jurisprudencial del Tribunal Supremo en materia de prescripción, que impone una interpretación restrictiva de la institución (SSTS Sala 1ª Núm. 350/2020, de 24 de junio de 2020, Núm. 94/2019 de 14 de febrero, Núm. 708/2016, de 25 de noviembre, Núm. 623/2016, de 20 de octubre, Núm. 25/2015, de 2 de febrero, y 725/2014, de 18 de diciembre). Interpretación expansiva del instituto de la prescripción, cómputo inexacto del plano anual de prescripción. El tribunal de apelación no entra en la cuestión de fondo y anticipa un criterio técnico para considerar irrelevantes actos de competencia desleal efectuados dentro del plazo legal, presuponiendo el abandono del derecho por parte de su titular. [...]».

**TERCERO-** Planteado en los términos expuestos el recurso debe ser inadmitido, ya que la totalidad de los motivos adolecen de carencia manifiesta de fundamento (art. 483.2.4º LEC) por hacer un supuesto la cuestión. El recurrente construye sus diferentes alegaciones en la existencia de unos determinados actos, que no habrían cesado y que violarían sus derechos exclusivos sobre *"su tecnología"*.

Cabe advertir que el recurrente construye su recurso haciendo un supuesto de la cuestión, toda vez que, como declara la jurisprudencia de esta sala de la que son simple botón de muestra las SSTS 484/2018, de 11 de septiembre y 77/2020, 4 de febrero, los motivos del recurso de casación deben respetar la valoración de la prueba contenida en la sentencia recurrida, lo que implica: (i) que no se puede pretender una revisión de los hechos probados ni una nueva valoración probatoria; (ii) que no pueden fundarse implícita o explícitamente en hechos distintos de los declarados probados en la sentencia recurrida, ni en la omisión total o parcial de los hechos que la Audiencia Provincial considere acreditados (petición de principio o hacer supuesto de la cuestión).

Así, la sentencia recurrida tras un examen global de la prueba practicada determinó que más allá de las alegaciones del recurrente, ninguna

NICHOLAS G. CHARLES COLOMINA    30 AUG 2023
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902                                                    4



ADMINISTRACION
DE JUSTICIA

NOTIFICACIÓNLEXNETbyketala : 202310595277741    23-06-2023
ANA LÁZARO GOGORZA                                      6/9

CASACIÓN E INFRACCIÓN PROCESAL/5360/2021

de las conductas manifestadas habían quedado acreditadas e incluso subrayó su déficit probatorio. Apuntó incluso que si el acto ilícito hubiera tenido lugar esta hubiera acaecido en agosto del 2014, por lo que para el día 23 de febrero del 2016 la acción ya había prescrito- un mes antes de haberse ejercitado la acción.-

A este respecto la sentencia recurrida dice;

«[...] ha de fijarse cuáles son los actos imputados para dar con el *dies a quo*. Y si se refiere a la comercialización de unas máquinas, no lo hace por cuanto la actividad concurrencial en el mercado sea requisito estructural de la violación relevante de secretos empresariales, sino porque es de lo que se acusa a Sayer y a sus integrantes- como se hizo en la vía penal, y ello determina el perímetro del debate procesal [...]», «[...] En este caso, en la demanda se ejercitan distintas acciones de competencia desleal, tanto por concretos ilícitos concurrenciales tipificados en la LCD, actos de violación de secretos empresariales, de aprovechamiento indebido del esfuerzo ajeno, como por la cláusula general. No hay conducta continuada. Y no hay prueba de los actos, como se describen[...]», [...] la ausencia de prueba no solo corrobora la prescripción apreciada, sino indefectiblemente determinaría la misma desestimación en cuanto al fondo, por no acreditarse actos que pudieran encajarse en arts. 6, 12 y 13 LCD.[...]», «[...] sin que la cláusula general del art. 4 LCD [...]», «[...] para actos típicos específicos , a los que faltaba algún requisito para que pueda aplicarse la norma correspondiente a un supuesto concreto [...] »«[...] En definitiva, la falta de prueba de los actos, de cara a la prescripción ; equivale a la inviabilidad de la acción de Viscofan en cuanto al fondo [...] »

Las razones expuestas justifican la inadmisión del recurso interpuesto, sin que las alegaciones realizadas tras la puesta de manifiesto de las posibles causas de inadmisión, supongan una alteración de dichos razonamientos.

CUARTO. - La improcedencia del recurso de casación determina que deba inadmitirse el recurso extraordinario por infracción procesal interpuesto, ya que, mientras esté vigente el régimen provisional, la viabilidad de este último recurso está subordinada a la recurribilidad en casación de la Sentencia dictada en segunda instancia, conforme a lo taxativamente previsto en la disposición final 16.ª, apartado 1, párrafo primero y regla 5.ª, párrafo segundo, LEC.

