# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SAYER TECHNOLOGIES, S.L., | § | |
| | § | |
| Plaintiff, | § | |
| | § | Case No. 3:23-cv-02257-MAS-TJB |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| VISCOFAN COLLAGEN USA INC., | § | |
| f/k/a NITTA CASTINGS INC., | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT VISCOFAN COLLAGEN USA INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF SAYER TECHNOLOGIES, S.L.'S MOTION FOR <u>SUMMARY JUDGMENT</u>**

## <u>TABLE OF CONTENTS</u>

**PRELIMINARY STATEMENT** ..................................................................................................1

**FACTUAL BACKGROUND** ....................................................................................................1

**LEGAL STANDARD** ..............................................................................................................6

**ARGUMENT** ...........................................................................................................................7

    I.   Viscofan Has Standing to Pursue Its Trade Secret Claims. ...................................................7

    II.   Collateral Estoppel Does Not Bar Viscofan's Claims. ......................................................11

        A.   Sayer Has Not Shown That Viscofan's Breach of Warranty Claims Were Decided in the Spain Litigation. ...................................................................................................................11

        B.   Viscofan's Unfair Competition Claim in Spain Was Not Decided on the Merits...........13

    III.   Viscofan's Claims Are Not Subject to a Mandatory Forum Selection Clause. .................15

**CONCLUSION** .......................................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Advanced Fluid Sys., Inc. v. Huber*, 958 F.3d 168 (3d Cir. 2020) ...............................................8, 9

*American Permac, Inc. v. United States*, 800 F. Supp. 952 (Ct. Int'l Trade 1992)........................14

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ......................................................................6

*Boyle v. Cnty. of Allegheny*, 139 F.3d 386 (3d Cir. 1998)...................................................................6

*Carney v. Adams*, 592 U.S. 53 (2020) ...............................................................................................8

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...............................................................................6, 7

*Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318 (9th Cir. 1992) ...................................................13

*Doe v. Hesketh*, 828 F.3d 159 (3d Cir. 2016)...................................................................................11

*DTM Rsch., L.L.C. v. AT&T Corp.*, 245 F.3d 327 (4th Cir. 2001)......................................................9

*Eisenbud v. Omnitech*, No. 14695, 1996 WL 162245 (Del. Ch. Mar. 21, 1996)............................17

*Gruntal & Co. v. Steinberg*, 854 F. Supp. 324 (D.N.J. 1994), *aff'd*, 46 F.3d 1116 (3d Cir. 1994)
......................................................................................................................................................13, 14

*In re Bestwall LLC*, 47 F.4th 233 (3d Cir. 2022) ...............................................................11, 12, 13

*Kane v. Manufacturers Life Ins. Co.*, No. 08-4581 (KSH), 2009 WL 78143 (D.N.J. Jan. 9, 2009)
.............................................................................................................................................................17

*Kisano Trade & Inv. Ltd. v. Lemster*, 737 F.3d 869 (3d Cir. 2013) ................................................16

*Mathew Transp., LLC v. Challenger Logistics Int'l Inc.*, No. 23-CV-20950 (SDW) (JRA), 2024
WL 1907254 (D.N.J. Apr. 4, 2024)..............................................................................................15, 16

*Nitterhouse Concrete Prod., Inc. v. Dobco Grp., Inc.*, 305 F. Supp. 3d 580 (D.N.J. 2018) ...........17

*Road-Con, Inc. v. City of Phila.*, No. 23-1782, 2024 WL 4597253 (3d Cir. Apr. 3, 2024) .........8, 9

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) .....................................................................................9

*Spring Motors Distribs., Inc. v. Ford Motor Co.*, 489 A.2d 660 (N.J. 1985) ..........................12, 13

*Tolan v. Cotton*, 572 U.S. 650 (2014) (per curiam) ..........................................................................6

*Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021) ............................................................................8

**STATUTES**

18 U.S.C. § 1839 ...............................................................................................................................10

Fed. R. Civ. P. 56(a)............................................................................................................................6

N.J. Stat. § 12A:2-314 .......................................................................................................................12

N.J. Stat. § 12A:2-315 .......................................................................................................................12

N.J. Stat. Ann § 56:15-2 ....................................................................................................................10

**OTHER AUTHORITIES**

18 Moore's Federal Practice § 132.02 .........................................................................................12, 13

18 Moore's Federal Practice § 132.05 ..............................................................................................13

Restatement (Second) of Judgments § 27 (1982) ..............................................................................15

Defendant and Counterclaimant Viscofan Collagen USA Inc. ("Viscofan") submits this Response in Opposition to the Motion for Summary Judgment (the "Motion") (Dkt. No. 28) filed by Plaintiff Sayer Technologies, S.L. ("Sayer").  For the following reasons, Viscofan respectfully requests that the Court deny Sayer's Motion.

