UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

SAYER TECHNOLOGIES, S.L.,

                Plaintiff,

v.

VISCOFAN COLLAGEN USA INC.,
f/k/a NITTA CASTINGS INC.,

                Defendant.

Civil Action No. 23-2257 (MAS-TJB)
Hon. Tonianne J. Bongiovanni, U.S.M.J.

**DEFENDANT'S RESPONSES TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS PURSUANT TO L. CIV. R. 56.1**

Defendant, Viscofan Collagen USA Inc. ("Viscofan"), provides the following statement responses to Plaintiff's Rule 56.1 Statement of Material Facts:

1. Sayer is a company duly organized and existing under the laws of Spain. Declaration of Mr. Zuniga at par. "2".

**Response:** Not disputed.

2. While Sayer was founded in 2012, it was is the result of the redenomination of a previously existing company called NAVAGLOBAL which had a completely different purpose, not in the least related to machine design and/or manufacturing. Declaration of Mr. Zuniga at par."2".

**Response:** Not disputed. However, Defendant does not have knowledge to agree or disagree with Plaintiff's counsel's characterization of the purpose of Sayer's "previously existing company called NAVAGLOBAL."

3. From the very beginning of Sayer's operation, the company has been working for several industrial fields in parallel, and not just in the food industry, including, by way of example

1

only, the automobile industry (mechanical parts and development design and manufacturing). Declaration of Mr. Zuniga at par. 2.

**Response:** Not disputed. However, Defendant does not have knowledge to agree or disagree with Plaintiff's counsel's characterization that "the company has been working for several industrial fields in parallel, and not just in the food industry."

4. Viscofan S.A. is a Spanish company and parent company to a group of companies engaged in the manufacture and marketing of artificial casings for meat products. Declaration of Mr. Zuniga at par. "3".

**Response:** Disputed. Viscofan S.A.'s activities include, but are not limited to, the manufacture and marketing of artificial casings for meat products. The Viscofan Group is active in, among other things, "the manufacture, distribution[,] and commercialization of all types of casings and films for food use." *Consolidated Annual Accounts 2023* 10 (2024), https://www.informeanual2023.viscofan.com/centro-de-descargas/assets/downloads/viscofan-ccaa-2023-en.pdf

5. On December 10, 2012, Sayer entered into a Confidentiality Agreement with Viscofan S.A. for the purpose of having Sayer develop and apply technological solutions for Viscofan S.A.'s "production plants and those of its investee companies according to Viscofan's requirements." Declaration of Mr. Zuniga at "3" and Exhibit "A" at par. C.

**Response:** Disputed. The referenced Exhibit A speaks for itself. However, Defendant does not agree with Plaintiff's counsel's characterization as to the purpose or scope of the referenced Confidentiality Agreement.

6. During the period of time when Sayer and Viscofan S.A. were collaborating in Spain, in the United States, Viscofan S.A. and its U.S. affiliates were exclusively focused on the

different methodologies off (sic) cellulous and fibrous casing manufacturing. Declaration of Mr. Zuniga at par. "3".

**Response:** Disputed. Viscofan Collagen USA is part of a group of companies headed by its Spanish parent company Viscofan S.A. (collectively, the "Viscofan Group"). The Viscofan Group is a leading producer and distributor of artificial casings for the meat industry and over the years, including prior to its acquisition of Nitta Casings, Inc. ("Nitta") has employed various manufacturing methodologies in Spain and in the U.S. Eguidazu Declaration at ¶ 3. The Viscofan Group's trade secrets relate to drawings, data, machines, and parts of production lines in connection with belts, pulleys, and knotting machines which improve the quality, speed, product behavior, cost savings, and more efficient use of raw materials in the production process for the manufacture of meat product casings from cellulose, fibrose, plastic, and collagen, among other technologies and processes. *Id* at ¶ 7.

7. Sayer was not at any time involved with activities in the United States related to Viscofan S.A. or its affiliates in the United States, neither as collaborator nor as supplier. Declaration of Mr. Zuniga at par. "3".

**Response:** Disputed. The Viscofan Group is a leading producer and distributor of artificial casings for the meat industry and over the years, including prior to its acquisition of Nitta Casings, Inc. ("Nitta") has employed various manufacturing methodologies in Spain and in the U.S. Eguidazu Declaration at ¶ 3. The Viscofan Group's trade secrets relate to drawings, data, machines, and parts of production lines in connection with belts, pulleys, and knotting machines which improve the quality, speed, product behavior, cost savings, and more efficient use of raw materials in the production process for the manufacture of meat product casings from cellulose, fibrose, plastic, and collagen, among other technologies and processes. *Id* at ¶ 7.

