**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SAYER TECHNOLOGIES, S.L., | |
| Plaintiff, | Civil Action No. 23-2257 (MAS) (TJB) |
| v. | **MEMORANDUM OPINION** |
| VISCOFAN COLLAGEN USA INC., | |
| Defendant. | |

**SHIPP, District Judge**

This matter comes before the Court upon Sayer Technologies, S.L.'s ("Counterclaim Defendant") Motion for Summary Judgment.[1] (ECF No. 28.) Counterclaim Plaintiff Viscofan Collagen USA Inc. f/k/a Nitta Castings, Inc. ("Counterclaim Plaintiff") opposed (ECF No. 30), and Counterclaim Defendant replied[2] (ECF No. 31). The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons below, Counterclaim Defendant's Motion is granted in part and denied in part.

---

[1] The Court is in receipt of correspondence dated May 22, 2025 from Counterclaim Defendant advising the Court that the Appellate Court in Spain issued a judgment on April 22, 2025 reducing the amount to be paid by Counterclaim Defendant with respect to minor safety issues. (ECF No. 32.) The Court considers Counterclaim Defendant's correspondence in its decision.

[2] It appears that Counterclaim Defendant is under the impression that Counterclaim Plaintiff had not "submit[ted] a Memorandum of Law opposing [Counterclaim Defendant]'s . . . Memorandum of Law in support of [Counterclaim Defendant]'s motion for summary judgment." (Countercl. Def.'s Reply Br. 1, ECF No. 31.) Counterclaim Defendant, however, is mistaken, and it appears to be an oversight on Counterclaim Defendant's behalf because Counterclaim Plaintiff's Memorandum of Law opposing Counterclaim Defendant's Motion is found at ECF No. 30.

## I.    BACKGROUND

The material factual circumstances giving rise to this action are set forth in the submissions of Counterclaim Defendant and Counterclaim Plaintiff pursuant to Local Civil Rule 56.1. [3] This dispute stems from Counterclaim Defendant's sale of several conveyor belts for use in a custom-built machine used by Counterclaim Plaintiff. (Countercl. Def.'s Statement of Material Facts ("CDSOF") ¶ 19, ECF No. 28-1; Countercl. Pl.'s Responses to Countercl. Def.'s Statement of Material Facts ("CPRSOF") ¶ 19, ECF No. 30-1.)

Counterclaim Defendant was founded in 2012 and is a company duly organized and existing under the laws of Spain. (CDSOF ¶¶ 1-2; CPRSOF ¶¶ 1-2.) "From the very beginning of [Counterclaim Defendant]'s operation, the company has been working for several industrial fields in parallel, and not just in the food industry, including, by way of example only, the automobile industry (mechanical parts and development design and manufacturing)." (CDSOF ¶ 3; CPRSOF ¶ 3.) Counterclaim Defendant came into existence as the result of the redenomination of a previously existing company that had a completely different purpose, not in the least related to machine design and/or manufacturing. (CDSOF ¶ 2; CPRSOF ¶ 2.)

Counterclaim Plaintiff is a subsidiary of Viscofan S.A. (*See* CDSOF ¶¶ 8, 43; CPRSOF ¶¶ 8, 43 (noting that Viscofan S.A. acquired Nitta Casings, Inc. ("Nitta") in 2019 and that Nitta

---

[3] Local Rule 56.1 requires a party filing a motion for summary judgment to file a statement of material facts not in dispute. *See* Local Civ. R. 56.1. An opponent of the motion must provide a responsive statement, addressing each material fact and "indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents." *Id.* "[A]ny material fact not disputed shall be deemed undisputed for purposes of [deciding the motion]." *Id.* For any purportedly disputed fact where Counterclaim Plaintiff failed to provide a citation to the record or explanation for the dispute, the Court considers those statements admitted. *See Saggiomo v. J. Ambrogi Food Distrib., Inc.*, No. 21-11315, 2023 WL 3092125, at *2 n.5 (D.N.J. Apr. 26, 2023) (recognizing that facts are admitted for the purposes of summary judgment when a party fails to properly dispute them by citing to the record or other evidence).

then changed its name to Viscofan Collagen USA Inc. (Counterclaim Plaintiff) in 2019).) Counterclaim Plaintiff is incorporated in Delaware and was registered to do business in New Jersey. (CDSOF ¶ 43; CPRSOF ¶ 43.) Viscofan S.A. is a Spanish company and a parent to a group of companies, including Counterclaim Plaintiff (collectively, the "Viscofan Group"). (*See* Decl. of Guillermo Eguidazu ("Eguidazu Decl.") ¶ 3, ECF No. 30-2.) The Viscofan Group is a producer and distributor of artificial casings for the meat industry, and over the years, has employed various manufacturing methodologies in Spain and the United States. (*Id.*) The Viscofan Group's trade secrets relate to drawings, data, machines, and parts of production lines in connection with belts, pulleys, and knotting machines which improve the quality, speed, product behavior, cost savings, and efficient use of raw materials in the production process for the manufacture of meat product casings from cellulose, fibrose, plastic, and collagen, among other technologies and processes. (*Id.* ¶ 7.)