Consecuentemente proceden declarar inadmisibles el recurso de casación y el recurso extraordinario por infracción procesal y firme la

NICHOLAS G. CHARLES COLOMINA    30 AUG 2023

Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902



ADMINISTRACION
DE JUSTICIA

NOTIFICACIÓN LEXNET by lexnet : 202310586277741    23-06-2023
ANA LÁZARO GOGORZA                                7/9
CASACIÓN E INFRACCIÓN PROCESAL/5360/2021

sentencia, de conformidad con lo previsto en los artículos 483.4 y 473.2 LEC,
dejando sentado los artículos 473.3 y 483.5 LEC que contra este auto no cabe
recurso alguno.

**QUINTO.** - Abierto el trámite contemplado en los artículos 483.3 y 473.2 LEC y
haber presentado escrito de alegaciones la parte recurrida, se imponen las
costas a la parte recurrente.

**SEXTO.** - Siendo inadmisibles los recursos de casación y recurso
extraordinario por infracción procesal procede la pérdida de los depósitos
constituidos, de conformidad con lo establecido en la disposición adicional 15ª,
apartado 9, LOPJ.

**PARTE DISPOSITIVA**

**LA SALA ACUERDA:**

1º) Inadmitir los recursos extraordinario por infracción procesal y de casación
interpuestos por Viscofan S.A., contra la sentencia nº. 561/2021, de fecha 13
de mayo del 2021, dictada en el rollo de apelación nº. 602/2019, dimanante de
los autos de procedimiento ordinario nº. 444/2016, seguido ante el Juzgado
Mercantil nº. 1 de Pamplona.

2º) Declarar firme dicha sentencia.

3º) Imponer las costas del recurso a las partes recurrentes, quienes perderán
los depósitos constituidos.

4º) Y remitir las actuaciones, junto con testimonio de esta resolución al órgano
de procedencia, previa notificación de esta resolución por este Tribunal a la
parte recurrente y recurrida.

NICHOLAS G. CHARLES COLOMINA    3 0 AUG 2023
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
Nº 5902                                              6



ADMINISTRACION
DE JUSTICIA

NOTIFICACIÓN LEXNET by lexlers : 202310586277741    23-06-2023
ANA LÁZARO GOGORZA                                     8/9

CASACIÓN E INFRACCIÓN PROCESAL/5360/2021

Contra esta resolución no cabe recurso alguno.

Así lo acuerdan, mandan y firman los Excmos. Sres. Magistrados indicados al margen.

NICHOLAS G. CHARLES COLOMINA              30 AUG 2023
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
# 5902

7

Código Seguro de Verificación E04799402-Mf:pMJh-cxoT-Ab5e-qrwc-T    Puede verificar este documento en https://www.administraciondejusticia.gob.es

NOTIFICACIÓNLEXNET by lexnet : 202310586277741
ANA LÁZARO GOGORZA

23-06-2023
9/9

**Mensaje LexNET - Notificación**

Fecha Generación: 23/06/2023 14:33

**Mensaje**

| IdLexNet | 202310586277741 |
|---|---|
| Asunto | Comunicación del Acontecimiento 42: |
| Remitente | TRIBUNAL SUPREMO CIVIL SALA 1A. SECCION 4A. de Madrid, Madrid [2807911004] |
| Órgano | T.S. SALA DE LO CIVIL |
| Tipo de órgano | TRIBUNAL SUPREMO OF-REG. Y REPARTO CIVIL [2807911000] |
| Oficina de registro | LAZARO GOGORZA, ANA [747] |
| Destinatarios | Ilustre Colegio de Procuradores |
| | Colegio de Procuradores |
| | GUTIERREZ ACEVES, MARIA JESUS [1776] |
| | Ilustre Colegio de Procuradores de Madrid |
| | Colegio de Procuradores |
| Fecha-hora envío | 23/06/2023 14:21:08 |
| Documentos | 2807911004000009692023 Descripción: Comunicación del Acontecimiento 42: |
| | 2807911100412.PDF Hash del Documento: |
| | (Principal) ef2498aa7b645fe56523f9ab06db5c9476d977d9e83c00a74635386c09d140c9f |
| Datos del mensaje | Procedimiento destino CASACIÓN E INFRACCIÓN PROCESAL Nº 0005360/2021 |
| | Detalle de acontecimiento NOTIFICACION |
| | NIG 31201471201600000394 |

**Historia del mensaje**

| Fecha-hora | Emisor de acción | Acción | Destinatario de acción |
|---|---|---|---|
| 23/06/2023 14:33:28 | LAZARO GOGORZA, ANA [747]-Ilustre Colegio de Procuradores de Madrid | LO RECOGE | LAZARO GOGORZA, ANA [747]-Ilustre Colegio de Procuradores de Madrid |
| 23/06/2023 14:26:55 | Ilustre Colegio de Procuradores de Madrid (Madrid) | LO REPARTE A | |

(*) Todas las horas referidas por LexNET son de ámbito Peninsular.

NICHOLAS G. CHARLES COLOMINA
Traductor-Intérprete Jurado de Inglés
Sworn Translator-Interpreter of English and Spanish
#5902

3 0 AUG 2023