## PRELIMINARY STATEMENT

Sayer's Motion relies on scattershot arguments, including lack of standing, collateral estoppel, forum selection clauses, and the New Jersey Foreign Country Money-Judgments Recognition Act.[1]  This is reflective of Sayer's piecemeal approach to this litigation, where—prior to any discovery taking place—Sayer has filed a motion for summary judgment, *see* Pl.'s Mot. Summ. J., ECF No. 17, opposed discovery relating to its motion, resulting in additional briefing for the parties, *see* Text Order, ECF No. 24, withdrew its original motion, *see* Min. Entry, ECF No. 27, and filed its revised Motion with new argument, *see* Mem. Law, ECF No. 28-2.  Sayer has needlessly delayed discovery, driven up costs, and prolonged the resolution of this case.

Summary judgment should be denied.  Sayer has failed to show that it is entitled to judgment as a matter of law, and genuine disputes of material facts remain unresolved.  For the reasons below, Viscofan has standing to pursue its claims, the doctrine of collateral estoppel does not apply, and no mandatory forum selection clause applies to Viscofan's claims.

## FACTUAL BACKGROUND

Viscofan is part of a group of companies headed by its Spanish parent company Viscofan S.A. (collectively, the "Viscofan Group").  *Consolidated Annual Accounts 2023* 10 (2024), https://www.informeanual2023.viscofan.com/centro-de-descargas/assets/downloads/viscofan-

---

[1] This act does not apply.  Sayer has not identified a foreign money-judgment that it seeks to domesticate and collect.  Accordingly, Viscofan has not briefed the issue herein.

ccaa-2023-en.pdf.   The Viscofan Group is active in, among other things, "the manufacture, distribution[,] and commercialization of all types of casings and films for food use." *Id.*  The Viscofan Group maintains a global presence, operating twenty production plants, employing over 5,300 people, and selling its products in more than 100 countries worldwide.  *Key Figures*, https://www.viscofan.com/about-viscofan/key-figures (last visited Nov. 15, 2024).

The Viscofan Group's collective innovation has earned the group a reputation as an industry leader in artificial casings, particularly in the area of productive capacity.  *See, e.g.*, *Quality Innovation*, https://www.viscofan.com/en-us/about-viscofan/quality-innovation (last visited Nov. 15, 2024).  The group has invested significant resources into the research and development of innovative products and systems that optimize productivity and quality consistency.  Declaration of Guillermo Eguidazu at ¶ 15 ("Eguidazu Decl.").  As a result, the Viscofan Group collectively holds numerous patents worldwide as well as other valuable intellectual property, including trade secrets and other proprietary information.  *Id.* at ¶ 6.  These trade secrets, proprietary information, and patented technologies allow Viscofan to be a leader in the U.S. market, which is the main market for the group's casings.  *Id.* at ¶ 7; *Letter From the Chairman*, https://www.viscofan.com/about-viscofan/letter-from-the-chairman (last visited Nov. 15, 2024).

Although the Viscofan Group develops its own technology, it relies on the active collaboration of third-party suppliers to help implement Viscofan's processes.  Eguidazu Decl. at ¶ 8.  Viscofan S.A. has collaborated for years with Bildu-LAN, a mechanical engineering and electrical engineering company that manufactures custom machinery for industrial processes.  *Id.* at ¶ 9.  As part of this collaboration, Bildu-LAN received Viscofan Group trade secrets subject to a series of nondisclosure agreements, including but not limited to a January 21, 1992 agreement

and a June 26, 1995 agreement. *Id.* at ¶ 10. Bildu-LAN used the Viscofan Group trade secrets—subject to the nondisclosure agreements—to build and manufacture machinery used in connection with the Viscofan Group's casing technology. *Id.* at ¶ 11.

In 2012, following years of employment with Bildu-LAN, key Bildu-LAN personnel, including Bildu-LAN's managing director Mr. Ernesto Garrido Zuniga, assistant manager Mr. Santos Legaz Ascona, and sales manager Mr. Carlos Mugica Perez-Albeniz, left the company and formed Sayer. *Id.* at ¶ 12. While employed by Bildu-LAN, these former Bildu-LAN employees had access to Viscofan Group trade secrets, and pursuant to the various nondisclosure agreements, they had a continuing obligation to maintain the secrecy of such information and refrain from any unauthorized use. *Id.* at ¶ 13. Like Bildu-LAN, Sayer manufactures custom machinery for industrial processes. *See* Compl. ¶ 6, ECF No. 1.