3

8. Viscofan S.A.'s first venture into the collagen manufacturing field in the United States was through its acquisition of Nitta in 2019. Declaration of Mr. Zuniga at par. "3".

**Response:** Disputed. The Viscofan Group is a leading producer and distributor of artificial casings for the meat industry and over the years, including prior to its acquisition of Nitta Casings, Inc. ("Nitta") has employed various manufacturing methodologies in Spain and in the U.S. Eguidazu Declaration at ¶ 3. The Viscofan Group's trade secrets relate to drawings, data, machines, and parts of production lines in connection with belts, pulleys, and knotting machines which improve the quality, speed, product behavior, cost savings, and more efficient use of raw materials in the production process for the manufacture of meat product casings from cellulose, fibrose, plastic, and collagen, among other technologies and processes. *Id* at ¶ 7.

9. Since Sayer's design and manufacturing work was in the collagen field and Viscofan S.A. was exclusively dedicated to cellulous and fibrous production in the U.S., there was not, and could not be, disclosure of any secrets or know-how in the cellulous design and manufacturing process. Declaration of Mr. Zuniga at par. "3".

**Response:** Disputed. The Viscofan Group trade secrets are relevant to numerous fields, including, but not limited to, the collagen field. Sayer had used the Viscofan Group trade secrets to expand its business capabilities and offerings to compete directly with the Viscofan Group. Eguidazu Declaration at ¶ 15. The Viscofan Group's trade secrets relate to drawings, data, machines, and parts of production lines in connection with belts, pulleys, and knotting machines which improve the quality, speed, product behavior, cost savings, and more efficient use of raw materials in the production process for the manufacture of meat product casings from cellulose, fibrose, plastic, and collagen, among other technologies and processes. *Id* at ¶ 7.

10. Pursuant to par. "10" of the Confidentiality Agreement, Sayer and Viscofan S.A.

agreed that Spanish law was to be used to interpret the agreement and that the parties expressly submitted to the jurisdiction of Spain. Declaration of Mr. Zuniga at par. "4" and Exhibit "A".

**Response:** Disputed. The referenced Exhibit A speaks for itself. However, the dispute in this lawsuit and Sayer's misappropriation is not subject to the referenced Exhibit A. Viscofan asserts claims under U.S. law against Sayer Technologies, S.L. ("Sayer") for its unlawful acts occurring in the U.S. and resulting injury to Viscofan in the U.S. Eguidazu Declaration at ¶ 1; Am. Countercls., ECF No. 13.

11. While Sayer agreed to treat information disclosed to it by Viscofan S.A. as confidential, the Agreement does not prohibit Sayer from developing its own technology in the industry. Declaration of Mr. Zuniga at par. "5" and Exhibit "A".

**Response:** Not disputed. However, the referenced Agreement does not allow Sayer to use Viscofan's trade secrets to develop its "own technology."

12. On June 23, 2015, Sayer entered into a Technology and Trade Cooperation Agreement with Nitta Casings Inc. ("Nitta") for a collaboration with Nitta to contribute to the modernization of its product system. Declaration of Mr. Zuniga at par. "6" and Exhibit "B".

**Response:** Not disputed.

13. Nitta was a company located in Bridgewater, New Jersey and was engaged in the production of collagen for the food industry. Declaration of Mr. Zuniga at par. "6".

**Response:** Disputed. Plaintiff does not have evidence to support the statement regarding the full scope of activities that Nitta was engaged in other than testimony of Sayer's own employee.

14. Pursuant to paragraph Four of the Technology and Trade Cooperation Agreement, "SAYER is free to exploit the results, patentable or not, which arose in certain projects referred to in this contract and owns full proprietary rights on those projects, particularly the Collagen Casing

5

Lines." Declaration of Mr. Zuniga at par. "7" and Exhibit "B".

**Response:** Not disputed. The referenced Exhibit B speaks for itself. Sayer is still bound by their NDAs with the Viscofan Group and cannot steal their trade secrets.

15. This relationship by and between Sayer and Nitta had nothing to do with Viscofan S.A. Declaration of Mr. Zuniga at par. "7".