In December 2012, Counterclaim Defendant entered into a confidentiality agreement with Viscofan S.A., which included having Counterclaim Defendant develop and apply technological solutions for Viscofan S.A.'s "production plants and those of its investee companies according to Viscofan[] [S.A.'s] requirements" (the "2012 Confidentiality Agreement"). (CDSOF ¶ 5; CPRSOF ¶ 5; Countercl. Def.'s Ex. A, ¶ C, ECF 28-3.) Under paragraph ten of the 2012 Confidentiality Agreement, Counterclaim Defendant and Viscofan S.A. agreed that Spanish law was to be used to interpret the agreement and that the parties expressly submitted to the jurisdiction of Spain. (CDSOF ¶ 10; CPRSOF ¶ 10; Countercl. Def.'s Ex. A, ¶ 10.) Counterclaim Plaintiff was not a party to the 2012 Confidentiality Agreement. (*See* CDSOF ¶ 10; *see* CPRSOF ¶ 10.) While Counterclaim Defendant agreed to treat information disclosed to it by Viscofan S.A. as

confidential, the 2012 Confidentiality Agreement does not prohibit it from developing its own technology in the industry. (CDSOF ¶ 11; CPRSOF ¶ 11.)

In June 2015, Counterclaim Defendant entered into a Technology and Trade Cooperation Agreement (the "TTC Agreement") with Nitta for a collaboration with Nitta to contribute to the modernization of its product system. (CDSOF ¶ 12; CPRSOF ¶ 12.) Nitta was a company located in New Jersey that was engaged in the production of collagen for the food industry. (CDSOF ¶ 13; CPRSOF ¶ 13.) The TTC Agreement provides in paragraph four that "[Counterclaim Defendant] is free to exploit the results, patentable or not, which ar[i]se in certain projects referred to in this contract and owns full proprietary rights on those projects, particularly the [c]ollagen [c]asing." (CDSOF ¶ 14; CPRSOF ¶ 14.) The TTC Agreement also provides, under paragraph eight, "that the courts in Pamplona, Spain have exclusive jurisdiction for the resolution of any dispute regarding the [TTC] Agreement." (CDSOF ¶ 16; CPRSOF ¶ 16.)

In August 2015, Counterclaim Defendant and Nitta entered into a contractual agreement (the "S-Line Contract") whereby Nitta purchased from Counterclaim Defendant a Collagen Line Machine "Line S" (the "S-Line Machine"). (CDSOF ¶ 17; CPRSOF ¶ 17.) The S-Line Contract also provided that Spain was the governing law and that exclusive jurisdiction was with the courts at Pamplona, Spain. (CDSOF ¶ 18; CPRSOF ¶ 18.) Between April and November 2019, Nitta ordered various supplies from Counterclaim Defendant for use with the S-Line Machine, including but not limited to conveyor belts (the "2019 Belts"). (CDSOF ¶ 19; CPRSOF ¶ 19.) Payment for the 2019 belts was held "until they reviewed everything." [4] (CDSOF ¶ 22; CPRSOF ¶ 22.)

---

[4] On December 19, 2019, Nitta's President and Chief Executive Officer advised Counterclaim Defendant that "they will be sending payment" and that Nitta was purchased by Counterclaim Plaintiff. (CDSOF ¶ 21; CPRSOF ¶ 21.) Nitta, however, advised Counterclaim Defendant that Counterclaim Plaintiff instructed the finance department to hold off on making payment "until they reviewed everything." (CDSOF ¶ 22; CPRSOF ¶ 22.)

Ultimately, Counterclaim Defendant never received payment for the 2019 Belts. (*See generally* Compl., ECF No. 1.)

In November 2016, Viscofan S.A. filed suit in Spain against Counterclaim Defendant, alleging unfair competition claims ("Unfair Competition Lawsuit"). (CDSOF ¶ 23; CPRSOF ¶ 23.) By way of judgment entered on March 7, 2019, the Spanish Trial Court, and after conducting a full evidentiary hearing applying Spanish law, dismissed Viscofan S.A.'s unfair competition claims because the statute of limitations had lapsed. (*See* CDSOF ¶¶ 23-25; *see* CPRSOF ¶¶ 23-25.) Viscofan S.A. appealed that decision to the Spanish Appellate Court, which affirmed the Spanish Trial Court on May 13, 2021. (CDSOF ¶ 27; CPRSOF ¶ 27.) The Spanish Appellate Court explained that there was no evidence to support Viscofan S.A.'s unfair competition claims. (CDSOF ¶ 28; CPRSOF ¶ 28.) Undeterred, Viscofan S.A. appealed the Spanish Appellate Court's decision to the Spanish Supreme Court, which upheld the Appellate Court's decision. (CDSOF ¶ 32; CPRSOF ¶ 32.)