In December 2012, the Viscofan Group collaborated with Sayer on developing and applying technological solutions for Viscofan Group production plants. *See* Pl.'s Ex. A, at PDF page 8, ECF No. 28-3; Eguidazu Decl. at ¶ 14. As part of this collaboration, Sayer received Viscofan Group trade secrets subject to a December 10, 2012 Confidentiality Agreement. Pl.'s Ex. A, at PDF page 9; Eguidazu Decl. at ¶ 14. In 2015, the Viscofan Group ceased its collaboration with Sayer. Pl.'s Ex. G, at PDF page 40, ECF No. 28-3; Eguidazu Decl. at ¶ 14. Around that time, the Viscofan Group began to suspect that Sayer had sold machinery incorporating Viscofan Group trade secrets to third parties. *See* Pl.'s Ex. H, at PDF page 63, ECF No. 28-3; Eguidazu Decl. at ¶ 15.

In November 2016, Viscofan S.A. filed an unfair competition claim against Sayer in Spain. Pl.'s Ex. G, at PDF page 37–38, ECF No. 28-3. In March 2019, the lower court in Spain dismissed

the case on statute of limitation grounds without reaching the merits of the case.[2]  *Id.* at PDF page 44.  Viscofan S.A. appealed that decision, and the narrow issue argued on appeal was related to the running of the statute of limitations.  Pl.'s Ex. H, at PDF page 61, ECF No. 28-3.  The intermediate court upheld the lower court's judgment, *id.* at PDF page 75, as did the high court, Pl.'s Ex. I, at PDF page 106, ECF No. 28-3.

In December 2019, Viscofan S.A. acquired Nitta Casings Inc. ("Nitta"); Viscofan is a successor in interest to Nitta.  Am. Countercls. ¶ 6, ECF No. 13; Eguidazu Decl. at ¶ 17.  At the time of its acquisition, Nitta possessed a collagen casing machine manufactured by Sayer referred to as the "Line S" machine (the "Line S Machine").  *See* Pl.'s Ex. C, at PDF Page 18, ECF No. 28-3; Eguidazu Decl. at ¶ 17.  The Line S Machine is a complex piece of machinery consisting of, among other things, approximately 544 feet of conveyor belts, that was specifically designed and custom built to accommodate the layout of Nitta's (now Viscofan's) Bridgewater, New Jersey plant.  Eguidazu Decl. at ¶ 18.

Nitta experienced numerous issues with the Line S Machine, which failed to perform at the desired specifications and was frequently inoperable.  *Id*. at ¶ 19.  Following the acquisition of Nitta, Viscofan focused on remedying these issues.  *Id*.  After commencing to repair and modify the Line S Machine, information became available that, upon further investigation, ultimately led Viscofan to discover Sayer's misappropriation of Viscofan Group trade secrets, which had been incorporated into the Line S Machine.  *Id*.

---

[2] The statute of limitations for unfair competition claims in Spain differs from that of the Defend Trade Secrets Act and the New Jersey Trade Secrets Act.  Viscofan contends that its claims are timely.  Sayer initially argued that Viscofan's claims are time barred but voluntarily withdrew this argument in its revised Motion.

In 2019, Nitta ordered a number of conveyer belts from Sayer to be used with the Line S Machine. *Id*. at ¶ 20; Am. Countercls. ¶ 12, ECF No. 13. Despite operating and utilizing the belts in strict conformity with Sayer's instructions, the conveyor belts failed to operate as expected or intended, causing significant disruptions to the company's operations. *Id*. at ¶ 20; Am. Countercls. ¶ 13-16, ECF No. 13. Accordingly, Nitta withheld payment for the belts.

In December 2021, after Viscofan S.A. acquired Nitta, Viscofan filed a lawsuit against Sayer in Spain, alleging that the belts sold to Nitta were defective. Pl.'s Ex. J, at PDF Page 2, ECF No. 28-4 (translating an excerpt of the court's judgment from a section titled "[d]efects related to Sayer's inappropriate use of materials"). Ultimately, the court determined that "[t]he defect ha[d] not been proven." *Id.* at PDF page 9.

On April 4, 2023, Sayer filed the present suit against Viscofan, seeking payment for the belts sold to Nitta. *See* Compl., ECF No. 1. Viscofan filed counterclaims against Sayer for breach of the implied warranty of fitness for a particular purpose and breach of the implied warranty of merchantability (collectively, the "Breach of Warranty Claims"), and for trade secret misappropriation under the Defend Trade Secrets Act and the New Jersey Trade Secrets Act, unfair competition, and breach of nondisclosure agreement (collectively, the "Trade Secret Claims"). *See* Am. Countercls., ECF No. 13.

Without the benefit of discovery, Sayer moved the Court for summary judgment, originally arguing, among other things, that most of Viscofan's counterclaims are time barred. *See* Mot. Summ. J., ECF No. 17. Viscofan sought discovery relating to Sayer's statute of limitations argument, and the parties briefed related issues. *See* Text Order, ECF No. 24. Rather than produce any discovery, Sayer withdrew its statute of limitations argument and refiled its revised Motion. *See* Mot. Summ. J., ECF No. 28.