**Response:** Disputed. Viscofan Collagen USA is part of a group of companies headed by its Spanish parent company Viscofan S.A. The Viscofan Group is a leading producer and distributor of artificial casings for the meat industry and over the years, including prior to its acquisition of Nitta Casings, Inc. ("Nitta") has employed various manufacturing methodologies in Spain and in the U.S. Eguidazu Declaration at ¶ 3. The Viscofan Group collectively holds numerous patents worldwide as well as other valuable intellectual property, including trade secrets and other proprietary information. This valuable intellectual property belongs to the Viscofan Group as a whole. *Id*. at ¶ 6.

16. Paragraph Eight of the Technology and Trade Cooperation Agreement established that the courts in Pamplona, Spain have exclusive jurisdiction for the resolution of any dispute regarding the Agreement. Declaration of Mr. Zuniga at par. "7" and Exhibit "B".

**Response:** Not disputed. The referenced Exhibit B speaks for itself. However, the dispute in this lawsuit and Sayer's misappropriation is not subject to this agreement. The causes of action in this lawsuit relate to actions and activities in the U.S. that fall outside of the referenced agreement that have impacted and injured Viscofan in the U.S. so the jurisdiction over the resolution of a dispute with Viscofan S.A. in Spain is not relevant to this case. Am. Countercls., ECF No. 13; Eguidazu Declaration at ¶ 16.

17. Thereafter, on August 28, 2015, Sayer and Nitta entered into a Contract Agreement

whereby Nitta purchased from Sayer a Collagen Line Machine "Line S". Declaration of Mr. Zuniga at par. "8" and "C".

**Response:**     Not disputed.

19. Once again, this Contract Agreement provided for the governing law to be that of Spain and that exclusive jurisdiction was with the courts at Pamplona, Spain. Declaration of Mr. Zuniga at par. "811 and Exhibit "C" at par. 8.

**Response:**     Not disputed. The referenced Exhibit C speaks for itself. However, the dispute in this lawsuit and Sayer's misappropriation is not subject to the referenced Agreement. The causes of action in this lawsuit relate to actions and activities in the U.S. that fall outside of this agreement by Sayer that have impacted and injured Viscofan in the U.S. so the jurisdiction over the resolution of a dispute in Spain is not relevant to this case. Am. Countercls., ECF No. 13; Eguidazu Declaration at ¶ 16.

19. Between April and November 2019, Nitta ordered various supplies from Sayer for use with the Line S, including but not limited to belts. Declaration of Mr. Zuniga at par." 911 and Exhibit "D".

**Response:**     Not disputed.

20. Those invoices also include costs for transportation as Sayer employees were to travel to Nitta's location, which trip was later cancelled by     Nitta. Declaration of Mr. Zuniga at par. "9" and Exhibit "D."

**Response:**     Disputed. The referenced Exhibit D does not support Plaintiff's averment.

21. On December 19, 2019, Nitta's President and CEO advised Sayer that payment was being sent out for outstanding invoices and further that it was purchased by Viscofan. Declaration of Mr. Zuniga at par. "10 " and Exhibit "E".

**Response:** Disputed. Exhibit E states that "they will be sending payment" and makes no reference to invoices.

22. Thereafter, Nitta advised Sayer that Viscofan instructed the finance department to hold off on making payment until they reviewed everything. Declaration of Mr. Zuniga at par."11" and Exhibit "F".

**Response:** Not disputed. The referenced Exhibit F speaks for itself.

23. On November 2, 2016, Viscofan S.A. filed a lawsuit against Sayer in Spain to address their claims of alleged unfair competition. Declaration of Mr. Zuniga at par. "12" and Exhibit "G" at Background to the Facts.

**Response:** Disputed. The referenced lawsuit in Spain relates to the application of Spanish law to activities in Spain involving Viscofan S.A. and has no bearing on actions taken by Sayer in the U.S. and does not apply to Sayer's unlawful acts occurring after the referenced lawsuit. The causes of action in the present lawsuit relate to actions and activities in the U.S. that have impacted and injured Viscofan Collagen USA in the U.S. Am. Countercls., ECF No. 13; Eguidazu Declaration at ¶ 16.

24. By Judgment entered on March 7, 2019, Viscofan S.A.'s claims were dismissed on the basis of the statute of limitations. Declaration of Mr. Zuniga at par. "12" and Exhibit "G".