Counterclaim Plaintiff became involved with the series of transactions in 2019. (*See* CDSOF ¶¶ 19, 21, 43; CPRSOF ¶¶ 19, 21, 43.) In December 2019, Counterclaim Plaintiff acquired Nitta. (CDSOF ¶¶ 21, 43; CPRSOF ¶¶ 21, 43.) At the time of its acquisition, Nitta possessed an S-Line Machine, which Counterclaim Defendant manufactured. (Eguidazu Decl. ¶ 17.) Nitta experienced numerous issues with the S-Line Machine, claiming that it failed to perform at the desired specifications and was frequently inoperable. (*Id.* ¶ 19.) Following the acquisition of Nitta, Counterclaim Plaintiff focused on remedying these issues. (*Id.*) While repairing and modifying the S-Line Machine, information became available that ultimately led Counterclaim Plaintiff to believe that Counterclaim Defendant misappropriated the Viscofan Group's trade secrets, which had been incorporated into the S-Line Machine. (*Id.*)

5

Counterclaim Plaintiff filed a lawsuit against Counterclaim Defendant in Spain based on the S-Line Contract, alleging, among other things, that the S-Line Machine was defective and, as a result, it lost money (the "Manufacturing Defect Lawsuit"). (CDSOF ¶ 34; CPRSOF ¶ 34.) The Spanish Trial Court entered a judgment on December 23, 2022, finding that there was no evidence of a design flaw in the belts. [5] (CDSOF ¶¶ 35, 37; CPRSOF ¶¶ 35, 37.) Counterclaim Plaintiff could but did not appeal that judgment. (*See* CDSOF ¶ 36; *see* CPRSOF ¶ 36.)

Against that backdrop, in April 2023, Counterclaim Defendant filed the instant case against Counterclaim Plaintiff, seeking payment for the 2019 Belts. (*See generally* Compl., ECF No. 1.) Counterclaim Plaintiff answered Counterclaim Defendant's Complaint and filed six Counterclaims [6] against Counterclaim Defendant. (Second Am. Countercls., ECF No. 13.) More specifically, Counterclaim Plaintiff asserts claims of: (1) breach of the implied warranty of fitness for a particular purpose (Counterclaim I); (2) breach of the implied warranty of merchantability (Counterclaim II); (3) violations of the Defend Trade Secrets Act of 2016 (the "DTSA") (Counterclaim III); (4) violations of the New Jersey Trade Secrets Act (the "NJTSA") (Counterclaim IV); (5) unfair competition (Counterclaim V); and (6) breach of non-disclosure agreements ("NDAs") (Counterclaim VI) [7] (collectively, the "Counterclaims"). (*Id.*) Counterclaim Defendant now moves for summary judgment on the Counterclaims. (*See* Countercl. Def.'s

---

[5] The Spanish Trial Court made this determination after considering Counterclaim Plaintiff's expert as well as a court-appointed expert. (CDSOF ¶ 37; CPRSOF ¶ 37.) The Spanish Trial Court, however, found that the 2019 Belts were not part of the S-Line Contract and thus any claims for recovery related to the 2019 Belts must be brought in the United States. (Compl. ¶ 22.)

[6] Counterclaim Plaintiff initially filed its answer with counterclaims on May 30, 2023, but later amended its counterclaims on July 11, 2023. (*See* ECF Nos. 11, 13.)

[7] Counterclaim Plaintiff improperly designated Counterclaim IV as Counterclaim V. (*See* Countercls.)

Moving Br., ECF No. 28-2). Counterclaim Plaintiff opposed (Countercl. Pl.'s Opp'n Br., ECF No. 30), and Counterclaim Defendant replied (Countercl. Def.'s Reply Br., ECF No. 31). The motion is now ripe for review.

## II.    **LEGAL STANDARD**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is "material" only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citation omitted). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. The moving party bears the burden of showing that no genuine dispute exists such that summary judgment is warranted. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the movant adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine [dispute] for trial." *Id.* at 324.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004). Rather, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party." *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). Credibility determinations are the province of the factfinder. *See Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The court's role is "to determine whether there is a genuine [dispute] for trial." *Anderson*, 477 U.S. at 249. There can be "no genuine

[dispute] as to any material fact," however, if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23.

## III.    **DISCUSSION**

In moving for summary judgment, Counterclaim Defendant argues that the Counterclaims fail as a matter of law because they have been resolved in Counterclaim Defendant's favor by a Spanish Court. (Countercl. Def.'s Moving Br. 4-5.) In making this argument, Counterclaim Defendant asks this Court to afford comity to the foreign judgments. (*See id.*) If the Court does so, Counterclaim Defendant argues that the Counterclaims are precluded under the doctrine of collateral estoppel. (*Id.* at 5.) Counterclaim Defendant also contends that Counterclaim Plaintiff lacks standing to bring Counterclaims III-VI, which concern trade secrets and business activities of its parent company, Viscofan S.A. (*Id.* at 13-15.)

Counterclaim Plaintiff, on the other hand, contends that: (1) it has standing to pursue its Counterclaims; (2) collateral estoppel does not bar any of its claims; and (3) there are no forum selection clauses barring litigation in this forum. (Countercl. Pl.'s Opp'n Br. 1.) Counterclaim Plaintiff ultimately contends that many material facts remain disputed, and therefore summary judgment is inappropriate. (*Id.*) The Court considers each of these arguments in turn.

### A.    **Standing**

Because standing is a threshold question, the Court first addresses the parties' arguments as they pertain to standing. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) (recognizing that standing "is [a] threshold question in every federal case"); *see also La. Counseling & Fam. Servs. Inc. v. Mt. Fuji Japanese Rest.*, No. 08-6143, 2011 WL 3273548, at *3 n.3 (D.N.J. July 27, 2011) ("A federal court has an independent obligation to examine its own jurisdiction, [and] if the parties

fail to raise the issue of standing, it may be addressed by the [c]ourt *sua sponte* at any stage of the proceedings.").