## **LEGAL STANDARD**

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. *Id.*

In determining whether a factual dispute requiring trial exists, courts must construe all facts and inferences "in the light most favorable to the nonmoving party." *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998); *see also Anderson*, 477 U.S. at 255 ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."); *Tolan v. Cotton*, 572 U.S. 650, 660 (2014) (per curiam) ("[A]t the summary judgment stage, reasonable inferences should be drawn in favor of the nonmoving party."). Courts "may not weigh the evidence or make credibility determinations; these tasks are left to the fact-finder." *Boyle*, 139 F.3d at 393; *see also Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . .").

The moving party bears the "stringent" burden of establishing the nonexistence of a genuine dispute of material fact. *Celotex Corp.*, 477 U.S. at 330–31 & n.2. This burden consists of two distinct parts: (1) the "burden of production," an initial burden to make a prima facie showing that the movant is entitled to summary judgment; and (2) the "burden of persuasion," an ultimate burden to convince the court that a trial is clearly unnecessary. *Id.* ("Summary judgment

should not be granted unless it is clear that a trial is unnecessary, and any doubt as to the existence of a genuine issue for trial should be resolved against the moving party." (citations omitted)).  If the movant fails to satisfy its initial burden of production, "its motion for summary judgment must be denied."  *Id.* at 332.

## ARGUMENT

Sayer has failed to show that it is entitled to judgment as a matter of law, and genuine disputes of material facts remain unresolved.  Contrary to Sayer's assertions in its supporting Memorandum of Law (ECF No. 28-2), Viscofan has standing to pursue its Trade Secret Claims because it lawfully possesses Viscofan Group trade secrets and has been injured by Sayer's ongoing use of this trade secret information.  Further, collateral estoppel does not bar Viscofan's claims because the Spanish courts either: (1) decided distinct issues unrelated to Viscofan's present claims, *see* Pl.'s Ex. J, ECF No. 28-4; or (2) never reached a decision on the merits of the case, *see* Pl.'s Exs. G, H, I, ECF No. 28-3.  Finally, Sayer has failed to identify an applicable mandatory forum selection clause that would support dismissal of Viscofan's Counterclaims under the doctrine of *forum non conveniens*.  Accordingly, summary judgment is inappropriate, and Sayer's motion should be denied.

## I.    Viscofan Has Standing to Pursue Its Trade Secret Claims.

Viscofan lawfully possesses Viscofan Group trade secrets that have been misappropriated by Sayer, causing Viscofan significant harm.  Viscofan therefore has standing to pursue its Trade Secret Claims, and a reasonable jury could find that Viscofan has been injured as a result of Sayer's misappropriation.

A party has standing to pursue its claims if it "establish[es] (1) an injury in fact (2) that is fairly traceable to the challenged conduct . . . [and] (3) a remedy that is likely to redress that injury."

*Road-Con, Inc. v. City of Phila.*, No. 23-1782, 2024 WL 4597253, at *3 (3d Cir. Apr. 3, 2024) (quoting *Uzuegbunam v. Preczewski*, 592 U.S. 279, 285 (2021)).  Standing is assessed "at the time the action commences." *Id.* (quoting *Carney v. Adams*, 592 U.S. 53, 60 (2020)).  "[T]he possibility that another party might also have standing to sue **does not defeat the claims filed**." *Id.* at *7 (emphasis added).

Sayer incorrectly asserts that Viscofan lacks standing because (1) Sayer acquired the trade secrets at issue from Viscofan S.A. rather than Viscofan; and (2) Viscofan has not suffered an injury because it did not exist when Sayer acquired the trade secrets.  *See, e.g.*, Pl.'s Mem. Supp. 21 (arguing that "all of the alleged trade secrets were those of Viscofan, S.A., and allegedly taken during a time before [Viscofan] ever existed").  This reasoning is flawed because it misstates the facts, and it fails to correctly apply principles of trade secret law.

First, Viscofan's present, lawful possession of the trade secrets acquired by Sayer is sufficient to have a legally protected interest in the information—regardless of the source from which Sayer acquired the trade secrets.  Lawful possessors of trade secrets have a "substantial interest" in the value of the information's secrecy, and ownership "is not the sole kind of interest that is relevant and subject to protection." *Advanced Fluid Sys., Inc. v. Huber*, 958 F.3d 168, 177 (3d Cir. 2020).[3]  Further, the party who actually owns a trade secret, such as a parent company or other related entity,  has "the authority to give others lawful possession, including by merely consenting to that possession." *Id.*

---

[3] In *Advanced Fluid Systems*, the Third Circuit considered trade secret claims under the Pennsylvania Uniform Trade Secrets Act.  Like Pennsylvania, New Jersey has adopted its own version of the Uniform Trade Secrets Act.  Accordingly, the Third Circuit's reasoning is applicable to trade secret claims under the New Jersey Trade Secrets Act and the Defend Trade Secrets Act.