**Response:** Disputed. The referenced Judgment relates to the application of Spanish law, including the applicable Spanish statute of limitations, to activities in Spain involving Viscofan S.A. and has no bearing on actions taken by Sayer in the U.S. and does not apply to Sayer's unlawful acts occurring after the referenced Judgment. The causes of action in this lawsuit relate to actions and activities in the U.S. that fall outside of this Judgment that have impacted and injured Viscofan Collagen USA in the U.S. Am. Countercls., ECF No. 13; Eguidazu Declaration at ¶ 16.

8

25. However, as noted in the Judgment, a full evidentiary hearing was commenced on June 28, 2018. Declaration of Mr. Zuniga at par. "12" and Exhibit "G" at FIVE of the Background to the Facts.

**Response:** Disputed. The Spanish courts never reached a final judgment on the merits on Viscofan S.A.'s claims. Pl.'s Ex. H, at PDF page 61, 73, ECF No. 28-3. The referenced Judgment relates to the application of Spanish law, including the applicable Spanish statute of limitations, to activities in Spain involving Viscofan S.A. and has no bearing on actions taken by Sayer in the U.S. and does not apply to Sayer's unlawful acts occurring after the referenced Judgment. The causes of action in this lawsuit relate to actions and activities in the U.S. that fall outside of this Judgment that have impacted and injured Viscofan Collagen USA in the U.S. Am. Countercls., ECF No. 13; Eguidazu Declaration at ¶ 16.

26. In reviewing the facts to support a finding that Viscofan S.A.'s claims were time barred, the Court stated the following:

> In the case of this procedure, the only conclusion that may be reached is that the action being exercised is statute barred since more than one year has elapsed since the action could be exercised without it being observed that continuing unfair conduct exists. To this end, it is necessary to accurately determine what conduct the defendant is being attributed with, which is simply the use of knowledge acquired during its commercial relationship with VISCOFAN S.A. relating to said company's plans, machinery, and production process to market machines copied from the plaintiff. In this respect, the fact that an order for pulleys was placed in February 2016 with the company DINAMICA (exhibit no. 24 of the claim) and in November 2015 an order for belts was placed with the company AMMERAAL BELTECH, S.A. (Exhibit no. 28 of the claim) is of no relevance in order for it to be deemed that we are faced with a continuing act given that these are instrumental acts to enable SAYER TECHNOLOGIES, S.L. to manufacture a machine (a knotting machine) which it is stated the defendants copied and sought to sell. Nevertheless, the fact that SAYER TECHNOLOGIES, S.L. sought to sell one or several machines of similar specifications to that developed by VISCOFAN S.A. is a fact that has been known by the plaintiff since February 23,

> 2015, as said party states and attests. Indeed, enclosed as exhibit no. 17 to the claim is the email sent by the international sales representative Mr. Horwath in which he reports to Mr. Kamis (of VISCOFAN S.A.) that both himself and his colleague Mr. Kollross have been contacted by SAYER TECHNOLOGIES, S.L. to place on the market a machine which, in his opinion, bears highly similar features to the knotting machine developed by VISCOFAN S.A. From this point, the plaintiff is already accepting this circumstance and is fully aware of the alleged activity carried out by SAYER TECHNOLOGIES, S.L., as certified by exhibit no. 18 of the claim, which is a notary record by means of which VISCOFAN S.A. serves notice on SAYER TECHNOLOGIES, S.L. – through its representative Mr. Legaz –with a letter calling on the company to refrain from marketing the knotting machines and to hand over all documentation and information relating to the designs, the technology, and the know-how pertaining to the plaintiff. Following that, there is only reference to a shipment of containers by SAYER TECHNOLOGIES, S.L. to Nitta group, but under no circumstances has it been certified that what those containers held was technology built by SAYER TECHNOLOGIES, S.L. copied from technology pertaining to VISCOFAN S.A.

Exhibit "G" to the Declaration of Mr. Zuniga at pgs. 8-9.

**Response:**    Disputed. The Spanish courts never reached a final judgment on the merits on Viscofan S.A.'s claims. Pl.'s Ex. H, at PDF page 61, 73, ECF No. 28-3. The referenced statement and Spanish case relates to the application of Spanish law, including the applicable Spanish statute of limitations, to activities in Spain involving Viscofan S.A. and has no bearing on actions taken by Sayer in the U.S. and does not apply to Sayer's unlawful acts occurring after the referenced Judgment. The causes of action in this lawsuit relate to actions and activities in the U.S. that fall outside of this Judgment that have impacted and injured Viscofan Collagen USA in the U.S. Am. Countercls., ECF No. 13; Eguidazu Declaration at ¶ 16.