### 1.    *Whether Counterclaim Plaintiff Has Standing to Bring its Trade Secret Claims.*

Counterclaim Defendant argues that Counterclaim Plaintiff lacks standing to pursue claims under the DTSA and NJTSA because Viscofan S.A., as opposed to Counterclaim Plaintiff, owns the relevant trade secrets. (Countercl. Def.'s Moving Br. 20-21.) Counterclaim Plaintiff counters that it has standing to pursue its trade secret counterclaims because it is a subsidiary of Viscofan S.A.—the lawful possessor of its parent company's trade secrets. (Countercl. Pl.'s Opp'n Br. 7-8.) The Court agrees with Counterclaim Plaintiff.

The Third Circuit has explicitly instructed that a party who lawfully possesses trade secrets can bring a misappropriation claim, even if it is not the owner of the relevant trade secrets. *Advanced Fluid Sys., Inc. v. Huber*, 958 F.3d 168, 175 (3d Cir. 2020). A parent company can grant lawful possession to subsidiaries merely by consenting to it. *Id.* at 179. Here, Counterclaim Plaintiff, as a subsidiary and lawful possessor of Viscofan S.A.'s trade secrets, therefore, has standing to bring counterclaims alleging misappropriation of those trade secrets. *Id.*

### 2.    *Whether Counterclaim Plaintiff Has Standing to Bring its Breach of NDA Claim.*

According to Counterclaim Defendant, Viscofan S.A. and Bildu-LAN entered into two NDAs in 1992 and 1995. (Countercl. Pl.'s Opp'n Br. 16.) In 2012, certain employees left Bildu-LAN to form Counterclaim Defendant and, it seems, continued doing business with Viscofan S.A. and, ultimately, Counterclaim Plaintiff. (*Id.* at 3.) Neither Bildu-LAN nor Viscofan S.A.—the parties to the alleged NDAs—are parties to this lawsuit.

"Generally, one who is not a party to a contract may not be sued for a breach arising out of it." *Portofino, LLC v. Cali*, No. 05-4042, 2006 WL 3374562, at *2 (D.N.J. Nov. 21, 2006) (citations and internal quotations omitted). For this reason, the Court finds that Counterclaim Plaintiff lacks standing to bring a claim against Counterclaim Defendant for breach of the two NDAs. That is, neither Counterclaim Plaintiff nor Counterclaim Defendant is a party to those NDAs.[8] As such, the Court finds that Counterclaim Plaintiff lacks standing to bring a claim for breach of NDAs that neither Counterclaim Plaintiff nor Counterclaim Defendant are parties to. *See In re Sia*, No. 11-1436, 2015 WL 9462089, at *9 (D.N.J. Dec. 28, 2015) ("A [counterclaim p]laintiff that is not a party to a contract lacks standing to sue for a violation of the contract."). The Court, accordingly, grants Counterclaim Defendant's Motion as it pertains to Counterclaim VI.

**B.    The Doctrine of Collateral Estoppel and International Comity**

Next, Counterclaim Defendant seeks to invoke the doctrine of collateral estoppel based on the principles of international comity to two lawsuits litigated in Spain: (1) the Unfair Competition Lawsuit; and (2) the Manufacturing Defect Lawsuit (collectively, "Spanish Judgments"). (Countercl. Pl.'s Opp'n Br. 4, 12-14.) Counterclaim Defendant argues that the Unfair Competition Lawsuit has a preclusive effect and therefore bars Counterclaim Plaintiff's breach of the implied warranty of fitness for a particular purpose counterclaim (Counterclaim I) and breach of the implied warranty of merchantability counterclaim (Counterclaim II) ("Breach of Warranty Guarantee Claims"). (*See generally* Countercl. Def.'s Moving Br.) Counterclaim Defendant further argues that the Unfair Competition Lawsuit precludes Counterclaim Plaintiff from bringing claims

---

[8] Moreover, Counterclaim Plaintiff fails to explain why or how Counterclaim Defendant has obligations under thirty-year-old NDAs that it is not a party to and that were signed before it existed.

under the DTSA (Counterclaim III), the NJTSA (Counterclaim IV), and for unfair competition (Counterclaim V) (collectively, the "Trade Secret Claims"). (*See generally id.*)

The doctrine of collateral estoppel, or issue preclusion, prevents a party from relitigating issues that have already been decided in prior lawsuits. *Peterson v. Holmes*, No. 11-2594, 2017 WL 1653949, at *4 (D.N.J. May 2, 2017) (citing *In re Docteroff*, 133 F.3d 210, 214 (3d Cir. 1997)). "Collateral estoppel exists to promote judicial consistency, encourage reliance on court decisions, and protect defendants from being forced to relitigate the same issues in multiple lawsuits." *Id.* (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). In New Jersey [9], a party seeking to invoke the doctrine must show that: "(1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding." *Id.* (citation omitted). Even where these five criteria are met, however, the court retains discretion to grant or deny preclusion. *State v. Schlanger*, 496 A.2d 746, 749 (N.J. Super. Ct. Law Div. 1985) ("The extent of use through collateral estoppel or by other methods of issue preclusion rests squarely within the discretion of the civil tribunal."). Specifically, courts must ensure that precluding an issue is fair, as preclusion is an equitable doctrine. *See Allen v. V & A Bros.*, 26 A.3d 430, 444 (N.J. 2011).