As a subsidiary of Viscofan S.A. and a member of the Viscofan Group, Viscofan possesses and uses Viscofan Group trade secrets to conduct its business. This includes Viscofan Group trade secrets that were developed prior to Viscofan S.A.'s acquisition of Nitta in 2019 (and renaming as Viscofan Collagen USA Inc.), including the trade secrets acquired by Sayer from Viscofan S.A. Regardless of which Viscofan Group entity owns the trade secret information at issue in this case, the Viscofan Group has consented to each group entity's possession and use of that information. Viscofan enjoys the competitive advantage that results from maintaining the secrecy of the group's information and therefore has a legally protected interest in the information. *See DTM Rsch., L.L.C. v. AT&T Corp.*, 245 F.3d 327, 331 (4th Cir. 2001) (requiring the party to show "either that it developed the trade secret at issue ***or otherwise is in lawful possession of it***" (emphasis added)); *Advanced Fluid Sys., Inc.*, 958 F.3d at 177 (agreeing with "the Fourth Circuit's cogent explanation [in *DTM*] of why lawful possession of a trade secret can . . . be sufficient to maintain a misappropriation claim").

Second, Sayer's subsequent, ongoing use of the Viscofan Group trade secrets it acquired has injured—and is continuing to cause injury to—Viscofan. To establish an injury in fact, a party must show "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Road-Con, Inc.*, 2024 WL 4597253, at *3 (internal quotation marks omitted) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)). When a party "seeks retrospective (backward-looking) relief in the form of money damages, they can establish standing through evidence of a past injury." *Id.* When a party "seeks prospective (forward-looking) relief in the form of an injunction or a declaratory judgment, they must show that they are likely to suffer future injury in order to have standing to sue." *Id.*

Sayer argues that Viscofan could not have suffered an injury because Sayer's acquisition of the Viscofan Group trade secrets predates Viscofan's formation.[4]  But Sayer errs by focusing only on Sayer's acquisition rather than its subsequent use of the trade secret information. Acquisition of a trade secret is a misappropriation if a party used improper means—theft, bribery, misrepresentation, etc.—to acquire the information.    18 U.S.C. § 1839 (defining "misappropriation" and "improper means"); N.J. Stat. Ann § 56:15-2 (same).  But where a party acquired a trade secret lawfully under circumstances giving rise to a duty to maintain the secrecy of the information, any unauthorized use or disclosure of the trade secret is a misappropriation.  *Id.*

As alleged in Viscofan's Amended Counterclaims, Sayer's acquisition of Viscofan Group trade secrets was ***not*** a misappropriation; rather, Sayer acquired the trade secrets lawfully pursuant to confidentiality/nondisclosure agreements that gave rise to a duty to maintain the trade secrets' secrecy.  Am. Countercls. ¶ 70, ECF No. 13.  It is Sayer's subsequent unauthorized use of the Viscofan Group trade secrets that is the misappropriation—the invasion of a legally protected interest causing injury.  While some of these unauthorized uses predate Viscofan S.A.'s acquisition of Nitta—for example, Sayer's use of the trade secrets in machinery sold to Nitta—Viscofan alleges that Sayer has used and continues to use the trade secrets following Nitta's acquisition.  *See id.* ¶ 42.

Viscofan has suffered a concrete, particularized injury, as it has had to compete in a market where others have improperly benefited from the trade secret information Viscofan possesses. Sayer's continuing use of Viscofan Group trade secrets has diminished Viscofan's competitive

---

[4] Sayer's statements that Viscofan Collagen USA Inc. did not exist prior to 2019 or was formed in 2019 are incorrect.  *See* Ex. L, at PDF page 184, ECF No. 28-4 ("I do hereby certify that the said 'Viscofan Collagen USA Inc.' was incorporated on the ninth day of July, a.d. 1996.").  Nitta's name was changed to Viscofan Collagen USA Inc. following its acquisition.

advantage that stems from the secrecy of such information and has caused substantial monetary loss. Sayer's misappropriation has caused actual harm to Viscofan, and Viscofan is likely to suffer further injury as Sayer continues to use Viscofan Group trade secrets. Accordingly, Viscofan's Amended Counterclaims seek both money damages and a permanent injunction.

Because Viscofan has (1) suffered an injury in fact, (2) caused by Sayer's misappropriation of Viscofan Group trade secrets, (3) that is likely to be remedied by an award of money damages and a permanent injunction, Viscofan has standing to pursue its Trade Secret Claims. However, if the Court determines that Viscofan lacks standing, Viscofan respectfully requests that the Court grant it leave to amend its counterclaims and join its parent company Viscofan S.A. as a counterclaimant, thereby remedying any issues of standing.