27.    Viscofan S.A. appealed that decision with the Judgment entered against Viscofan on May 13, 2021. Declaration of Mr. Zuniga at par. "13" and Exhibit "H".

**Response:**    Disputed. The Spanish courts never reached a final judgment on the merits on

Viscofan S.A.'s claims. Pl.'s Ex. H, at PDF page 61, 73, ECF No. 28-3. The subject of this appeal was the Spanish case which did not involve Defendant and was limited to claims arising under Spanish law (including the application of Spanish statute of limitations) for actions and injuries involving Viscofan S.A. in Spain and the referenced Judgment does not apply to Sayer's unlawful acts occurring after the referenced Judgment. Am. Countercls., ECF No. 13; Eguidazu Declaration at ¶ 16.

28. As part of the appeal, the Court reviewed the technical issues and further addressed there being no evidence to support a claim of unfair competition. Declaration of Mr. Zuniga at par. "'13'".

**Response:** Disputed. The Spanish courts never reached a final judgment on the merits on Viscofan S.A.'s claims. Pl.'s Ex. H, at PDF page 61, 73, ECF No. 28-3. Sayer refers to dicta of the intermediate court to incorrectly assert that Viscofan's unfair competition claim was decided on the merits. *American Permac, Inc. v. United States*, 800 F. Supp. 952, 956 n.7 (Ct. Int'l Trade 1992) ("The 'essential to the judgment' or 'necessarily decided' requirement of collateral estoppel is designed to ensure that the tribunal in the first case took sufficient care in determining the issue sought to be precluded and did not merely decide that issue collaterally or in dicta."). Further, the subject of this appeal was the Spanish case which did not involve Defendant and was limited to claims arising under Spanish law (including the application of Spanish statute of limitations) for actions and injuries involving Viscofan S.A. in Spain and the referenced Judgment does not apply to Sayer's unlawful acts occurring after the referenced Judgment. Am. Countercls., ECF No. 13; Eguidazu Declaration at ¶ 16.

29. The Court continued as follows:

> Also, the judicial version of events has not proven that Sayer had manufactured and/or marketed knotting machines using Viscofan's

11

> secret technology, not even in relation to the one identified in August 2014, which must have been sold to Poland, and which constituted grounds for the requisition dated February 23, 2015. This requisition proves that the events reported by Viscofan were already known by the time the demand was made for confidential data to be handed over, but it does not prove that the famed replicated knotting machine existed, nor does it attest to the precise specifications of it.

Exhibit "H" to the Declaration of Mr. Zuniga at pg. 9.

**Response:** Disputed. The Spanish courts never reached a final judgment on the merits on Viscofan S.A.'s claims. Pl.'s Ex. H, at PDF page 61, 73, ECF No. 28-3. Sayer refers to dicta of the intermediate court to incorrectly assert that Viscofan's unfair competition claim was decided on the merits. *American Permac, Inc. v. United States*, 800 F. Supp. 952, 956 n.7 (Ct. Int'l Trade 1992) ("The 'essential to the judgment' or 'necessarily decided' requirement of collateral estoppel is designed to ensure that the tribunal in the first case took sufficient care in determining the issue sought to be precluded and did not merely decide that issue collaterally or in dicta."). Further, the subject of this appeal was the Spanish case which did not involve Defendant and was limited to claims arising under Spanish law (including the application of Spanish statute of limitations) for actions and injuries involving Viscofan S.A. in Spain and the referenced Judgment does not apply to Sayer's unlawful acts occurring after the referenced Judgment. Am. Countercls., ECF No. 13; Eguidazu Declaration at ¶ 16.

30. At pg. 13 of the Judgment, the Court continued:

> Mere competition on the market from the company Sayer, which would hypothetically remain in possession of Viscofan's data that it did not return on February 25, 2015 and which it had not destroyed, is also not unfair competition. Indeed, this is not the claim sought in the action.

Exhibit "H" to the Declaration of Mr. Zuniga.