Where, as here, the action involves a foreign country's judgment, the Court must first determine whether it will apply the doctrine of collateral estoppel to the Spanish Judgments. "Generally, preclusion is based on the Full Faith and Credit clause, U.S. CONST. ART. IV, § 1, or on

---

[9] Because this Court has diversity jurisdiction over this matter, it must apply New Jersey law. *See Lithuanian Com. Corp. v. Sara Lee Hosiery*, 214 F. Supp. 2d 453, 458 (D.N.J. 2002) ("[A] federal court exercising diversity jurisdiction . . . [is] bound to apply the relevant New Jersey law[.]").

11

28 U.S.C. § 1738 (1994); a foreign country's judgments, however, are not subject to the Full Faith and Credit clause or § 1738 . . . ." *Pony Express Recs., Inc. v. Springsteen*, 163 F. Supp. 2d 465, 471-72 (D.N.J. 2001) (citation omitted). Yet, courts can apply the doctrine to judgments of foreign countries based on the principles of comity. *Id.*; *see also Bondi v. Citigroup, Inc.*, 32 A.3d 1158, 1186 (N.J. Super. Ct. App. Div. 2011).

### 1.    *Whether the Court Should Afford Comity to the Spanish Judgments.*

"Comity is a recognition which one nation extends within its own territory to the legislative, executive, or judicial acts of another." *Somportex Ltd. v. Phila. Chewing Gum Corp.*, 453 F.2d 435, 440 (3d Cir. 1971). In *Hilton v. Guyot*, 159 U.S. 113, 163-64 (1895), the United States Supreme Court explained that in international relations,

> "[c]omity," in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.

The *Hilton* court articulated the following factors to determine whether courts should afford comity to a foreign country's judgment: (1) whether the judgment was entered by a competent court, having both personal and subject-matter jurisdiction; (2) whether the judgment was brought upon due allegations and proofs, giving the parties the opportunity to defend against the claims; (3) whether the judgment was entered in a clear and formal record; and (4) whether there is any special ground to impeach the judgment. [10] *Springsteen*, 163 F. Supp. 2d at 472 (citing *Hilton*, 159 U.S. at 113). The "polestar" consideration is "whether a reasonable method of notification is

---

[10] Dismissal for principles of international comity is nevertheless discretionary. *Somportex Ltd.*, 453 F.2d at 440.

employed and reasonable opportunity to be heard is afforded to the person affected." *Somportex Ltd.*, 453 F.2d at 443.

Counterclaim Defendant, as the proponent of comity, bears the initial burden to prove that the Spanish Judgments are entitled to comity. *See In re Cortuk*, 633 B.R. 236, 267 (Bankr. D.N.J. 2021). "Once [Counterclaim Defendant] meets . . . [its] initial burden, the burden shifts to the party opposing comity to show that the [Spanish Judgments] 'violate[] American policy notions of what is decent and just.'" *Id.*; *see also Tahan v. Hodgson*, 662 F.2d 862, 864 (D.C. Cir. 1981) (explaining that comity may not be granted to a foreign judgment if its recognition would be "repugnant to fundamental notices of what is decent and just"). This burden is "high and unfrequently met" and is applicable only in "clear-cut cases." *Ackermann v. Levine*, 788 F.2d 830, 841 (2d Cir. 1986) (citations omitted). As such, generally, United States courts will not review acts of foreign governments and will defer to proceedings taking place in foreign countries, allowing those acts and proceedings to have extraterritorial effect in the United States. *See, e.g.*, *Somportex Ltd.*, 453 F.2d at 440-44. But a court may deny comity to a foreign legislative, executive, or judicial act if it finds that the extension of comity "would be contrary or prejudicial to the interest" of the United States. *Id.* at 440.

Here, the Spanish litigation and Spanish Judgments satisfy all the *Hilton* requirements. The Spanish litigation took place in the courts in Spain, in which the Spanish Court had subject-matter jurisdiction to adjudicate the claims in the Manufacturing Defect Lawsuit and the Unfair Competition Lawsuit and had personal jurisdiction over the parties. And no party disputes any of these issues. (CDSOF ¶ 16; CPRSOF ¶ 16.) As to the Manufacturing Defect Lawsuit, the parties do not dispute that "after considering [Counterclaim Plaintiff]'s expert as well as the [c]ourt appointed expert, the [Spanish] [C]ourt determined that there was no 'design failure, since it ha[d]

not been proven that the[] [belts used in the S-Line Machube] cannot withstand the temperature and humidity conditions in that zone.'" (CDSOF ¶ 37; CPRSOF ¶ 37.) Similarly, the parties do not dispute that in the Unfair Competition Lawsuit, the claims were dismissed because the statute of limitations had lapsed. [11] In short, there is nothing that impeaches the Spanish Court's decision. The Court, accordingly, finds that Counterclaim Defendant has met its burden of proving that the Spanish Judgments are entitled to comity. The Court also finds that Counterclaim Plaintiff fails to meet its burden in showing that the Spanish litigation "violates American policy notions of what is decent and just." The Court, therefore, will afford comity to the Spanish Judgments. [12]

### 2. *Whether Collateral Estoppel Bars Counterclaim Plaintiff's Claims.*

Having found it appropriate to afford comity to the Spanish Judgments, the Court next evaluates whether collateral estoppel bars Counterclaim Plaintiff's Breach of Warranty Guarantee Claims and Trade Secret Claims.