## II.    Collateral Estoppel Does Not Bar Viscofan's Claims.

Collateral estoppel does not bar Viscofan's present claims, and Sayer cannot establish that the doctrine should be applied. The doctrine of collateral estoppel, or issue preclusion, "prohibits a party from relitigating an issue when: '(1) the **identical** issue was decided in a prior adjudication; (2) there was a final judgment **on the merits**; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question.'" *In re Bestwall LLC*, 47 F.4th 233, 243 (3d Cir. 2022) (emphasis added) (quoting *Doe v. Hesketh*, 828 F.3d 159, 171 (3d Cir. 2016)). Sayer's arguments that collateral estoppel bars Viscofan's Breach of Warranty Claims and Trade Secret Claims fail on the first element and second elements, respectively.

### A.    Sayer Has Not Shown That Viscofan's Breach of Warranty Claims Were Decided in the Spain Litigation.

Sayer, in its Memorandum of Law (ECF No. 28-2), Statement of Material Facts (ECF No. 28-1), and supporting Exhibit J (ECF No. 28-4, PDF pages 1–87), fails to establish that the issues

central to Viscofan's Breach of Warranty Claims were adjudicated by the court in Spain.  Instead, Sayer shows only that a different, distinct issue—whether the belts were **defective**—was adjudicated in Spain.  Accordingly, applying the doctrine of collateral estoppel here would be inappropriate.  *See In re Bestwall LLC*, 47 F.4th at 243; 18 Moore's Federal Practice § 132.02 ("Issue preclusion does not apply when the issues in the prior and current litigation are not identical, even though similar.").

Viscofan's Breach of Warranty Claims include claims for breach of the implied warranty of fitness for a particular purpose and breach of the implied warranty of merchantability.  Am. Countercls. ¶¶ 44–61, ECF No. 13.  An implied warranty that goods are fit for a particular purpose exists "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods."   N.J. Stat. § 12A:2-315.   An implied warranty that goods are merchantable and fit for their ordinary purpose exists "if the seller is a merchant with respect to goods of that kind."  N.J. Stat. § 12A:2-314.  Importantly, "the plaintiff in a warranty action **need not establish the existence of a defect**; the failure of the goods to perform as warranted is sufficient."  *Spring Motors Distribs., Inc. v. Ford Motor Co.*, 489 A.2d 660, 676 (N.J. 1985) (emphasis added).

Sayer admits that Viscofan "commenced an action in Spain **alleging that the belts were defective** and as a result [Viscofan] lost money."  Pl.'s Statement of Material Facts ¶ 34, ECF No. 28-1 (emphasis added); *see also*  Pl.'s Mem. of Law (Dkt. No. 17-4) ("[Viscofan] commenced legal action against Sayer in Spain wherein [Viscofan] alleged that the cause of the belt breaks was due to Sayer's **failure to manufacture them properly** for use in the S-Line machine." (emphasis added)).  Accordingly, the parties argued—and the Spanish court adjudicated—the narrow issue

of whether "**the cause for the defect** or the break of the green belts [was] their being manufactured from an inadequate material . . . ."  Pls.' Ex. J, at PDF page 9, ECF No. 28-4.  The court in Spain determined that "[t]**he *defect* has not been proven**."  *Id.* (emphasis added).

But here, for Viscofan's Breach of Warranty Claims, Viscofan does not need to establish that the belts were defective.  *See Spring Motors Distribs., Inc.*, 489 A.2d at 676.  Whether the belts were defective is not at issue.  Sayer has failed to show that the issue presented here (i.e., whether the belts failed to perform as warranted) was decided in Spain.  Therefore, collateral estoppel does not bar Viscofan's Breach of Warranty Claims.  *See In re Bestwall LLC*, 47 F.4th at 243; 18 Moore's Federal Practice § 132.02 ("Issue preclusion does not apply when the issues in the prior and current litigation are not identical, even though similar.").

**B.    Viscofan's Unfair Competition Claim in Spain Was Not Decided on the Merits.**

Sayer has not established—and cannot establish—that Viscofan's unfair competition claim was decided on the merits in Spain.  Sayer bears the burden of showing exactly what was litigated and "directly determined" in the Spanish courts.  *See Gruntal & Co. v. Steinberg*, 854 F. Supp. 324, 337 (D.N.J. 1994), *aff'd*, 46 F.3d 1116 (3d Cir. 1994); *see also* 18 Moore's Federal Practice § 132.05 ("The party asserting . . . collateral estoppel bears the burden of showing with clarity and certainty what was determined by the prior judgment.").  To carry this burden, "[i]t is not enough that the party introduce the decision of the prior court; rather, the party must introduce a sufficient record of the prior proceeding to enable the trial court to pinpoint the exact issues previously litigated."  *Gruntal & Co.*, 854 F. Supp at 337 (quoting *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1321 (9th Cir. 1992)).