**Response:** Disputed. The Spanish courts never reached a final judgment on the merits on

Viscofan S.A.'s claims. Pl.'s Ex. H, at PDF page 61, 73, ECF No. 28-3. Sayer refers to dicta of the intermediate court to incorrectly assert that Viscofan's unfair competition claim was decided on the merits. *American Permac, Inc. v. United States*, 800 F. Supp. 952, 956 n.7 (Ct. Int'l Trade 1992) ("The 'essential to the judgment' or 'necessarily decided' requirement of collateral estoppel is designed to ensure that the tribunal in the first case took sufficient care in determining the issue sought to be precluded and did not merely decide that issue collaterally or in dicta."). Further, the subject of this appeal was the Spanish case which did not involve Defendant and was limited to claims arising under Spanish law (including the application of Spanish statute of limitations) for actions and injuries involving Viscofan S.A. in Spain and the referenced Judgment does not apply to Sayer's unlawful acts occurring after the referenced Judgment. Am. Countercls., ECF No. 13; Eguidazu Declaration at ¶ 16.

> 31. Finally, the Court noted at pg. 20 of the Judgment:
>
>> Consequently, there is no way of knowing whether there have been technical coincidences in parts and machines; whether the coincidences were technically preventable; or whether the defendants possess anything physical or virtual in relation to Viscofan's secrets. In view of the above, the general stipulation of article 4 of the SUAC, which is founded on the undetermined legal concept of objective good faith, is inappropriately invoked in the claim for specific acts of said classification. In relation to these acts, a certain requirement is absent in order for the relevant rule to be able to apply to a specific case.
>>
>> In short, the absence of evidence of the acts in relation to the statute of limitations is tantamount to declaring the claim by Viscofan as being unfeasible with regard to the merits of the case.

Exhibit "H" to the Declaration of Mr. Zuniga.

**Response:** Disputed. The Spanish courts never reached a final judgment on the merits on Viscofan S.A.'s claims. Pl.'s Ex. H, at PDF page 61, 73, ECF No. 28-3. Sayer refers to dicta of the intermediate court to incorrectly assert that Viscofan's unfair competition claim was decided

13

on the merits. *American Permac, Inc. v. United States*, 800 F. Supp. 952, 956 n.7 (Ct. Int'l Trade 1992) ("The 'essential to the judgment' or 'necessarily decided' requirement of collateral estoppel is designed to ensure that the tribunal in the first case took sufficient care in determining the issue sought to be precluded and did not merely decide that issue collaterally or in dicta."). Further, the subject of this appeal was the Spanish case which did not involve Defendant and was limited to claims arising under Spanish law (including the application of Spanish statute of limitations) for actions and injuries involving Viscofan S.A. in Spain and the referenced Judgment does not apply to Sayer's unlawful acts occurring after the referenced Judgment. Am. Countercls., ECF No. 13; Eguidazu Declaration at ¶ 16.

32. Once again Viscofan S.A. appealed that decision which was upheld by Judgment entered on June 23, 2023. Declaration of Mr. Zuniga at par. "14" and Exhibit "I".

**Response:** Disputed. The Spanish courts never reached a final judgment on the merits on Viscofan S.A.'s claims. Pl.'s Ex. H, at PDF page 61, 73, ECF No. 28-3. The subject of this appeal was the Spanish case which did not involve Defendant and was limited to claims arising under Spanish law (including the application of Spanish statute of limitations) for actions and injuries involving Viscofan S.A. in Spain and the referenced Judgment does not apply to Sayer's unlawful acts occurring after the referenced Judgment. Am. Countercls., ECF No. 13; Eguidazu Declaration at ¶ 16.

33. The Court noted:

> Accordingly, following an overall examination of the evidence reviewed, the judgment under appeal established that, beyond the pleadings of the appealing party, none of the instances of the conduct stated had been certified and the lack of evidence thereof was even underlined. It went further and pointed out that if an unlawful act had taken place, it would have been committed in August 2014, meaning that by February 23, 2016 - one month before the action was exercised - the action would have been

14

statute barred.

Exhibit "I" to the Declaration of Mr. Zuniga at pg. 6.

**Response:** Disputed. The Spanish courts never reached a final judgment on the merits on Viscofan S.A.'s claims. Pl.'s Ex. H, at PDF page 61, 73, ECF No. 28-3. The subject of this appeal was the Spanish case which did not involve Defendant and was limited to claims arising under Spanish law (including the application of Spanish statute of limitations) for actions and injuries involving Viscofan S.A. in Spain and the referenced Judgment does not apply to Sayer's unlawful acts occurring after the referenced Judgment Am. Countercls., ECF No. 13; Eguidazu Declaration at ¶ 16.

34. With respect to the issue of the belts, Viscofan Collagen USA Inc., the party in this action, commenced an action in Spain alleging, among other things, that the belts were defective and as a result they lost money. Declaration of Mr. Zuniga at par. "15".