Counterclaim Defendant, who has the burden to establish the applicability of collateral estoppel, [13] argues that the Spanish litigation concerning the Spanish Judgments satisfies each element of collateral estoppel, and bars Counterclaim Plaintiff's Breach of Warranty Guarantee Claims and Trade Secret Claims. (Countercl. Def.'s Moving Br. 11-15.) Counterclaim Plaintiff only disputes the first and second collateral estoppel elements—that the identical issue was decided in a prior adjudication and that there was a final judgment on the merits. (Countercl. Pl.'s Opp'n

[11] The Court notes that Counterclaim Plaintiff disputes this disposition to the extent that it refers "to the application of Spanish law, including the applicable Spanish statute of limitations, to activities in Spain involving Viscofan S.A." (CPROSF ¶ 24.)

[12] The Court sees no reason to find that the extension of comity to the Spanish Judgments "would be contrary or prejudicial to the interest" of the United States. *Somportex Ltd.*, 453 F.2d at 440-44.

[13] *See, e.g.*, *Fuzy v. Westfield Bd. of Educ.*, No. 19-18434, 2022 WL 1284731, at *5 (D.N.J. Apr. 29, 2022) (citing *In re Est. of Dawson*, 641 A.2d 1026, 1035 (N.J. 1994)).

Br. 11-15.) More specifically, Counterclaim Plaintiff argues that Counterclaim Defendant fails to demonstrate that collateral estoppel bars its: (1) Breach of Warranty Guarantee Claims because Counterclaim Plaintiff fails to demonstrate that an identical issue was decided in the Manufacturing Defect Lawsuit; and (2) Trade Secret Claims because Counterclaim Defendant fails to demonstrate that there was a final judgment on the merits in the Unfair Trade Practices Lawsuit. (*Id.* at 11.) The Court, therefore, confines its issue preclusion analysis to the first and second elements.

### a.    Whether the Issues in the Manufacturing Defect Lawsuit are Sufficiently Identical to the Instant Case.

First up is Counterclaim Plaintiff's argument that the issues involved in the Manufacturing Lawsuit and the instant litigation are not sufficiently identical to bar Counterclaim Plaintiff's Breach of Warranty Guarantee Claims. Put differently, Counterclaim Plaintiff argues that issue preclusion does not bar its Breach of Warranty Guarantee Claims because "[Counterclaim Defendant] fails to establish that the issues central to [Counterclaim Plaintiff]'s Breach of Warranty [Guarantee] Claims were adjudicated by the court in Spain." (Countercl. Pl.'s Opp'n Br. 11-12.) The Court agrees.

When determining whether an issue is identical between litigations, the issues must be "in substance the same." *Pasqua v. County of Hunterdon*, No. 15-3501, 2017 WL 5667999, at \*15 (D.N.J. Nov. 27, 2017). In assessing whether the issues are identical, courts consider: "[(1)] whether there is substantial overlap of evidence or argument in the second proceeding; [(2)] whether the evidence involves application of the same rule of law; [(3)] whether discovery in the first proceeding could have encompassed discovery in the second; and [(4)] whether the claims asserted in the two actions are closely related." *Strassman v. Essential Images*, No. 17-4227, 2018 WL 1251636, at \*5-6 (D.N.J. Mar. 12, 2018) (quoting *First Union Nat'l Bank v. Penn Salem*

*Marina, Inc.*, 921 A.2d 417, 424 (N.J. 2007)). Issues, however, "are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits may be the same." *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 154 (2015) (citation omitted). Collateral estoppel may nonetheless still apply if there are only "[m]inor variations in the application of what is in essence the same legal standard," but not if the legal standards are "fundamentally different." *B&B Hardware, Inc.*, 575 U.S. at 154 (quoting *Smith v. Bayer Corp.*, 564 U.S. 299, 312 n.9 (2011)).

Here, the parties do not dispute that the Spanish Trial Court determined in the Manufacturing Defect Lawsuit that:

> there was no "design failure, since it has not been proven that [conveyor belts] cannot withstand the temperature and humidity conditions in that zone. On the contrary, belt modifications and replacements were carried out by the defendant up to the change of ownership. Finally, the S-line production data do not prove a causal link to the green belts breaking."

(CDSOF ¶ 37; CPRSOF ¶ 37.) The parties, however, disagree on the issue that was adjudicated in the Manufacturing Defect Lawsuit. (CDSOF ¶ 36; CPRSOF ¶ 36.) On the one hand, Counterclaim Defendant contends that the Spanish Trial Court determined the issue with respect to the fitness of the belts. (Countercl. Def.'s Moving Br. 4-5.) On the other hand, Counterclaim Plaintiff contends that "a different, distinct issue—whether there was a design flaw—was adjudicated in Spain." (CDSOF ¶ 36; CPRSOF ¶ 36.) In support, Counterclaim Plaintiff argues that the issue is distinct because, under New Jersey law, a plaintiff need not establish the existence of a defect for a warranty action. (CPRSOF ¶¶ 34-37, 39-40 (citing *Spring Motors Distribs., Inc. v. Ford Motor Co.*, 489 A.2d 660, 676 (N.J. 1985).) As such, Counterclaim Plaintiff argues that the issue underlying its Breach of Warranty Guarantee Claims in the instant litigation is not whether the belts were defective and thus is not precluded. (Counterl. Pl.'s Opp'n Br. 12-13.)