Sayer fails to carry its burden and instead makes only a conclusory argument, devoid of any actual analysis of the issue, that Viscofan should be collaterally estopped from bringing its Trade Secret Claims.  *See, e.g.*, Pl.'s Mem. Law 13, ECF No. 28-2 (arguing only that "[t]he

doctrines of comity and collateral estoppel to enforce the Judgments entered in Spain as against Viscofan S.A. are conclusive of the issue."). However, the judgments that Sayer relies on show that Viscofan S.A.'s unfair competition claim **was not decided on the merits**.

The lower court in Spain dismissed Viscofan S.A.'s claim for unfair competition as time barred, never reaching the merits of the case.[5] Pl.'s Ex. G, at PDF page 44, ECF No. 28-3. Viscofan S.A. appealed that decision, and the narrow issue argued on appeal was related to the running of the statute of limitations. Pl.'s Ex. H, at PDF page 61, ECF No. 28-3. The intermediate court upheld the lower court's judgment, *id.* at PDF page 75, as did the high court, Pl.'s Ex. I, at PDF page 106, ECF No. 28-3.

Sayer relies on dicta of the intermediate court to incorrectly assert that Viscofan's unfair competition claim was decided on the merits. *See* Pl.'s Mem. Law 12–13 (quoting the intermediate court's dicta); *see also id.* at 1 ("[T]he Courts in Spain determined that there was also no evidence of unfair competition . . . ."); *id.* at 14 ("[T]he decisions rendered by the Courts in Spain determined there was no evidence to support the claim of violation of trade secrets."); *id.* at 15 ("[T]here was no evidence presented by Viscofan S.A. of unfair competition."); *id.* at 16 ("[T]he issue of trade secrets was resolved against Viscofan S.A. in the Courts in Spain . . . ."). But "**[i]ssue preclusion does not extend to collateral issues**"—such as issues discussed **only in dicta**—"nor to matters inferred from the judgment." *Gruntal & Co.*, 854 F. Supp at 336 (emphasis added); *see also American Permac, Inc. v. United States*, 800 F. Supp. 952, 956 n.7 (Ct. Int'l Trade 1992) ("The 'essential to the judgment' or 'necessarily decided' requirement of collateral estoppel is designed

---

[5] The statute of limitations for unfair competition claims in Spain differs from that of the Defend Trade Secrets Act and the New Jersey Trade Secrets Act. Viscofan contends that its claims are timely. Sayer initially argued that Viscofan's claims are time barred but voluntarily withdrew this argument in its revised Motion.

to ensure that the tribunal in the first case took sufficient care in determining the issue sought to be precluded and did not merely decide that issue collaterally or in dicta."); Restatement (Second) of Judgments § 27 cmt. H (1982) ("If issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded. Such determinations have the characteristics of dicta . . . .").

On appeal, the **only** issue determined by the intermediate court was whether the lower court correctly determined that Viscofan's unfair competition claim was time barred (more specifically, whether Sayer's alleged conduct was a single or continuous act for statute of limitations purposes). Pl.'s Ex. H, at PDF page 73, ECF No. 28-3.  Moreover, the intermediate court **lacked a record on which it could reach a decision on the merits**.  *Id.*, at PDF page 61 ("The judgment under appeal **does not include a full account of the facts as found**, and the legal grounds **only make it possible to deduce the factual basis for considering the extinctive statute of limitations on the actions for unfair competition**." (emphasis added)).  Accordingly, the Spanish courts never reached a final judgment on the merits, and Viscofan's Trade Secret Claims are not barred by collateral estoppel.

### III.    Viscofan's Claims Are Not Subject to a Mandatory Forum Selection Clause.

Sayer has not shown that an applicable mandatory forum selection clause governs Viscofan's claims such that Viscofan's claims should be dismissed.  Where a forum selection clause "directs transfer to a foreign forum, the clause may be enforced through the doctrine of *forum non conveniens*," resulting in "dismissal of the action[] so that it may be brought in the foreign jurisdiction."  *Mathew Transp., LLC v. Challenger Logistics Int'l Inc.*, No. 23-CV-20950 (SDW) (JRA), 2024 WL 1907254, at *2 (D.N.J. Apr. 4, 2024).  When determining whether to dismiss a case on *forum non conveniens* grounds, courts must consider: "(1) the amount of deference to be

afforded to plaintiffs' choice of forum; (2) the availability of an adequate alternative forum where defendants are amenable to process and plaintiffs' claims are cognizable; (3) relevant 'private interest' factors affecting the convenience of the litigants; and (4) relevant 'public interest' factors affecting the convenience of the forum." *Kisano Trade & Inv. Ltd. v. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013). Courts must also determine that the forum selection clause applies to the claims at issue, "referred to as the scope of the forum selection clause." *Mathew Transp., LLC*, 2024 WL 1907254, at *2.