**Response:** Not disputed. However, this fails to establish that the issues central to Viscofan's Breach of Warranty Claims were adjudicated by the court in Spain. Instead, Sayer shows only that a different, distinct issue—whether the belts were **defective**—was adjudicated in Spain. *Spring Motors Distribs., Inc. v. Ford Motor Co.*, 489 A.2d 660, 676 (N.J. 1985) ("the plaintiff in a warranty action **need not establish the existence of a defect**; the failure of the goods to perform as warranted is sufficient.") (emphasis added).

35. A Judgment was entered on December 23, 2022 which denied any recovery as there was no evidence of a design flaw. Declaration of Mr. Zuniga at par. "15" and Exhibit "J".

**Response:** Disputed. Defendant disagrees with Plaintiff's counsel's characterization that Defendant was "denied any recovery" in this action. Further, this fails to establish that the issues central to Viscofan's Breach of Warranty Claims were adjudicated by the court in Spain. Instead,

15

Sayer shows only that a different, distinct issue—whether there was a design flaw—was adjudicated in Spain. *Spring Motors Distribs., Inc. v. Ford Motor Co.*, 489 A.2d 660, 676 (N.J. 1985) ("the plaintiff in a warranty action **need not establish the existence of a defect**; the failure of the goods to perform as warranted is sufficient.") (emphasis added).

36. While Sayer filed an appeal with respect to an issue unrelated to the belts, Viscofan Collagen USA did not appeal any part of the Judgment, including the determination that there was no evidence of a design flaw with the belts, and therefore they accepted the Judgment on that issue. Declaration of Mr. Zuniga at par. "15".

**Response:** Not disputed. However, this fails to establish that the issues central to Viscofan's Breach of Warranty Claims were adjudicated by the court in Spain. Instead, Sayer shows only that a different, distinct issue—whether there was a design flaw—was adjudicated in Spain. *Spring Motors Distribs., Inc. v. Ford Motor Co.*, 489 A.2d 660, 676 (N.J. 1985) ("the plaintiff in a warranty action **need not establish the existence of a defect**; the failure of the goods to perform as warranted is sufficient.") (emphasis added).

37. After considering both Viscofan's expert as well as the Court appointed expert, the Court determined there was no "design failure, since it has not been proven that they cannot withstand the temperature and humidity conditions in that zone. On the contrary, belt modifications and replacements were carried out by the defendant up to the change of ownership. Finally, the S-line production data do not prove a causal link to the green belts breaking." Declaration of Mr. Zuniga at Exhibit "K" at pg. 58.

**Response:** Not disputed. The referenced Spanish court's opinion speaks for itself. However, this fails to establish that the issues central to Viscofan's Breach of Warranty Claims were adjudicated by the court in Spain. Instead, Sayer shows only that a different, distinct issue—

16

whether there was a design flaw—was adjudicated in Spain. *Spring Motors Distribs., Inc. v. Ford Motor Co.*, 489 A.2d 660, 676 (N.J. 1985) ("the plaintiff in a warranty action **need not establish the existence of a defect**; the failure of the goods to perform as warranted is sufficient.") (emphasis added).

38. With respect to the Court appointed expert's report, the Court noted "the technical specifications of the HABASIT belt model T2- S - molded in TPU 10 and chosen by SAYER TECHNOLOGIES S.L. for the Neutralization, Drying and Wetting Zones-fulfill the requirements of the working environment referred by VISCOFAN COLLAGEN USA INC., which are, on the other hand, approximate (~) and incomplete (?), as the Table demonstrates." Exhibit "K" to the Declaration of Mr. Zuniga at pg. 60.

**Response:** Not disputed. The referenced Spanish court's opinion speaks for itself. However, this fails to establish that the issues central to Viscofan's Breach of Warranty Claims were adjudicated by the court in Spain. Instead, Sayer shows only that a different, distinct issue— whether the *technical specifications* of a belt model fulfilled the requirements of the working environment—was adjudicated in Spain.

39. The Court continued:

> Having established this, there is no objective proof that links the break of the green belts to the material chosen by Sayer. There is no proof of the defendant's claim that the material does not withstand the high temperature and humidity of the plant working conditions. The video and the three photographs of the supposed rusting are clearly insufficient proof to establish this claim.

Declaration of Mr. Zuniga at Exhibit "K" at pg. 61.