Despite the dispute amongst the parties as it pertains to the controlling issue, the parties agree that the underlying issues in the Manufacturing Defect Lawsuit were whether the "belts for the S-Line [M]achine were defective" (CDSOF ¶ 34; CPRSOF ¶ 34) and whether the breakage in the belts was caused by "[Counterclaim Defendant]'s failure to manufacture them properly for use in the S-Line [M]achine" (*id.*). The Spanish Court ultimately concluded that "[t]he defect ha[d] not been proven" by Counterclaim Plaintiff. (*Id.*)

Here, the Court finds that the difference in legal standards between the two issues precludes the invocation of collateral estoppel as to Counterclaim Plaintiff's Breach of Warranty Guarantee Claims. *See B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 154 (2015) ("'[I]ssues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits may be the same.'" (citation omitted)). Under New Jersey law, an implied warranty that goods are fit for a particular purpose exists "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." N.J. Stat. Ann. § 12A:2-315. An implied warranty that goods are merchantable and fit for their ordinary purpose exists "if the seller is a merchant with respect to goods of that kind." N.J. Stat. Ann. § 12A:2-314(1). But for both implied warranty claims, "the plaintiff . . . need not establish the existence of a defect; the failure of the goods to perform as warranted is sufficient." *Spring Motors Distribs., Inc.*, 489 A.2d at 676.

Moreover, Counterclaim Defendant concedes that "while the allegation which [Counterclaim Plaintiff] . . . made in Spain was not based on the New Jersey statute, the issue of whether [Counterclaim Defendant] caused the belts to break was determined by the . . . [Spanish

Trial Court]." [14] (Countercl. Def.'s Moving Br. 9.) But, under New Jersey law, a plaintiff need not establish that a defect caused the break of the belts. [15] The Spanish Trial Court thus determined that "the cause for the defect or the break of the belts [due to] it being manufactured from inadequate material" had not been proven. (Countercl. Def.'s Ex. J, at 9, ECF No. 28-4.) The Court, accordingly, finds that Counterclaim Defendant fails to meet its burden to demonstrate that the issues are sufficiently identical to bar Counterclaim Plaintiff's Breach of Warranty Guarantee Claims based on issue preclusion.

### b.    Whether a Final Judgment on the Merits Exists in the Unfair Competition Lawsuit.

Next up is Counterclaim Plaintiff's argument that Counterclaim Defendant has failed to establish that the Unfair Competition Lawsuit resulted in a final judgment on the merits. (Countercl. Pl.'s Opp'n Br. 13-15.)

"[F]or purposes of issue preclusion . . . 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." *In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991) (citation omitted). In determining whether

---

[14] While Counterclaim Defendant presents case law suggesting that Counterclaim Plaintiff's arguments only apply to breach of express warranties and not implied warranties, as Counterclaim Plaintiff alleges here, New Jersey law has long permitted breach of implied warranty claims without establishing a defect, so long as the plaintiff can show that the product was "not fit for the ordinary purpose for which it was intended." *In re Toshiba Am. HD DVD Mktg. & Sales Pracs. Litig.*, No. 08-939, 2009 WL 2940081, at *16 (D.N.J. Sept. 11, 2009); *Argabright v. Rheem Mfr. Co.*, 201 F. Supp. 3d 578, 598 (D.N.J. 2016) ("In order for the implied warranty of merchantability to be breached, the product at issue must have been defective or not fit for the general purpose for which it was manufactured and sold.").

[15] Furthermore, Counterclaim Defendant fails to establish that the 2019 Belts were a part of the S-Line Contract between the parties that required them to litigate the Manufacturing Defect Lawsuit in Spanish Courts. Rather, the Spanish Trial Court determined that the 2019 Belts were not part of the S-Line Contract that was litigated in the Manufacturing Defect Lawsuit. (*See* Compl. ¶ 13 (explaining that the 2019 conveyor belts were unrelated to the purchase of the S-Line Machine).)

a prior ruling was sufficiently firm for preclusion purposes, courts consider the following factors: (1) whether the parties were fully heard; (2) whether a reasoned opinion was filed; and (3) whether that decision could have been, or actually was, appealed. *Free Speech Coal., Inc. v. Att'y Gen. of U.S.*, 677 F.3d 519, 541 (3d Cir. 2012). Moreover, the party asserting collateral estoppel, here Counterclaim Defendant, bears the burden of showing exactly what was litigated and "directly determined" in the Spanish courts. *See Gruntal & Co. v. Steinberg*, 854 F. Supp. 324, 337 (D.N.J. 1994), *aff'd*, 46 F.3d 1116 (3d Cir. 1994).

Here, the Court finds that the Unfair Competition Lawsuit judgment dismissing Viscofan S.A.'s [16] unfair competition claims is "sufficiently firm" to preclude this Court from questioning the previously litigated issue. Moreover, the Unfair Competition Lawsuit was decided on the merits for the purposes of collateral estoppel because experts were presented before the Spanish Trial Court, a reasoned opinion incorporating its findings was issued, and Viscofan S.A. had the opportunity to and, in fact, did appeal the judgment.