Sayer has failed to provide **any** *forum non conveniens* analysis, instead merely referencing various provisions of various contracts and asserting that Spain is the appropriate forum. Moreover, Sayer has offered no explanation why the identified contractual provisions apply to Viscofan's present claims. Sayer identifies a 2015 Technology and Trade Cooperation Agreement between Sayer and Nitta that established a partnership between the two companies "for the implementation and application of industrial technological solutions." Pl.'s Ex. B, at PDF page 14, ECF No. 28-3. But this agreement has no bearing on Viscofan's present Breach of Warranty Claims, as it does not relate to the belts sold by Sayer to Nitta in 2019. Likewise, Sayer identifies a 2015 Contract Agreement between Sayer and Nitta "for the purchase of the [Line S Machine]." Pl.'s Ex. C, at PDF page 18, ECF No. 28-3. And although the belts purchased in 2019 were for use with the Line S Machine, nothing suggests that the 2015 Contract Agreement controls the subsequent purchase of belts. In fact, Sayer's own Complaint states that the belts were "unrelated to the machine purchased in 2015." Compl. ¶ 13, ECF No. 1. Regarding Viscofan's Trade Secret Claims, neither of the identified agreements govern the relationship between the Viscofan Group and Sayer nor do they relate to any Viscofan Group information.

Sayer identifies a 2012 Confidentiality Agreement between Viscofan S.A. and Sayer, *see* Pl.'s Ex. A, at PDF pages 7–11, ECF No. 28-3, but fails to argue whether that agreement governs the trade secret information at issue in this case or if, as alleged in Viscofan's Amended Counterclaims, the 1992 and 1995 Nondisclosure Agreements between Viscofan S.A. and Bildu-LAN control.

Either way, in contrast to Sayer's agreements with Nitta, the 2012 Confidentiality Agreement contains only a permissive, rather than mandatory, forum selection clause. "A forum selection clause is enforceable **only if it is mandatory**—providing the sole forum available for resolution of the claims, rather than permissive—providing one of many possible fora." *Nitterhouse Concrete Prod., Inc. v. Dobco Grp., Inc.*, 305 F. Supp. 3d 580, 587 (D.N.J. 2018) (emphasis added). Courts consider the intent of the parties and the plain language of the agreement when determining whether a forum selection clause is mandatory or permissive. *Id.* Courts should only interpret forum selection clauses to be mandatory where the plain language exclusively restricts the forum, as "[p]arties should not be bound forever to a static forum selection process unless unequivocal language expresses that intention so clearly that a court could not interpret the professed forum selection clause otherwise." *Kane v. Manufacturers Life Ins. Co.*, No. 08-4581 (KSH), 2009 WL 78143, at *4 (D.N.J. Jan. 9, 2009) (quoting *Eisenbud v. Omnitech*, No. 14695, 1996 WL 162245 (Del. Ch. Mar. 21, 1996)).

Paragraph 10 of the 2012 Confidentiality Agreement provides that Spanish law applies and that the parties "expressly submit to the jurisdiction of the courts corresponding to the domicile of [Viscofan S.A.]," meaning Spain. Pl.'s Ex. A, at PDF page 11, ECF No. 28-3; *accord* Pl.'s Mem. Law 22, ECF No. 28-2. While this language makes clear that the parties agreed that Spain was an appropriate forum, the provision lacks restrictive or exclusionary language indicating that

litigating in Spain is mandatory.  *Compare* Pl.'s Ex. A, at PDF page 11, ECF No. 28-3, *with* Pl.'s Ex. B, at PDF page 16, ECF No. 28-3 (providing that "the courts shall have **exclusive** jurisdiction [in] Pamplona" (emphasis added)), *and* Pl.'s Ex. C, at PDF page 16, ECF No. 28-3 (providing that "the courts at Pamplona, Spain, shall have **exclusive** jurisdiction" (emphasis added)).

Because Sayer has failed to provide any meaningful argument in favor of dismissing this case pursuant to a forum selection clause and has now waived its opportunity to make such an argument in its present Motion, summary judgment is inappropriate.

## <u>CONCLUSION</u>

For the foregoing reasons, Sayer's Motion should be denied.

Respectfully submitted,

Attorneys for Defendant/Counter-Plaintiff

<u>s/ Dariush Keyhani</u>
Dariush Keyhani
Keyhani LLC
1050 30th Street NW
Washington, DC 20007
(202) 748-8950
dkeyhani@keyhanillc.com

Dated: November 26, 2024

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 26, 2024, I electronically filed the foregoing document, declaration of Guillermo Eguidazu, and Responses to Plaintiff's Rule 56.1 Statement of Material Facts with the Clerk of the Court using CM/ECF. I also certify that the foregoing documents are being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

<u>/s/ Dariush Keyhani</u>
Dariush Keyhani