**Response:** Not disputed. The referenced Spanish court's opinion speaks for itself. However, this fails to establish that the issues central to Viscofan's Breach of Warranty Claims were adjudicated by the court in Spain. Instead, Sayer shows only that a different, distinct issue was

17

adjudicated in Spain. *Spring Motors Distribs., Inc. v. Ford Motor Co.*, 489 A.2d 660, 676 (N.J. 1985) ("the plaintiff in a warranty action **need not establish the existence of a defect**; the failure of the goods to perform as warranted is sufficient.") (emphasis added).

40. In conclusion on this issue, the Court stated "[b]oth the invoices and the break history prove the existence of a damage but not the defendant's responsibility for the damage or, in short, that the cause for the defect or the break of the green belts is their manufacturing from an inadequate material (HABASIT Model T20-S). The defect has not been proven." Declaration of Mr. Zuniga at Exhibit "K" at pg. 61-62.

**Response:** Not disputed. The referenced Spanish court's opinion speaks for itself. However, this fails to establish that the issues central to Viscofan's Breach of Warranty Claims were adjudicated by the court in Spain. Instead, Sayer shows only that a different, distinct issue— whether there was a design flaw—was adjudicated in Spain. *Spring Motors Distribs., Inc. v. Ford Motor Co.*, 489 A.2d 660, 676 (N.J. 1985) ("the plaintiff in a warranty action **need not establish the existence of a defect**; the failure of the goods to perform as warranted is sufficient.") (emphasis added).

41. The supporting Court appointed expert's report is provided as Exhibit "K" to the Declaration of Mr. Zuniga.

**Response:** Not disputed.

42. All of the issues set forth in Viscofan Collagen's Counterclaims have been decided by the Courts in Spain as against Viscofan Collagen and Viscofan S.A. who initiated the actions in Spain. Declaration of Mr. Zuniga at par. "17".

**Response:** Disputed. The Spanish courts never reached a final judgment on the merits on Viscofan S.A.'s claims. Pl.'s Ex. H, at PDF page 61, 73, ECF No. 28-3. Further, the Spanish case

18

did not involve Defendant Viscofan Collagen USA and was limited to claims arising under Spanish law (including the application of Spanish statute of limitations) for actions and injuries involving Viscofan S.A. in Spain. The issues set forth in Viscofan USA's counterclaims are properly before this Court and have not been decided in any other jurisdiction.

      43.     According to the corporate searches performed in this matter, the Defendant/ Counterclaim Plaintiff in this case, Viscofan Collagen, was incorporated in Delaware in 2019 and registered to do business in New Jersey at the same time. Declaration of Mr. Zuniga at par."18" and Exhibit "L" which includes the following records from Delaware and New Jersey recording offices:

      (A)     Nitta Casings, Inc. Certificate of Authorization filed July 15, 1996 showing it was incorporated in Delaware;

      (B)     Nitta Casings, Inc. Application for Amended Certificate of Authority to change its name to Viscofan Collagen USA Inc. filed on December 20, 2019;

      (C)     Delaware's certification that Viscofan Collagen USA Inc. was incorporated in Delaware with the date of incorporation relating back to Nitta's incorporation of July 9, 1996;

      (D)     Certificate of Change of Registered Office and/or Registered Agent for Viscofan Collagen USA Inc. filed January 23, 2020 noting Delaware incorporation;

      (E)     Viscofan Collagen USA Inc.'s Certificate of Pending Withdrawal filed July 5, 2022 regarding termination of the entity;

      (F)     Certificate of Withdrawal dated June 27, 2022 confirming the corporation is not transacting business activities in New Jersey.

**Response:**    Disputed. *See* Ex. L, at PDF page 184, ECF No. 28-4 ("I do hereby certify that the said 'Viscofan Collagen USA Inc.' was incorporated on the ninth day of July, a.d. 1996.").

19

44. There does not appear to be an entity which officially assumed the prior Nitta entity. Declaration of Mr. Zuniga at par. "18".

**Response:** Disputed. Viscofan S.A. acquired Nitta Casings Inc. ("Nitta"); Viscofan Collagen USA is a successor in interest to Nitta. Eguidazu Declaration at ¶ 17.

Dated: November 26, 2024

/s/ Dariush Keyhani
Dariush Keyhani
Keyhani LLC
1050 30th Street NW
Washington, DC 20007
Telephone: (202) 748-8950
Fax: (202) 318-8958
dkeyhani@keyhanillc.com