To begin, the Spanish Trial Court found with respect to the Unfair Competition Lawsuit:

> In the case of this procedure, the only conclusion that may be reached is that the action being exercised is statute barred since more than one year has elapsed since the action could be exercised without it being observed that continuing unfair conduct exists. To this end, it is necessary to accurately determine what conduct the defendant is being attributed with, which is simply the use of knowledge acquired during its commercial relationship with VISCOFAN S.A. relating to said company's plans, machinery, and production process to market machines copied from the plaintiff. In this respect, the fact that an order for pulleys was placed in February 2016 with the company DINAMICA (exhibit no. 24 of the claim) and in November 2015 an order for belts was placed with the company AMMERAAL BELTECH, S.A. (Exhibit no. 28 of the claim) is of no relevance in order for it to be deemed that we are faced with a continuing act given that these are instrumental acts to enable [Counterclaim Defendant] to manufacture a machine (a knotting

---

[16] Counterclaim Plaintiff does not dispute that Viscofan S.A. is its privy.

machine) which it is stated the defendants copied and sought to sell. Nevertheless, the fact that [Counterclaim Defendant] sought to sell one or several machines of similar specifications to that developed by Viscofan S.A. is a fact that has been known by VISCOFAN S.A. since February 23, 2015, as said party states and attests. Indeed, enclosed as exhibit no. 17 to the claim is the email sent by the international sales representative Mr. Horwath in which he represents to Mr. Kamis (of VISCOFAN S.A.) that both himself and his colleague Mr. Kollross have been contacted by [Counterclaim Defendant] to place on the market a machine which, in his opinion, bears highly similar features to the knotting machine developed by VISCOFAN S.A. From this point, the plaintiff is already accepting this circumstance and is fully aware of the alleged activity carried out by [Counterclaim Defendant], as certified by exhibit no. 18 of the claim, which is a notary record by means of which Viscofan S.A. serves notice on [Counterclaim Defendant] - through its representative Mr. Legaz - with a letter calling on the company to refrain from marketing the knotting machines and to hand over all documentation and information relating to the designs, the technology, and the know-how pertaining to the plaintiff. Following that, there is only reference to a shipment of containers by [Counterclaim Defendant] to Nitta group, but under no circumstances has it been certified that what those containers held was technology built by [Counterclaim Defendant] copied from technology pertaining to VISCOFAN S.A.

(Countercl. Def.'s Ex. G, 8-9, ECF No. 28-3.; *see also id.* at *40-41 (reiterating that the allegations dealt with "acts of unfair competition").) [17] The Spanish Trial Court noted that the "parties put forward their proposals for the means of evidence which they deemed suitable — after having verified the validity of the suit — and the honorable judge admitted the means of evidence." (*Id.* at *39.) The Spanish Trial Court "examin[ed] the evidence and hear[d] closing statements." (*Id.*) The Spanish Trial Court then issued its judgment, on March 7, 2019, determining the statute of limitations had lapsed. (*Id.*; *id.* at *44-45 ("I should and I do dismiss the action lodged by [Viscofan S.A.] . . ., declaring that the action is statute barred.").)

---

[17] Page numbers preceded by an asterisk refer to the page numbers atop the ECF header.

Viscofan S.A. then appealed the Spanish Trial Court's judgment to the Spanish Appellate Court. (*See generally* Countercl. Def.'s Ex. H, 3, ECF No. 28-3.) In dismissing Viscofan S.A.'s appeal and upholding the Spanish Trial Court, the Appellate Court found that "[i]n short, the absence of evidence of the acts in relation to the statute of limitations is tantamount to declaring the claim by Viscofan[ S.A.] as being unfeasible with regard to the merits of the case." (*Id.* at *74.) Finally, Viscofan, S.A. appealed to the Spanish Supreme Court and lost there with respect to its Unfair Trade Practices Lawsuit. (Countercl. Def.'s Ex. I, *106, ECF No. 28-3 (affirming the Appellate Spanish Court's judgment and declaring its "judgment [a]s definitive).)

As such, the Court finds that these substantial prior decisions constitute final judgments on the merits. *See Singer v. Bureau of Prof'l & Occupational Affs.*, 648 F. App'x 193, 194 (3d Cir. 2016) ("[T]he fact that the claims were previously dismissed as time-barred does not prevent application of . . . preclusion."); *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 228 (1995) ("The rules of finality, both statutory and judge made, treat a dismissal on statute-of-limitations grounds the same way they treat a dismissal for failure to state a claim, for failure to prove substantive liability, or for failure to prosecute: as a judgment on the merits."). Moreover, nothing in the Unfair Competition Lawsuit judgment suggests that the dismissal based on exceeding the scope of statute of limitations was tentative or subject to change. The Court, accordingly, finds that Counterclaim Plaintiff is precluded from bringing its Trade Secrets Claims. [18] The Court, therefore, grants Counterclaim Defendant's Motion as it pertains to Counterclaim Plaintiff's Trade Secret Claims.

_____

[18] As the Supreme Court has observed, there is no formula for proper estoppel decisions, and the ultimate decision is a matter of "the trial court's sense of justice and equity." *See Blonder–Tongue Lab'ys, Inc. v. Univ. of Ill. Found., et. al.*, 402 U.S. 313, 334 (1971).

21

IV.    **CONCLUSION**

For the reasons set forth above, Counterclaim Defendant's Motion for Summary Judgment is granted in part and denied in part. The Court will issue an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE